# EXHIBIT E

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| VIZIO, INC., | : Civil Action No. 08-5029 (FSH) (PS) |
| Plaintiff, | : |
| | : |
| v. | : **ORAL ARGUMENT REQUESTED** |
| | : |
| SONY CORPORATION and SONY | : Return Date: February 17, 2009 |
| CORPORATION OF AMERICA, | : |
| | : *DOCUMENT FILED ELECTRONICALLY* |
| Defendants. | : |
| | : |

## DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO TRANSFER THIS ACTION TO THE CENTRAL DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1404(a)

Kevin P.B. Johnson
(kevinjohnson@quinnemanuel.com)
Benjamin Singer
(benjaminsinger@quinnemanuel.com)
QUINN EMANUEL URQUHART OLIVER
& HEDGES, LLP
555 Twin Dolphin Drive, Suite 560
Redwood Shores, California 94065
(650) 801-5000

Edward J. DeFranco
(eddefranco@quinnemanuel.com)
Thomas D. Pease
(thomaspease@quinnemanuel.com)
QUINN EMANUEL URQUHART OLIVER
& HEDGES, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

Arnold B. Calmann (abc@saiber.com)
Jakob B. Halpern (jbh@saiber.com)
SAIBER LLC
One Gateway Center, 13th Floor
Newark, New Jersey 07102-5311
(973) 622-3333

*Attorneys for Defendants
Sony Corporation and
Sony Corporation of America*

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................1

STATEMENT OF FACTS .....................................................................................4

ARGUMENT .........................................................................................................6

    POINT I ...........................................................................................................7

        THE STANDARD FOR TRANSFER.......................................................7

    POINT II .........................................................................................................9

        TRANSFER IS APPROPRIATE BECAUSE THIS ACTION COULD
        HAVE BEEN BROUGHT IN THE CENTRAL DISTRICT OF
        CALIFORNIA WHERE TWO RELATED CASES ARE PENDING...................9

    POINT III.......................................................................................................10

        TRANSFER WILL PROMOTE THE INTERESTS OF JUSTICE ......................10

            A.    Transfer Will Promote Judicial Economy And Avoid
                  Unnecessary Duplication of Effort ..................................................10

            B.    Transfer Will Avoid The Risk Of Conflicting Rulings .................14

            C.    The Remaining Public Interest Factors Weigh in Favor of
                  Transfer ..........................................................................................15

    POINT IV........................................................................................................16

        THE CONVENIENCE OF THE PARTIES AND WITNESSES AND
        OTHER PRIVATE INTEREST FACTORS STRONGLY FAVOR
        TRANSFER ....................................................................................................16

            A.    Plaintiff's Choice of Forum Does Not Weigh Against
                  Transfer ..........................................................................................17

            B.    Defendants' Preference for the Central District of California
                  Favors Transfer ..............................................................................20

            C.    The Declaratory Judgment Claims Arose in California or
                  Asia, Not New Jersey.....................................................................21

            D.    The Convenience of the Parties Favors Transfer............................21

i

E.    The Convenience of the Witnesses Favors Transfer......................22

F.    The Location of Sources of Evidence Also Favors Transfer.........23

CONCLUSION..........................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>Cases</u>

*Amazon.com v. Cendant Corp.*,
    404 F. Supp. 2d 1256 (W.D. Wash. 2005)................................................................10, 11, 22

*Amer. Cyanamid Co. v. Eli Lilly & Co.*,
    903 F. Supp. 781 (D.N.J. 1995).................................................................................................10

*American Senso RX, Inc. v. Banner Pharmcaps, Inc.*,
    C.A. No. 06-1929, 2006 WL 2583450 (D.N.J. Sept. 6, 2006) .................................................8

*Arete Power, Inc. v. Beacon Power Corp.*,
    C.A. No. C 07-5167, 2008 WL 508477 (N.D. Cal. Feb. 22, 2008).........................................15

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
    21 F.3d 1558 (Fed Cir. 1994)...................................................................................................9

*CQGT, LLC v. Trading Techs. Int'l.*,
    C.A. No. 05-cv-01584, 2006 WL 2711770 (D. Colo. Sept. 21, 2006)...................................20

*Chi Mei Optoelecs. Corp., v. LG Philips LCD, Co., Ltd.*,
    C.A. No. 2:07-CV-176, 2008 WL 901405 (E.D. Tex. Mar. 31, 2008).....................................14

*Continental Grain v. The Barge FBL-585*,
    364 U.S. 19 (1960)...........................................................................................................10, 11

*DataTreasury Corp. v. First Data Corp.*,
    243 F. Supp. 2d 591 (N.D. Tex. 2003) ...................................................................................11

*Dollinger v. Salomon Smith Barney, Inc.*,
    C.A. No. 00-5607, 2001 WL 1917976 (D.N.J. Mar. 7, 2001)................................................14

*EMS-Amer. Grilon, Inc. v. DMS Resins, U.S., Inc.*,
    Civ. A. No. 89-2190, 1989 WL 230919 (D.N.J. Oct. 5, 1989)...............................................20

*Elecs. For Imaging, Inc., v. Tesseron, Ltd.*,
    C.A. No. C 07-05534, 2008 WL 276567 (N.D. Cal. Jan. 29, 2008).......................................10

*Euro Classics, Inc. v. Excel Global Logistics, Inc.*,
    C.A. No. 06-CV-423, 2006 WL 1344098 (D.N.J. May 16, 2006) .........................................22

*Ferens v. John Deere Co.*,
    494 U.S. 516 (1990)................................................................................................................10

*Genentech, Inc. v. Eli Lily and Co.*,
    998 F.2d 931 (Fed. Cir. 1993)...................................................................................................7

*Interactive Music Tech., LLC v. Roland Corp.*,
    C.A. No. 6:07-CV-282, 2008 WL 245142 (E.D. Tex. Jan. 29, 2008).....................................14

*Joe Boxer Corp. v. R. Siskind & Co., Inc.*,
    C.A. No. C 98-4899, 1999 WL 429549 (N.D. Cal. June 28, 1999)..........................9

*Jumara v. State Farm Ins. Co.*,
    55 F.3d 873 (3d Cir. 1995).................................................................8, 9, 16

*LG Elecs., Inc. v. First Int'l Computer, Inc.*,
    138 F. Supp. 2d 574 (D.N.J. 2001) ..................................................11, 17

*Lawrence v. Xerox Corp.*,
    56 F. Supp. 2d 442 (D.N.J. 1999) ...........................................................10

*Liebig v. Schneider Nat'l Bulk Carriers, Inc.*,
    C.A. No. 92-4773, 1993 WL 34950 (D.N.J. Feb. 10, 1993)..........................15

*Liggett Group, Inc. v. R.J. Reynolds Tobacco Co.*,
    102 F. Supp. 2d 518 (D.N.J. 2000) ...........................................................20

*Micron Tech., Inc. v. Mosaid Techs., Inc.*,
    518 F.3d 897 (Fed. Cir. 2008)...............................................................7, 20

*MyMail, Ltd. v. Amer. Online, Inc.*,
    223 F.R.D. 455 (E.D. Tex. 2004)...............................................................14

*Prinir (HADAS 1987), Ltd. v. ConAgra Foods Packaged Foods Co., Inc.*,
    C.A. No. 08-914 (JLL), 2008 WL 5169119 (D.N.J. Nov. 21, 2008)..................17

*Regents of the Univ. of Cal. v. Eli Lilly & Co.*,
    119 F.3d 1559 (Fed. Cir. 1997)..................................................................10

*Saint-Gobain Calmar, Inc. v. Nat'l Prods. Corp.*,
    230 F. Supp. 2d 655 (E.D. Pa. 2002) ........................................................17

*Stewart Org., Inc. v. Ricoh Corp.*,
    487 U.S. 22 (1988)..................................................................................8

*Super Sack Mfg. Corp. v. Chase Packaging Corp.*,
    57 F.3d 1054 (Fed. Cir. 1995).................................................................11

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964)..............................................................................8, 9

*Weber v. Basic Comfort Inc.*,
    155 F. Supp. 2d 283 (E.D. Pa. 2001) ........................................................11

*Wilton v. Seven Falls Co.*,
    515 U.S. 277, 115 S. Ct. 2137, 132 L. Ed. 2d 214 (1995)...............................7

*Yang v. Odom*,
    409 F. Supp. 2d 599 (D.N.J. 2006) ...........................................................14

*Zoltar Satellite Sys., Inc. v. LG Elecs. Mobile Comm. Co.*,
    402 F. Supp. 2d 731 (E.D. Tex. 2005).........................................8, 9, 14, 23

## <u>Statutes</u>

28 U.S.C. § 1400(b) ......................................................................................................9

28 U.S.C. § 1404(a) ............................................................................................... *passim*

Fed. R. Civ. Proc. 45(c)(3)((A)(ii) ...............................................................................24

## <u>Other Authorities</u>

Federal Judicial Caseload Statistics,
   *Table C-5 Time Intervals From Filing to Disposition of Civil Cases Terminated, by District
   and Method of Disposition* ...............................................................................................15

Defendants Sony Corporation ("Sony Corp.") and Sony Corporation of America ("SCA") (collectively, "Sony") respectfully move pursuant to 28 U.S.C. § 1404(a) to transfer this action filed by Plaintiff Vizio, Inc. ("Vizio") to the Central District of California where two actions are currently pending that involve the same patents and the same accused technology. Moreover, one of those actions involves the same parties to this action.

## PRELIMINARY STATEMENT

This case should be transferred to the Central District of California where two closely related actions are currently pending before Judge R. Gary Klausner, each involving eight of the twelve patents-in-suit here.[1] Sony brought the first action in June 2008 against Westinghouse Digital Electronics, Inc. ("Westinghouse"), a manufacturer of digital televisions. That action involves the same technology accused here: digital televisions that implement several standards relevant to the patents-in-suit. Trial in that action is scheduled for June 2, 2009, less than one year from when the case was filed.

Sony brought the second action against Vizio only hours after Vizio filed this declaratory judgment action. That action is almost identical to the case before the Court – eight of the ten patents asserted in that action are also asserted here, and Sony expects that the accused products in both actions will be identical.

The only reason this declaratory judgment action is in the District of New Jersey is that Vizio misled Sony by scheduling a licensing meeting for October 14, 2008, and then filing this

---

[1] Sony is asserting the same ten patents against both Westinghouse and Vizio in the California actions. In this action, Vizio seeks declaratory relief on eight of those patents, as well as on four other patents not at issue in the California actions. Sony initially asserted those four patents against Vizio in its California action, but Sony dropped those patents after executing a formal covenant not to sue Vizio. Sony contends that as a result of that covenant, subject matter jurisdiction no longer exists for Vizio's declaratory relief claims here on those four patents.

action on October 10, 2008 (Declaration of Jaime A. Siegel ("Siegel Dec.") at ¶¶ 26-31). Vizio apparently seeks to needlessly complicate its litigation with Sony to delay resolution of Sony's claim. The Court should not reward Vizio's tactics. It should transfer this case to the Central District of California, where it can be heard by the same judge who will decide the two closely related patent actions.

Since both of the California actions are substantially similar to this case, transfer to the Central District will benefit judicial economy in two ways. First, it will prevent unnecessary and inefficient duplication of judicial resources, since only one judge will need to master the sophisticated legal and factual issues presented by the complex technology of the Sony patents-in-suit. Second, it will minimize the risk of inconsistent substantive rulings. There is simply no legitimate reason for this Court to invest the substantial resources needed to resolve the complex legal and technical issues presented in this case, when Judge Klausner will address the same or very similar issues in deciding the California actions. Because Sony's first action against Westinghouse before Judge Klausner involves different parties than this action and is scheduled for trial on June 2, 2009, it would not benefit judicial economy for that action to be transferred to New Jersey. On the other hand, judicial efficiency can be achieved by transferring this case to Judge Klausner in California.

Transfer is also warranted because the Central District of California is a far more convenient forum for all parties and witnesses – including Vizio. Vizio is a California corporation with its principal place of business in Irvine, California within the Central District of California. Indeed, Vizio's Complaint makes no mention whatsoever of any specific ties to New Jersey. Nor is Sony aware of Vizio having any facilities, documents or employees in New Jersey. Presumably, the bulk of Vizio's fact witnesses are located within the Central District of

2

California. For example, all of the Vizio employees involved in negotiations with Sony are believed to be located in Irvine, California (Siegel Dec. at ¶ 32).

Sony Corp. is a Japanese company headquartered in Tokyo, with its indirect subsidiary Sony Electronics Inc. ("SEL") headquartered in San Diego, California (*id.* at ¶ 2). Sony Corporation of America, the parent corporation of SEL, is headquartered in Manhattan, but has no involvement in the design or manufacture of any Sony products covered by the patents-in-suit (*id.* at ¶ 15). By contrast, the Sony Technology Center-San Diego (STC-SD) is a center for product design, development and manufacturing (*id.* at ¶ 13). Thousands of SEL employees, including those at STC-SD, are located in San Diego (*id.*). Several of these employees, including Peter Shintani, a named inventor on one of the patents asserted against Westinghouse and Vizio, but not yet subject to a declaratory judgment claim by Vizio here, may have relevant information related to the marketing, sale, design, development and manufacturing of Sony's television products, which embody inventions of the patents-in-suit (*id.* at ¶¶ 12-13).

Moreover, based on the latest address information available to Sony, all twenty of the named inventors of the patents-in-suit – some of whom no longer work for Sony – are believed to reside in either California or Japan (*id.* at ¶ 6-8). None are known to work or reside in New Jersey (*id.* at ¶ 10). Similarly, with the exception of SCA counsel, Jaime Siegel, who lives and works in New Jersey, all of the Sony executives who participated in the license negotiations that preceded this lawsuit, including IP Director, Kenichi Ono (Japan), and Director of Operations for Sony Intellectual Property, Fred Zustak (California), are based in either California or Japan (*id.* at ¶ 18). So too, four of the U.S. patent attorneys who prosecuted certain of the patents-in-suit are located in California (*id.* at ¶ 11). All of these individuals are likely to be identified by Sony as persons having information relevant to the issues of this lawsuit and thus are potential non-

party witnesses. Other than Mr. Siegel, the only other known potential witness who is located

outside of California or Japan is a Sony executive, Robert Wiesenthal, who made the statements

that underlie Vizio's disparagement/Lanham Act claims (*id.* at ¶¶ 16-17). Mr. Wiesenthal lives

and works in New York City (*id.* at ¶ 17). As a result, apart from SCA counsel in New Jersey

and Mr. Wiesenthal in New York, the vast majority of the witnesses in this action are located in

California or Japan.

Finally, although Vizio may attempt to invoke the "first to file rule," its own actions show

that the rule should be given little weight here. Vizio was only able to file its complaint first –

hours before Sony filed its Complaint in California – because it deliberately misled Sony (*id.* at

¶¶ 16-31). To needlessly complicate matters further, Vizio also included wholly unrelated

disparagement/Lanham Act claims. The effect of these claims, as will be discussed more fully

below, will likely be the addition of even more California based witnesses and documents to this

case.

For these reasons as well as those set forth below, this Court should grant Sony's motion

to transfer pursuant to Section 1404(a).

## STATEMENT OF FACTS

Since 2005, Sony has been engaged in ongoing licensing negotiations with both

Westinghouse and Vizio relating to the patents-in-suit (*id.* at ¶ 18). Westinghouse is another

California corporation that manufactures and sells digital televisions that infringe Sony's patents

relating to, for example, on-screen display, menu interface, data encoding and encryption, and

channel selection. In June 2008, negotiations with Westinghouse reached an impasse and Sony

Corp. initiated a lawsuit in the Central District of California (*id.* at ¶19).

On June 16, 2008, Sony filed a complaint for multiple counts of patent infringement
against Westinghouse in the Central District of California (the "Westinghouse Action"). (*Sony
Corporation v. Westinghouse Digital Electronics, LLC*, 08-03934-RGK (FMOx). Westinghouse
is a manufacturer of consumer electronics, including digital televisions and computer monitors,
and has its principal place of business in Santa Fe Springs, California, which is about fifteen
miles southeast of Los Angeles within the Central District of California. The case was assigned
to Judge Klausner in the Western Division. In the Complaint, Sony asserted that Westinghouse
infringed seven patents: U.S. Patent Nos. 5,434,626, 5,583,577, 5,684,542, 5,731,847, 5,751,373,
6,111,614, and RE38,055. On September 16, 2008, Sony filed its First Amended Complaint,
adding three additional patents to the suit: U.S. Patent Nos. RE40,468, 6,778,182, and 6,661,472.
All ten patents asserted in the Westinghouse Action concern various aspects of the on-screen
display and data transmission technology of digital display devices.

License negotiations with Vizio continued after Sony sued Westinghouse, and initially
appeared to be faring better (*id.* at ¶ 20). Sony executives agreed to meet with Vizio at Vizio's
counsel's office in Irvine, California on October 14, 2008 to further discuss potential licensing
arrangements (*id.* at ¶ 29). Vizio, however, filed this declaratory judgment action on October
10, 2008, apparently hoping to obtain first-to-file status while avoiding the fast time to trial of
Judge Klausner's docket (*id.* at ¶ 30).

On October 10, 2008, after learning that Vizio had filed its complaint in this action, Sony
Corp. filed suit against Vizio in the Central District of California where Vizio's corporate
headquarters is located. (*Sony Corporation v. Vizio, Inc.*, 8:08-cv-01135-RGK-FMO). Just one
business day later, on October 13, 2008, Sony Corp. served Vizio with its complaint asserting all
ten of the patents at issue in the Westinghouse Action and four additional patents relating

5

generally to display technology: U.S. Patent Nos. 5,285,285, 5,212,553, 5,168,362 and 5,539,425 – the same patents Vizio has asserted here. The action was recently reassigned over Vizio's objections to Judge Klausner. Vizio did not serve SCA with its complaint until October 23, 2008 and the parties thereafter agreed that defendants would answer or otherwise respond to the complaint on February 2, 2009.

On November 14, 2008, Sony amended its complaint against Vizio in the California Action to drop four of the asserted patents from the case, leaving only the ten patents that are also at issue in the Westinghouse action.[2] Sony also executed a formal "Covenant Not To Sue" Vizio for infringement of these four patents with respect to any products currently or previously sold, offered for sale, manufactured, or imported by Vizio. By executing this covenant, Sony eliminated any subject matter jurisdiction the Court might have had over Vizio's related declaratory judgment claims.[3]

## ARGUMENT

This action should be transferred to the Central District of California because:

(1)    it could have been brought in that district;

(2)    judicial expediency and economy would be served, since it would avoid the duplicative need for this Court to invest the time and effort needed to resolve the issues presented

---

[2]    Specifically, Sony withdrew its patent infringement claims for U.S. Patent Nos. 5,285,285, 5,212,553, 5,168,362 and 5,539,425. These patents had not been asserted in the Westinghouse Action.

[3]    On November 20, 2008, Sony requested that Vizio drop the Counts in its Complaint (Counts 1-4 and 9-12) that relate to the patents in Sony's covenant not to sue. When Vizio failed to respond, Sony asked the Court for leave to file a motion to dismiss those counts for lack of subject matter jurisdiction. Vizio opposed that request, and the request was denied without prejudice on January 20, 2009 (Docket No. 21). In the event the four patents that are the subject of Sony's covenant are dropped from this action, there will be no patents at issue here that are not already at issue in the two California actions.

6

by this action when two actions involving eight of the patents-in-suit and either the same or very

similar products are already pending in the Central District of California before Judge Klausner,

with the first scheduled for trial in June 2009 and the other essentially a mirror-image of this

action against Vizio;

(3)    it will avoid duplicative and potentially inconsistent rulings;

(4)    the Central District is far more convenient for Sony and its expected witnesses

who, with two exceptions, are located in Japan and California;

(5)    it is likely to be far more convenient for Vizio itself, which is based in California

and has no known connections to New Jersey;

(6)    it is likely to be more convenient for third-party witnesses, such as the

representatives of the manufacturers of the chipsets used in Vizio and Sony's products; and

(7)    all of the negotiations leading up to the filing of this lawsuit, with one exception,

were held in the Central District of California.

Consequently, because all of the factors that guide this Court's discretion under Section

1404(a) either weigh strongly in favor of litigating the case in the Central District or are neutral,

this case should be transferred to that district.

## POINT I

## THE STANDARD FOR TRANSFER

In patent cases, the determination of the appropriate venue as between a declaratory

judgment action and a later filed patent infringement action is controlled by the law of the

Federal Circuit. *Genentech, Inc. v. Eli Lily and Co.*, 998 F.2d 931, 937-38 (Fed. Cir. 1993),

*abrogated on other grounds, Wilton v. Seven Falls Co.*, 515 U.S. 277, 115 S.Ct. 2137, 132

L.Ed.2d 214 (1995). The general rule normally favors the forum of the first-filed action, whether

or not it is a declaratory judgment action. *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d

897, 904 (Fed. Cir. 2008). However the Federal Circuit has cautioned that, in view of the present

legal environment where litigants are prone to race to the courthouse seeking a forum more

convenient and amenable to their legal interests, a district court must analyze the traditional

convenience factors under 28 U.S.C. § 1404(a). *Id.* ("Instead of . . . automatically going with

the first filed action, the more appropriate analysis takes account of the convenience factors

under 28 U.S.C. § 1404(a).") This is important, because "[t]he first-filed suit rule, for instance,

will not always yield the most convenient and suitable forum." *Id.*

    28 U.S.C. § 1404(a) provides that "for the convenience of parties and witnesses, in the

interest of justice, a district court may transfer any civil action to any other district or division

where it might have been brought." "The goal of § 1404(a) is to prevent the "waste of time,

energy, and money and to protect litigants, witnesses, and the public against unnecessary

inconvenience and expense." *American Senso RX, Inc. v. Banner Pharmcaps, Inc.,* C.A. No. 06-

1929, 2006 WL 2583450, *2 (D.N.J. Sept. 6, 2006) (quoting *Van Dusen v. Barrack,* 376 U.S.

612, 616 (1964)). To establish that a motion to transfer under Section 1404(a) is proper, the

moving party must show that the transferee district is one where the action could have been

brought, and that transfer will serve the convenience of the parties and witnesses and promote the

interest of justice. *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879-80 (3d Cir. 1995). The

district court has "wide discretion to adjudicate transfer motions according to an 'individualized,

case-by-case consideration of convenience and fairness.'" *Zoltar Satellite Sys., Inc. v. LG Elecs.

Mobile Comm. Co.,* 402 F. Supp. 2d 731, 734 (E.D. Tex. 2005) (*quoting Stewart Org., Inc. v.

Ricoh Corp.,* 487 U.S. 22, 29 (1988)). Nevertheless, any analysis must be made in view of the

purpose of Section 1404(a), which is to "prevent the waste of time, energy and money and to

protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quotations omitted).

In this regard, the Third Circuit has identified a non-exhaustive list of additional public and private interest factors to be considered in determining whether transfer is appropriate. *Jumara*, 55 F.3d at 879-80. The public interest factors "include (1) judicial economy, (2) availability of compulsory process, (3) familiarity with governing state law, and (4) trial efficiency." *Joe Boxer Corp. v. R. Siskind & Co., Inc.*, C.A. No. C 98-4899, 1999 WL 429549,*8 (N.D. Cal. June 28, 1999). The private interest factors include: (1) Plaintiffs' original forum choice; (2) Defendants' forum preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of witnesses; and (6) the location of sources of evidence. *Jumara*, 55 F.3d at 879. In the context of a patent infringement suit that involves large national and international corporations, such as here, "the private interest factors often become diluted and less influential in the transfer analysis" than their public interest counterparts. *Zoltar Satellite*, 402 F. Supp. 2d at 738.

## POINT II

### TRANSFER IS APPROPRIATE BECAUSE THIS ACTION COULD HAVE BEEN BROUGHT IN THE CENTRAL DISTRICT OF CALIFORNIA WHERE TWO RELATED CASES ARE PENDING

Vizio cannot dispute that this action might have been brought in the Central District of California. Sony Corp. had already initiated a lawsuit in the district on the same patents and SCA does not dispute that this case could have been brought there. *See Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1565 (Fed Cir. 1994). The Central District is therefore a proper venue under § 1400(b) and a "district where [this action] might have been brought." 28 U.S.C. § 1404(a).

## POINT III

## TRANSFER WILL PROMOTE THE INTERESTS OF JUSTICE

The interests of justice prong, which encompasses public interest factors including considerations of judicial economy, is highly influential to the outcome of the analysis. *See Amazon.com v. Cendant Corp.*, 404 F. Supp. 2d 1256, 1261 (W.D. Wash. 2005); *Elecs. For Imaging, Inc., v. Tesseron, Ltd.*, C.A. No. C 07-05534, 2008 WL 276567 (N.D. Cal. Jan. 29, 2008) ("[T]he interest of justice is the most important consideration."). Indeed, the public interest in judicial economy *alone* can be dispositive of a transfer request. *See, e.g., Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997) (upholding grant of motion to transfer to forum with related litigation which "afford[ed] determinative weight to the consideration of judicial economy").

Here, transfer will promote the interests of justice by conserving judicial resources, preventing inconsistent rulings, and facilitating consolidation.

### A.    Transfer Will Promote Judicial Economy And Avoid Unnecessary Duplication of Effort

As the Supreme Court has repeatedly emphasized, "to permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to wastefulness of time, energy, and money that § 1404(a) was designed to prevent." *Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990) (*quoting Continental Grain v. The Barge FBL–585*, 364 U.S. 19, 26 (1960)).

Thus, "[w]here related lawsuits exist, it is in the interests of justice to permit suits involving the same parties and issues to proceed before one court and not simultaneously before two tribunals." *See Lawrence v. Xerox Corp.*, 56 F. Supp. 2d 442, 453 (D.N.J. 1999) (internal quotations omitted); *Amer. Cyanamid Co. v. Eli Lilly & Co.*, 903 F. Supp. 781, 787 (D.N.J.

1995) (*citing Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 19 (1960)). Indeed, the

mere existence of related litigation in another forum "is powerful enough to tilt the balance in

favor of transfer even when the convenience of parties and witnesses would suggest otherwise."

*Weber v. Basic Comfort Inc.*, 155 F. Supp. 2d 283, 286 (E.D. Pa. 2001). Thus, "[t]he interests of

justice strongly favor transfer of a case to another jurisdiction where a related matter is pending."

*LG Elecs., Inc. v. First Int'l Computer, Inc.*, 138 F. Supp. 2d 574, 592 (D.N.J. 2001); *see also*

*DataTreasury Corp. v. First Data Corp.*, 243 F. Supp. 2d 591, 594 (N.D. Tex. 2003).

   In light of the substantial subject matter overlap of this case with the two California

actions, the public's interest in judicial economy weighs heavily in favor of transfer to the

Central District. *See Amazon.com*, 404 F. Supp. 2d at 1261. The Westinghouse action, which

involves the eight patents at issue here[4] and very similar products – televisions capable of

displaying high definition digital broadcasts – is quickly proceeding towards trial before Judge

Klausner. Discovery in that action is set to close on March 4, with dispositive motions including

underlying Markman issues due on March 18, the final pretrial conference to be held on May 18,

and trial scheduled for June 2, 2009. (Exhibit 1, *Sony Corporation v. Westinghouse Digital*

*Electronics, LLC*, 08-03934-RGK (FMOx) (C.D. Cal.) (Document 12)). Given that Sony's

action against Vizio has already been assigned over Vizio's objections to Judge Klausner, it

would not promote judicial economy for this declaratory judgment action to proceed in parallel

before a different court.

---

   [4]   As noted earlier, although this action includes counts based on twelve patents, four of
those patents are effectively no longer at issue in light of the covenant not to sue that Sony
executed. *See Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054 (Fed. Cir. 1995).
Sony also believes that Vizio's Counts XXV and XXVI fail to state a claim upon which relief can
be granted.

The subject matter of the eight patents common to both this and the California action

between Sony and Vizio is highly technical.  These patents, which include 287 claims and span

234 columns of text, are directed to various aspects of digital receivers that receive and display

digital video signals.  Features that vary from model to model but are common to most digital

televisions – on-screen menu display, channel selection, image adjustment – are implicated by

the patents-in-suit.  For example, three of the patents cover implementations of the mandatory

digital television closed captioning standard (DTVCC).  Figure 10 of U.S. Patent No. 5,684,542,

for example, represents an embodiment of a video subtitle decoder as implemented, for example,

in the relevant Digital Television (DTV) Closed Captioning Standard, CEA-708-C:

<i>FIG. 10</i>



For these patents, the infringement analysis will be virtually identical for both Westinghouse's

and Vizio's products.

Similarly, another three Sony patents are infringed in the same manner by both

Westinghouse's and Vizio's implementations of the High-bandwidth Digital Content Protection

(HDCP) specification, which is part of the protocol for displaying high definition broadcasts

12

known as HDMI and operates to prevent unauthorized copying of digital video. The following

figure from U.S. Patent No. RE38,055 represents a video data communication system capable of

using HDCP:

## Fig. 1



From the standpoint of judicial economy, it would not be efficient for two judges to

independently invest the time and effort needed to resolve the issues presented by these patents

and the underlying technology. To resolve the pre-trial and trial issues presented by the

Westinghouse action, as well as the similar issues expected to be presented by Sony's action

against Vizio, Judge Klausner will need to develop a comprehensive understanding of the

asserted patents and the accused products. He will need this understanding to rule on case

related disputes, including construction of the relevant patent claim terms, and determination of

infringement and alleged invalidity issues that may arise, for example, in the context of summary

judgment motions, which are due to be filed on March 18, 2009. Given the complexity of the

underlying technology and the number of patents and products at issue, this is likely to be an intensive and time-consuming process. If transfer is denied, this Court will have to master the exact same subject matter, when it could easily avoid duplication of effort by transferring this case. In these circumstances, transfer is warranted. *See Zoltar Satellite*, 402 F. Supp. 2d at 735 ("In cases that involve a highly technical subject matter, such as patent litigation, judicial economy may favor transfer to a court that is already familiar with the issues involved in the case."); *Chi Mei Optoelecs. Corp., v. LG Philips LCD, Co., Ltd.*, No. 2:07-CV-176, 2008 WL 901405 (E.D. Tex. Mar. 31, 2008) (transferring patent infringement action to forum where defendant had filed infringement claims against plaintiff on similar LCD display technology). Thus, on this basis alone, transfer would be warranted even without Sony's affirmative action against Vizio in the Central District of California.

## B.    Transfer Will Avoid The Risk Of Conflicting Rulings

Furthermore, the important interests of consistency of judgments weighs in favor of transferring this case to the Central District of California. *Yang v. Odom,* 409 F. Supp. 2d 599, 609 (D.N.J. 2006) ("The existence of . . . duplicative litigation concerns the Court as it presents a substantial risk for inconsistent judgments"); *Dollinger v. Salomon Smith Barney, Inc.*, No. 00-5607, 2001 WL 1917976, *2 (D.N.J. Mar. 7, 2001) (transferring case to the District of Delaware where a substantially identical litigation was pending to avoid "duplicative litigation of the same issues and inconsistent results"); *see also Interactive Music Tech., LLC v. Roland Corp. U.S.,* C.A. No. 6:07-CV-282, 2008 WL 245142, *11 (E.D. Tex. Jan. 29, 2008) ("Where the judicial economy factor weighs heaviest, however, is in avoiding confusion over litigating the same patent simultaneously in separate venues."). For example, because duplicative claim constructions and summary judgment rulings will likely be required for each of the actions, certain claim terms could easily be construed inconsistently. *MyMail, Ltd. v. Amer. Online, Inc.,*

14

223 F.R.D. 455, 458 (E.D. Tex. 2004) ("Besides being a duplicative use of scarce judicial resources, two claim constructions risk inconsistency, create greater uncertainty regarding the patent's scope, and impede the administration of justice."). Consistent with the interests of justice, "[t]he prospect of inconsistent claim construction favors resolving related patent cases in the same forum when possible." *Id.*

The same is true with respect to the prospect of inconsistent rulings on validity and enforceability-related issues. Because litigating these overlapping substantive issues, including consideration of specific prior art references and their disclosures, in more than one forum would be wasteful, inefficient, and would almost certainly require duplicative work by different courts, this case should be transferred. *See, e.g., Liebig v. Schneider Nat'l Bulk Carriers, Inc.*, C.A. No. 92-4773, 1993 WL 34950, *6 (D.N.J. Feb. 10, 1993) ("The Court is unwilling to sanction this waste of judicial resources or to create the risk of inconsistent verdicts.").

### C.    The Remaining Public Interest Factors Weigh in Favor of Transfer

On balance, the remaining public interest factors also support transfer. First, as patent law is federal in nature, each forum is likely to be equally familiar with the law to be applied in this case and thus this factor is neutral. *Arete Power, Inc. v. Beacon Power Corp.*, C.A. No. C 07-5167,, 2008 WL 508477, *13 (N.D. Cal. Feb. 22, 2008) ("Federal judges sitting in comparably situated courts are presumed to be comparably familiar with federal law"). Second, the relative docket conditions weigh in favor of transfer. Because cases in the Central District of California typically reach trial more quickly than those in this district, Vizio will suffer no delay from the transfer. *See* Federal Judicial Caseload Statistics, *Table C-5 Time Intervals From Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition*, at http://www.uscourts.gov/caseload2007/contents.html (showing median time interval to trial of

15

31.3 months for District of New Jersey compared with 18.9 months for Central District of California). Third, there is no evidence that trial in either district would be unfair for any party.

In its January 14 letter to this Court, Vizio unfairly suggested that Judge Klausner's court is somehow ill-equipped to handle this action, because it lacks the patent local rules recently adopted by this District. (*See* Vizio's January 14, 2009 Letter to this Court, arguing that this action should not be transferred to Judge Klausner because "the Central District of California . . . has no such procedural safeguards in place."). Vizio's argument is unfounded. This case is not even subject to the newly adopted local patent rules in this district because it was filed prior to January 1, 2009. Moreover, Judge Klausner runs an orderly and efficient docket. In the Westinghouse action, for example, trial is scheduled for June 2, 2009, less than one year from Sony's original filing of its complaint on June 16, 2008. There is nothing to suggest that a similarly expeditious schedule will not be adopted for Sony's California action against Vizio.

Finally, the Central District of California also has a greater local interest in adjudicating this controversy because Vizio is a California corporation with its headquarters in the Central District of California.

With all of these considerations in mind, the remaining public interest factors favor transfer to the Central District of California.

## POINT IV

## THE CONVENIENCE OF THE PARTIES AND WITNESSES AND OTHER PRIVATE INTEREST FACTORS STRONGLY FAVOR TRANSFER

As discussed above, the private interest factors include: (1) the Plaintiffs' original forum choice, (2) Defendants' forum preference, (3) whether the claim arose elsewhere, (4) convenience of the parties, (5) convenience of witnesses, and (6) the location of sources of evidence. *Jumara*, 55 F.3d at 879-80. With the exception of the plaintiff's choice of forum—

16

which is entitled to minimal weight given that New Jersey is not Vizio's home forum nor is it the locus of Vizio's claims, these factors all weigh in favor of transfer.

### A.    Plaintiff's Choice of Forum Does Not Weigh Against Transfer

Although a plaintiff's forum choice generally deserves deference, such deference is "curbed where the plaintiff has not chosen his or her home forum." *Prinir (HADAS 1987), Ltd. v. ConAgra Foods Packaged Foods Co., Inc.*, C.A. No. 08-914 (JLL), 2008 WL 5169119, *3 (D.N.J. Nov. 21, 2008) (Cecchi, J.). "[A] foreign plaintiff . . . has no claim to 'home turf' in New Jersey and is not entitled to an enhanced presumption in favor of its choice of forum." *Id.* (quoting *Ricoh v. Honeywell, Inc.*, 817 F. Supp. 473, 485 (D.N.J. 1993)). As Vizio is a California corporation with its principal place of business and headquarters in that state, New Jersey cannot be considered its home forum by any measure. Indeed, Vizio has failed to identify any connection between itself and New Jersey in its Complaint or otherwise. Thus, Vizio's choice of a non-residence forum for this action is entitled to little, if any, deference. *See, e.g.*, *LG Elecs.*, 138 F. Supp. 2d at 589-90.

Plaintiff's choice of forum is even less significant, where, as here, "the central facts of the lawsuit occur outside the forum state." *Id.* at 590. This guiding principle "is especially true in patent infringement cases." *Id.* The "preferred forum" for patent litigation is the hub of activity centered around the accused products, otherwise known in this district as the "center of gravity." *Id.* ("The District Court ought to be as close as possible to the area of the infringing device and the hub of activity centered around its production."). Considerations in determining the "center of gravity" include "the location of a product's development, testing, research and production [and] the place where marketing and sales decision were made, rather than where limited sales activity occurred." *Saint-Gobain Calmar, Inc. v. Nat'l Prods. Corp.*, 230 F. Supp. 2d 655, 660 (E.D. Pa. 2002).

The central hub of activity for Sony's infringement claims, along with the centers of

development, testing, research, and production of the allegedly infringing products, are all

located in California and Asia, not New Jersey.  For example, Vizio has its principal place of

business and headquarters in Irvine, California.  Accordingly, design, manufacturing, and legal

records are presumably located there, along with the custodians of such records.  In contrast,

Vizio has no such records or facilities in New Jersey.  Moreover, Vizio purchases components

for its televisions from, among other suppliers, AmTRAN Technology Co., Ltd., a Taiwanese

company.   The inventors were, and many still are, Sony Corporation employees who work in

Tokyo and California  (Siegel Dec. at ¶¶ 7-10).  Documents relating to inventorship are located

there or are in the possession of Sony's counsel in California.  In short, there is no evidence or

allegation that any of Vizio's claims have any meaningful relationship to this district and its

choice of forum should therefore be given minimal consideration.

As mentioned above, the effect of Vizio's addition of its wholly unrelated

disparagement/Lanham Act claims will likely result in the need for even more California based

witnesses and documents.  This is because many of the factual allegations of the two non-patent

based counts focus on alleged harm *to Vizio* or on the nature of *Vizio's television sets.*  For

example, Vizio's complaint at paragraph 124 states:

> Sony and SCA's false and disparaging statements *about VIZIO*
> *television sets* has proximately *caused VIZIO* to incur and suffer
> special damages as described herein. The special *damages incurred*
> *by VIZIO* to date include the increased costs of creating and
> producing corrective television advertising spots designed to
> counteract the false assertions of Sony and SCA regarding *VIZIO*
> *television sets* and/or the attendant loss of goodwill they *caused*
> *VIZIO.* In addition, by reason of these increased costs, VIZIO has
> been unable to create and produce the additional television ads this
> year that it otherwise would have made.  The amount of special
> damages *incurred by VIZIO* to date in this respect exceeds $500,000,
> exclusive of interest, costs and attorneys fees."

18

(Vizio's Complaint at ¶ 124) (emphasis added).  At paragraph 128, Vizio's complaint also claims that the challenged statements "misrepresent the nature, characteristics or qualities of *VIZIO's television sets*" (*id.* at ¶ 128) (emphasis added).  Presumably, therefore, Vizio intends that these claims will require documents and testimony about Vizio's damages and its televisions.  Obviously, however, the patent claims will require much more discovery, including witnesses, depositions and documents and therefore should drive the transfer analysis.

Finally, it should be borne in mind that the only reason Vizio was able to file this action first – by several hours – was through its deliberately deceptive conduct  (*id.* at ¶¶ 26-31).  Indeed, when it filed this action, Vizio was well aware that the patents were at issue in Sony's patent infringement suit against Westinghouse in the Central District of California.  Under the pretense of hosting a meeting to continue license negotiations, Vizio scheduled a meeting with Sony at Vizio's counsel's office in Irvine, California (*id.*).  Then, several days before the meeting, Vizio filed this action (*id.*).

These facts suggest that Vizio's motivation for filing where it did was to deprive Sony of its choice of forum and avoid the relatively quick time to trial of the Central District of California's docket.  Vizio even vehemently opposed a routine reassignment to Judge Klausner of Sony's affirmative infringement action against Vizio.  The reassignment was originally denied based on a clerical error where the court's check simply missed the box indicating that the same patents were at issue in both the Vizio and Westinghouse actions.  Although Vizio strongly opposed Sony's request for reconsideration of the reassignment, Judge Klausner granted Sony's request and has accepted a reassignment of the Vizio case.

Notwithstanding the first-to-file presumption,[5] Vizio's conduct should not be rewarded. *See CQGT, LLC v. Trading Techs. Int'l.* , C.A. No. 05-cv-01584, 2006 WL 2711770, *1 (D. Colo. Sept. 21, 2006) (transferring "anticipatory" declaratory judgment action filed while parties were in licensing negotiations to district where patentee filed infringement action two days later); *see also EMS-Amer. Grilon, Inc. v. DMS Resins, U.S., Inc.*, Civ. A. No. 89-2190, 1989 WL 230919, *2 (D.N.J. Oct. 5, 1989) ("[W]hen it appears . . . that the Declaratory Judgment Act has been used as a procedural 'fencing device' to secure delay or choose a forum other than that in which the action would normally be heard, it is proper for the Court to dismiss or transfer the action to the forum in which the subsequently filed infringement suit is pending[.]") (citations omitted); *see also Micron Tech.*, 518 F.3d at 904 ("The first-filed suit rule, for instance, will not always yield the most convenient and suitable forum.") *Id.*

For these reasons, Vizio's choice of forum should be entitled to minimal weight, if any, in the analysis. *See, e.g., Liggett Group, Inc. v. R.J. Reynolds Tobacco Co.*, 102 F. Supp. 2d 518 (D.N.J. 2000) (transfer granted where New Jersey was neither the home forum of claimant nor the place with operative connection to facts of case). Thus, this factor does not weigh against transfer.

**B.    Defendants' Preference for the Central District of California Favors Transfer**

The second public interest factor is the forum preference of the defendant. Sony first exhibited its preference for the Central District of California when it filed its complaint against Westinghouse three months before this action was filed. Like Westinghouse, Vizio's home

---

[5]    Because this action and Sony's patent infringement action in the Central District of California against Vizio were filed mere hours apart on the same day, the first-to-file presumption should have little impact, if any, on the analysis.

forum is the Central District. In addition, many non-party witnesses in the case reside in Asia, including Vizio's suppliers and many of the inventors of the patents (*see* Siegel Dec. at ¶¶ 6-10). For these witnesses, the West Coast, with a shorter flight time from Asia, is a much more convenient forum (*id.* at ¶ 6). Indeed, as discussed herein, having the litigation proceed in Los Angeles is likely more convenient for all involved, including Vizio.

Thus, as the Central District of California is Sony's preferred forum for litigating the patents-at-issue, this factor favors transfer.

### C. The Declaratory Judgment Claims Arose in California or Asia, Not New Jersey

The third private interest factor, whether the claims arose in another forum, also favors transfer. As discussed *supra*, the "center of gravity" of Sony's infringement claims is California or Asia, not New Jersey. California is where Vizio has its principal place of business and where the accused products are, *inter alia*, designed, marketed, and sold.[6] What's more, the licensing negotiations that precipitated this litigation in all but one instance occurred at the offices of Vizio and Jones Day in Irvine, California (*id.* at ¶¶ 20-25). Asia is where one of the two defendants, Sony Corporation, has its headquarters, and where most of the inventors reside (*id.* at ¶¶ 2, 6-10). In addition, it is also where Vizio's suppliers, including AmTRAN, are based.

Thus, because Vizio's declaratory judgment claims arose primarily out of actions in California this factor favors transfer.

### D. The Convenience of the Parties Favors Transfer

The fourth private interest factor is the convenience of the parties. The Central District of California is more convenient for all of the parties, including Vizio. Although it may argue

---

[6] Vizio's products are believed to be sold nationwide but designed primarily in California.

otherwise, there is no plausible way in which Vizio is inconvenienced by a transfer *to* its home forum *from* a district with which it has no corporate connection. Indeed, it is hard to imagine a more convenient forum for a California company with its principal place of business located in Irvine, just 30 miles southeast of Los Angeles. Were the Central District of California an inconvenient venue, it is unlikely that Vizio would have arranged for all of the licensing negotiations with Sony to take place there. Furthermore, Vizio's counsel, Jones Day, also has offices in Irvine and in Los Angeles, but no office in New Jersey.

California is also more convenient for the Defendants. Sony has two closely related actions pending in that district. The Sony televisions and products that embody the patents are marketed, sold and distributed in the U.S. through SEL in San Diego, California (*id.* at ¶¶ 12-14). Its counsel for those actions, and this one, have offices in Los Angeles, but no offices in New Jersey. Sony Corporation's engineers, some of whom are inventors of the patents-in-suit, are located in Japan (*id.*). Finally, Sony has its design studio in Los Angeles and SEL, where some of the inventors have since moved, is in San Diego (*id.*).

Thus, because the Central District of California is more convenient for the Plaintiff, the Defendants, and their respective counsel, this factor weighs in favor of transfer.

E.    **The Convenience of the Witnesses Favors Transfer**

Another "particularly significant" factor to be considered on a transfer motion is the convenience of the available districts relative to witnesses and documentary evidence. *Euro Classics, Inc. v. Excel Global Logistics, Inc.*, C.A. No. 06-CV-423, 2006 WL 1344098, *4 (D.N.J. May 16, 2006). "When considering the convenience to witnesses, the convenience of non-party witnesses is the more important factor." *See Amazon.com*, 404 F. Supp. 2d at 1260 (quotations omitted). Most of the key witnesses, including virtually all of the non-party

22

witnesses, likely to testify in this litigation with respect to plaintiffs' allegations of infringement reside either in California or in Asia (*see* Siegel Dec. at ¶¶ 6-17, 32).

Vizio's employees are all located in Irvine, California and therefore its witnesses will likely find a transfer to be more convenient. As mentioned above, in its complaint, Vizio claims that it was required to create new advertising materials as a result of Sony's alleged disparaging statements about Vizio's television sets. Presumably, these advertising materials were created and/or disseminated from Vizio's headquarters in Irvine, California. Most of the inventors of the patents-in-suit were Sony Corporation employees (*id.* at ¶ 6-10). Most are still in Japan; those that are not still in Japan are likely in California, for example at Sony Electronics Inc. in San Diego (*see id.*). To the extent witnesses from Asia will come to the U.S. in connection with the case, transfer of this action to the Central District of California will enable those individuals to reduce their travel time as compared with flying to New Jersey (*id.* at ¶ 6). Furthermore, it is highly unlikely that Sony Corporation of America will present any appreciable number of percipient witnesses in this case.

Thus, this is not a case where convenience would serve only a small number of witnesses, but one where most of the known witnesses who are likely to provide material testimony in this case are based either in California or in Asia. This is true whether the witness is a representative of Vizio, Sony, a third party supplier, or one of the patent inventors. In contrast, few if any witnesses are based in New Jersey. Thus, the convenience of the witnesses strongly favors transfer to the Central District of California.

### F.    The Location of Sources of Evidence Also Favors Transfer

Although the final private interest factor is increasingly given less weight in transfer analyses in this digital age, it also weighs slightly favor of transfer. *See Zoltar Satellite*, 402 F. Supp. 2d at 738. Here, as described above, the "central hub of activity" for the infringement

claims, which includes the centers of development, testing, research, and production of the allegedly infringing products, is located in California or in Asia. Virtually all design, manufacturing, and legal records are held at Vizio's corporate headquarters in Irvine, along with the custodians of such records. In contrast, because it has no offices or facilities there, Vizio likely has no records in New Jersey. Sony Corporation's documents related to the patent claims are all located in Japan or, to the extent collected for the Westinghouse Action, in California with its counsel. Although there may be some documents in New Jersey at the offices of Sony Corporation of America, the vast majority of the Sony documents relevant to this action reside outside of the state, either in California or Japan.

Transfer of this action to the Central District of California would also enhance the availability of compulsory process, as transfer would enable the court to compel the attendance of the myriad California-based witnesses to trial. *See* Fed. R. Civ. Proc. 45(c)(3)((A)(ii) (requiring subpoena to be quashed if witness forced to travel more than 100 miles from location of home or employment, but imposing no such restriction when witness resides or works in state where trial occurs). Courts in this district and the Central District of California would be equally suited to compel the attendance of foreign witnesses.

Thus, the sources of likely evidence relevant to this action are located outside of New Jersey and this private interest factor favors transfer.

## CONCLUSION

For the reasons above, the interests of justice and the convenience of the witnesses and parties all compel transfer of this action to the Central District of California.

Respectfully submitted,

**SAIBER LLC**
*Attorneys for Defendants*

s/ Arnold B. Calmann
Arnold B. Calmann (abc@saiber.com)
Jakob B. Halpern (jbh@saiber.com)
**SAIBER LLC**
One Gateway Center, 13th Floor
Newark, New Jersey 07102-5311
(973) 622-3333

Kevin P.B. Johnson
(kevinjohnson@quinnemanuel.com)
Benjamin Singer
(benjaminsinger@quinnemanuel.com)
**QUINN EMANUEL URQUHART OLIVER
& HEDGES, LLP**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, California 94065
(650) 801-5000

Edward J. DeFranco
(eddefranco@quinnemanuel.com)
Thomas D. Pease
(thomaspease@quinnemanuel.com)
**QUINN EMANUEL URQUHART OLIVER
& HEDGES, LLP**
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

Dated: January 23, 2008

25

# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

Case No.   CV 08-03934-RGK (FMOx)                           Date   September 15, 2008

Title      Sony Corporation v. Westinghouse Digital Electronics, LLC

---

Present: The          R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE
Honorable

| Sharon L. Williams | Lynne Nicholson | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Kevin Johnson | Andrew Grossman |
| Benjamin Singer | Rebecca Kaufman |

**Proceedings:**      **SCHEDULING CONFERENCE**

    Case called.   Court and counsel confer.   The Scheduling Conference is held.   The Court sets the following dates:

| | |
|---|---|
| Jury Trial (Est. 7-10 days): | June 2, 2009 at 9:00 a.m. |
| Pretrial Conference: | May 18, 2009 at 9:00 a.m. |
| Motion Cut-Off (last day to file): | March 18, 2009 |
| Discovery Cut-Off: | March 4, 2009 |
| Last Day to Amend Complaint or Add Parties: | October 15, 2008 |

**IT IS SO ORDERED.**

                                                         :     4

                        Initials of Preparer   slw

---