| | |
|---|---|
| 1 | Kevin P.B. Johnson (Bar No. 177129) |
| 2 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP |

Kevin P.B. Johnson (Bar No. 177129)
QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
555 Twin Dolphin Drive, Suite 560
Redwood Shores, California 94065-2139
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Steven M. Anderson (Bar No. 144014)
QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
865 S. Figueroa St. 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Plaintiff Sony Corporation

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| SONY CORPORATION, A Japanese corporation,<br><br>Plaintiff,<br><br>vs.<br><br>VIZIO, INC., a California corporation<br><br>Defendants. | CASE NO. 8:08-cv-01135-RGK-FMO<br><br>**PLAINTIFF SONY CORPORATION'S OPPOSITION TO VIZIO'S MOTION TO FILE ITS PROPOSED AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO SONY'S AMENDED COMPLAINT**<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br>Date: May 18, 2009<br>Time: 9:00 a.m.<br>Judge: Hon. R. Gary Klausner<br>Courtroom: 850 |

51451/2916405.3

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................ 1

II. STATEMENT OF FACTS ........................................................................... 3

III. ARGUMENT ................................................................................................ 4

    A. Vizio's Request To Add Four New Patents Does Not Meet The Standard Under Rule 15(d) ............................................................... 5

    B. Leave To Supplement Should Be Denied Because Vizio's Proposed Counterclaims Would Cause Sony To Suffer Undue Prejudice ........................................................................................... 10

IV. CONCLUSION ........................................................................................... 12

# TABLE OF AUTHORITIES

Page

**Cases**

*Abbey v. Mercedes Benz of North Amer., Inc.*,
  138 Fed. Appx. 304, 307 (Fed. Cir. 2005) ......................................................... 8, 12

*Agar Corp. v. Multi-Fluids, Inc.*,
  1998 WL 425474 (S.D. Tex. April 17, 1998) .......................................................... 11

*Foman v. Davis*,
  371 U.S. 178 (1962) ................................................................................................ 9

*Hu v. Park Nat'l Bank*,
  2008 WL 4367500 (N.D. Ill. March 13, 2008) ....................................................... 10

*Johnson v. Mammoth Recreations, Inc*,
  975 F.2d 604, 607-09 (9th Cir. 1992) .................................................................... 10

*Matsushita Elec. Indus. Co. Ltd. v. CMC Magnetics Corp.*,
  2007 WL 127997 (N.D. Cal. Jan. 12, 2007) ..................................................... *passim*

*Morongo Band of Mission Indians v. Rose*,
  893 F.2d 1074 (9th Cir. 1990) ................................................................................. 9

*Planned Parenthood v. Neely*,
  130 F.3d 400 (9th Cir. 1997) .............................................................................. *passim*

*US ex rel. Wulff v. CMA, Inc.*,
  890 F.2d 1070 (9th Cir. 1989) ................................................................................. 6

*Vonage v. SBC Internet Sers., Inc.*,
  2007 WL 3169167 (N.D. Tex. Oct. 30, 2007) ....................................................... 10

**Statutes and Rules**

Fed R. Civ. P. 15(a) .................................................................................................. *passim*

Fed R. Civ. P. 15(d) .................................................................................................. *passim*

Fed. R. Civ. P. 16 ............................................................................................................ 10

Local Rule 7-3 .................................................................................................... 2, 3, 4, 5

## I. INTRODUCTION

Vizio seeks leave to amend its Answer and Counterclaims to (1) add declaratory judgment counterclaims relating to two Sony patents already in suit; and (2) add counterclaims of patent infringement for four new patents that Vizio says it acquired from Motorola (the "Motorola Patents") on April 6, 2009, the same day the Court held the Rule 16 conference in this case.

Sony opposes Vizio's request for leave to add four new counterclaims for patent infringement because it will result in significant delay and unduly prejudice Sony. Vizio fails to mention the parties were very close to settlement when Vizio sought leave to file this motion. In fact, just days before informing Sony it planned to file this motion, the parties had entered into a standstill agreement under which Vizio agreed to not file a lawsuit on the patents it had just acquired. As set forth in the accompanying declaration of Sony's in-house counsel Jaime Siegel, Vizio violated that standstill agreement by filing its motion to add the Motorola patents to this case.

In its rush to file its motion in violation of the standstill agreement, Vizio failed to recognize that the liberal Rule 15(a) standard it relies upon does not apply to its proposed infringement counterclaims. Because those claims accrued after Vizio filed its initial pleading, Vizio's motion for leave to supplement its Answer and Counterclaims is governed by Fed R. Civ. P. 15(d), which "cannot be used to introduce a separate, distinct, and new cause of action." *Planned Parenthood v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997).

Vizio's proposed patent counterclaims squarely violate Rule 15(d) because they introduce separate, distinct, and new causes of action into this case. The Motorola Patents relate to technology—QAM cable tuners—quite different from that of the ten Sony patents already in suit and obviously implicate different products (Sony TVs, PCs, laptops, and DVRs) than the Sony patents (Vizio TVs). Accordingly, because these proposed "permissive" counterclaims "would inject an

additional layer of complexity and delay into an already complex action," Vizio's request for leave to supplement its Amended Answer and Counterclaims to add them must be denied. *Matsushita Elec. Indus. Co. Ltd. v. CMC Magnetics Corp.,* 2007 WL 127997, at *4 (N.D. Cal. Jan. 12, 2007) (denying leave to supplement to add patent counterclaims where patents were acquired as a "bargaining chip" for settlement purposes and were not closely related to the patents already in suit).

Vizio contends it complied with Local Rule 7-3, including the requirement that Vizio's counsel contact Sony "to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution." L-R 7-3. But as Mr. Siegel's declaration demonstrates, by refusing to disclose the patents it sought to add through its amended pleading until the filing of this motion on April 21, 2009, Vizio did not come close to satisfying the local rule's requirements and ensured that any "potential resolution" of this dispute would fail. Sony could hardly have agreed to Vizio's blanket request to add counterclaims for infringement without knowing what patents were the subject of that request. And nothing in the local rule permitted Vizio to withhold this information. Vizio also violated the local rule requirements by failing to mention it intended to assert its proposed counterclaims against two additional Sony entities, Sony Electronics Inc. and Sony Corporation of America, that are not presently parties here. For these reasons alone, Vizio's motion should be denied.

Although Vizio also failed to satisfy its meet and confer obligations with respect to its request to add additional <u>declaratory judgment</u> counterclaims based on two of the Sony patents in suit—Sony only learned of it when Vizio filed this motion— Sony does not oppose that request (with respect to Plaintiff Sony Corp.) since these declaratory judgment counterclaims relate to patents already in suit and are therefore unlikely to cause delay or prejudice to either party.

## II. STATEMENT OF FACTS

Sony filed this patent infringement lawsuit nearly seven months ago on October 10, 2008 asserting infringement by Vizio's digital televisions of ten Sony patents. (Doc. No. 14.) Sony's patents-in-suit relate to the display of on-screen menus and closed captioning information, channel selection, contrast adjustment, and secure communication between external devices. (*Id.*)

Vizio filed its Answer to Sony's First Amended Complaint on January 26, 2009. (Doc. No. 34.) Fact discovery in this action is well underway, the parties have since responded to each other's first sets of discovery requests, and Sony has served a second set of requests upon Vizio.[1] Sony has already produced tens of thousands of pages of documents to Vizio.

On April 6, 2009, the Court held a scheduling conference and entered an Order For Jury Trial, setting forth the schedule in this case. (Doc. No. 48.) The Order set November 1, 2009 as the discovery cut-off, and November 10, 2009 as the deadline for summary judgment motions. (Doc. No. 47.) Trial is scheduled for January 26, 2010. (*Id.*)

Over the course of this action, the parties have engaged in settlement discussions, and as of mid-April were very close to reaching a deal under which Vizio would take a license to Sony's patents. (Siegel Decl. ¶ 6.) On Sunday April 12, 2009, Vizio's counsel contacted Sony's in-house counsel, Mr. Siegel and informed him that Vizio had acquired a number of patents from Motorola that were allegedly relevant to Sony cable ready televisions and other Sony products. (Siegel

---

[1] Vizio filed a parallel action for declaratory judgment on eight of the ten patents-in-suit, as well as four others, in the District of New Jersey. The New Jersey court transferred that action to this district. That case was initially assigned to Judge Otero, and has since been transferred to this Court's docket. A scheduling conference has been set for May 11, 2009 at 9 am. *Vizio, Inc. v. Sony Corp. et al.*, CV 09-02129-RGK (FMOx) (Doc. No. 54.)

Decl. ¶ 7.) Vizio's counsel, however, refused to identify the Vizio patents unless Sony agreed not to file a declaratory judgment action against Vizio. (*Id.* at ¶ 7). When Mr. Siegel refused to enter into a one-sided standstill agreement, Vizio's counsel then proposed that a standstill agreement be put in place whereby neither party would bring an action with respect to the newly acquired patents "for a few weeks." (*Id.* at ¶¶ 7-8.) The rationale for this standstill agreement was that the parties were very close to settlement and needed a few more weeks to finalize the terms of the deal, and to consider the impact, if any, of the newly-acquired patents. (*Id.* at ¶ 8.)

Two days later, on the morning of April 14, 2009, Vizio's counsel again called Mr. Siegel and specifically asked if Sony would agree to a standstill deal for the new patents that would run through the end of April. (*Id.* at ¶ 8.) Mr. Siegel told him they already had an agreement, but that he would agree to extend the standstill period to the end of April.

Vizio's counsel, however, backed out of the deal that night when he called to request leave to add the Motorola patents to this lawsuit. (*Id.* at ¶¶ 9-10.) Vizio's counsel denied that a deal was ever reached. (*Id.*)

### III. <u>ARGUMENT</u>

As noted above, Sony does not oppose Vizio's motion to amend its Answer and Counterclaims pursuant to Fed R. Civ. P. 15(a) to add two additional declaratory judgment counterclaims (against Plaintiff Sony Corp.) relating to two Sony patents already in suit.[2] As Vizio explains, this will conform "Vizio's

---

[2] Sony, however, does oppose Vizio's motion for leave to add these counterclaims against two new Sony entities, Sony Electronics Inc. and Sony Corporation of America. Vizio never mentioned it sought leave to add these two
(footnote continued)

counterclaims to its previously pled affirmative defenses of noninfringement and invalidity." (Br. at 2.) Sony would have consented to this amendment had Vizio requested it before filing its motion, as Vizio was required to do by Local Rule 7-3.

Sony, however, does oppose Vizio's request for leave to add patent infringement counterclaims based on the four recently acquired Motorola Patents. Vizio refused to disclose the identity of these patents to Sony and thereby failed to comply with Local Rule 7-3's meet and confer requirements. Vizio also failed to inform Sony that it sought to amend its Answer and Counterclaims to add two additional Sony entities as parties, namely Sony Electronics Inc. and Sony Corporation of America. Because Vizio failed to comply with Local Rule 7-3, Vizio's request to add these counterclaims should be denied. That request should also be denied because these counterclaims will unnecessarily add separate, distinct, and new causes of action into this lawsuit and will complicate and delay an already complex case.

### A. Vizio's Request To Add Four New Patents Does Not Meet The Standard Under Rule 15(d)

Vizio's proposed patent infringement counterclaims are based on patents that Vizio acquired in April of this year (Br. at 2). Vizio's motion for leave to add those counterclaims is therefore based on Fed R. Civ. P. 15(d), which "applies to claims that accrue after an initial pleading has been filed." *Matsushita*, 2007 WL 127997, at *2; *see also* Fed. R. Civ. P. 15(d) ("On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. . . ."). Vizio's motion, however, fails to address the Ninth Circuit's

---

companies as parties before it filed this motion and therefore failed to comply with Local Rule 7-3.

standards for supplementation under Rule 15(d), relying instead on cases applying Rule 15(a)'s more liberal amended pleading standard.

Unlike Rule 15(a), Rule 15(d) does not provide that leave to supplement "shall be freely given when justice so requires."[3] On the contrary, as the Ninth Circuit has noted, "[w]hile leave to permit supplemental pleading is favored, it cannot be used to introduce a separate, distinct, and new cause of action." *Planned Parenthood v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997) (noting supplemental complaint should be denied when the newly added claims "could be the subject of a separate action.") (internal citations omitted)*; see also Matsushita Elec. Indus. Co. Ltd. v. CMC Magnetics Corp.,* No. C 06-04538 WHA, 2007 WL 127997, (N.D. Cal. Jan. 12, 2007) (denying leave based on Rule 15(d) where infringement counterclaims based on newly-acquired patents "would not promote a quick or economical resolution to the case.").

Here, Vizio's proposed supplemental claims will introduce separate, distinct, and new causes of action into this lawsuit. Unlike the two declaratory judgment claims it seeks to add, which relate to the patents already in suit and the same underlying set of facts, Vizio's proposed patent infringement counterclaims arise from completely different facts and circumstances. Vizio's patents (and the technology incorporated therein) are different from the Sony patents-in-suit. The ten Sony patents-in-suit relate to on-screen menu displays, the display of closed captioning information, and ways of selecting channels, adjusting contrast, and

---

[3] Although Vizio captions its motion as move for leave to amend under Rule 15(a), "the title of the pleading, whether 'supplemental' or 'amended' is not determinative." (Br. at 3 n.2.) (citing *US ex rel. Wulff v. CMA, Inc.*, 890 F.2d 1070, 1073 (9th Cir. 1989)). Here, whether invoked or not, it is Rule 15(d) applies. Under Rule 15(d), Vizio's motion for leave should be denied because Vizio's proposed new patent infringement counterclaims "involve a new claim based on different facts" and arise "out of a completely different transaction." *Wulff*, 890 F.2d at 1073-74.

ensuring secure communication with external devices. Significantly, Sony's patents do not relate to QAM cable tuners.

Although Vizio's newly acquired patents broadly relate to technology that can be used in televisions, any similarity with the Sony patents in suit ends there. Unlike Sony's patents, Vizio's four newly-acquired patents are allegedly directed to QAM cable tuners, which can be used in set-top cable TV boxes, DVRs, televisions and other devices to allow a specific type of quadrature amplitude modulated cable TV signals to be received and processed. (*See* Doc. No. 50.) According to Vizio, the relevant Sony products implicated by these patents are "Sony Digital TVs with a QAM Tuner," "Sony PCs and Laptops with a QAM tuner," and "Sony DVRs with a QAM tuner." (Siegel Decl. ¶ 12.) Such Sony products are distinct and operationally different from the Vizio televisions at issue here.

Because of these differences in scope and technology of the patents and accused products, Vizio's patent infringement counterclaims would force the jury not only to learn the technology of the ten Sony patents-in-suit and apply it to the accused Vizio products, but also to learn the technology of the Vizio's QAM cable tuner patents and apply it to the Sony televisions, PCs, laptops and DVRs that Vizio apparently intends to accuse of infringement in this action. These differences are also likely to increase the scope and need for third party discovery in light of the number of different third-party companies throughout the world that are involved in the assembly and manufacture of the two parties' different products as well as the chips used in them.

The facts presented here are virtually identical to those of *Matsushita Elec. Indus. Co. Ltd. v. CMC Magnetics Corp.,* No. C 06-04538 WHA, 2007 WL 127997, (N.D. Cal. Jan. 12, 2007. In *Matsushita*, the accused infringer, CMC, acquired a patent during the pendency of the case, and moved for leave to amend its Answer pursuant to Rule 15(a) to assert a counterclaim for infringement. *Matsushita*, 2007 WL 127997, at *1. Because CMC acquired the patent after filing its initial Answer,

51451/2916405.3
-7-
SONY'S OPPOSITION TO VIZIO'S MOTION TO FILE ITS PROPOSED
AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

the court held that Rule 15(d) governed. *Id.* at *3. Applying Ninth Circuit law, the court denied CMC's motion because its proposed counterclaim would add a separate, distinct, and new claim to the action. *Id.* at *4. The Court explained that "it is abundantly clear that the motivation . . . was to try to acquire a patent to assert against plaintiff as a counterclaim, *i.e.*, as stated in the agreements themselves, as a 'bargaining chip.'" *Id.* at *2. The court also pointed out that "CMC is not alleging a claim based on the same set of circumstances; it is adding a claim based on different technology and products." *Id.* at *3. Accordingly, because the technologies were "related only in a very broad sense," the Court denied the motion because it "would inject an additional layer of complexity and delay into an already complex action." *Id.* at *4.

Like CMC, Vizio's proposed counterclaims do not arise out of the facts and circumstances underlying Sony's claims for patent infringement, which have been at issue in this case since October 2008. Vizio seeks to add separate, distinct, and new claims based on different technology and products. Although Vizio contends it had no choice but to move to amend on April 21—in violation of the parties' standstill agreement—there is no reason why Vizio could not have asserted its newly-acquired patents in a separate action, either in this district, or another appropriate district, when the standstill agreement expired on April 30. Like CMC, Vizio's obvious motivation in acquiring the patents and asserting them here was to use them as a bargaining chip to obtain a better licensing deal from Sony. *Matsushita*, 2007 WL 127997, at *2.

Because Vizio's request for leave to assert the Motorola Patents against Sony will "inject an additional layer of complexity and delay into an already complex action," and would impose a heavy burden on the Court and jury, Vizio's motion for leave to add counterclaims based on these patents must be denied. *Matsushita*, 2007 WL 127997, at *3-4 (N.D. Cal. Jan. 12, 2007) (denying leave to supplement under Rule 15(d) where technology of newly-acquired counterclaim patents only related to

technology of plaintiff's patent "in a very broad sense."); *Planned Parenthood*, 130 F.3d at 402; *see also Abbey v. Mercedes Benz of North Amer., Inc.*, 138 Fed. Appx. 304, 307 (Fed. Cir. 2005) (the assertion of a new patent "raises an independent and distinct cause of action." ).

Moreover, because Vizio incorrectly seeks leave to amend under Rule 15(a), instead of leave to supplement under Rule 15(d), the cases it relies on, such as *Foman v. Davis*, 371 U.S. 178 (1962) and *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074 (9th Cir. 1990), are not applicable here. *Morongo*, for example, involved an amended pleading under Rule 15(a), not a supplemental pleading under Rule 15(d). In that regard, the "extreme liberality" Vizio quotes from that case (Br. at 3) plainly refers to the Rule 15(a) standard, not the standard applicable here. Nor does that opinion require the party opposing leave to show, as Vizio contends, that the moving party engaged in "sharp practice." Nowhere do these quoted words even appear in that decision. To the contrary, consistent with Sony's position, the Ninth Circuit in *Morongo* held it was not an abuse of discretion to refuse to permit new claims that "would have greatly altered the nature of the litigation and required the defendants to have undertaken at a later hour, an entirely new course of defense." *Id.* at 1079.

In any event, even if so-called "sharp practice" were required, Vizio's conduct in running to the Court to file this motion for leave on April 21st in a flagrant violation of the parties' standstill agreement and Vizio's local rule meet and confer obligations is glaring evidence of its bad faith. At Vizio's request, the parties had agreed on April 14 that neither party would assert claims regarding Vizio's newly acquired patents during the month of April. (Siegel Decl. ¶ 8.) Vizio should not be rewarded for violating its covenant with Sony, particularly since it could have waited until April 30—now passed—and filed a separate action to assert its new

patents.[4] *See Planned Parenthood v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997) (noting a supplemental complaint should be denied when the newly added claims "could be the subject of a separate action.") (internal citations omitted).

### B. Leave To Supplement Should Be Denied Because Vizio's Proposed Counterclaims Would Cause Sony To Suffer Undue Prejudice

Sony will suffer undue prejudice if Vizio is permitted to add infringement claims for four entirely new and unrelated patents at this late stage in the case. The supplements sought will greatly broaden the scope of the dispute and will introduce additional, complex technologies that are not currently in issue. *See, e.g.*, *Hu v. Park Nat'l Bank*, 2008 WL 4367500, at *2 (N.D. Ill. March 13, 2008) ("An amendment may be unduly prejudicial if it adds entirely new and separate claims . . . or would require expensive and time-consuming new discovery.").

As discussed above, the technology of the Motorola Patents—QAM cable tuners—is entirely different from the technology at issue in Sony's patents. For this reason alone, Vizio's motion to supplement should be denied. "Adding new technological issues to the case, even though they relate to the broader technology that encompasses the issues present in this case, will undoubtedly further delay the resolution of this case, require additional discovery, and further complicate an already complex case." *Vonage v. SBC Internet Sers., Inc.*, 2007 WL 3169167, at *3 (N.D. Tex. Oct. 30, 2007) (denying motion to amend to add counterclaims for

---

[4] In addition, Vizio's motion should be denied for failure to show good cause as required by Federal Rule of Civil Procedure 16, because Vizio failed to file the instant motion to amend by the court's deadline. Although Vizio attempted to file a motion to amend on April 21, the filing was deficient under the Local Rules, and the Court ordered that it be stricken. (Doc. No. 52.) Because Vizio did not file and serve its present motion to amend until April 23, 2009, the motion is governed by the more arduous Rule 16 standard. *See Johnson v. Mammoth Recreations, Inc*, 975 F.2d 604, 607-09 (9th Cir. 1992)

1 infringement of three patents under Rule 15(a) standard); *see also Matsushita Elec.*
2 *Indus. Co. Ltd. v. CMC Magnetics Corp.*, 2007 WL 127997, at *4 (N.D. Cal. Jan.
3 12, 2007) (denying leave to add patent counterclaims because they would "inject an
4 additional layer of complexity and delay into an already complex action.")

5 Because the technology covered by Vizio's new patents is substantially
6 different from the technology covered by Sony's patents, Sony would likely have to
7 locate, interview, and hire new experts—a process that typically takes several
8 months. Similarly, such differences would ensure a much broader range of third-
9 party discovery issues since Vizio would likely seek discovery not only from Sony's
10 TV assemblers and chip suppliers (which themselves are different from those used
11 by Vizio), but also from Sony's PC, laptop, and DVR assemblers and suppliers.

12 Indeed, even if Vizio's motion for leave were granted at the May 18 hearing,
13 Sony's answer would not be due until June 18, leaving fewer than five months to the
14 close of discovery. Given the protracted schedule that Vizio asked the Court to
15 impose in its portion of the parties' Joint Rule 26(f) report (Doc. No. 44), it is hardly
16 fair for Vizio to request such an abbreviated schedule for Sony to prepare its defense
17 to Vizio's proposed infringement case. Moreover, to the extent Vizio's proposed
18 counterclaims would require the schedule in this action to be extended, such a delay
19 would further prejudice Sony by depriving it of prompt resolution of its
20 infringement claims. *See, e.g.*, *Agar Corp. v. Multi-Fluids, Inc.*, 1998 WL 425474,
21 at *4 (S.D. Tex. April 17, 1998) ("Courts are justified in exercising their discretion
22 to deny permission to add after-acquired counterclaims where, as here, the addition
23 of such claims would cause undue delay in determining the issue raised by the
24 original complaint.")

25 Although it is clear that Sony would be prejudiced by Vizio's proposed
26 counterclaims, Vizio, in contrast, will not suffer any hardship if its motion is denied.
27 As Vizio admits, its counterclaims are permissive. (Br. at 3.) There is no reason
28 Vizio cannot simply assert its new patents against Sony as part of a new,

independent action. That course of action would make far more sense than needlessly complicating the present case and unfairly requiring Sony to learn about and litigate against complicated patents in less than six months.

Accordingly, under the applicable Ninth Circuit standards, Vizio's request for leave to assert its QAM cable tuner patents against Sony as counterclaims in this action must be denied. *Matsushita Elec. Indus. Co. Ltd. v. CMC Magnetics Corp.*, 2007 WL 127997, at *4 (N.D. Cal. Jan. 12, 2007); *Planned Parenthood*, 130 F.3d at 402; *see also Abbey v. Mercedes Benz of North Amer., Inc.*, 138 Fed. Appx. 304, 307 (Fed. Cir. 2005) (the assertion of a new patent "raises an independent and distinct cause of action.").

## IV. CONCLUSION

For the reasons discussed above, Sony respectfully requests that the portion of Vizio's motion that seeks leave to add counterclaims for infringement by Sony of four newly-acquired patents be denied.

DATED: May 4, 2009        QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


By  /s/
    Kevin P.B. Johnson
    Attorneys for Plaintiff Sony Corporation