Kevin P.B. Johnson (Bar No. 177129)
QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
555 Twin Dolphin Drive, Suite 560
Redwood Shores, California 94065-2139
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Steven M. Anderson (Bar No. 144014)
QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
865 S. Figueroa St. 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Plaintiff Sony Corporation

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| SONY CORPORATION, A Japanese corporation,<br><br>Plaintiff,<br><br>vs.<br><br>VIZIO INC., A California corporation,<br><br>Defendant. | CASE NO. 8:08-cv-01135-RGK-FMO<br><br>**DECLARATION OF JAIME A. SIEGEL IN SUPPORT OF SONY CORPORATION'S OPPOSITION TO VIZIO'S MOTION TO FILE ITS AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO SONY'S AMENDED COMPLAINT.**<br><br>Date: May 18, 2009<br>Time: 9:00 a.m.<br>Judge: Hon. R. Gary Klausner<br>Courtroom: 850 |

I, Jaime A. Siegel, declare:

1. I am the Senior IP Counsel, Intellectual Property Department, and am employed by Sony Corporation of America ("SCA"). Among other duties, I represent Sony Corporation ("Sony Corp.") in intellectual property matters.

2. I submit this declaration in support of Plaintiff Sony Corporation's Opposition to Vizio's Motion To File Its Proposed Amended Answer, Affirmative Defenses and Counterclaims To Sony's Amended Complaint. I am personally familiar with and knowledgeable about the facts stated in this declaration and if called upon could and would testify competently as to the statements made herein.

3. Sony Corp. is a leading manufacturer of digital television products that are sold throughout the world. Sony owns an extensive patent portfolio relating to numerous aspects of digital television technology.

4. Vizio, Inc. is a California corporation headquartered in Irvine, California that sells digital television products throughout the United States.

5. Sony brought this action against Vizio for patent infringement on October 10, 2008 after licensing negotiations between the parties broke down when Vizio, without warning to Sony, filed a declaratory judgment action against Sony in the District of New Jersey several days in advance of a previously scheduled licensing negotiation meeting between the parties. Sony successfully moved to transfer that action to this Court.

6. I have been one of the Sony representatives with primary responsibility for the settlement and licensing negotiations between Sony and Vizio. Those negotiations have included five meetings that took place between November 7, 2007 and October 14, 2008, as well as additional meetings and discussions that have continued through the pendency of this action, including up through the end of last week. As a result of the parties' continued licensing negotiations, by mid-April 2009 the parties were very close to a deal whereby Vizio would take a license under Sony's patents.

7. During a telephone conversation on Sunday April 12, 2009, I learned from Vizio's counsel, James L. Wamsley III, that Vizio had acquired a number of patents from Motorola that he said were relevant to Sony cable ready televisions ("the Motorola Patents"). Mr. Wamsley did not identify the Motorola Patents. He told me that he would have to discuss with his client whether he could reveal the identities of the Motorola Patents, but that in order to do so he asked if Sony would agree not to file a declaratory judgment action against Vizio. I told Mr. Wamsley that I could not agree to a one-sided standstill. Mr. Wamsley then proposed that the parties jointly agree to a standstill agreement under which neither party would bring an action with respect to the Motorola Patents. Mr. Wamsley and I agreed during the April 12th telephone conversation that neither party would bring an action with respect to Vizio's newly-acquired Motorola Patents "for a few weeks."

8. On the morning of April 14, 2009, Mr. Wamsley called me on my cell phone and asked if Sony would agree to a standstill deal on the Motorola Patents until the end of April, thus clarifying our agreement on April 12 to a standstill that would last "for a few weeks." I told him we had a deal, which I understood to mean that through the end of April, Sony would not file a declaratory judgment case with respect to the Motorola Patents that Vizio had acquired and that Vizio, in turn, would not sue Sony on those patents. The rationale for this standstill agreement was that the parties were very close to settlement and needed a few more weeks to finalize the terms of the deal, and to consider the impact, if any, of the newly-acquired Motorola Patents.

9. During the April 14 call, Mr. Wamsley also asked if Sony would be willing to meet again with Vizio. I told him Sony would be willing to meet only if there was a reason to meet. In that regard, I told him that he would have to send Sony a list of the newly-acquired Motorola Patents prior to holding a meeting because it would be pointless to have a meeting in which we would be learning of

the patents for the first time at the meeting. Mr. Wamsley said he would get back to me.

10. That evening, I learned from Sony's outside counsel, Ed DeFranco, that Mr. Wamsley had called him to ask for Sony's consent to allow Vizio to amend its counterclaims to add the Motorola Patents into this action. I was offended that Vizio would breach the agreement and called Mr. Wamsley immediately to express my frustration and to ask for an explanation. He told me that Vizio had a different perspective as to whether a standstill agreement had been reached and said that we did not have an agreement because I allegedly had refused to meet with Vizio. I told him that this was untrue and that I had not refused to meet outright, but rather had conditioned any meeting on Vizio providing Sony with advance notice of the newly acquired patents. In any event, I told Mr. Wamsley that he had begun our call that morning by asking for the standstill deal, which I accepted, and only then did he ask for a meeting. I also told him that Sony's outstanding settlement proposal would be taken off the table if Vizio breached the standstill agreement. Mr. Wamsley then asked me if I would consent to allow Vizio to amend its Answer and Counterclaims to assert counterclaims for infringement of the newly-acquired Motorola Patents. I told him I was unable to consent or refuse to consent because I did not know what patents Vizio intended to add. I asked Mr. Wamsley to identify the Motorola Patents or to provide a draft of his proposed Amended Answer and Counterclaims so that Sony could consider if it would consent or object. The call ended with Mr. Wamsley agreeing to convey to his client Sony's position on settlement in light of the breach of the standstill agreement and with me agreeing to consider with our team whether we would consent to the filing of Vizio's amended answer and counterclaims.

11. On April 21, 2009, Vizio moved for leave to amend its Answer to assert counterclaims of infringement based on four newly acquired Motorola Patents. This was the first time Sony learned the identity of those patents. Neither

-3-

Sony nor its counsel had ever received a draft copy of the proposed Amended Answer and Counterclaims prior to receiving the motion for leave.

12. On April 24, 2009, Sony lawyers, including myself, met with Vizio's lawyers and representatives to continue discussing Vizio taking a license under Sony patents. During the meeting, Vizio informed us that the four Motorola Patents allegedly cover the following Sony products: a) Sony Digital TVs with a QAM tuner; b) Sony PCs and Laptops with a QAM tuner; and c) Sony DVRs with a QAM tuner.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on May 4, 2009.

_____
Jaime A. Siegel