# Exhibit 11

Exhibit 11 Page 124

1   Kevin P.B. Johnson (Bar No. 177129)
    QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2   555 Twin Dolphin Drive, Suite 560
    Redwood Shores, California 94065-2139
3   Telephone: (650) 801-5000
    Facsimile: (650) 801-5100
4
    Steven M. Anderson (Bar No. 144014)
5   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
    865 S. Figueroa St. 10th Floor
6   Los Angeles, California 90017
    Telephone: (213) 443-3000
7   Facsimile: (213) 443-3100

8   Attorneys for Plaintiff Sony Corporation

9

10              UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12                   WESTERN DIVISION

13  SONY CORPORATION, A Japanese          CASE NO. SA CV 08-01135-RGK (FMOx)
    corporation,
14                                        **SUPPLEMENTAL RESPONSE TO VIZIO,**
                 Plaintiff,               **INC.'S FIRST SET OF**
15                                        **INTERROGATORIES (NOS. 1-18)**
         vs.
16
    VIZIO, Inc.,
17
                 Defendant.
18

19

20        Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff Sony Corporation

21  ("Sony") objects and responds to Defendant Vizio, Inc.'s ("Vizio") First Set of Interrogatories

22  (Nos. 1-18) ("Interrogatories") as follows:

23                        **Preliminary Statement**

24        Sony has made a reasonable investigation for information responsive to Vizio's

25  Interrogatories based upon its current employees' knowledge, information, and belief. Sony is

26  still pursuing its investigation and analysis of the facts and law pertaining to this action, and has

27  not yet completed its investigation. Thus, Sony's responses are made without prejudice to

28  Sony's right subsequently to add, modify, or otherwise change or amend its responses. Sony

reserves the right to make any use of, or to introduce at any hearing, and at trial, information and/or documents responsive to Vizio's Interrogatories but discovered subsequent to the date of this response. Sony reserves all objections or other questions as to the competency, relevance, materiality, privilege, or admissibility in any proceeding or trial of this or any other action for any purpose whatsoever of Sony's responses herein and any document or thing identified or provided in response to Vizio's Interrogatories. Sony provides these written responses to Vizio's Interrogatories subject to the general and specific objections stated below.

### General Objections

The following general objections apply to each and every interrogatory propounded by Vizio and are incorporated into each of the following responses by reference as if set forth fully therein.

1. Sony objects to the Interrogatories, and the instructions and definitions that accompany them, to the extent that they are premature.

2. Sony objects to the Interrogatories, and the instructions and definitions that accompany them, to the extent that they seek to impose obligations and demands on Sony greater than or more extensive than those required by the Federal Rules of Civil Procedure or the Local Rules of the United States District Court for the Central District of California.

3. Sony objects to the Interrogatories, and the instructions and definitions that accompany them, to the extent that they seek information subject to attorney-client privilege, attorney work product immunity, or other privilege or immunity against disclosure. Such information will not be provided in response to the Interrogatories, and any inadvertent disclosure thereof shall not be deemed a waiver of any privilege with respect to such information or of any work product doctrine protections which may attach thereto.

4. Sony objects to the Interrogatories, and the instructions and definitions that accompany them, to the extent that they purport to require the production of proprietary and confidential information of any third parties to whom Sony may be under obligations of confidentiality.

1      5.      Sony objects to the Interrogatories, and the instructions and definitions that

2  accompany them, to the extent that they are vague, ambiguous, unintelligible, overly broad,

3  unduly burdensome, oppressive, and harassing and seek information that is not relevant to the

4  subject matter of this action nor reasonably calculated to lead to the discovery of admissible

5  evidence.

6      6.      Sony objects to the Interrogatories, and the instructions and definitions that

7  accompany them, to the extent they seek information available through public sources or are

8  known to Vizio.

9      7.      Sony objects to the Interrogatories, and the instructions and definitions that

10  accompany them, to the extent that they call for legal conclusions.

11      8.      Sony objects to the Interrogatories to the extent they contain discrete subparts

12  improperly grouped as a single interrogatory.

13      9.      Sony objects to the definitions of "you," "your," and "Sony" in the "Definitions"

14  section of the Interrogatories, on the basis that they are overbroad, unduly burdensome, and

15  purport to place discovery obligations upon Sony that exceed those required by the Federal Rules

16  of Civil Procedure.   Sony submits these responses on its own behalf and does not speak for other

17  entities.

18      10.     Sony objects to the definitions of "Sony Patent(s)," "Asserted Sony Patent(s)," and

19  "Patents-in-Suit" to the extent such definitions include patents not asserted in Sony's First

20  Amended Complaint.   Sony reserves the right to supplement its responses to these Interrogatories

21  to the extent additional patents are in suit.

22      10.     Sony objects to the Interrogatories to the extent that they seek information not

23  within the possession, custody or control of Sony.   An objection on this ground does not

24  constitute a representation or admission that such information does in fact exist.

25      11.     Except for explicit facts admitted in these responses, no incidental or implied

26  admissions are intended and these responses shall not be construed to be a waiver by Sony of all

27  or any part of any objection to the Interrogatories.

28

12.     Sony objects to the Interrogatories as premature to the extent that they call for responses that are the subject of expert testimony and the parties have not yet engaged in expert discovery or exchanged expert witness reports.

13.     Sony has made a reasonable investigation for information responsive to the Interrogatories.   Sony is still pursuing its investigation and analysis of the facts and law pertaining to this action and has not yet completed its investigation.   Thus, Sony's responses are made without prejudice to Sony's right subsequently to add, modify or otherwise change or amend these responses.   The information contained in these responses is also subject to correction for omissions or errors.

14.     Sony objects to the manner of responding specified in the Interrogatories and the instructions and definitions that accompany them. Sony will respond to the Interrogatories in a manner that conforms to the Federal Rules of Civil Procedure and the Local Rules of the Central District of California.

15.     Sony objects to each interrogatory as compound to the extent it contains multiple sub-parts.

15.     Any objection by Sony does not constitute a representation or admission that such information does in fact exist or is known to Sony.

16.     Sony reserves its right to supplement these responses.

## INTERROGATORIES

## INTERROGATORY NO. 1:

Separately for each Accused VIZIO Product and for each Asserted Claim, using a claim chart format, indicate the element or component of such Accused VIZIO Product that allegedly meets each limitation of each Asserted Claim, specifying whether each such limitation is alleged to be met, directly or indirectly, literally or under the doctrine of equivalents and the complete factual and legal basis for your answer.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1:

Sony incorporates each of its general objections by reference. Sony objects to this request as premature to the extent it calls for Sony to have determined the "complete" legal and factual bases for its contentions at this early stage in discovery. Sony further objects to this request as being unduly burdensome to the extent that it calls for a response "[s]eparately for each Accused VIZIO Product." Sony further objects to this request to the extent it calls for information protected from discovery by the attorney-client privilege and/or the work product doctrine. Sony also objects to this request to the extent it requests information in the possession of third parties or otherwise unknown to Sony. Sony also objects to this request to the extent it calls for a legal conclusion. Sony objects to this request as premature to the extent that it seeks information that is more properly the subject of expert testimony.

Without waiving the foregoing general and specific objections and subject to those objections, Sony responds as follows:

Discovery in this matter is at an early stage and is ongoing. Vizio has not yet produced any technical documents and things except user manuals and service manuals for far less than one-half of the Accused Products, or provided any deposition testimony in this action. Moreover, the service manuals that Vizio did produce were only provided to Sony on May 29, 2009, less than one and a half weeks ago. Furthermore, an inspection of the Accused Vizio Products has not taken place and Vizio has not confirmed whether and/or when it will make any of the Accused Products available for inspection. Vizio has not made the source code for the Accused Products available to Sony. Nor has Vizio agreed to Sony's May 18, 2009 proposal regarding the mutual exchange of privilege logs or offered a counter-proposal. Sony's investigation regarding these and other potential grounds of infringement is ongoing. This response is therefore based in large part upon information that Sony has been able to obtain publicly, together with Sony's current good faith belief regarding the Accused Products, and is given without prejudice to Sony's right to supplement and/or modify this response as additional facts are ascertained, analyses are made, research is completed and claims are construed. Sony will further supplement its infringement charts after it has had a reasonable period of time to complete its review of the limited number of

service manuals Vizio has produced and after Vizio has made the Accused Products available for inspection.

Vizio makes, uses, sells, offers for sale and/or imports into the United States instrumentalities that by themselves or in combination with other products or services are capable of displaying digital video signals, including, without limitation, the following Vizio televisions: L13; L13 TVJ10; L13e; 1300L; L15; L3; L4; L5; VA190E; VA190E-W; VA19L HDTV10T; VW19L HDTV10F; HDX 20L; L20; L6; VX200E; VX20L HDTV; VX20L HDTV1A; VX20L HDTV20A; VXW20L HDTV10A; VA220E; VA220M; VA22L FHDTV10T; VO220M; VO22L FHDTV10A; VO22L HDTV10A; VW22L HDTV10T; VA26L HDTV10T; VA260E; VGM26F1I; VW26L HDTV10F; VW26L HDTV20F; L30; L30e; L30WGU; L30WGUe; L32; L32 HDTV; L32 HDTV10A; L32 HDTV20A; P1; SV320XVT; VA320E; VECO320L 1A; VL320M HDTV; VO320E; VO32L FHDTV10A; VO32L HDTV10A; VOJ320F1A; VOJ32C FHDTV1A; VP322 HDTV10A; VU32L FHDTV10A; VU32L HDTV10A; VW32L HDTV10A; VW32L HDTV20A; VW32L HDTV30A; VW32L HDTV40A; VX32L HDTV; VX32L HDTV10A; VX32L HDTV20A; L37 HDTV; L37 HDTV10A; SV370XVT; VL370M HDTV; VO370M; VO37L FHDTV10A; VO37L FHDTV20A; VO37L HDTV10A; VOJ370F1A; VS370E; VU37L FHDTV10A; VU37L HDTV10A; VW37L HDTV10A; VW37L HDTV20A; VW37L HDTV30A; VW37L HDTV40A; VX37L HDTV; VX37L HDTV10A; VX37L HDTV20A; VO40L FHDTV10A; VO40L HDTV10A; VX40L FHDTV10A; VX40L HDTV10A; GV42L FHDTV10A; GV42L FHDTV20A; GV42L HDTV; HDX42P; L42 HDTV; P42; P42 ED; P42 HD; P42 HDTV; P42e; P42eA; P42EDM; P42Hde; P42HDeA; P42 HDTV10A; SV420M; SV420XVT 1AB; SV420XVT1A; VL420M; VO420E; VO42L FHDTV10A; VP42 HDTV; VP42 HDTV10A; VP42 HDTV20A; VP422 HDTV10A; VP423 HDTV10A; VS420LF1A; VS42L FHDTV10A; VU42L FHDTV10A; VU42L HDTV10A; VW42L FHDTV10A; VW42L HDTV10A; VX42L HDTV10A; GV46L FHDTV20A; GV46L HDTV; GV46L HDTV10A; P4; P46; VW46L FHDTV10A; VW46L FHDTV20A; VX46L FHDTV10A; GV47L FHDTV; GV47L FHDTV20A; SV470M; SV470XVT1A; VL470M; VO470E; VO47L 120F1A; VO47L FHDTV10A; VO47L FHDTV20A; VO47L FHDTV30A; VW47L FHDTV10A; JV50P

1  HDTV10A; P50 HDTV10A; P50 HDTV20A; P50HD; VP50 HDTV; VP50 HDTV10A; VP50
2  HDTV20A; VP503 HDTV10A; VP503 FHDTV10A; VP504 FHDTV10A; VP505XVT1A;
3  GV52L FHDTV10A; VX52L FHDTV10A; VF550M; VF550XVT1A; RP56; RP56e; VM60P
4  HDTV; VM60P HDTV10A; L42 HDTV10A; SV470XVT1AB; SV471XVT; VA320M; VA420E;
5  VF551XVT; VT420M; VT470M; VX240M; SV421XVT    (the "Accused Products").   On
6  information and belief, the Accused Products infringe, directly and literally, one or more claims of
7  the '626, '373, '614, '577, '542, '847, '182, and '472 patents.   On information and belief, the
8  Accused Products, with the exception of the L13e, L15, HDX20L, and L20, infringe, directly and
9  literally, one or more claims of the '055 and '468 patents ("HDCP Accused Products").   Sony
10 reserves its right to contend that Vizio's infringement of any element of an Asserted Claim is
11 indirect.   Sony also reserves its right to contend that Vizio's infringement of any element of an
12 Asserted Claim is under the doctrine of equivalents because any differences between a claim
13 element and the Infringing Vizio Products are insubstantial and the Infringing Products perform
14 substantially the same function, in substantially the same way, to reach substantially the same
15 result.
16        See Exhibits A-J.
17 **INTERROGATORY NO. 2:**
18        Separately for each Asserted Sony Claim, specify each claim term that Sony contends
19 requires construction by the Court and state the proper construction of each such term, setting
20 forth all bases for that construction, including without limitation any intrinsic or extrinsic evidence
21 on which Sony relies.
22 **RESPONSE TO INTERROGATORY NO. 2:**
23        Sony incorporates each of its general objections by reference.   Sony objects to this request
24 as overbroad and unduly burdensome to the extent it seeks "all bases for that construction."   Sony
25 further objects to this request as calling for legal conclusions.   Sony further objects to this request
26 to the extent it calls for information protected from discovery by the attorney-client privilege
27 and/or the work product doctrine.   Sony further objects to this request as being premature.
28

1    Without waiving the foregoing general and specific objections and subject to those

2 objections, Sony responds as follows:

3    Based on the information currently available to it, Sony does not believe that any of the

4 claim terms in the patents-in-suit require construction by the Court.   Notwithstanding its current

5 position, Sony reserves all rights to request construction of claim terms to the extent the Court or

6 Sony determines it is necessary and to offer constructions of terms that Vizio asks the Court to

7 construe.

8 **INTERROGATORY NO. 3:**

9    Separately for each Asserted Sony Claim, identify the date of invention that Sony contends

10 applies to that claimed invention and the complete facts, documents, and persons with knowledge

11 on which Sony relies to support that contention.

12 **RESPONSE TO INTERROGATORY NO. 3:**

13    Sony incorporates each of its general objections by reference.   Sony objects to this request

14 as overbroad and unduly burdensome to the extent it seeks "the complete facts, documents, and

15 persons with knowledge."   Sony further objects to this request as premature to the extent it calls

16 for Sony to have determined all of the claims it is asserting against Vizio at this early stage in

17 discovery.   Sony further objects to this request to the extent it calls for information protected from

18 discovery by the attorney-client privilege and/or the work product doctrine.   Materials and

19 information referring or relating to conception, reduction to practice, or diligence include that

20 which would otherwise be responsive to this request but was created by or at the direction of

21 Sony's outside or in-house counsel and professional legal advisers.   Such privileged materials and

22 information include communications containing legal advice by and between Sony's engineers

23 and Sony's in-house legal advisers responsible for patent prosecution, licensing, and

24 litigation.   Such materials and information that would otherwise be responsive to this request also

25 include materials and information prepared or exchanged in anticipation of litigation, including the

26 case at hand and related litigations.

27    Without waiving the foregoing general and specific objections and subject to those

28 objections, Sony responds as follows:

1     **The '626 Patent:**   Toshihide Hayashi and Koki Tsumori conceived of the inventions

2 claimed by the '626 patent while trying to develop a new television on-screen menu display that

3 was easier to use and less confusing to users.   This conception occurred at least as early as the fall

4 of 1990.   At this time, on-screen menu navigation was new to televisions and often confused

5 users because the menus did not clearly identify which menu items were available.   Toshihide

6 Hayashi and Koki Tsumori reduced to practice the novel, improved menu disclosed in and claimed

7 by the '626 patent on or before November of 1990.   The persons involved in the conception,

8 reduction to practice, and diligence were Messrs. Hayashi and Tsumori.   They are also the

9 individuals most knowledgeable about the conception, reduction to practice, and diligence.

10     **The '577, '542, and '847 Patents:**   Ikuo Tsukagoshi is a pioneer in the field of subtitle

11 and closed captioning display.   In the early to mid 1990s, Mr. Tsukagoshi worked on Sony's

12 Project 203.   The aim of Project 203 was to develop hardware and software for the improved

13 display of subtitles and/or captions overlaid on an image.   This is a technically difficult

14 application.   Subtitles and captions can be difficult or impossible for a user to read if they are not

15 displayed properly and can be distracting or annoying if they are not synched to the underlying

16 video image.   Through the Project 203 development, Mr. Tsukagoshi advanced this entire field.

17 He developed encoders and decoders that provided improved and easier to read caption and

18 subtitle displays.   These advances include the invention claimed in the '577 patent, which he

19 conceived at least as early as May of 1993 and reduced to practice around October of 1993, and

20 the invention claimed in the '542 patent, which he conceived at least as early as October 25, 1993

21 and reduced to practice on or before December 21, 1993.   These advances further include the

22 invention claimed in the '847 patent, which he conceived at least as early as January 18, 1995 and

23 reduced to practice on or before March 20, 1995.   The person involved in the conception,

24 reduction to practice, and diligence of the invention claimed in the '577, '542, and '847 patents

25 was Mr. Tsukagoshi.   He is also the individual most knowledgeable about the conception,

26 reduction to practice, and diligence.

27     **The '373 Patent:**   Tomoko Ohyama, Yukiko Ohkura, Masaharu Fukumoto, Shigeyuki

28 Sano, Yasuko Rokukawa, Shiro Endo, Kyosuke Oda, Yumiko Minakawa, and Chifumi Matsuura

1  conceived of the inventions claimed in the '373 patent at least as early as January of 1994 while
2  working on a project to develop one of Sony's first digital televisions.   The project was known
3  internally as Project XBR2.   As part of this project, the inventors were developing a novel on-
4  screen menu display that offered a superior experience to the user.   The inventions claimed in the
5  '373 patent advanced the field by displaying hierarchical menus regarding the control of television
6  functions, thereby making it easier to navigate the menu levels.   The inventors reduced to practice
7  this novel, improved hierarchical menu system on or around February of 1994.    The people
8  involved in the conception, reduction to practice, and diligence were Messrs. Ohyama, Ohkura,
9  Yumiko, and Matsuura and Messrs. Fukumoto, Sano, Rokukawa, Endo, Oda, and Minakawa.
10  They are also the individuals most knowledgeable about the conception, reduction to practice, and
11  diligence.

12  **The '614 Patent:**   In the mid 1990s, Sony was developing set-top boxes for the DirectTV
13  service.   One feature that needed to be improved upon was the graphical user interface (GUI) for
14  the set-top box.   Most GUIs at the time presented a programming guide that was organized into a
15  grid structure.   While working on this aspect of the set-top box, Kazuto Mugura, Yuko
16  Nishikawa, Joseph Saib, and Ludovic Legrand conceived of the inventions in the '614 patent,
17  which improved the user interface by incorporating on screen display components of varying
18  levels of transparency, at least as early as July of 1996.   The inventors reduced to practice the
19  inventions claimed in the '614 patent and reduced to practice on or before October 17, 1997.   The
20  people involved in the conception, reduction to practice, and diligence were Ms. Nishikawa and
21  Messrs. Mugura, Saib, and Legrand.    They are also the individuals most knowledgeable about the
22  conception, reduction to practice, and diligence.

23  **The '055 and '468 Patents:**   In 1994, the inventors were working together at Sony on
24  Project HMS.   The goal of Project HMS team was to develop a digital VCR.   One aspect of this
25  project in which the inventors of the '055 patent were involved was the development of the
26  methods for linking a set-top box to the digital VCR and transferring data between the two
27  devices.   The inventors conceived of the inventions claimed in the '055 patent at least as early as
28  April 21, 1994.   The inventors reduced to practice the inventions claimed in the '055 patent on

1 or before May 24, 1994.  The persons involved in the conception, reduction to practice, and
2 diligence were Messrs. Tsukamoto, Goto, and Fukushima.  They are the also individuals most
3 knowledgeable about the conception, reduction to practice, and diligence.

4 **The '472 Patent:**  In the late 1990s, Peter Rae Shintani and Shigeharu Kondo were
5 engaged in work at Sony relating to the introduction of digital television products and technology.
6 One complication presented by digital television which Messrs. Shintani and Kondo addressed
7 during their work at the time is the difficulty in selecting digital channels, which can be identified
8 by a combination of a major channel number and a minor channel number.  A method was needed
9 to distinguish between the major channel and the minor channel in order to facilitate the proper
10 selection of the digital channel.  While addressing this need, Messrs. Shintani and Kondo
11 conceived of the inventions claimed in the '472 patent at least as early as September of 1998 and
12 reduced to practice the inventions on or around January of 1999.  The persons involved in the
13 conception, reduction to practice, and diligence were Messrs. Shintani and Kondo.  They are also
14 the individuals most knowledgeable about in the conception, reduction to practice, and diligence.

15 **The '182 Patent:**  In the late 1990s, Mr. Yamakawa was developing plasma display
16 technology at Sony.  At that time, images displayed on plasma screens suffered from increased
17 darkness levels.  The inability to display bright imagery was a major problem for plasma monitors
18 used for public advertising.  Mr. Yamakawa sought to develop a unique method of increasing the
19 brightness of the displayed image.  He conceived of the inventions claimed in the '182 patent at
20 least as early as August of 1997 and reduced to practice those inventions on or around August of
21 1997.  The only person involved in the conception, reduction to practice, and diligence was Mr.
22 Yamakawa.  He is also the individual most knowledgeable about the conception, reduction to
23 practice, and diligence.

24 In addition to the foregoing, pursuant to Federal Rule Civil Procedure 33(d), Vizio may
25 derive or ascertain information responsive to this interrogatory from at least the following
26 documents produced in this matter:   SONY0005933-6355, SONY0006356-6839, SONY0006840-
27 7161, SONY0007162-7398, SONY0007399-7640, SONY0007641-7926, SONY0007927-8191,
28 SONY0008192-8374, SONY0008375-8604, SONY0008605-8786, and SONY0008787-9088.

1      Sony is continuing to investigate the subject matter of this interrogatory and reserves the

2 right to supplement its response to the extent it locates additional non-privileged, relevant

3 documents or information responsive to this interrogatory.

4 **INTERROGATORY NO. 4:**

5      Separately for each Sony Patent, describe in detail each named inventor's contribution to

6 and involvement with the invention claimed therein, and identify all documents that refer or relate

7 thereto.

8 **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4:**

9      Sony incorporates each of its general objections by reference.   Sony objects to this request

10 as overbroad and unduly burdensome to the extent it seeks identification of "<u>all</u> documents that

11 refer or relate thereto."   Sony objects to this request as vague and ambiguous to the extent it uses

12 the phrase "contribution to and involvement with" without defining it.   Sony further objects to

13 this request to the extent it calls for a legal conclusion or for information otherwise protected from

14 discovery by the attorney-client privilege and/or the work product doctrine, including

15 communications reflecting legal advice by and between Sony's engineers and Sony's in-

16 house legal advisers responsible for patent prosecution, licensing, and litigation.   Sony further

17 objects to this interrogatory to the extent it seeks information that is more appropriately the subject

18 of a different form of discovery, such as a deposition.

19      Without waiving the foregoing general and specific objections and subject to those

20 objections, Sony responds as follows:

21      Sony refers Vizio to Sony's response to Interrogatory No. 3, above, and incorporates it by

22 reference herein.   Sony further states:

23      **The '626 Patent:**   Named inventors Toshihide Hayashi and Koki Tsumori worked

24 together and contributed to at least one of the inventions claimed in the '626 patent.

25      **The '577, '542, and '847 Patents:**   Named inventor Ikuo Tsukagoshi is the sole named

26 inventor of the '577, '542, and '847 patents.

27      **The '373 Patent:**   Named inventors Tomoko Ohyama, Yukiko Ohkura, Masaharu

28 Fukumoto, Shigeyuki Sano, Yasuko Rokukawa, Shiro Endo, Kyosuke Oda, Yumiko Minakawa,

1 and Chifumi Matsuura worked together with each contributing to at least one of the inventions

2 claimed in the '373 patent.

3 **The '614 Patent:**   Named inventors Kazuto Mugura, Yuko Nishikawa, Joseph Saib, and

4 Ludovic Legrand worked together with each contributing to at least one of the inventions claimed

5 in the '614 patent.

6 **The '055 and '468 Patents:**   Named inventors Junichi Tsukamoto, Koichi Goto, and

7 Shinichi Fukushima worked together with each contributing to at least one of the inventions

8 claimed in the '055 and '468 patents.

9 **The '472 Patent:**   Named inventors Peter Rae Shintani and Shigeharu Kondo worked

10 together with each contributing to at least one of the inventions claimed in the '472 patent.

11 **The '182 Patent:**   Named inventor Yoshifumi Yamakawa is the sole named inventor of

12 the '182 patent.

13 In addition to the foregoing, pursuant to Federal Rule Civil Procedure 33(d), Vizio may

14 derive or ascertain information responsive to this interrogatory from at least the following

15 documents produced in this matter:   SONY0026213-26214, SONY0026323-26366,

16 SONY0026387-26398, SONY0028018-28059, SONY0037803-37804, SONY0037843-37850,

17 and SONY0037869-37988.

18 Sony is continuing to investigate the subject matter of this interrogatory and reserves the

19 right to supplement its response to the extent it locates additional non-privileged, relevant

20 documents or information responsive to this interrogatory.

21 **INTERROGATORY NO. 5:**

22 Separately for each Sony Patent, identify each person other than a named inventor who

23 contributed to or was involved in any way with the conception or actual reduction to practice of

24 the claimed invention, each such person's contribution to or involvement in those events, and all

25 documents that refer or relate thereto.

26 **RESPONSE TO INTERROGATORY NO. 5:**

27 Sony incorporates each of its general objections by reference.   Sony objects to this request

28 as overbroad and unduly burdensome to the extent it seeks "<u>all</u> documents" and information

1  pertaining to persons "involved in any way."  Sony objects to this request as vague and
2  ambiguous to the extent it uses the terms "contributed to or was involved in any way" and
3  "contribution to and involvement with" without defining them.  Sony further objects to this
4  request to the extent it calls for a legal conclusion or seeks information protected from discovery
5  by the attorney-client privilege and/or the work product doctrine.  Sony further objects to this
6  request as seeking information that is not relevant to the subject matter of this action nor
7  reasonably calculated to lead to the discovery of admissible evidence.

8     Without waiving the foregoing general and specific objections and subject to those
9  objections, Sony responds as follows:

10     To the extent the phrases "contributed to or was involved in any way" and "contributed to
11  or was involved in any way with" are intended to refer to persons who would have been eligible to
12  be named as inventors on the patents in suit, Sony is not aware of anyone other than the named
13  inventors who contributed to or were involved with the inventions described in the patents in suit
14  in that manner.

15     Sony is continuing to investigate the subject matter of this interrogatory and reserves the
16  right to supplement its response to the extent it locates additional non-privileged, relevant
17  documents or information responsive to this interrogatory.

18  **INTERROGATORY NO. 6:**

19     Separately for each Sony Patent, Related Patent, and Related Application, identify all prior
20  art of which Sony is aware concerning the claimed invention of such patent or application,
21  including without limitation all relevant public uses, offers for sale, or sales in the United States
22  occurring prior to the earliest effective filing date of each such patent, all relevant patents and
23  publications dated prior to the earliest effective filing date of each such patent, and all relevant
24  documents concerning such identified prior art.

25  **RESPONSE TO INTERROGATORY NO. 6:**

26     Sony incorporates each of its general objections by reference.  Sony objects to this request
27  as vague and ambiguous to the extent it uses the terms "prior art" and "relevant" without providing
28  corresponding definitions and on the grounds that these terms require a subjective analysis.

1   Sony's response to this interrogatory is accordingly based on its understanding of the meaning of

2   those terms.   Sony further objects to this request to the extent it calls for information protected

3   from discovery by the attorney-client privilege and/or the work product doctrine.   Requesting that

4   Sony identify prior art references known to Sony to be relevant to the patents-in-suit, to the extent

5   any such prior art exists, calls for the mental impressions, conclusions, opinions, or legal theories

6   of Sony's counsel and legal advisors, which are entitled to protection from discovery under the

7   Federal Rules.

8        Without waiving the foregoing general and specific objections, without conceding that any

9   prior art anticipates or renders obvious any element of any patent-in-suit, and subject to those

10  objections, Sony responds as follows:

11       Without waiving its objections to relevancy and to Vizio's use of the term "prior art,"

12  pursuant to Federal Rule Civil Procedure 33(d), Vizio may derive or ascertain information that

13  may be responsive to this interrogatory from the following documents:   documents cited during

14  the prosecution of the patents-in-suit and documents identified by Westinghouse during *Sony*

15  *Corporation v. Westinghouse Digital Electronics, LLC,* Case No. CV-08-3934 with production

16  numbers:   SONY0005933-6355, SONY0006356-6839, SONY0006840-7161, SONY0007162-

17  7398, SONY0007399-7640, SONY0007641-7926, SONY0007927-8191, SONY0008192-8374,

18  SONY0008375-8604, SONY0008605-8786, SONY0009220-9868, inclusive, and SONY0010192-

19  22968, inclusive.   Sony makes no admission that any of these documents are prior art to any of

20  the patents-in-suit.

21       Sony is continuing to investigate the subject matter of this interrogatory and reserves the

22  right to supplement its response to the extent it locates additional non-privileged, relevant

23  documents or information responsive to this interrogatory.

24  **INTERROGATORY NO. 7:**

25       Separately for each prior art search directed to any subject matter claimed at any time in

26  any of the Sony Patents and Related Patents, describe the details of such search, including without

27  limitation the persons involved in conducting the search, when the search was conducted, the

28  particular subject matter to which the search was directed, all prior art located as a result of such

1  search, the persons to whom the search results were communicated, and all documents that refer or
2  relate thereto.

3  **RESPONSE TO INTERROGATORY NO. 7:**

4        Sony incorporates each of its general objections by reference.  Sony objects to this request
5  as vague and ambiguous to the extent it uses the terms "prior art" and "any subject matter" without
6  providing corresponding definitions and on the grounds that these terms require a subjective
7  analysis.  Sony's response to this interrogatory is accordingly based on its understanding of the
8  meaning of those terms.  Sony further objects to this request to the extent it calls for information
9  protected from discovery by the attorney-client privilege and/or the work product doctrine.
10 Requesting that Sony identify prior art references known to Sony to be relevant to the patents-in-
11 suit, to the extent any such prior art exists, calls for the mental impressions, conclusions, opinions,
12 or legal theories of Sony's counsel and legal advisors, which are entitled to protection from
13 discovery under the Federal Rules.  Similarly, all prior art searches not otherwise described below
14 were carried out either by or at the direction of counsel in anticipation of litigation and the details
15 of such searches are protected by the attorney-client privilege and/or the work product doctrine.

16       Without waiving the foregoing general and specific objections, without conceding that any
17 prior art anticipates or renders obvious any element of any patent-in-suit, and subject to those
18 objections, Sony responds as follows:

19     **The '626 Patent:**   On March 12, 1993, a prior art search was carried out at the direction
20 of Michael Nicholls.   The results of the search were submitted to the European Patent Office.
21 On July 2, 1993, the '626 applicants submitted a List of Prior Art Cited by Applicant to the
22 U.S.P.T.O. which detailed prior art potentially related to the application for the '626 patent that
23 had been located by applicants during the pendency of the '626 application.   The search was
24 conducted at the direction of Jay Maioli.   Pursuant to Fed. R. Civ. P. 33(d), Sony refers Vizio to
25 additional information regarding these prior art searches contained in documents with the
26 following production number ranges: SONY0005933-6355.

27     **The '577 Patent:**   On September 2, 1994, a prior art search was carried out at the
28 direction of Shigemoto Tanabe.   The results of the search were submitted to the Japanese Patent

Office.   Pursuant to Fed. R. Civ. P. 33(d), Sony refers Vizio to additional information regarding this prior art search contained in documents with the following production number ranges: SONY0006356-6839.

**The '542 Patent:**   On March 4, 1997, applicants of the '542 Patent filed an Information Disclosure Statement at the direction of Charles Sammut, listing certain results of a prior art search.   Pursuant to Fed. R. Civ. P. 33(d), Sony refers Vizio to additional information regarding this prior art search contained in documents with the following production number ranges: SONY0006840-7161.

**The '847 Patent:**   Pursuant to Fed. R. Civ. P. 33(d), Sony refers Vizio to documents with the following production number ranges: SONY0007162-7398.

**The '373 Patent:**   Pursuant to Fed. R. Civ. P. 33(d), Sony refers Vizio to documents with the following production number ranges: SONY0007927-8191.

**The '614 Patent:**   On October 17, 1997, applicants of the '614 Patent filed an Information Disclosure Statement at the direction of Maria Sobrino, listing certain results of a prior art search.   On October 17, 1997, applicants of the '614 Patent filed an Information Disclosure Statement at the direction of Sang Hui Kim, listing certain results of a prior art search. On February 12, 1998, applicants of the '614 Patent filed an Information Disclosure Statement at the direction of Richard Gregory, listing certain results of a prior art search.   On September 25, 1998, applicants of the '614 Patent filed an Information Disclosure Statement at the direction of Maria Sobrino, listing certain results of a prior art search.   On December 8, 1998, applicants of the '614 Patent filed an Information Disclosure Statement at the direction of Richard Gregory, listing certain results of a prior art search.   Pursuant to Fed. R. Civ. P. 33(d), Sony refers Vizio to additional information regarding these prior art searches contained in documents with the following production number ranges: SONY0007399-7640.

**The '055 Patent:**   On October 18, 2000, applicants of the '055 Patent filed an Information Disclosure Statement at the direction of Gordon Kessler, listing certain results of a prior art search.   On January 18, 2002, applicants of the '055 Patent filed an Information Disclosure Statement at the direction of Gordon Kessler, listing certain results of a prior art search.

Pursuant to Fed. R. Civ. P. 33(d), Sony refers Vizio to additional information regarding these prior art searches contained in documents with the following production number ranges: SONY0007641-7926.

**The '468 Patent:**      On October 18, 2000, applicants of the '055 Patent filed an Information Disclosure Statement at the direction of Gordon Kessler, listing certain results of a prior art search.   On January 18, 2002, applicants of the '055 Patent filed an Information Disclosure Statement at the direction of Gordon Kessler, listing certain results of a prior art search. On November 28, 2005, applicants of the '468 Patent filed an Information Disclosure Statement at the direction of William Frommer, listing certain results of a prior art search.   On May 23, 2007, applicants of the '468 Patent filed an Information Disclosure Statement at the direction of William Frommer, listing certain results of a prior art search.   Pursuant to Fed. R. Civ. P. 33(d), Sony refers Vizio to additional information regarding these prior art searches contained in documents with the following production number ranges: SONY0007641-7926 and SONY0008605-8786.

**The '472 Patent:**      On February 18, 2000, applicants of the '472 Patent filed an Information Disclosure Statement at the direction of Hans Mahr, listing certain results of a prior art search.   Pursuant to Fed. R. Civ. P. 33(d), Sony refers Vizio to additional information regarding these prior art searches contained in documents with the following production number ranges: SONY0008192-8374.

**The '182 Patent:**      Pursuant to Fed. R. Civ. P. 33(d), Sony refers Vizio to documents with the following production number ranges: SONY0008375-8604.

Sony is continuing to investigate the subject matter of this interrogatory and reserves the right to supplement its response to the extent it locates additional non-privileged, relevant documents or information responsive to this interrogatory.

**INTERROGATORY NO. 8:**

Separately for each Asserted Sony Claim, identify all facts concerning, the persons most knowledgeable about, and all documents concerning, any objective indicia that Sony contends supports nonobviousness of the claimed invention, including without limitation any commercial success of the claimed invention, any long felt but unmet need for the claimed invention, any

1  failure of others to develop the claimed invention, or any unexpected results of the claimed

2  invention.

3  **RESPONSE TO INTERROGATORY NO. 8:**

4        Sony incorporates each of its general objections by reference.  Sony objects to this request

5  as overbroad and unduly burdensome to the extent it seeks "all facts" and "all documents."  Sony

6  further objects to this request to the extent it calls for information protected from discovery by the

7  attorney-client privilege and/or the work product doctrine.   Materials and information referring or

8  relating to objective indicia of nonobviousness include those which would otherwise be responsive

9  to this request but were created by or at the direction of Sony's outside or in-house counsel and

10  professional legal advisers.  Such privileged materials and information include communications

11  containing legal advice by and between Sony's engineers and Sony's in-house legal advisers

12  responsible for patent prosecution, licensing, and litigation.   Such materials and information that

13  would otherwise be responsive to this request also include materials and information prepared or

14  exchanged in anticipation of litigation, including the case at hand and related litigations.   Sony

15  further objects to this request as calling for legal conclusions.   Sony further objects to this request

16  to the extent it seeks the confidential information of third parties and information not in the

17  possession, custody, or control of Sony.

18        Without waiving the foregoing general and specific objections and subject to those

19  objections, Sony responds as follows:

20        **The '626 Patent:**   The claims of the '626 patent exhibit some, if not all, of the secondary

21  considerations and objective indicia of non-obviousness enunciated in *Graham v. John Deere Co.*

22  *of Kansas City*, 383 U.S. 1 (1966) and its progeny.   For example, the inventions claimed in the

23  '626 patent addressed the long-felt but unmet need for easy-to-use on-screen displays for color

24  televisions and reflect the failure of others to develop suitable on-screen displays.   The sales of

25  Sony televisions and the products of Sony licensees that embody the patented inventions claimed

26  in the '626 patent demonstrate commercial success.   Sony's numerous licenses with other

27  television manufacturers that cover the '626 patent are evidence of commercial acquiescence to

28  the validity of the patent.

The '577 Patent:   The claims of the '577 patent exhibit some, if not all, of the secondary considerations and objective indicia of non-obviousness enunciated in *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1 (1966) and its progeny.   For example, the inventions claimed in the '577 patent addressed the long-felt but unmet need for the efficient display of high-quality subtitles without picture degradation on color televisions and reflect the failure of others to develop these techniques.   The sales of Sony televisions and the products of Sony licensees that embody the patented inventions claimed in the '577 patent demonstrate commercial success. Sony's numerous licenses with other television manufacturers that cover the '577 patent are evidence of commercial acquiescence to the validity of the patent.

The '542 Patent:   The claims of the '542 patent exhibit some, if not all, of the secondary considerations and objective indicia of non-obviousness enunciated in *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1 (1966) and its progeny.   For example, the inventions claimed in the '542 patent addressed the long-felt but unmet need for efficient processing of subtitle data and other data for display on color televisions and reflect the failure of others to develop such techniques.   The sales of Sony televisions and the products of Sony licensees that embody the patented inventions claimed in the '542 patent demonstrate commercial success.   Sony's numerous licenses with other television manufacturers that cover the '542 patent are evidence of commercial acquiescence to the validity of the patent.

The '847 Patent:   The claims of the '847 patent exhibit some, if not all, of the secondary considerations and objective indicia of non-obviousness enunciated in *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1 (1966) and its progeny.   For example, the inventions claimed in the '847 patent addressed the long-felt but unmet need for properly and efficiently processing and decoding subtitle data in real time and reflect the failure of others to develop such techniques. The sales of Sony televisions and the products of Sony licensees that embody the patented inventions claimed in the '847 patent, demonstrate commercial success.   Sony's numerous licenses with other television manufacturers that cover the '847 patent are evidence of commercial acquiescence to the validity of the patent.

1    **The '373 Patent:**   The claims of the '373 patent exhibit some, if not all, of the secondary

2    considerations and objective indicia of non-obviousness enunciated in *Graham v. John Deere Co.*

3    *of Kansas City*, 383 U.S. 1 (1966) and its progeny.   For example, the inventions claimed in the

4    '373 patent addressed the long-felt but unmet need for easy-to-use function control menus

5    displayed by color televisions and reflect the failure of others to develop suitable function control

6    menus.   The sales of Sony televisions and the products of Sony licensees that embody the

7    patented inventions claimed in the '373 patent demonstrate commercial success.   Sony's

8    numerous licenses with other television manufacturers that cover the '373 patent are evidence of

9    commercial acquiescence to the validity of the patent.

10    **The '614 Patent:**   The claims of the '614 patent exhibit some, if not all, of the secondary

11    considerations and objective indicia of non-obviousness enunciated in *Graham v. John Deere Co.*

12    *of Kansas City*, 383 U.S. 1 (1966) and its progeny.   For example, the inventions claimed in the

13    '614 patent addressed the long-felt but unmet need for easy-to-use on-screen menu displays on

14    color televisions and reflect the failure of others to develop such on-screen menu displays.   The

15    sales of Sony televisions and the products of Sony licensees that embody the patented inventions

16    claimed in the '614 patent demonstrate commercial success.   Sony's numerous licenses with other

17    television manufacturers that cover the '614 patent are evidence of commercial acquiescence to

18    the validity of the patent.

19    **The '055 Patent:**   The claims of the '055 patent exhibit some, if not all, of the secondary

20    considerations and objective indicia of non-obviousness enunciated in *Graham v. John Deere Co.*

21    *of Kansas City*, 383 U.S. 1 (1966) and its progeny.   For example, the inventions claimed in the

22    '055 patent addressed the long-felt but unmet need for secure transmission of video data to color

23    televisions and reflect the failure of others to develop suitable techniques for the secure

24    transmission of such data.   The sales of Sony televisions and the products of Sony licensees that

25    embody the patented inventions claimed in the '055 patent demonstrate commercial success.

26    Sony's numerous licenses with other television manufacturers that cover the '055 patent are

27    evidence of commercial acquiescence to the validity of the patent.

28

**The '468 Patent:** The claims of the '468 patent exhibit some, if not all, of the secondary considerations and objective indicia of non-obviousness enunciated in *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1 (1966) and its progeny. For example, the inventions claimed in the '468 patent addressed the long-felt but unmet need for secure transmission of video data to color televisions and reflect the failure of others to develop such techniques for secure transmission. The sales of Sony televisions and the products of Sony licensees that embody the patented inventions claimed in the '468 patent demonstrate commercial success. Sony's numerous licenses with other television manufacturers that cover the '468 patent are evidence of commercial acquiescence to the validity of the patent.

**The '472 Patent:** The claims of the '472 patent exhibit some, if not all, of the secondary considerations and objective indicia of non-obviousness enunciated in *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1 (1966) and its progeny. For example, the inventions claimed in the '472 patent addressed the long-felt but unmet need for an easy-to-use way of displaying and selecting a major and minor channel from a digital television broadcast signal and reflect the failure of others to develop such techniques. The sales of Sony televisions and the products of Sony licensees that embody the patented inventions claimed in the '472 patent demonstrate commercial success. Sony's numerous licenses with other television manufacturers that cover the '472 patent are evidence of commercial acquiescence to the validity of the patent.

**The '182 Patent:** The claims of the '182 patent exhibit some, if not all, of the secondary considerations and objective indicia of non-obviousness enunciated in *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1 (1966) and its progeny. For example, the inventions claimed in the '182 patent addressed the long-felt but unmet need for dynamic gamma correction of a color television video signal and reflect the failure of others to develop suitable techniques for dynamic gamma correction. The sales of Sony televisions and the products of Sony licensees that embody the patented inventions claimed in the '182 patent demonstrate commercial success. Sony's numerous licenses with other television manufacturers that cover the '182 patent are evidence of commercial acquiescence to the validity of the patent.

Sony notes that this list is non-exhaustive and there may be objective indicia or secondary considerations of non-obviousness that are not included in the response.  If Sony becomes aware of any such omissions through discovery or otherwise, it will supplement its response to include any nonprivileged, responsive information.  Pursuant to Federal Rule Civil Procedure 33(d), Vizio may also derive or ascertain information responsive to this interrogatory from at least the following documents produced in this matter:  SONY0009089-9219.

Sony is continuing to investigate the subject matter of this interrogatory and reserves the right to supplement its response to the extent it locates additional non-privileged, relevant documents or information responsive to this interrogatory.

**INTERROGATORY NO. 9:**

Separately for each Sony Patent, state the best mode of carrying out the claimed invention as known to the inventor(s) at the earliest effective United States filing date of each such patent, and identify the persons most knowledgeable and all documents and things that refer or relate thereto.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 9:**

Sony incorporates each of its general objections by reference.  Sony objects to this request as overbroad and unduly burdensome to the extent it seeks "all documents."  Sony further objects to this request to the extent it calls for information protected from discovery by the attorney-client privilege and/or the work product doctrine.  Sony further objects to this request as calling for legal conclusions.

Without waiving the foregoing general and specific objections and subject to those objections, Sony responds as follows:

35 U.S.C. § 112 states in part: "The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention."

The specifications of each of the patents-in-suit set forth the best mode contemplated by the inventors for carrying out the claimed inventions.  The persons most knowledgeable regarding the claimed inventions are:

**The '626 Patent:**   Toshihide Hayashi and Koki Tsumori.

**The '577, '542, and '847 Patents:**   Ikuo Tsukagoshi.

**The '373 Patent:**   Tomoko Ohyama, Yukiko Ohkura, Masaharu Fukumoto, Shigeyuki Sano, Yasuko Rokukawa, Shiro Endo, Kyosuke Oda, Yumiko Minakawa, and Chifumi Matsuura.

**The '614 Patent:**   Kazuto Mugura, Yuko Nishikawa, Joseph Saib, and Ludovic Legrand.

**The '055 and '468 Patents:**   Junichi Tsukamoto, Koichi Goto, and Shinichi Fukushima.

**The '472 Patent:**   Peter Rae Shintani and Shigeharu Kondo.

**The '182 Patent:**   Yoshifumi Yamakawa.

Pursuant to Federal Rule Civil Procedure 33(d), Vizio may derive or ascertain information responsive to this interrogatory from at least the following documents produced in this matter: SONY0008787-8825, SONY0008826-8850, SONY0008851-8888, SONY0008889-8927, SONY0008928-8952, SONY0008953-8984, SONY0008985-8997, SONY0008998-9037, SONY0009038-9061, SONY0009062-9088; SONY0026213-26214, SONY0026323-26366, SONY0026387-26398, SONY0028018-28059, SONY0037803-37804, SONY0037843-37850, and SONY0037869-37988.

Sony is continuing to investigate the subject matter of this interrogatory and reserves the right to supplement its response to the extent it locates additional non-privileged, relevant documents or information responsive to this interrogatory.

**INTERROGATORY NO. 10:**

Identify all Patented Sony Products by name and model number, and for each identified product list all Sony Patents that cover such product.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 10:**

Sony incorporates each of its general objections by reference.  Sony objects to this request as overbroad and unduly burdensome to the extent it seeks "all [] Products."  Sony further objects

1 to this request to the extent it calls for information protected from discovery by the attorney-client

2 privilege and/or the work product doctrine.

3     Without waiving the foregoing general and specific objections and subject to those

4 objections, Sony responds as follows:

5     Based on a reasonable investigation, which is ongoing, and on information and belief, Sony

6 has identified Sony products (listed by model number) that embody the subject matter of each of

7 the patents-in-suit. These products are identified in the charts below.

8 **The '626 Patent:**

| Products | First sold in U.S. |
|---|---|
| KD27FS130 | December 2005 |
| KD32FS130 | July 2005 |
| KD36FS130 | April 2005 |
| KD27FS170, KD32FS170, KD36FS170 | March 2006 |
| KD30XS955 | April 2004 |
| KD32XS945 | April 2005 |
| KD34XS955, KD36XS955 | April 2004 |
| KDE37XS955 | July 2004 |
| KDE42XS955 | July 2005 |
| KDE50XS955 | July 2004 |
| KDF42E2000 | August 2006 |
| KDF46E2000 | June 2006 |
| KDF50E2000 | May 2006 |
| KDF55E2000 | June 2006 |
| KDF42WE655, KDF50WE655, KDF55WF655, KDF60WF655 | April 2004 |
| KDF46E3000, KDF50E3000 | July 2007 |
| KDF55XS955, KDF60XS955 | April 2004 |
| KDF60XBR950, KDF70XBR950 | July 2003 |
| KDFE42A10, KDFE50A10 | July 2005 |
| KDL23S2000 | July 2006 |
| KDL26S2000, KDL32S2000, KDL40S2000 | February 2006 |
| KDL46S2000 | April 2006 |
| KDL23S2010, KDL26S2010, KDL32S2010 | August 2006 |
| KDL40S2010, KDL46S2010 | September 2006 |
| KDL26S3000 | June 2007 |
| KDL32S3000, KDL40S3000, KDL46S3000 | April 2007 |
| KDL32SL130, KDL40SL130 | June 2007 |
| KDL32S2400, KDL40S2400 | April 2006 |
| KDL32XBR6 | April 2008 |
| KDL37XBR6 | May 2008 |
| KDL40V4150 | May 2008 |
| KDL40V4100 | April 2008 |
| KDL42V4100, KDL46V4100, KDL52V4100 | May 2008 |

| Products | First sold in U.S. |
|---|---|
| KDL40W4100 | April 2008 |
| KDL46W4100 | May 2008 |
| KDL52W4100 | April 2008 |
| KDL46W4150 | May 2008 |
| KDL40S4100, KDL46S4100 | April 2008 |
| KDL40Z4100, KDL46Z4100 | September 2008 |
| KDL40V2500, KDL46V2500 | September 2006 |
| KDL40V3000, KDL46V3000 | July 2007 |
| KDL40VL130, KDL46VL130 | August 2007 |
| KDL40W3000, KDL46W3000 | July 2007 |
| KDL52W3000 | August 2007 |
| KDL40WL135 | April 2008 |
| KDL46WL135 | March 2008 |
| KDL52WL135 | January 2008 |
| KDL40XBR2, KDL46XBR2 | July 2006 |
| KDL40XBR3, KDL46XBR3 | August 2006 |
| KDL52XBR2, KDL52XBR3 | October 2006 |
| KDL40XBR4, KDL46XBR4, KDL52XBR4 | August 2007 |
| KDL40XBR5 | June 2007 |
| KDL46XBR5 | August 2007 |
| KDL52XBR5 | September 2007 |
| KDLV26XBR1, KDLV32XBR1, KDLV40XBR1 | August 2005 |
| KDP51WS550 | January 2003 |
| KDP57WS550, KDP65WS550 | April 2003 |
| KDP51WS655, KDP57WS655 | May 2004 |
| KDP57XBR2, KDP65XBR2 | July 2001 |
| KDS50A2000, KDS55A2000, KDS60A2000 | July 2006 |
| KDS50A2020, KDS55A2020, KDS60A2020 | February 2006 |
| KDS50A3000, KDS55A3000, KDS60A3000 | August 2007 |
| KDSR50XBR1 | September 2005 |
| KDSR60XBR1 | August 2005 |
| KDSR60XBR2, KDSR70XBR2 | September 2006 |
| KDL32L4000, KDL37L4000 | April 2008 |
| KDFE55A20, KDFE60A20 | May 2005 |
| KDL32S20L1, KDL40S20L1 | May 2006 |
| KDS50AL120 | August 2007 |
| KDS55AL120 | July 2007 |
| KDS60AL120 | April 2007 |
| KDL32XBR4 | May 2007 |
| KW34HD1 | November 1998 |
| KDL70XBR3 | February 2007 |
| KD34XBR2 | June 2001 |
| KD34XBR960 | April 2004 |
| KD34XBR970 | March 2006 |
| KDF37H1000 | April 2007 |
| KDL46V25L1 | September 2006 |
| KDL52WL130 | Setpember 2007 |
| KDLV32XBR2 | September 2006 |

CONFIDENTIAL

| Products | First sold in U.S. |
|---|---|
| KWP65HD1 | March 1999 |
| KDL19M4000 | April 2008 |
| KDL70XBR3 | February 2007 |
| KDS70Q006 | December 2004 |
| KDX46Q005 | September 2005 |

**The '577 Patent:**

| Products | First sold in U.S. |
|---|---|
| KD27FS130 | December 2005 |
| KD32FS130 | July 2005 |
| KD36FS130 | April 2005 |
| KD27FS170, KD32FS170, KD36FS170 | March 2006 |
| KD30XS955 | April 2004 |
| KD32XS945 | April 2005 |
| KD34XS955, KD36XS955 | April 2004 |
| KDE37XS955 | July 2004 |
| KDE42SX955 | July 2005 |
| KDE50XS955 | July 2004 |
| KDF42E2000 | August 2006 |
| KDF46E2000 | June 2006 |
| KDF50E2000 | May 2006 |
| KDF55E2000 | June 2006 |
| KDF42WE655, KDF50WE655, KDF55WF655, KDF60WF655 | April 2004 |
| KDF46E3000, KDF50E3000 | July 2007 |
| KDF55XS955, KDF60XS955 | April 2004 |
| KDF60XBR950, KDF70XBR950 | July 2003 |
| KDFE42A10, KDFE50A10 | July 2005 |
| KDL23S2000 | July 2006 |
| KDL26S2000, KDL32S2000, KDL40S2000 | February 2006 |
| KDL46S2000 | April 2006 |
| KDL23S2010, KDL26S2010, KDL32S2010 | August 2006 |
| KDL40S2010, KDL46S2010 | September 2006 |
| KDL26S3000 | June 2007 |
| KDL32S3000, KDL40S3000, KDL46S3000 | April 2007 |
| KDL32SL130, KDL40SL130 | June 2007 |
| KDL32S2400, KDL40S2400 | October 2006 |
| KDL32XBR6 | April 2008 |
| KDL37XBR6 | May 2008 |
| KDL40V4150 | May 2008 |
| KDL40V4100 | April 2008 |
| KDL42V4100, KDL46V4100, KDL52V4100 | May 2008 |
| KDL40W4100 | April 2008 |
| KDL46W4100 | May 2008 |
| KDL52W4100 | April 2008 |
| KDL46W4150 | May 2008 |
| KDL40S4100, KDL46S4100 | April 2008 |
| KDL40Z4100, KDL46Z4100 | September 2008 |
| KDL40V2500, KDL46V2500 | September 2006 |
| KDL40V3000, KDL46V3000 | July 2007 |
| KDL40VL130, KDL46VL130 | August 2007 |
| KDL40W3000, KDL46W3000 | July 2007 |
| KDL52W3000 | August 2007 |
| KDL40WL135 | April 2008 |

| Products | First sold in U.S. |
|---|---|
| KDL46WL135 | March 2008 |
| KDL52WL135 | January 2008 |
| KDL40XBR2, KDL46XBR2 | July 2006 |
| KDL40XBR3, KDL46XBR3 | August 2006 |
| KDL52XBR2, KDL52XBR3 | October 2006 |
| KDL40XBR4, KDL46XBR4, KDL52XBR4 | August 2007 |
| KDL40XBR5 | June 2007 |
| KDL46XBR5 | August 2007 |
| KDL52XBR5 | September 2007 |
| KDLV26XBR1, KDLV32XBR1, KDLV40XBR1 | August 2005 |
| KDP51WS550 | January 2003 |
| KDP57WS550, KDP65WS550 | April 2003 |
| KDP51WS655, KDP57WS655 | May 2004 |
| KDP57XBR2, KDP65XBR2 | July 2001 |
| KDS50A2000, KDS55A2000, KDS60A2000 | July 2006 |
| KDS50A2020, KDS55A2020, KDS60A2020 | February 2007 |
| KDS50A3000, KDS55A3000, KDS60A3000 | August 2007 |
| KDSR50XBR1 | September 2005 |
| KDSR60XBR1 | August 2005 |
| KDSR60XBR2, KDSR70XBR2 | September 2006 |
| KDL32L4000, KDL37L4000 | April 2008 |
| KDFE55A20, KDFE60A20 | May 2005 |
| KDL26M3000, KDL32M3000 | August 2007 |
| KDL37M3000 | October 2007 |
| KDL26ML130, KDL32ML130 | August 2007 |
| KDL26M4000 | April 2008 |
| KDL32M4000 | March 2008 |
| KDL37M4000 | April 2008 |
| KDL32N4000, KDL37N4000 | April 2008 |
| KDL26NL140, KDL32NL140, KDL37NL140 | June 2008 |
| KDL32S20L1, KDL40S20L1 | May 2006 |
| KDS50AL120 | August 2007 |
| KDS55AL120 | July 2007 |
| KDS60AL120 | April 2007 |
| KDL32XBR4 | May 2007 |
| KW34HD1 | November 1998 |
| KDL70XBR3 | February 2007 |
| KD34XBR2 | June 2001 |
| KD34XBR960 | April 2004 |
| KD34XBR970 | March 2006 |
| KDF37H1000 | April 2007 |
| KDL46V25L1 | September 2006 |
| KDL52WL130 | September 2007 |
| KDLV32XBR2 | September 2006 |
| KWP65HD1 | March 1999 |
| KDL19M4000 | April 2008 |
| KDL70XBR3 | February 2007 |
| KDS70Q006 | December 2004 |

CONFIDENTIAL

Case No. SA CV 08-01135-RGK (FMOx)

SUPPLEMENTAL RESPONSE TO VIZIO, INC.'S FIRST SET OF ROGS (NOS. 1-18)

Exhibit 11 Page 153

| Products | First sold in U.S. |
|---|---|
| KDX46Q005 | September 2005 |

**The '542 Patent:**

| Products | First sold in U.S. |
|---|---|
| KD27FS130 | December 2005 |
| KD32FS130 | July 2005 |
| KD36FS130 | April 2005 |
| KD27FS170, KD32FS170, KD36FS170 | March 2006 |
| KD30XS955 | April 2004 |
| KD32XS945 | April 2005 |
| KD34XS955, KD36XS955 | April 2004 |
| KDE37XS955 | July 2004 |
| KDE42SX955 | July 2005 |
| KDE50XS955 | July 2004 |
| KDF42E2000 | August 2006 |
| KDF46E2000 | June 2006 |
| KDF50E2000 | May 2006 |
| KDF55E2000 | June 2006 |
| KDF42WE655, KDF50WE655, KDF55WF655, KDF60WF655 | April 2004 |
| KDF46E3000, KDF50E3000 | July 2007 |
| KDF55XS955, KDF60XS955 | April 2004 |
| KDF60XBR950, KDF70XBR950 | July 2003 |
| KDFE42A10, KDFE50A10 | July 2005 |
| KDL23S2000 | July 2006 |
| KDL26S2000, KDL32S2000, KDL40S2000 | February 2006 |
| KDL46S2000 | April 2006 |
| KDL23S2010, KDL26S2010, KDL32S2010 | August 2006 |
| KDL40S2010, KDL46S2010 | September 2006 |
| KDL26S3000 | June 2007 |
| KDL32S3000, KDL40S3000, KDL46S3000 | April 2007 |
| KDL32SL130, KDL40SL130 | June 2007 |
| KDL32S2400, KDL40S2400 | October 2006 |
| KDL32XBR6 | April 2008 |
| KDL37XBR6 | May 2008 |
| KDL40V4150 | May 2008 |
| KDL40V4100 | April 2008 |
| KDL42V4100, KDL46V4100, KDL52V4100 | May 2008 |
| KDL40W4100 | April 2008 |
| KDL46W4100 | May 2008 |
| KDL52W4100 | April 2008 |
| KDL46W4150 | May 2008 |
| KDL40S4100, KDL46S4100 | April 2008 |
| KDL40Z4100, KDL46Z4100 | September 2008 |
| KDL40V2500, KDL46V2500 | September 2006 |
| KDL40V3000, KDL46V3000 | July 2007 |

CONFIDENTIAL                        -30-

Case No. SA CV 08-01135-RGK (FMOx)
SUPPLEMENTAL RESPONSE TO VIZIO, INC.'S FIRST SET OF ROGS (NOS. 1-18)
Exhibit 11 Page 154

| Products | First sold in U.S. |
|---|---|
| KDL40VL130, KDL46VL130 | August 2007 |
| KDL40W3000, KDL46W3000 | July 2007 |
| KDL52W3000 | August 2007 |
| KDL40WL135 | April 2008 |
| KDL46WL135 | March 2008 |
| KDL52WL135 | January 2008 |
| KDL40XBR2, KDL46XBR2 | July 2006 |
| KDL40XBR3, KDL46XBR3 | August 2006 |
| KDL52XBR2, KDL52XBR3 | October 2006 |
| KDL40XBR4, KDL46XBR4, KDL52XBR4 | August 2007 |
| KDL40XBR5 | June 2007 |
| KDL46XBR5 | August 2007 |
| KDL52XBR5 | September 2007 |
| KDLV26XBR1, KDLV32XBR1, KDLV40XBR1 | August 2005 |
| KDP51WS550 | January 2003 |
| KDP57WS550, KDP65WS550 | April 2003 |
| KDP51WS655, KDP57WS655 | May 2004 |
| KDP57XBR2, KDP65XBR2 | July 2001 |
| KDS50A2000, KDS55A2000, KDS60A2000 | July 2006 |
| KDS50A2020, KDS55A2020, KDS60A2020 | February 2007 |
| KDS50A3000, KDS55A3000, KDS60A3000 | August 2007 |
| KDSR50XBR1 | September 2005 |
| KDSR60XBR1 | August 2005 |
| KDSR60XBR2, KDSR70XBR2 | September 2006 |
| KDL32L4000, KDL37L4000 | April 2008 |
| KDFE55A20, KDFE60A20 | May 2005 |
| KDL26M3000, KDL32M3000 | August 2007 |
| KDL37M3000 | October 2007 |
| KDL26ML130, KDL32ML130 | August 2007 |
| KDL26M4000 | April 2008 |
| KDL32M4000 | March 2008 |
| KDL37M4000 | April 2008 |
| KDL32N4000, KDL37N4000 | April 2008 |
| KDL26NL140, KDL32NL140, KDL37NL140 | June 2008 |
| KDL32S20L1, KDL40S20L1 | May 2006 |
| KDS50AL120 | August 2007 |
| KDS55AL120 | July 2007 |
| KDS60AL120 | April 2007 |
| KDL32XBR4 | May 2007 |
| KW34HD1 | November 1998 |
| KDL70XBR3 | February 2007 |
| KD34XBR2 | June 2001 |
| KD34XBR960 | April 2004 |
| KD34XBR970 | March 2006 |
| KDF37H1000 | April 2007 |
| KDL46V25L1 | September 2006 |
| KDL52WL130 | September 2007 |
| KDLV32XBR2 | September 2006 |

CONFIDENTIAL Case No. SA CV 08-01135-RGK (FMOx)
SUPPLEMENTAL RESPONSE TO VIZIO, INC.'S FIRST SET OF ROGS (NOS. 1-18)
Exhibit 11 Page 155

| Products | First sold in U.S. |
|---|---|
| KWP65HD1 | March 1999 |
| KDL19M4000 | April 2008 |
| KDL70XBR3 | February 2007 |
| KDS70Q006 | December 2004 |
| KDX46Q005 | September 2005 |

**The '847 Patent:**

| Products | First sold in U.S. |
|---|---|
| KD27FS130 | December 2005 |
| KD32FS130 | July 2005 |
| KD36FS130 | April 2005 |
| KD27FS170, KD32FS170, KD36FS170 | March 2006 |
| KD30XS955 | April 2004 |
| KD32XS945 | April 2005 |
| KD34XS955, KD36XS955 | April 2004 |
| KDE37XS955 | July 2004 |
| KDE42SX955 | July 2005 |
| KDE50XS955 | July 2004 |
| KDF42E2000 | August 2006 |
| KDF46E2000 | June 2006 |
| KDF50E2000 | May 2006 |
| KDF55E2000 | June 2006 |
| KDF42WE655, KDF50WE655, KDF55WF655, KDF60WF655 | April 2004 |
| KDF46E3000, KDF50E3000 | July 2007 |
| KDF55XS955, KDF60XS955 | April 2004 |
| KDF60XBR950, KDF70XBR950 | July 2003 |
| KDFE42A10, KDFE50A10 | July 2005 |
| KDL23S2000 | July 2006 |
| KDL26S2000, KDL32S2000, KDL40S2000 | February 2006 |
| KDL46S2000 | April 2006 |
| KDL23S2010, KDL26S2010, KDL32S2010 | August 2006 |
| KDL40S2010, KDL46S2010 | September 2006 |
| KDL26S3000 | June 2007 |
| KDL32S3000, KDL40S3000, KDL46S3000 | April 2007 |
| KDL32SL130, KDL40SL130 | June 2007 |
| KDL32S2400, KDL40S2400 | October 2006 |
| KDL32XBR6 | April 2008 |
| KDL37XBR6 | May 2008 |
| KDL40V4150 | May 2008 |
| KDL40V4100 | April 2008 |
| KDL42V4100, KDL46V4100, KDL52V4100 | May 2008 |
| KDL40W4100 | April 2008 |
| KDL46W4100 | May 2008 |
| KDL52W4100 | April 2008 |
| KDL46W4150 | May 2008 |

| Products | First sold in U.S. |
|---|---|
| KDL40S4100, KDL46S4100 | April 2008 |
| KDL40Z4100, KDL46Z4100 | September 2008 |
| KDL40V2500, KDL46V2500 | September 2006 |
| KDL40V3000, KDL46V3000 | July 2007 |
| KDL40VL130, KDL46VL130 | August 2007 |
| KDL40W3000, KDL46W3000 | July 2007 |
| KDL52W3000 | August 2007 |
| KDL40WL135 | April 2008 |
| KDL46WL135 | March 2008 |
| KDL52WL135 | January 2008 |
| KDL40XBR2, KDL46XBR2 | July 2006 |
| KDL40XBR3, KDL46XBR3 | August 2006 |
| KDL52XBR2, KDL52XBR3 | October 2006 |
| KDL40XBR4, KDL46XBR4, KDL52XBR4 | August 2007 |
| KDL40XBR5 | June 2007 |
| KDL46XBR5 | August 2007 |
| KDL52XBR5 | September 2007 |
| KDLV26XBR1, KDLV32XBR1, KDLV40XBR1 | August 2005 |
| KDP51WS550 | January 2003 |
| KDP57WS550, KDP65WS550 | April 2003 |
| KDP51WS655, KDP57WS655 | May 2004 |
| KDP57XBR2, KDP65XBR2 | July 2001 |
| KDS50A2000, KDS55A2000, KDS60A2000 | July 2006 |
| KDS50A2020, KDS55A2020, KDS60A2020 | February 2007 |
| KDS50A3000, KDS55A3000, KDS60A3000 | August 2007 |
| KDSR50XBR1 | September 2005 |
| KDSR60XBR1 | August 2005 |
| KDSR60XBR2, KDSR70XBR2 | September 2006 |
| KDL32L4000, KDL37L4000 | April 2008 |
| KDFE55A20, KDFE60A20 | May 2005 |
| KDL26M3000, KDL32M3000 | August 2007 |
| KDL37M3000 | October 2007 |
| KDL26ML130, KDL32ML130 | August 2007 |
| KDL26M4000 | April 2008 |
| KDL32M4000 | March 2008 |
| KDL37M4000 | April 2008 |
| KDL32N4000, KDL37N4000 | April 2008 |
| KDL26NL140, KDL32NL140, KDL37NL140 | June 2008 |
| KDL32S20L1, KDL40S20L1 | May 2006 |
| KDS50AL120 | August 2007 |
| KDS55AL120 | July 2007 |
| KDS60AL120 | April 2008 |
| KDL32XBR4 | May 2007 |
| KW34HD1 | November 1998 |
| KDL70XBR3 | February 2007 |
| KD34XBR2 | June 2001 |
| KD34XBR960 | April 2004 |
| KD34XBR970 | March 2006 |

CONFIDENTIAL

Case No. SA CV 08-01135-RGK (FMOx)
SUPPLEMENTAL RESPONSE TO VIZIO. INC.'S FIRST SET OF ROGS (NOS. 1-18)
Exhibit 11 Page 157

| Products | First sold in U.S. |
|---|---|
| KDF37H1000 | April 2007 |
| KDL46V25L1 | September 2006 |
| KDL52WL130 | September 2007 |
| KDLV32XBR2 | September 2006 |
| KWP65HD1 | March 1999 |
| KDL19M4000 | April 2008 |
| KDL70XBR3 | February 2007 |
| KDS70Q006 | December 2004 |
| KDX46Q005 | September 2005 |

**The '373 Patent:**

| Products | First sold in U.S. |
|---|---|
| KD27FS130 | December 2005 |
| KD32FS130 | July 2005 |
| KD36FS130 | April 2005 |
| KD27FS170, KD32FS170, KD36FS170 | March 2006 |
| KD30XS955 | April 2004 |
| KD32XS945 | April 2005 |
| KD34XS955, KD36XS955 | April 2004 |
| KDE37XS955 | July 2004 |
| KDE42SX955 | July 2005 |
| KDE50XS955 | July 2004 |
| KDF42E2000 | August 2006 |
| KDF46E2000 | June 2006 |
| KDF50E2000 | May 2006 |
| KDF55E2000 | June 2006 |
| KDF42WE655, KDF50WE655, KDF55WF655, KDF60WF655 | April 2004 |
| KDF46E3000, KDF50E3000 | July 2007 |
| KDF55XS955, KDF60XS955 | April 2004 |
| KDF60XBR950, KDF70XBR950 | July 2003 |
| KDFE42A10, KDFE50A10 | July 2005 |
| KDL23S2000 | July 2006 |
| KDL26S2000, KDL32S2000, KDL40S2000 | February 2006 |
| KDL46S2000 | April 2006 |
| KDL23S2010, KDL26S2010, KDL32S2010 | August 2006 |
| KDL40S2010, KDL46S2010 | September 2006 |
| KDL26S3000 | June 2007 |
| KDL32S3000, KDL40S3000, KDL46S3000 | April 2007 |
| KDL32SL130, KDL40SL130 | June 2007 |
| KDL32S2400, KDL40S2400 | October 2006 |
| KDL32XBR6 | April 2008 |
| KDL37XBR6 | May 2008 |
| KDL40V4150 | May 2008 |
| KDL40V4100 | April 2008 |
| KDL42V4100, KDL46V4100, KDL52V4100 | May 2008 |

CONFIDENTIAL

| Products | First sold in U.S. |
|---|---|
| KDL40W4100 | April 2008 |
| KDL46W4100 | May 2008 |
| KDL52W4100 | April 2008 |
| KDL46W4150 | May 2008 |
| KDL40S4100, KDL46S4100 | April 2008 |
| KDL40Z4100, KDL46Z4100 | September 2008 |
| KDL40V2500, KDL46V2500 | September 2006 |
| KDL40V3000, KDL46V3000 | July 2007 |
| KDL40VL130, KDL46VL130 | August 2007 |
| KDL40W3000, KDL46W3000 | July 2007 |
| KDL52W3000 | August 2007 |
| KDL40WL135 | April 2008 |
| KDL46WL135 | March 2008 |
| KDL52WL135 | January 2008 |
| KDL40XBR2, KDL46XBR2 | July 2006 |
| KDL40XBR3, KDL46XBR3 | August 2006 |
| KDL52XBR2, KDL52XBR3 | October 2006 |
| KDL40XBR4, KDL46XBR4, KDL52XBR4 | August 2007 |
| KDL40XBR5 | June 2007 |
| KDL46XBR5 | August 2007 |
| KDL52XBR5 | September 2007 |
| KDLV26XBR1, KDLV32XBR1, KDLV40XBR1 | August 2005 |
| KDP51WS550 | January 2003 |
| KDP57WS550, KDP65WS550 | April 2003 |
| KDP51WS655, KDP57WS655 | May 2004 |
| KDP57XBR2, KDP65XBR2 | July 2001 |
| KDS50A2000, KDS55A2000, KDS60A2000 | July 2006 |
| KDS50A2020, KDS55A2020, KDS60A2020 | February 2006 |
| KDS50A3000, KDS55A3000, KDS60A3000 | August 2007 |
| KDSR50XBR1 | September 2005 |
| KDSR60XBR1 | August 2005 |
| KDSR60XBR2, KDSR70XBR2 | September 2006 |
| KDL32L4000, KDL37L4000 | April 2008 |
| KDFE55A20, KDFE60A20 | May 2005 |
| KDL26M4000, KDL32M4000, KDL37M4000 | 2008 |
| KDL32N4000, KDL37N4000 | April 2008 |
| KDL26NL140 | June 2008 |
| KDL32S20L1, KDL40S20L1 | May 2006 |
| KDS50AL120 | August 2007 |
| KDS55AL120 | July 2007 |
| KDS60AL120 | April 2007 |
| KDL32XBR4 | May 2007 |
| KW34HD1 | November 1998 |
| KDL70XBR3 | February 2007 |
| KD34XBR2 | June 2001 |
| KD34XBR960 | April 2004 |
| KD34XBR970 | March 2006 |
| KDF37H1000 | April 2007 |

CONFIDENTIAL

Case No. SA CV 08-01135-RGK (FMOx)
SUPPLEMENTAL RESPONSE TO VIZIO, INC.'S FIRST SET OF ROGS (NOS. 1-18)

Exhibit 11 Page 159

| Products | First sold in U.S. |
|---|---|
| KDL46V25L1 | Semptember 2006 |
| KDL52WL130 | September 2007 |
| KDLV32XBR2 | September 2006 |
| KWP65HD1 | March 1999 |
| KDL19M4000 | April 2008 |
| KDL70XBR3 | February 2007 |
| KDS70Q006 | December 2004 |
| KDX46Q005 | September 2005 |

**The '614 Patent:**

| Products | First sold in U.S. |
|---|---|
| SAT-A55 | 2000 |
| SAT-B55 | 2000 |
| SAT-A60 | 2001 |
| SAT-B60 | 2001 |
| SAT-A65 | 2001 |
| SAT-B65 | 2001 |
| SAT-A65A | 2002 |
| SAT-B65A | 2002 |
| SAT-HD100 | 2001 |
| SAT-HD200 | 2002 |
| SAT-HD300 | 2004 |

**The '055 and '468 Patents:**

| Products | Date first sold in U.S. |
|---|---|
| KD30XS955 | April 2004 |
| KD32XS945 | April 2005 |
| KD34XS955, KD36XS955 | April 2004 |
| KDE37XS955 | July 2004 |
| KDE42SX955 | July 2005 |
| KDE50XS955 | July 2004 |
| KDF42E2000 | August 2006 |
| KDF46E2000 | June 2006 |
| KDF50E2000 | May 2006 |
| KDF55E2000 | June 2006 |
| KDF42WE655, KDF50WE655, KDF55WF655, KDF60WF655 | April 2004 |
| KDF46E3000, KDF50E3000 | July 2007 |
| KDF55XS955, KDF60XS955 | April 2004 |
| KDF60XBR950, KDF70XBR950 | July 2003 |
| KDFE42A10, KDFE50A10 | July 2005 |
| KDL23S2000 | July 2006 |
| KDL26S2000, KDL32S2000, KDL40S2000 | February 2006 |

CONFIDENTIAL

| Products | Date first sold in U.S. |
|---|---|
| KDL46S2000 | April 2006 |
| KDL23S2010, KDL26S2010, KDL32S2010 | August 2006 |
| KDL40S2010, KDL46S2010 | September 2006 |
| KDL26S3000 | June 2007 |
| KDL32S3000, KDL40S3000, KDL46S3000 | April 2007 |
| KDL32SL130, KDL40SL130 | June 2007 |
| KDL32S2400, KDL40S2400 | October 2006 |
| KDL32XBR6 | April 2008 |
| KDL37XBR6 | May 2008 |
| KDL40V4150 | May 2008 |
| KDL40V4100 | April 2008 |
| KDL42V4100, KDL46V4100, KDL52V4100 | May 2008 |
| KDL40W4100 | April 2008 |
| KDL46W4100 | May 2008 |
| KDL52W4100 | April 2008 |
| KDL46W4150 | May 2008 |
| KDL40S4100, KDL46S4100 | April 2008 |
| KDL40Z4100, KDL46Z4100 | September 2008 |
| KDL40V2500, KDL46V2500 | September 2006 |
| KDL40V3000, KDL46V3000 | July 2007 |
| KDL40VL130, KDL46VL130 | August 2007 |
| KDL40W3000, KDL46W3000 | July 2007 |
| KDL52W3000 | August 2007 |
| KDL40WL135 | April 2008 |
| KDL46WL135 | March 2008 |
| KDL52WL135 | January 2008 |
| KDL40XBR2, KDL46XBR2 | July 2006 |
| KDL40XBR3, KDL46XBR3 | August 2006 |
| KDL52XBR2, KDL52XBR3 | October 2006 |
| KDL40XBR4, KDL46XBR4, KDL52XBR4 | August 2007 |
| KDL40XBR5 | June 2007 |
| KDL46XBR5 | August 2007 |
| KDL52XBR5 | September 2007 |
| KDLV26XBR1, KDLV32XBR1, KDLV40XBR1 | August 2005 |
| KDP51WS550 | January 2003 |
| KDP57WS550, KDP65WS550 | April 2003 |
| KDP51WS655, KDP57WS655 | May 2004 |
| KDS50A2000, KDS55A2000, KDS60A2000 | July 2006 |
| KDS50A2020, KDS55A2020, KDS60A2020 | February 2006 |
| KDS50A3000, KDS55A3000, KDS60A3000 | August 2007 |
| KDSR50XBR1 | September 2005 |
| KDSR60XBR1 | August 2005 |
| KDSR60XBR2, KDSR70XBR2 | September 2006 |
| KDL32L4000, KDL37L4000 | April 2008 |
| KDFE55A20, KDFE60A20 | May 2005 |
| KDL26M3000, KDL32M3000 | August 2007 |
| KDL37M3000 | October 2007 |
| KDL26ML130, KDL32ML130 | August 2007 |

CONFIDENTIAL

Case No. SA CV 08-01135-RGK (FMOx)
SUPPLEMENTAL RESPONSE TO VIZIO, INC.'S FIRST SET OF ROGS (NOS. 1-18)
Exhibit 11 Page 161

| Products | Date first sold in U.S. |
|---|---|
| KDL26M4000 | April 2008 |
| KDL32M4000 | March 2008 |
| KDL37M4000 | April 2008 |
| KDL32N4000, KDL37N4000 | April 2008 |
| KDL26NL140, KDL32NL140, KDL37NL140 | June 2008 |
| KDL32S20L1, KDL40S20L1 | May 2006 |
| KDS50AL120 | August 2007 |
| KDS55AL120 | July 2007 |
| KDS60AL120 | April 2007 |
| KDL32XBR4 | May 2007 |
| KDL70XBR3 | February 2007 |
| KD34XBR960 | April 2004 |
| KD34XBR970 | March 2006 |
| KDF37H1000 | April 2007 |
| KDL46V25L1 | September 2006 |
| KDL52WL130 | September 2007 |
| KDLV32XBR2 | September 2006 |
| KDL19M4000 | April 2008 |
| KDL70XBR3 | February 2007 |
| KDS70Q006 | December 2004 |
| KDX46Q005 | September 2005 |

**The '472 Patent:**

| Products | Date first sold in U.S. |
|---|---|
| KDF60XBR950, KDF70XBR950 | July 2003 |
| KDP51WS550 | January 2003 |
| KDP57WS550, KDP65WS550 | April 2003 |
| KDP57XBR2, KDP65XBR2 | July 2001 |
| KDS50A2000, KDS55A2000, KDS60A2000 | July 2006 |
| KW34HD1 | November 1998 |
| KD34XBR2 | June 2001 |
| KWP65HD1 | March 1999 |

**The '182 Patent:**

| Products | Date first sold in U.S. |
|---|---|
| PFM-500A1W | 1998 |
| KZ-32TS1, KZ-42TS1 | 2001 |
| KE-32TS2, KE-42TS2 | 2002 |
| KDF46E3000, KDF50E3000 | July 2007 |
| KDFE42A10, KDFE50A10 | July 2005 |
| KDL23S2000 | July 2006 |
| KDL26S2000, KDL32S2000, KDL40S2000 | February 2006 |
| KDL46S2000 | April 2006 |

| Products | Date first sold in U.S. |
|---|---|
| KDL23S2010, KDL26S2010, KDL32S2010 | August 2006 |
| KDL40S2010, KDL46S2010 | September 2006 |
| KDL26S3000 | June 2007 |
| KDL32S3000, KDL40S3000, KDL46S3000 | April 2007 |
| KDL32SL130, KDL40SL130 | June 2007 |
| KDL32S2400, KDL40S2400 | October 2006 |
| KDL32XBR6 | April 2008 |
| KDL37XBR6 | May 2008 |
| KDL40V4150 | May 2008 |
| KDL40V4100 | April 2008 |
| KDL42V4100, KDL46V4100, KDL52V4100 | May 2008 |
| KDL40W4100 | April 2008 |
| KDL46W4100 | May 2008 |
| KDL52W4100 | April 2008 |
| KDL46W4150 | May 2008 |
| KDL40S4100, KDL46S4100 | April 2008 |
| KDL40Z4100, KDL46Z4100 | September 2008 |
| KDL40V2500, KDL46V2500 | September 2006 |
| KDL40V3000, KDL46V3000 | July 2007 |
| KDL40VL130, KDL46VL130 | August 2007 |
| KDL40W3000, KDL46W3000 | July 2007 |
| KDL52W3000 | August 2007 |
| KDL40WL135 | April 2008 |
| KDL46WL135 | March 2008 |
| KDL52WL135 | January 2008 |
| KDL40XBR2, KDL46XBR2 | July 2006 |
| KDL40XBR3, KDL46XBR3 | August 2006 |
| KDL52XBR2, KDL52XBR3 | October 2006 |
| KDL40XBR4, KDL46XBR4, KDL52XBR4 | August 2007 |
| KDL40XBR5 | June 2007 |
| KDL46XBR5 | August 2007 |
| KDL52XBR5 | September 2007 |
| KDLV26XBR1, KDLV32XBR1, KDLV40XBR1 | August 2005 |
| KDS50A2000, KDS55A2000, KDS60A2000 | July 2006 |
| KDS50A2020, KDS55A2020, KDS60A2020 | February 2007 |
| KDS50A3000, KDS55A3000, KDS60A3000 | August 2007 |
| KDSR50XBR1 | September 2005 |
| KDSR60XBR1 | August 2005 |
| KDSR60XBR2, KDSR70XBR2 | September 2006 |
| KDL32L4000, KDL37L4000 | April 2008 |
| KDS50AL120 | August 2007 |
| KDS55AL120 | July 2007 |
| KDS60AL120 | April 2007 |
| KDL32XBR4 | May 2007 |
| KDL70XBR3 | February 2005 |
| KDL46V25L1 | September 2006 |
| KDL52WL130 | September 2007 |
| KDLV32XBR2 | September 2006 |

| Products | Date first sold in U.S. |
|---|---|
| KDL70XBR3 | February 2007 |
| KDS70Q006 | December 2004 |
| KDX46Q005 | September 2005 |

Sony is continuing to investigate Sony products that embody the subject matter of the patents-in-suit and reserves the right to supplement this response as additional information becomes available.

**INTERROGATORY NO. 11:**

Separately for each Patented Sony Product, state the date of the earliest public use, sale, and offer for sale of such product in the United States, and identify the persons most knowledgeable and all facts and documents that refer or relate to such first public use, sale, and offer for sale.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 11:**

Sony incorporates each of its general objections by reference. Sony objects to this request as overbroad and unduly burdensome to the extent it seeks "all facts and documents." Sony further objects to this request to the extent it calls for information protected from discovery by the attorney-client privilege and/or the work product doctrine.

Without waiving the foregoing general and specific objections and subject to those objections, Sony responds as follows:

Sony incorporates by reference its response to Interrogatory No. 10, above.

**The '626 Patent:** After a reasonable investigation, on information and belief, Sony is unaware of any public disclosure of the inventions claimed in the asserted claims of the '626 patent prior to the public disclosure that resulted from the patent prosecution process. Further, Sony is unaware of any sale, offer for sale, or public use of the inventions claimed in the asserted claims of the '626 patent in the U.S. more than one year prior to the date of the application for patent in the U.S. Based on the best of information available to Sony at this time, the inventions claimed in the '626 patent were first sold or offered for sale in the U.S. on or about November 1998.

1    **The '577 Patent:**  After a reasonable investigation, on information and belief, Sony is

2    unaware of any public disclosure of the inventions claimed in the asserted claims of the '577

3    patent prior to the public disclosure that resulted from the patent prosecution process.  Further,

4    Sony is unaware of any sale, offer for sale, or public use of the inventions claimed in the asserted

5    claims of the '577 patent in the U.S. more than one year prior to the date of the application for

6    patent in the U.S.  Based on the best of information available to Sony at this time, the inventions

7    claimed in the '577 patent were first sold or offered for sale in the U.S. in November 1998.

8    **The '542 Patent:**  After a reasonable investigation, on information and belief, Sony is

9    unaware of any public disclosure of the inventions claimed in the asserted claims of the '542

10   patent prior to the public disclosure that resulted from the patent prosecution process.  Further,

11   Sony is unaware of any sale, offer for sale, or public use of the inventions claimed in the asserted

12   claims of the '542 patent in the U.S. more than one year prior to the date of the application for

13   patent in the U.S.  Based on the best of information available to Sony at this time, the inventions

14   claimed in the '542 patent were first sold or offered for sale in the U.S. in November 1998.

15   **The '847 Patent:**  After a reasonable investigation, on information and belief, Sony is

16   unaware of any public disclosure of the inventions claimed in the asserted claims of the '847

17   patent prior to the public disclosure that resulted from the patent prosecution process.  Further,

18   Sony is unaware of any sale, offer for sale, or public use of the inventions claimed in the asserted

19   claims of the '847 patent in the U.S. more than one year prior to the date of the application for

20   patent in the U.S.  Based on the best of information available to Sony at this time, the inventions

21   claimed in the '847 patent were first sold or offered for sale in the U.S. in November 1998.

22   **The '373 Patent:**  After a reasonable investigation, on information and belief, Sony is

23   unaware of any public disclosure of the inventions claimed in the asserted claims of the '373

24   patent prior to the public disclosure that resulted from the patent prosecution process.  Further,

25   Sony is unaware of any sale, offer for sale, or public use of the inventions claimed in the asserted

26   claims of the '373 patent in the U.S. more than one year prior to the date of the application for

27   patent in the U.S.  Based on the best of information available to Sony at this time, the inventions

28   claimed in the '373 patent were first sold or offered for sale in the U.S. in November 1998.

1      **The '614 Patent:**  After a reasonable investigation, on information and belief, Sony is

2  unaware of any public disclosure of the inventions claimed in the asserted claims of the '614

3  patent prior to the public disclosure that resulted from the patent prosecution process.  Further,

4  Sony is unaware of any sale, offer for sale, or public use of the inventions claimed in the asserted

5  claims of the '614 patent in the U.S. more than one year prior to the date of the application for

6  patent in the U.S.  Based on the best of information available to Sony at this time, the inventions

7  claimed in the '614 patent were first sold or offered for sale in the U.S. in 2000.

8      **The '055 Patent:**  After a reasonable investigation, on information and belief, Sony is

9  unaware of any public disclosure of the inventions claimed in the asserted claims of the '055

10  patent prior to the public disclosure that resulted from the patent prosecution process.  Further,

11  Sony is unaware of any sale, offer for sale, or public use of the inventions claimed in the asserted

12  claims of the '055 patent in the U.S. more than one year prior to the date of the application for

13  patent in the U.S.  Based on the best of information available to Sony at this time, the inventions

14  claimed in the '055 patent were first sold or offered for sale in the U.S. in January 2003.

15      **The '468 Patent:**  After a reasonable investigation, on information and belief, Sony is

16  unaware of any public disclosure of the inventions claimed in the asserted claims of the '468

17  patent prior to the public disclosure that resulted from the patent prosecution process.  Further,

18  Sony is unaware of any sale, offer for sale, or public use of the inventions claimed in the asserted

19  claims of the '468 patent in the U.S. more than one year prior to the date of the application for

20  patent in the U.S.  Based on the best of information available to Sony at this time, the inventions

21  claimed in the '468 patent were first sold or offered for sale in the U.S. in January 2003.

22      **The '472 Patent:**  After a reasonable investigation, on information and belief, Sony is

23  unaware of any public disclosure of the inventions claimed in the asserted claims of the '472

24  patent prior to the public disclosure that resulted from the patent prosecution process.  Further,

25  Sony is unaware of any sale, offer for sale, or public use of the inventions claimed in the asserted

26  claims of the '472 patent in the U.S. more than one year prior to the date of the application for

27  patent in the U.S.  Based on the best of information available to Sony at this time, the inventions

28  claimed in the '472 patent were first sold or offered for sale in the U.S. in November 1998.

1    **The '182 Patent:**   After a reasonable investigation, on information and belief, Sony is

2    unaware of any public disclosure of the inventions claimed in the asserted claims of the '182

3    patent prior to the public disclosure that resulted from the patent prosecution process.   Further,

4    Sony is unaware of any sale, offer for sale, or public use of the inventions claimed in the asserted

5    claims of the '182 patent in the U.S. more than one year prior to the date of the application for

6    patent in the U.S.   Based on the best of information available to Sony at this time, the inventions

7    claimed in the '182 patent were first sold or offered for sale in the U.S. in 1998.

8         Sony notes that discovery is ongoing and that it will supplement this response if it becomes

9    aware of any additional non-privileged, relevant information responsive to this interrogatory.

10   **INTERROGATORY NO. 12:**

11        Describe in detail the total amount of damages allegedly sustained by Sony due to VIZIO's

12   alleged infringement. A complete answer to this interrogatory will describe in detail Sony's theory

13   of damages, the method used to calculate damages including without limitation whether the

14   calculation is based on lost profits, reasonable royalty, or some other measure of damages,

15   whether Sony alleges it is entitled to prejudgment interest on such damages and, if so, the interest

16   rate and how that interest rate was determined, identify the persons most knowledgeable (other

17   than outside counsel), and identify all documents that refer or relate thereto.

18   **RESPONSE TO INTERROGATORY NO. 12:**

19        Sony incorporates each of its general objections by reference.   Sony objects to this request

20   as premature to the extent it seeks a complete answer at this early stage of discovery.   Sony

21   further objects to this request as premature to the extent that it seeks information that is more

22   properly the subject of expert testimony.   Sony also objects to this request as over broad and

23   unduly burdensome to the extent it seeks "all documents."   Sony further objects to this request as

24   calling for legal conclusions.   Sony further objects to this request to the extent it calls for

25   information protected from discovery by the attorney-client privilege and/or the work product

26   doctrine.   Documents that refer or relate to the factual basis for Sony's computation of damages

27   include that which would otherwise be responsive to this request but were created by or at the

28   direction of Sony's outside or in-house counsel and professional legal advisers.   Such privileged

1 materials and information include communications containing legal advice by and between Sony's

2 engineers and Sony's in-house legal advisers responsible for patent prosecution, licensing, and

3 litigation. Other documents that would otherwise be responsive to this request also include

4 materials and information prepared or exchanged in anticipation of litigation, including the case at

5 hand and related litigations. Sony objects to this interrogatory to the extent it seeks information

6 that contains the confidential information of third parties.

7 Without waiving the foregoing general and specific objections and subject to those

8 objections, Sony responds as follows:

9 As discovery is in its earliest stages and Vizio has not produced any documents in response

10 to Sony's requests for production, Sony is still evaluating the damages it intends to seek from

11 Vizio, which "in no event [shall] be less than a reasonable royalty for the use made of the

12 invention[s] by [Vizio], together with interest and costs fixed by the court." 35 U.S.C. § 284.

13 Accordingly, Sony has not yet made a final determination as to the form of damages, the method

14 of computing said damages, the period of time for those damages, or whether it will seek lost

15 profits. Sony reserves the right to supplement this response once the parties have engaged in

16 substantive fact and expert discovery. In addition, even though a Protective Order has not yet

17 been entered, Sony has been and continues to work diligently to obtain any necessary consents

18 from third parties with respect to certain licenses and royalty reports, and pursuant to Fed. R. Civ.

19 P. 33(d), Sony refers Vizio to those documents to be produced by Sony.

20 **INTERROGATORY NO. 13:**

21 Identify all agreements, assignments, or licenses relating to patents on digital television

22 technology executed by Sony, the persons most knowledgeable thereof and all documents that

23 refer or relate thereto.

24 **RESPONSE TO INTERROGATORY NO. 13:**

25 Sony incorporates each of its general objections by reference. Sony objects to this request

26 as overbroad and unduly burdensome to the extent it seeks "all agreements, assignments, or

27 licenses relating to patents on digital television technology executed by Sony." Sony objects to

28 this request as overbroad and unduly burdensome to the extent it seeks information relating to

1   agreements, assignments, or licenses that are not relevant to the issues presented by this case or

2   likely to lead to admissible evidence, including documents reflecting extraterritorial licensing

3   activity.   Sony also objects to this request to the extent it seeks confidential information prior to

4   the entry of a protective order.   Moreover, Sony objects to this request to the extent it seeks the

5   confidential information of third parties.

6       Without waiving the foregoing general and specific objections and subject to those

7   objections, Sony responds as follows:

8       Even though a Protective Order has not yet been entered, Sony has been and continues to

9   work diligently to obtain any necessary consents from third parties with respect to certain licenses

10  and royalty reports.   Sony will promptly supplement its response to this interrogatory once a

11  Protective Order has been entered and any necessary consents are obtained.

12  **INTERROGATORY NO. 14:**

13      Separately for each Sony Patent, state and describe in detail each and every fact concerning

14  Sony's allegations that VIZIO's alleged infringement of such patent has been or is willful, and

15  identify the persons most knowledgeable and all documents that refer or relate thereto.

16  **RESPONSE TO INTERROGATORY NO. 14:**

17      Sony incorporates each of its general objections by reference.   Sony objects to this request

18  as over broad and unduly burdensome to the extent it seeks "<u>all</u> documents."   Sony also objects to

19  this request to the extent it calls for a legal conclusion.   Sony further objects to this request as

20  premature to the extent it seeks a full and complete response at this early stage in discovery.

21  Sony further objects to this request to the extent it calls for information protected from discovery

22  by the attorney-client privilege and/or the work product doctrine.

23      Without waiving the foregoing general and specific objections and subject to those

24  objections, Sony responds as follows:

25      Vizio is aware of Sony's status as one of, if not the, leading developer of new technologies

26  for televisions.   Vizio is further aware that Sony invests an enormous amount of resources in

27  research and development to create cutting-edge technologies that it incorporates into its products.

28

1  Vizio is further aware that Sony protects its investment by aggressively seeking and procuring

2  patent rights, including patents that cover the innovative features of its televisions.

3      Vizio was aware of Sony's extensive patent portfolio before this case was filed.  Beginning

4  in 2007, Sony engaged Vizio in a series of licensing discussions relating to the patents-in-suit.

5  During the course of the negotiations, Sony provided information related to its patent portfolio and

6  to the significant number of patents in its portfolio that are related to color television technology.

7  Sony also pointed to specific patents that it believed Vizio was infringing.  On September 6,

8  2007, Sony directly informed Vizio of its infringement of the '626, '577, '542, '847, and '614

9  patents via letter correspondence from Jaime A. Siegel, Senior Intellectual Property Counsel for

10  Sony.  On November 7, 2007, representatives from both parties met in-person to continue the

11  ongoing licensing negotiations.  In this meeting, Sony again directly informed Vizio of its

12  infringement of certain of the patents-in-suit.

13      Sony notes that discovery is ongoing.  At this point, Vizio has not produced any

14  documents and Sony has not yet taken a single deposition.  Once the parties have engaged in

15  substantive discovery, Sony will promptly supplement its response to incorporate responsive

16  information from Vizio to the extent that information is not reflected therein.

17  **INTERROGATORY NO. 15:**

18      Describe in detail each and every fact concerning Sony's involvement with the Consumer

19  Electronics Association ("CEA") Television Data Systems Subcommittee, including without

20  limitation its involvement with CEA-708 and digital television closed captioning standards, and

21  identify the persons most knowledgeable and all documents that refer or relate thereto.

22  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 15:**

23      Sony incorporates each of its general objections by reference.  Sony objects to this request

24  as over broad and unduly burdensome to the extent it seeks "<u>every</u> fact" and "<u>all</u> documents."

25  Sony further objects to this request as premature to the extent it seeks a full and complete response

26  at this early stage in discovery.  Sony further objects to this request to the extent it calls for

27  information protected from discovery by the attorney-client privilege and/or the work product

28  doctrine.

1    Without waiving the foregoing general and specific objections and subject to those

2    objections, Sony responds as follows:

3    Pursuant to Federal Rule Civil Procedure 33(d), Vizio may derive or ascertain information

4    responsive to this interrogatory from at least the following documents produced in this matter:

5    SONY0005722-5815, SONY0005816-5932, and SONY0073791-74094.   Furthermore, Sony

6    continues to investigate information that may be responsive to this Interrogatory and will

7    supplement its response if additional information is located.

8    **INTERROGATORY NO. 16:**

9    Describe in detail all facts concerning any disclosure, whether by Sony or any other

10   person, of any patents to the CEA relating to digital television closed captioning, including

11   without limitation an identification of such patents, the persons most knowledgeable concerning

12   the disclosure, and all documents that refer or relate to the disclosure.

13   **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 16:**

14   Sony incorporates each of its general objections by reference.   Sony objects to this request

15   as over broad and unduly burdensome to the extent it seeks "all facts" and "all documents."   Sony

16   further objects to this request as premature to the extent it seeks a full and complete response at

17   this early stage in discovery.   Sony further objects to this request to the extent it calls for

18   information protected from discovery by the attorney-client privilege and/or the work product

19   doctrine.

20   Without waiving the foregoing general and specific objections and subject to those

21   objections, Sony responds as follows:

22   Pursuant to Federal Rule Civil Procedure 33(d), Vizio may derive or ascertain information

23   responsive to this interrogatory from at least the following documents produced in this matter:

24   SONY0005722-5815, SONY0005816-5932, and SONY0073791-74094.   Furthermore, Sony

25   continues to investigate information that may be responsive to this Interrogatory and will

26   supplement its response if additional information is located.

27

28

**INTERROGATORY NO. 17:**

Explain in detail why the claims that ultimately issued in the '468 patent were not presented to the U.S. Patent and Trademark Office earlier in the chain of applications that lead to the issuance of that patent.

**RESPONSE TO INTERROGATORY NO. 17:**

Sony incorporates each of its general objections by reference. Sony objects to this request as premature to the extent it seeks a complete answer at this early stage of discovery. Sony further objects to this request to the extent it calls for information protected from discovery by the attorney-client privilege and/or the work product doctrine. Documents that refer or relate to the factual basis for Sony's computation of damages include those which would otherwise be responsive to this request but were created by or at the direction of Sony's outside or in-house counsel and professional legal advisers. Such privileged materials and information include communications containing legal advice by and between Sony's engineers and Sony's in-house legal advisers responsible for patent prosecution, licensing, and litigation. Sony objects to this interrogatory to the extent it seeks information that contains the confidential information of third parties.

Without waiving the foregoing general and specific objections and subject to those objections, Sony responds as follows:

The '468 Patent is a continuation of application no. 10/323,357, filed on December 19, 2002, now Patent No. RE38,898, which is itself a continuation of application no. 09/461,136, filed on December 14, 1999, now Patent No. RE38,055. The applicants of the '468 Patent conformed with all applicable statutes and regulations. In particular, MPEP 1412.03 states:

> A broadened claim can be presented within two years from the grant of the original patent in a reissue application. In addition, a broadened claim can be presented after two years from the grant of the original patent in a broadening reissue application which was filed within two years from the grant. Where any intent to broaden is unequivocally indicated in the reissue application within the two years from the patent grant, a broadened claim can subsequently be presented in the reissue after the two year period. . . . Thus, a broadened claim may be presented in a reissue application after the two years, even though the broadened claim presented after the two years is different than the broadened claim presented within the two years. Finally, if intent to broaden is indicated in a parent reissue application within the two years, a broadened claim can be presented in a continuing (continuation or

divisional) reissue application after the two year period. In any other situation, a broadened claim cannot be presented, and the examiner should check carefully for the improper presentation of broadened claims.

Pursuant to Federal Rule Civil Procedure 33(d), Vizio may also derive or ascertain information responsive to this interrogatory from at least the following documents produced in this matter: SONY0008605-8786. Furthermore, Sony continues to investigate information that may be responsive to this Interrogatory and will supplement its response if additional information is located.

**INTERROGATORY NO. 18:**

Separately for each Patented Sony Product, describe in detail all facts concerning Sony's marking of patent numbers on such product under 35 U.S.C. § 287, including without limitation the date such marking began, any changes to such marking, the patent numbers used in such marking, and identifying the persons most knowledgeable about Sony's marking practices and all documents that refer or relate thereto.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 18:**

Sony incorporates each of its general objections by reference. Sony objects to this request as overbroad and unduly burdensome to the extent it seeks "all facts." Sony further objects to this request to the extent it calls for information protected from discovery by the attorney-client privilege and/or the work product doctrine.

Without waiving the foregoing general and specific objections and subject to those objections, Sony responds as follows:

35 U.S.C. § 287 states:

Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them, or importing any patented article into the United States, may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent, or when, from the character of the article, this cannot be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice. In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice.

1     Marking is not necessary, however, if a patentee asserts only method claims against an

2 alleged infringer. *Crown Packaging Technology, Inc. v. Rexam Beverage Can Co.*, 559 F.3d

3 1308, 1317 (Fed. Cir. 2009) ("Because Rexam asserted only the method claims of the '839 patent,

4 the marking requirement of 35 U.S.C. § 287(a) does not apply.").

5     Sony contends that each and every Accused Product infringes at least the following claims

6 of the patents-in-suit:

7     '626 patent: claims 1, 3-4, 6-7, 9-10, 14, 17-24, and 29-33.

8     '373 patent: claims 1-13.

9     '614 patent: claims 1-4 and 6-7.

10     '577 patent: claims 13, 15, 19, 20, 27, and 28.

11     '542 patent: claims 6 and 11.

12     '847 patent: claims 11, 12, 16, 27, 28, 33, 34, 35, and 37-41.

13     '182 patent: claims 1-6.

14     '472 patent: claims 1-18. Sony contends that each and every HDCP Accused Product

15 infringes at least the following claims of the patents-in-suit:

16     '055 patent: claims 41-54 and 61-66,

17     '468 patent: claims 41-45.

18     Sony's investigation with respect to this interrogatory continues and Sony will supplement

19 its response once the parties have engaged in substantive discovery.

20

21

22 DATED:   June 8, 2009           As to the objections,

23

24                  By/s/ Kevin Johnson
                 Kevin P.B. Johnson

25                  QUINN EMANUEL URQUHART OLIVER &
                 HEDGES, LLP

26

27                  Attorneys for Plaintiff
                 SONY CORPORATION

28

1

## CERTIFICATE OF SERVICE

2  I, the undersigned, hereby certify that a true and correct copy of:

3  **SUPPLEMENTAL RESPONSE TO VIZIO, INC.'S FIRST SET OF INTERROGATORIES (NOS. 1-18)**

4

5  have been caused to be served on June 8, 2009 to all counsel of record via email.

6  By:   /s/ Peter Klivans

7  Peter Klivans

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28