# Exhibit 14

Exhibit 14 Page 197

# JONES DAY

NORTH POINT • 901 LAKESIDE AVENUE • CLEVELAND, OHIO 44114-1190

TELEPHONE: (216) 586-3939 • FACSIMILE: (216) 579-0212

Direct Number: (216) 586-7291
rbmccrum@jonesday.com

June 24, 2009

VIA EMAIL

Todd M. Kennedy, Esq.
Quinn, Emanuel, Urquhart, Oliver & Hedges, LLP
50 California Street
22nd Floor
San Francisco, CA 94111

Re: *Sony Corporation v. Vizio Inc.*

Dear Todd:

I am writing to confirm our understanding of the commitments made by Sony during our meet and confer on Friday, June 19, 2009. As we discussed during our meeting, Vizio raised many issues about Sony's document production and interrogatory responses, and Sony responded that it would provide certain updates by Friday, June 26, 2009 as well as supplemental response to certain of Vizio's Interrogatories by the end of this month. The updates and supplementation Sony promised to provide are summarized below.

(1) Sony committed to producing any **non-confidential** documents it has within its possession from the *Sony v. Westinghouse* litigation, including, but not limited to, discovery responses relating to prior art, invalidity contentions, expert reports relating to invalidity, claim construction and infringement contentions based on publicly available information. (June 19, 2009 M&C Tr. at 11:16-21). Please note that all such discovery responses need to be produced, even if they only include objections. We look forward to hearing from you by June 26, 2009 as to when Vizio can expect to receive these documents.

(2) Sony also committed to seek authorization from Westinghouse to produce any Westinghouse **confidential** information produced during the *Sony v. Westinghouse* litigation, including any agreements between the parties related to the *Sony v. Westinghouse* litigation, such as license and settlement agreements, as well as any confidential discovery responses or other confidential, non-Bates stamped documents (*e.g.*, expert reports on infringement). (June 19, 2009 M&C Tr. at 14:14-21). Please let us know by Friday, June 26, 2009 what steps have been taken to obtain consent from Westinghouse to produce such documents.

(3) Sony promised to provide an update regarding the progress Sony has made to obtain authorizations from various third-party entities to produce license agreements between Sony and third parties, including providing the letters that have been sent to the various licensees to obtain the third-party authorizations. (June 19, 2009 M&C Tr. at 20:2-8).

ATLANTA • BEIJING • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • FRANKFURT • HONG KONG • HOUSTON
IRVINE • LONDON • LOS ANGELES • MADRID • MILAN • MOSCOW • MUNICH • NEW DELHI • NEW YORK • PARIS • PITTSBURGH
SAN DIEGO • SAN FRANCISCO • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

Exhibit 14 Page 198

Todd M. Kennedy, Esq.
June 24, 2009
Page 2

      (4)    Sony committed to supplementing its answer to Vizio's Interrogatory No. 13 to provide details about licenses between Sony and other parties regarding Sony's patents related to digital television technology. (June 19, 2009 M&C Tr. at 16:8-25; 17:1-7).

      (5)    Sony agreed to provide an update regarding its production of documents regarding the conception and reduction to practice related to the asserted patents, and whether Sony intends to produce additional documents related to this subject matter. (June 19, 2009 M&C Tr. at 24:24-25:17).

      (6)    With regard to Vizio's Interrogatory No. 2 seeking Sony's claim construction contentions, Sony agreed to notify Vizio as to whether it would agree to exchange proposed claim constructions according to the proposal made by Vizio during the meet and confer proceedings. (June 19, 2009 M&C Tr. at 32:8-33:21; 42:20-25).

Vizio's proposal is to exchange proposed claim constructions for the means-plus-function ("MPF") limitations within two weeks. 35 U.S.C. § 112, paragraph 6 requires these terms to be construed. *Id.* ("[S]uch claim[s] *shall* be construed to cover the corresponding structure . . . described in the specification and equivalents thereof."); *see also, IMS Technology, Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1429 (Fed. Cir. 2000) (holding that claim construction of a § 112 ¶ 6 limitation requires both identification of the claimed function and identification of the corresponding structure). All of the MPF limitations are in dispute as evidenced by the parties' contentions regarding infringement. Even if they were not, they have to be construed as part of Sony's burden of establishing infringement. Accordingly, there is no reason to continue delaying this discovery. *National Academy of Recording Arts & Sciences, Inc. v. On Point Events*, LP, --- F.R.D. ---, 2009 WL 1068962 at * 4 (C.D. Cal. February 25, 2009) ("[r]equiring a defendant to answer a contention interrogatory . . . is consistent with Rule 11 of the Federal Rules of Civil Procedure, which require parties have some factual basis for their claims and allegations.").

Vizio also proposed that at the time the proposed constructions for the MPF limitations are exchanged, the parties exchange a list of additional non-MPF terms to be construed. After the parties see how many terms need to be construed, they can decide on a date for exchanging proposed constructions.

If Sony is unwilling to accept this proposal, or a reasonable alternative, the parties are at an impasse on this issue.

      (7)    For Interrogatory Nos. 3, 4, 5 and 8 – which seek information relating to each asserted patent (*e.g.*, invention dates) – Sony identified a number of documents as having responsive information, but failed to identify what specific patent each of those documents relate to. Sony agreed during the meet and confer to consider supplementing its answers to these

Exhibit 14 Page 199

Interrogatories to specifically identify what asserted patent each of the documents relate to. (June 19, 2009 M&C at Tr. 72:19-74:10).

(8) With regard to Interrogatory No. 15 concerning Sony's involvement and participation in the CEA, Sony committed to supplement its answer to set forth the time during which Sony was involved with this association. (June 19, 2009 M&C Tr. at 78:22-24). Sony also agreed to consider supplementing its response to provide a narrative identifying all Sony employees (*e.g.*, R.N. Blanchard) that have been involved in the CEA, the roles that the Sony employees played in that association, and the role Sony had in working on various versions of the CEA-708 standard. (June 19, 2009 M&C Tr. at 84:3-20).

(9) With regard to Interrogatory No. 16, which seeks a detailed explanation regarding the facts surrounding Sony's disclosure of any patents to the CEA relating to digital television closed captioning, Sony also agreed to consider supplementing its response to provide a narrative identifying all the patents Sony disclosed to the CEA, who disclosed those patents, and when those patents were disclosed. (June 19, 2009 M&C Tr. at 86:15-25).

(10) Sony also committed to providing an update to Vizio about when Sony will supplement its response to Interrogatory No. 18 regarding marking of Sony's products purportedly covered by the asserted patents. As noted during the meet and confer, Interrogatory No. 18 was served nearly three months ago, and Sony still has not provided a substantive response. There is no excuse for Sony's failure to provide over the last three months at least some basic information responsive to this Interrogatory, including whether as a general matter Sony marks any products with the patents-in-suit, the identify of those patents, when that marking began, and the persons most knowledgeable about Sony's marking.

(11) Sony also promised to provide an update to Vizio about Sony's response to Vizio's requests to inspect Sony products that Sony claims incorporate the technology disclosed in the patents-in-suit, and specifically inform Vizio about when such an inspection can proceed.

(12) Sony committed to supplement its responses to Vizio's Interrogatory No. 1 to more specifically set forth its alleged bases of infringement contained in its claim charts. (June 19, 2009 M&C at 68:20-69:5). As we have repeatedly noted, Sony's claim charts are deficient in many regards. Most notably, they simply cut and pasted large portions of Users Manuals and other documents into the charts, without any attempt whatsoever to indicate what *specific* portions of those documents correspond to *specific* limitations.

For example, for the '182 patent, Sony cut and pasted the same *exact* portion of the Users Manual into the claim chart for every single claim limitation. It cannot possibly be the case that the "measuring means," the "gamma correction means," the "display means", "the gain control means," and every other limitation in the claims of the '182 patent are one and the same. Sony

Exhibit 14 Page 200

Todd M. Kennedy, Esq.
June 24, 2009
Page 4

has also failed to explain how two mutually exclusive claims (*i.e.*, claims 3 and 4) can be infringed by the same product.

Similarly, Sony's claim chart for the '373 patent simply cut and pasted the same portions of Sony's Users Manual over and over again for nearly every claim element of every claim. For example, Sony's claim chart simply pasted in the same screen-shot (from SONY0002023), and excerpts from Chapter 4 on "Advanced Adjustment of HDTV Using the On Screen Display" (SONY0002034) over and over again for every claim element of every claim limitation. These are separate claim limitations that cannot all be satisfied by the same thing.

For the '472 patent, Sony once again pasted over and over the same Users' Manual excerpts for each limitation in its claim chart. Many of these excerpts do not even make sense for the corresponding limitations. For example, Sony cites to a "- (DASH)" on the remote control for its channel control circuit limitation, but Sony cannot possibly be arguing that the DASH button can be considered a channel control circuit. Other excerpts listed for that limitation, such as the remote control sensor on the television, are pasted in for every claim limitation in every claim. Therefore, it is impossible to ascertain exactly what part of the accused device Sony alleges makes up the "channel control circuit" or how this limitation differs from the "channel processing circuit."

In addition to suffering from the same shortcomings as the claim charts for the '182, '373, and '472 patents, Sony's claim chart for the '614 patent fails to explain or point to any evidence showing that Vizio's accused televisions "apply different levels of transparency to different components."

With regard to the '626 patent, as we have noted on several occasions, Sony's claim chart is deficient in that it too simply regurgitates large portions of Vizio's Users Manual into the chart without any effort to identify what specific portions of the Users Manual corresponds to the specific claim limitations. The claim charts also fail to identify any evidence supporting that Vizio's televisions include a "display control means for . . . modifying a common menu display signal."

With regard to the '055 and '468 patents, Sony simply regurgitated the same sections of the Vizio manuals and the HDCP specification for each claim limitation, and failed to identify how the accused Vizio products purportedly practice each of the claims and meet each of the claim limitations. For example, claim 42 of the '055 patent requires that Vizio practice the "step of transmitting said encryption key from said master device to said slave device via said data bus." Sony failed to identify what constitutes the "master device," "the slave device," "the data bus," or the "encryption key," much less describe how the Vizio device purportedly transmits the encryption key from a master device to a slave device.

Exhibit 14 Page 201

Todd M. Kennedy, Esq.
June 24, 2009
Page 5

Similarly, in claim 41 of the '468 patent, Sony failed to identify what allegedly constitutes the "decryptor" or the "controller" in the accused Vizio products. Instead, Sony cites the same sections of the Vizio manuals and HDCP specification that it previously cited for the method claims, and again concludes without any analysis that the limitation is met.

For the '577 and 542 patents, Sony simply cut and pasted large sections of the Vizio manuals and the EIA-709-B specification for each claim limitation without regard to the lack of relevance of those pasted sections to the claim limitation, and failed to identify how the accused Vizio products purportedly practice each of the claims and meet each of the claim limitations. For example, both asserted claims of the '542 patent include the following limitation: "combining said subtitle output signal and said video output signal and outputting a composite signal of a predetermined format in accordance therewith." Instead of providing a disclosure of how this limitation is met, Sony cites to a lot of irrelevant information such as a "Closed Caption on Mute" feature, and concludes without any analysis that the limitation is met.

Regarding the '847 patent, the claims are in means plus function form pursuant to 112(6), but the Sony claim charts do not identify the structure in the Vizio products Sony alleges performs the function recited in the means plus function claim limitations nor do they identify how the accused Vizio products purportedly practice each of the functions recited in these means plus function claim limitations. For example, the Sony claim charts fail to identify the accused structure for the "buffer means," "decoding means," "mixing means," "detector means," and "color look-up table means" of claims 11, 12 and 16 that Sony contends are found in the accused Vizio products and fail to identify how any structure in accused Vizio products purportedly practice the functions required to be performed by those means. Similar deficiencies exist for the other claims of the '847 patent. Sony simply cut and pasted large sections of the Vizio manuals, the EIA-709-B specification and 37 CFR § 15 for each claim limitation without regard to the lack of relevance of those pasted sections to the claim limitation.

In short, the claim charts are long on regurgitated and repetitive citations, and are completely devoid of substantive analysis.

Sony promised to provide supplemental claim charts by June 30, 2009 that address Vizio's concerns and more specifically correlate the claim limitations to specific structure/operation of Vizio's products. (June 19, 2009 M&C at 68:20-69:5). Additionally, Sony committed to providing supplemental infringement claim charts based on Vizio's service manuals by July 31, 2009.

Vizio looks forward to receiving Sony's updates, as promised, on Friday, June 26, 2009. Additionally, Vizio looks forward to receiving the supplemental discovery responses Sony promised to provide by the end of June and July.

Exhibit 14 Page 202

      If Sony has any questions about the subject matter of this letter, or has any different understanding of the commitments Sony has made, please let me know immediately.

                Very truly yours,

                */s/ Ryan B. McCrum*

                Ryan B. McCrum

Exhibit 14 Page 203