Kevin G. McBride (Ca. Bar No. 195866)
kgmcbride@jonesday.com
Steven J. Corr (Ca. Bar No. 216243)
sjcorr@jonesday.com
JONES DAY
555 S. Flower Street, 50th Floor
Los Angeles, CA 90071
Telephone: (213) 489-3939
Facsimile: (213) 243-2539

James L. Wamsley III
(*admitted pro hac vice*)
jlwamsleyiii@jonesday.com
JONES DAY
901 Lakeside Avenue
Cleveland, OH 44114-1190
Telephone: (216) 586-3939
Facsimile: (216) 579-0212

Attorneys for Vizio, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONY CORPORATION,<br><br>    Plaintiff,<br><br>    v.<br><br>VIZIO, INC.,<br><br>    Defendant. | Case No. CV-08-01135-RGK(FMOx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF VIZIO, INC.'S NOTICE OF MOTION AND MOTION TO LIMIT CLAIMS**<br><br>**THE HONORABLE R. GARY KLAUSNER**<br><br>**HEARING:** 9:00 A.M. ON AUGUST 31, 2009 |

# **TABLE OF CONTENTS**

                                                                                                    **Page**

I. INTRODUCTION ...................................................................................... 1

II. ARGUMENT .............................................................................................. 1

    A. The Court Should Limit Sony To A Maximum Of Three Asserted Claims Per Patent-In-Suit – Consistent With Common Practice ......... 1

    B. Reducing Sony's Asserted Claims To A Reasonable Number Is Appropriate At This Time .................................................. 5

        1. Narrowing The Issues Now Will Substantially Simplify Discovery, Dispositive Briefing And Trial Preparation ............. 5

        2. Sony Refused To Reduce The Number Of Claims To Any Specific Number, At Any Specific Time .................................. 6

        3. By Now, Sony Knows (Or Should Know) Which Claims It Believes May Be Infringed ......................................... 8

        4. Requiring Sony To Limit The Asserted Claims Should Not Be Conditioned On Identifying Representative Products .......... 9

III. CONCLUSION ........................................................................................ 10

# TABLE OF AUTHORITIES

Page

**Cases**

*Baxter Int'l, Inc. v. COBE Labs., Inc.*,
  88 F.3d 1054 (Fed. Cir. 1996) ................................................................................ 2

*Fenster Family Patent Holdings, Inc. v. Siemens Med. Solutions USA, Inc.*,
  No. 04-0038 JJF, 2005 WL 2304190 (D. Del. Sept. 20, 2005) ................. 3, 4, 5, 6

*Ferdik v. Bonzelet*,
  963 F.2d 1258 (9th Cir. 1992) ................................................................................ 2

*Gould v. Control Laser Corp.*,
  705 F.2d 1340 (Fed. Cir. 1983) .............................................................................. 2

*Hearing Components, Inc. v. Shure, Inc.*,
  No. 9:07CV104, 2008 WL 2485426 (E.D. Tex. June 13, 2008) ......................... 3, 5

*IMS Tech., Inc. v. Haas Automation, Inc.*,
  206 F.3d 1422 (Fed. Cir. 2000) .............................................................................. 9

*In re Katz Interactive Call Processing Patent Litig.*,
  No. 2:07-ml-01816-RGK-FFM (C.D. Cal. Aug. 31, 2007) .......................... 2, 3, 5

*Katz v. AT&T Corp.*,
  63 F. Supp. 2d 583 (E.D. Pa. 1999) .................................................................... 3, 5

*Kearns v. Gen. Motors Corp.*,
  No. 93-1535, 1994 WL 386857 (Fed. Cir. July 26, 1994) (unpublished) .......... 3, 5

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936) ................................................................................................ 2

*Miles Labs., Inc. v. Shandon Inc.*,
  997 F.2d 870 (Fed. Cir. 1993) ................................................................................ 2

*Q-Pharma, Inc. v. Andrew Jergens Co.*,
  360 F.3d 1295 (Fed. Cir. 2004) .............................................................................. 9

*ReRoof Am., Inc. v. United Structures of Am., Inc.*,
  Nos. 98-1378, 98-1430, 1999 WL 674517 (Fed. Cir. Aug. 30, 1999)
  (unpublished) ...................................................................................................... 3, 5

*Verizon Cal. Inc. v. Ronald A. Katz Tech. Licensing, L.P.*,
  326 F. Supp. 2d 1060 (C.D. Cal. 2003) .............................................................. 2, 5

*View Eng'g, Inc. v. Robot Vision Sys., Inc.*,
  208 F.3d 981 (Fed. Cir. 2000) ................................................................................ 9

**Statutes**

35 U.S.C. § 112, ¶ 6 ......................................................................................................... 9

**Rules**

C.D. Cal. L.R. 7-3 ........................................................................................................... 7

Fed. R. Civ. P. 1 .............................................................................................................. 2

Fed. R. Civ. P. 11 ............................................................................................................ 9

Fed. R. Civ. P. 16(c)(2)(P) .............................................................................................. 2

# I. INTRODUCTION

Plaintiff Sony Corporation ("Sony") asserts that Defendant Vizio, Inc. ("Vizio") has infringed over one hundred claims of the ten patents-in-suit. To proceed further in this litigation with such a large number of asserted claims, however, would unduly burden the court in its claim construction efforts, and ultimately overwhelm any jury which must evaluate the infringement and invalidity of each and every such claim. At this stage of the litigation, the parties should be reducing the number of issues to be resolved so that discovery can be completed and expert work accomplished in an efficient manner. Instead, Sony's continuing refusal to reduce the number of asserted claims will waste the parties' resources as they grapple with issues that will – as a practical matter – never be brought before the Court or a jury.

Sony can and should be able to limit its asserted claims by now. Sony has had Vizio's initial invalidity contentions since May 26, 2009. Vizio has also produced volumes of technical information regarding the accused products. Moreover, Sony's infringement contentions reveal substantial overlap in its proof – with multiple claims applied to the exact same pages of documents for Sony's contentions of infringement. Thus, the number of claims should also be reduced given the amount of duplication in their coverage.

For all of these reasons, the Court should require Sony to select at most three asserted claims for each of the patents-in-suit and to disclose those selected claims to Vizio by September 7, 2009.

# II. ARGUMENT

## A. The Court Should Limit Sony To A Maximum Of Three Asserted Claims Per Patent-In-Suit – Consistent With Common Practice

Courts have broad authority to manage litigation under the Federal Rules of Civil Procedure, as well as a mandate "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1; *see also* Fed. R.

Civ. P. 16(c)(2)(P). Courts have an inherent power "to control the disposition of the causes on [their] docket[s] with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see Ferdik v. Bonzelet*, 963 F.2d 1258, 1260 (9th Cir. 1992); *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1341 (Fed. Cir. 1983). Along those lines, it is not uncommon that courts will decide patent cases involving a large number of claims on the basis of a smaller subset of representative claims. *See Baxter Int'l, Inc. v. COBE Labs., Inc.*, 88 F.3d 1054, 1056-57 (Fed. Cir. 1996) (twelve claims asserted; case decided on three); *see also Miles Labs., Inc. v. Shandon Inc.*, 997 F.2d 870, 879 (Fed. Cir. 1993) (one representative claim).

In complex patent infringement cases, courts routinely exercise their broad administrative discretion to reduce large numbers of asserted claims to manageable numbers. *See, e.g.*, *In re Katz Interactive Call Processing Patent Litig.*, No. 2:07-ml-01816-RGK-FFM, slip op. at 4 (C.D. Cal. Aug. 31, 2007) (Klausner, J.) ("*Katz Interactive*") (limiting patentee to "two claims per invention" and "a total of sixteen (16) claims per defendant group") (Exhibit 1 to the Declaration of Steven J. Corr, filed concurrently herewith; Corr Decl., ¶2); *Verizon Cal. Inc. v. Ronald A. Katz Tech. Licensing, L.P.*, 326 F. Supp. 2d 1060, 1066 (C.D. Cal. 2003) (referencing order that plaintiff "identify no more than three representative claims per patent for its infringement case and no more than twenty claims for a claim construction hearing."); *Hearing Components, Inc. v. Shure, Inc.*, No. 9:07CV104, 2008 WL 2485426, at *1 (E.D. Tex. June 13, 2008) (ordering plaintiff to select up to three claims from each patent-in-suit for claim construction and trial); *Fenster Family Patent Holdings, Inc. v. Siemens Med. Solutions USA, Inc.*, No. 04-0038 JJF, 2005 WL 2304190, at *3 (D. Del. Sept. 20, 2005) (limiting asserted claims to ten); *Katz v. AT&T Corp.*, 63 F. Supp. 2d 583, 588-89 (E.D. Pa. 1999) (limiting asserted claims to "approximately seventeen").[1]

---

[1] Though not precedential, two unpublished Federal Circuit decisions have also acknowledged this practice as acceptable. *ReRoof Am., Inc. v. United*

In *Katz Interactive*, this Court ordered the patentee to reduce the number of asserted claims from almost two thousand to two per invention, or sixty-four total. No. 2:07-ml-01816-RGK-FFM, slip op. at 1, 4. The Court held that limiting the number of duplicative claims did not violate the patentee's right to due process. *Id.* at 3. This was so for two reasons: (i) there are no distinctive property rights in claims having substantially the same coverage; and (ii) the relief is the same, whether one claim or all claims are infringed. *Id.* The Court concluded that, "to both better manage this case and satisfy due process," the number of asserted claims should be limited based on the amount of duplication among the claims. *Id.* The Court concluded that "two claims per invention should be sufficient." *Id.* at 4.

So, too, in this case, is limiting the number of claims appropriate. Sony's assertion of over one hundred claims would be unmanageable for a jury.[2] *See Fenster*, 2005 WL 2304190, at *3. Moreover, there is substantial overlap among the asserted claims, as demonstrated by a series of claim charts that Sony has provided. (Corr Decl., ¶5.) For example, Sony's original claim chart for the '182 patent relies on the exact same eleven pages of Vizio's user manuals for every single limitation of each of the six asserted claims. (*Id.*) Identical contentions appeared in charts served on June 9 and June 18, 2009. (*Id.*) Sony's supplement

---

(continued…)

*Structures of Am., Inc.*, Nos. 98-1378, 98-1430, 1999 WL 674517, at *4 (Fed. Cir. Aug. 30, 1999) (unpublished) (finding district court's order limiting number of claims to assert at trial to five resulted in no prejudice); *Kearns v. Gen. Motors Corp.*, No. 93-1535, 1994 WL 386857, at *2-3 (Fed. Cir. July 26, 1994) (unpublished) (affirming dismissal for patentee's failure to limit asserted claims). For the Court's convenience, true and correct copies of the Federal Circuit's unpublished decisions in *ReRoof* and *Kearns* are provided as Exhibits 2 and 3 to the Corr Declaration filed concurrently herewith. (Exhibits 2 and 3 to Corr Decl.; Corr Decl., ¶¶3-4.)

[2] Indeed, Sony itself appeared to have difficulty in keeping the asserted claims straight, stating erroneously that "Sony presently contends that Vizio's televisions infringe 112 claims of the ten patents-in-suit." (Exhibit 4 to Corr Decl.; Corr Decl. ¶7.) Vizio has carefully reviewed Sony's claim charts, which comprise well over a thousand pages of information, and has confirmed that Sony actually asserted infringement of only one hundred eight (108) claims.

served July 1, 2009 added an additional document, SONY0082324, which Sony relied upon for five of the six asserted claims. (*Id.*) Sony's fourth and most recent supplement on July 31, 2009 underscored this pattern by adding four new pages (V0000016007, 11, 13 and 26) that Sony used as alleged support for infringement for all six asserted claims. (*Id.*) Clearly, there is substantial overlap among the six asserted claims of the '182 patent if Sony relies on the same fifteen or sixteen pages as alleged support for its infringement contentions for all of them.

Sony followed the same script in its claim charts for the '614 patent. (Corr Decl., ¶6.) The first, second and third claim charts served by Sony relied on the same forty-six pages of Vizio's User Manuals for its claim 1 infringement contentions. (*Id.*) The infringement contentions for claims 2-4 cited nothing outside of those pages. (*Id.*)[3] On July 1, 2009 Sony added a new document, "Sony Intellectual Property Law Department, 3rd Party CTV Worksheet V.7, Make Model: Vizio VX37L," as alleged support for its claim 1 infringement contentions. (*Id.*) The infringement contentions for claims 2-4 did not change. (*Id.*) Nor did they change in Sony's July 31 supplement—the only additional documents cited were two pages (V0000016025-26) that Sony relied on for claim 1. (*Id.*) In sum, Sony's infringement contentions for claims 2-4 cited the same documents for over three months, and they are documents Sony already relied upon for claim 1. This clearly demonstrates that there is substantial overlap among the asserted claims of the '614 patent. Similar duplication between claims is shown in the claim charts for all of Sony's asserted patents.

Due to substantial overlap in the asserted claims, Sony will not be deprived of due process by reducing their number. *Katz Interactive*, No. 2:07-ml-01816-RGK-FFM, slip op. at 3. And, a three-claim-per-patent limit is eminently reasonable in light of this Court's precedent, as well as other courts' precedent.[4]

---

[3] Sony dropped claims 6-7.

[4] Vizio proposed a limit of three claims per patent because it was abundantly reasonable in view of the precedent on this issue and hoped that Sony would agree

*See id.* at 1, 4 (thirty-one patents, two claims per invention); *Verizon Cal.*, 326 F. Supp. 2d at 1066 (sixteen patents, twenty representative claims; later reduced to ten patents and sixteen claims); *see also Hearing Components*, 2008 WL 2485426, at *1 (three patents, three claims per patent for construction and trial); *Fenster*, 2005 WL 2304190, at *3 (eight patents; ninety asserted claims reduced to ten); *Katz*, 63 F. Supp. 2d at 588-89 (numerous patents; "approximately seventeen" claims total).[5]

### B. Reducing Sony's Asserted Claims To A Reasonable Number Is Appropriate At This Time

#### 1. Narrowing The Issues Now Will Substantially Simplify Discovery, Dispositive Briefing And Trial Preparation

This case has the following schedule: discovery ends on November 1, 2009; the motion cut-off date is November 10, 2009; the pretrial conference is scheduled for January 10, 2010; and trial is set to begin on January 26, 2010. Though Sony will undoubtedly argue that the Court should wait to limit the number of asserted claims, there is simply no time to accommodate any further delay. *See Fenster*, 2005 WL 2304190, at *3.

At this time, reducing the number of asserted claims to a more manageable level will allow the parties to focus their efforts on the real disputes. Unless and until Sony reduces the number of asserted claims, however, the parties will continue to waste time and resources dealing with issues that will not be in dispute before the Court or at trial.

---

(continued…)

to such a limitation so as to avoid seeking Court intervention. The fact is, however, that even thirty claims is a very large number to present to a jury, and Vizio reserves the right to seek a further limitation on the number of asserted claims closer to trial.

[5] *See also ReRoof Am.,* 1999 WL 674517, at *4 (five patents, one claim per patent; *Kearns*, 1994 WL 386857, at *2-3 (five asserted patents, one claim per patent).

### 2. Sony Refused To Reduce The Number Of Claims To Any Specific Number, At Any Specific Time

Sony does not dispute that the number of asserted claims must be limited. Indeed, Sony proposed a schedule for limiting the asserted claims in a July 29, 2009 meet and confer—but that schedule was purely illusory in that it involved no defined numerical limitations on the number of asserted claims or solid deadlines by which such limitations must take place. (Corr Decl., ¶8.) Rather, Sony proposed first reducing the claims within thirty days after inspection of Vizio's products, but did not suggest any numerical target for its first reduction of asserted claims. (*Id.*) Moreover, Sony's proposal that this reduction take place thirty days after the inspection of Vizio's products is nebulous at best. Sony requested an inspection of Vizio's products in March 2009, and Vizio agreed to such an inspection. The parties are still ironing out the details of that inspection, but it is entirely unclear at this point when, if ever, it will take place. Sony can continue to delay that inspection, which would result in further delay of limiting the number of asserted claims if Sony's proposal were adopted.

Sony's proposal included a second phase of limiting the asserted claims, but that phase would also take place at some unknown time in the future and involve some unknown limitation on the number of asserted claims. Specifically, after the product inspection, Sony offered to cut back further on the asserted claims after it reviewed source code. (*Id.*) Again, Sony offered no hard numbers and no hard deadlines.

A schedule for limiting the number of asserted claims that imposes no numerical limits or deadlines on Sony is effectively meaningless. Sony's proposal provides ample opportunity for Sony to delay limiting the number of asserted claims for as long as it wants. Indeed, under Sony's approach, it could continue to

Memo In Support Of Mtn To Limit Claims
Case No. CV-08-01135-RGK(FMOx)

assert nebulous infringement claims until December 2009, well beyond the discovery cutoff and on the eve of trial in January.[6]

Making matters worse is the fact that Sony not only rejected specific numbers *and* specific deadlines, but also refused to consider, as a threshold matter, *any* specific numerical limits or *any* hard deadlines. (Corr Decl., ¶9.) Vizio first asked whether Sony would be willing to agree to a three claim-per-patent-in-suit limit. Sony was unwilling to do so. Vizio asked Sony whether it would agree to *any* claim limit, *e.g.*, forty, fifty or sixty claims, but Sony was again unwilling to do so at this time. Vizio asked Sony to commit to a date certain by which Sony could agree to reduce the asserted claims (to any number). Again, Sony refused.

Sony's rejection of a set timeframe for narrowing the disputed issues in this case, with hard numerical targets that Sony is obligated to meet, creates an environment of uncertainty where "the Court must intervene." *Fenster*, 2005 WL 2304190, at *3. In *Fenster*, the accused infringer asked the court to limit the number of claims, arguing that it was unreasonable for the patentee to assert ninety claims of eight patents-in-suit. *Id*. Just as Sony did in this case, the *Fenster* patentee argued against limiting the claims, saying it would "likely limit them after full discovery." *Id*. The court held that 90 "asserted claims is unreasonable." *Id*. Noting its preference for the parties to resolve such matters – as Vizio tried to do here – the court found that "when that does not happen; the Court must intervene." *Id*. Accordingly, the court limited the patentee to ten asserted claims. *Id*.

Here, too, it is abundantly clear that Sony will not act to narrow the issues in this case in a timely manner unless and until the Court requires it to do so. In the

---

[6] Sony delayed Vizio's efforts to bring this pressing issue before the Court. Vizio asked Sony to waive the twenty day waiting period under C.D. Cal. L.R. 7-3 in the parties meet and confer of July 29, 2009. (Corr Decl., ¶10.) Sony indicated it would respond by July 30, 2009 but did not actually respond until August 3, 2009. (*Id.*) By waiting five days to respond – when it said it would respond the next day – Sony effected a week's delay in the hearing date for this Motion, from August 24 to August 31, 2009.

interests of going forward in an efficient and orderly manner, Vizio requests that the Court issue an order limiting Sony to three claims per patent-in-suit.

### 3. By Now, Sony Knows (Or Should Know) Which Claims It Believes May Be Infringed

Sony should be able to limit the number of asserted claims because it was required to have developed its infringement theories before filing the lawsuit. Sony filed its complaint nine months ago. Discovery has been ongoing for four and a half months, and Vizio has produced over 140,000 pages of documents in this litigation, including a substantial number of documents relating to the accused products, such as user manuals, service manuals and other technical documentation. Vizio has also provided Sony with its preliminary invalidity contentions (despite not knowing which claims Sony will ultimately assert or Sony's proposed constructions of those claims).

To the extent Sony claims it would be prejudiced by having to limit the asserted claims at this time, Sony alone is to blame. Sony's failure to voluntarily limit the number of asserted claims to a reasonable number is part of a broader pattern of dilatory behavior. For example, Sony has failed to subpoena MediaTek, a third-party that supplies over 90% of the chipsets used in the accused products, despite Vizio's repeated exhortations. (Exhibit 5 to Corr Decl. filed concurrently herewith; July 17 Tr., 11:17-24, 13:23-14:8, 14:11-15, 20:18-21:9; Corr Decl., ¶14.) Such conduct stands in stark contrast to its conduct in its case against Westinghouse Digital Electronics, LLC ("Westinghouse") where Sony not only subpoenaed Westinghouse's largest chip supplier, Nexgen Mediatech USA, Inc., but ***filed a motion to compel*** documents from them. *See Sony Corp. v. Westinghouse Digital Elecs., LLC*, No. 2:08-cv-03934-RGK-FMO, Dkt. #48 (C.D. Cal. Feb. 4, 2009).

Sony has also shown little interest in deposing Mr. Ken Lowe, a Vizio engineer identified as Vizio's most knowledgeable witness regarding the technology used in the accused products. Vizio offered Mr. Lowe for deposition

for three days in early July 2009 in response to Sony's notice of deposition, which requested several dates in mid-June 2009. (Corr Decl., ¶11.) Mr. Lowe was unavailable for Sony's requested timeframe due to conflicts with his travel schedule. (*Id.*) Sony rejected Vizio's alternative dates in early July 2009, and, inexplicably, has not since sought to reschedule his deposition. (*Id.*)

Sony's failure to voluntarily limit the number of asserted claims in this case is particularly egregious in light of Sony's Rule 11 obligation to compare the scope of the asserted claims to each accused product before filing suit. *See* Fed. R. Civ. P. 11; *see, e.g.*, *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1300 (Fed. Cir. 2004); *View Eng'g, Inc. v. Robot Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000). At a minimum, Sony was required to construe and apply the patent claims to each accused product or process. *Q-Pharma*, 360 F.3d at 1300-01; *View Eng'g*, 208 F.3d at 986. Thus, even before Sony filed the complaint nine months ago, Sony either knew or should have known which claims of the patents-in-suit it believes are infringed, and why Sony believes they are infringed, as a result of its pre-filing investigation of the accused products.[7] Assuming that Sony satisfied its Rule 11 obligations, Sony is well able to limit the number of asserted claims to a reasonable number at this time.

### 4. Requiring Sony To Limit The Asserted Claims Should Not Be Conditioned On Identifying Representative Products

In an effort to delay resolution of this issue, Sony tried to condition limiting the number of asserted claims on reaching an agreement on representative products. (Corr Decl., ¶13.) Vizio has repeatedly advised Sony that it is willing to consider

---

[7] Vizio is concerned that Sony did not, in fact, construe the asserted claims or apply them to the accused products before filing the complaint because Sony has taken the remarkable position that "Sony does not believe that any of the claim terms in the patents-in-suit require construction by the Court." (Corr Decl., ¶12.) The notion that not a single claim limitation in over a hundred asserted claims would need to be construed is inconceivable. Indeed, that is plainly ***not*** the case; there are several means-plus-function limitations present in the asserted claims, and these limitations must, as a matter of law, be construed. 35 U.S.C. § 112, ¶ 6; *see IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1429-30 (Fed. Cir. 2000).

any reasonable proposal regarding representative products. (*Id.*) Despite Vizio's willingness to work with Sony on this issue, Sony has failed to set forth any concrete proposal for representative products. (*Id.*) Having failed to make any proposal regarding this issue, Sony cannot now be heard to complain that it will be prejudiced by having to limit the number of asserted claims before reaching an agreement on representative products. In any event, the task of identifying representative products will be vastly simplified once Sony reduces the number of asserted claims to a manageable number.

## III. CONCLUSION

For all of the foregoing reasons, Vizio's motion to limit the number of asserted claims should be granted.

Dated: August 10, 2009

JONES DAY

By: /s/ Steven J. Corr
Steven J. Corr

Attorneys for Defendant Vizio, Inc.