# EXHIBIT 2

Exhibit 2 Page 13



**H**NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTAF Rule 47.6 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Federal Circuit.
REROOF AMERICA, INC., Fabtec, Inc. and Harold Simpson, Inc., Plaintiffs-Appellants,
v.
UNITED STUCTURES OF AMERICA, INC., Defendant-Cross Appellant.
**Nos. 98-1378, 98-1430.**

Decided Aug. 30, 1999.

Before MAYER, SCHALL, and BRYSON, Circuit Judges.

BRYSON, Circuit Judge.

**\*1** Plaintiffs ReRoof America, Inc., Fabtec, Inc., and Harold Simpson, Inc., appeal from the judgment of the United States District Court for the Northern District of Oklahoma upholding a jury verdict that certain claims of the patents-in-suit are invalid for obviousness. ReRoof also contends that the trial court abused its discretion by restricting the number of claims that ReRoof could present to the jury. Because the jury verdict is supported by substantial evidence, and because ReRoof has not shown that it was prejudiced by the district court's order restricting the number of claims it could present at trial, we *affirm.* In light of our disposition of the principal appeal, we *dismiss as moot* the conditional cross-appeal filed by defendant United Structures of America.

I

Plaintiff Harold Simpson, Inc., is the assignee of five patents drawn to methods and apparatus for placing a new sloped roof over an old flat roof. Plaintiffs Fabtec, Inc., and ReRoof America, Inc., are Simpson's licensee and non-exclusive sublicensee, respectively. The five patents at issue are U.S. Patent No. 4,520,610 (the '610 patent), U.S. Patent No. 4,534,148 (the '148 patent), U.S. Patent No. 4,620,397 (the '397 patent), U.S. Patent No. 5,142,838 (the '838 patent), and U.S. Patent No. 5,303,528 (the '528 patent). The three plaintiffs (referred to collectively as "ReRoof") brought suit alleging that defendant United Structures was infringing a number of the claims of those five patents.

Before trial, ReRoof selected 18 "illustrative" claims to present at trial. Unsatisfied with ReRoof's compliance with the court's directive that the case be made manageable for presentation to a jury, the district court ordered ReRoof to select a total of five claims-one from each patent-on which to go to trial. ReRoof selected claim 1 of the '610 patent, an independent claim drawn to a method; claim 1 of the '148 patent, an independent claim drawn to an apparatus; claim 7 of the '397 patent, a dependent claim drawn to an apparatus; claim 7 of the '838 patent, an independent claim drawn to an apparatus; and claim 23 of the '528 patent, an independent claim drawn to an apparatus.

At trial, United Structures asserted the defenses of invalidity, unenforceability, and noninfringement. In presenting its defense of invalidity due to obviousness, United Structures introduced evidence relating to a number of prior art roofs. Based on that evidence, the jury found the four independent claims invalid due to obviousness. As to the fifth claim, the jury found no infringement. The jury rejected the remainder of United Structures' defenses.

ReRoof moved for judgment as a matter of law, arguing that United Structures had failed to present a *prima facie* case of obviousness. In addition, ReRoof requested a new trial on the ground that the court had prejudiced it by requiring it to go to trial on only five of its asserted claims. The trial court denied the motion.

II

*2 ReRoof appeals the jury's determination of obviousness with respect to the four invalidated claims, arguing that United Structures failed to present clear and convincing evidence of obviousness. Specifically, ReRoof contends that United Structures failed to offer evidence of a teaching, suggestion, or motivation to make the claimed invention from the prior art. Moreover, ReRoof argues that evidence of the level of ordinary skill in the art should not have been admitted because the United Structures expert who offered that evidence through his testimony did not indicate in his expert witness report that he intended to express an opinion on that issue. In addition, ReRoof contends that much of the prior art evidence was uncorroborated and thus did not constitute clear and convincing evidence of invalidity. Finally, ReRoof argues that United Structures failed to elicit any evidence demonstrating the differences between the prior art and the claimed inventions.

The prior art evidence in this case consisted of evidence of actual roofs installed in the 1970s and early 1980s. That kind of evidence does not lend itself to express suggestions or teachings to combine elements found in the prior art. Several witnesses, however, offered testimony from which the jury could readily infer that, in light of the prior art, the claimed inventions would have been obvious to a person of ordinary skill in the art.

ReRoof's arguments that United Structures failed to offer proof as to the level of skill in the art or the differences between the claimed invention and the prior art are not persuasive. United Structures called five witnesses who testified in some detail about a number of prior art roofs. That testimony was sufficient to allow the jury to draw conclusions about the level of ordinary skill in the art. In light of that evidence, ReRoof was not prejudiced by any error in the court's admission of the testimony regarding the level of ordinary skill in the art given by United Structures' expert. Moreover, the jury had before it both the claims and detailed evidence regarding the prior art roofs. The jury was therefore able to discern for itself the differences between the claimed invention and the prior art. There was no failure of proof by United Structures in that regard. Finally, the witnesses' testimony about the prior art roofs was corroborated by videotapes, photographs, contracts, and "take-out" sheets, and as such was sufficient to support the jury's conclusion that obviousness was proved by clear and convincing evidence.

ReRoof contends that none of the prior art that was presented at trial taught or suggested adjustability of support members in conjunction with a substantially continuous bottom member that is segmented to follow the contour of the existing roof so as to distribute the load uniformly to the existing roof. Although ReRoof has conceded that some of the prior art taught adjustability, it argues that all of the prior art roofs that had adjustable support members delivered a point load to the existing roof rather than distributing the load over an extended portion of the existing roof. For that reason, ReRoof argues, the judgment with respect to the four claims that the jury found to have been obvious should be reversed.

*3 ReRoof's argument about the substantially continuous bottom member does not persuade us that the jury's verdict must be overturned. In its brief, ReRoof presents a "summary" of the claimed subject matter and then points to the patent specifications to argue that the continuous bottom member that followed the contour of the existing roof to distribute the load across the existing roof was not found in the prior art. That feature, however, was not reflected in any limitation in any of the asserted claims, but was merely discussed in the written description portion of the patents. The claims of a patent define the invention, and ReRoof has failed to point to any element of any of the contested claims that is not found in, or obvious from, the prior art. Two of the asserted claims recite "a plurality of elongated, horizontally spaced lower members supported by the old existing roof" (claim 7 of the '838 patent) and "a plurality of spaced, elongated bottom spanning members spaced below the top spanning members and supported by said existing roof" (claim 23 of the '528 patent), but the jury could properly conclude that those limitations were present in the prior art roofs, such as the PepsiCo 2 roof.

In addition to limitations reciting elongated upper and lower members, support spacers positioned between the upper and lower members, and connecting means to connect the spacers to the upper and lower members, Claim 7 of the '838 patent requires that the connecting means be selectively adjustable to "facilitate selective

adjustment of the height of each upper member above at least one of said lower members." All of the prior art roofs featured upper and lower members, support spacers positioned between them, and connecting means for attaching the upper and lower members to the support spacers. Moreover, many of the prior art roofs, such as the PepsiCo 1 roof, the Armco roof, and the PepsiCo 2 roof, disclosed adjustable support spacers (or "web" members) or adjustable connectors at one or both ends of the spacers. Based on that prior art, the jury was entitled to conclude that claim 7 of the '838 patent would have been obvious.

With respect to claim 23 of the '528 patent, ReRoof argues that no prior art shows the combination of elongated bottom members and vertically adjustable and lockable stanchions. However, the evidence showed that the PepsiCo 1, Roseland, and Dexter Shoe roofs employed vertically adjustable stanchions, and elongated bottom members were disclosed in other prior art roofs. In light of the evidence regarding the knowledge of persons skilled in the roofing art, the jury was entitled to conclude that the combination of elongated bottom members and vertically adjustable stanchions would have been obvious to the ordinary artisan.

Claim 1 of the '148 patent recites a first and second beam, connector means for connecting the second beam to the preexisting roof, and adjustable web means for supporting the first beam in a selected plane independent of the slope of the preexisting roof. Because the jury could permissibly find that the PepsiCo 2 roof contained all of the elements of claim 1 of the '148 patent, the evidence supports the jury's verdict with respect to that claim.

*4 Finally, claim 1 of the '610 patent is drawn to a method of reroofing defining a structure having a roof with one or more walls and an eave connector linking the existing wall to the new roof. The structure recited in that claim largely reads on the Armco roof, as explained by one of United Structures' witnesses at trial and shown in detailed drawings of the Armco roof. The only difference between the Armco roof and the structure claimed in claim 1 of the '610 patent is that in the latter at least one panel member of the new roof is positioned "across the upper cord of the adjustable ridge [truss] and the eave connector assembly such that the panel member is supported thereby," while in the roof design depicted in the Armco drawings, the truss supported the new roof from below, while the eave connector supported it from above. In light of all the evidence, the jury was entitled to find that that difference did not make the invention patentable over the Armco prior art. In sum, based on the testimony and documentary evidence presented at trial, we conclude that substantial evidence supports the jury's verdict on the four claims that were found to have been obvious.

III

ReRoof next contends that the trial court abused its discretion when it struck 13 of the 18 claims on which ReRoof proposed to go to trial and required ReRoof to select five "representative" claims to present to the jury. ReRoof submits that it should have been allowed to go to trial on all 18 of the claims that it proposed to the district court, and that limiting it to five claims disabled it from proving the full range of United Structures' infringing activities. Because it assertedly suffered prejudice from the trial court's restriction order, ReRoof asks that we remand the case for trial on the 13 remaining claims that ReRoof identified prior to trial. United Structures responds that ReRoof failed to cooperate with the trial court's efforts to simplify the case sufficiently to make it possible to conduct a jury trial within the time period that the court and the parties agreed upon, and that as a result the court was justified in imposing the "five claim" limitation on ReRoof.

It is unnecessary for us to decide whether the trial court's order requiring ReRoof to choose a single claim from each patent for trial was error in the circumstances of this case, because ReRoof has not shown that it was prejudiced by the court-ordered reduction in the number of claims it was allowed to present to the jury. The various claims of the five patents in suit overlap very substantially, and in light of the way the jury disposed of the five tried claims, we are convinced that there is no reasonable likelihood that a trial that included the 13 untried claims would have resulted in a verdict affording ReRoof any relief.

In its brief, ReRoof points to five untried claims to demonstrate that it was prejudiced by the order of the

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Exhibit 2 Page 16

district court. Of those five claims, however, only one was among the 18 claims that ReRoof selected for presentation to the jury. Because ReRoof acknowledges that the court did not err by requiring it to reduce its claims for trial to those 18, ReRoof cannot now support its claim of prejudice by arguing that a trial on some of the claims outside the 18 that ReRoof selected might have resulted in a different verdict. In considering ReRoof's assertion of prejudice, we therefore focus only on the 13 untried claims from among the 18 that ReRoof selected for trial.

**\*5** Claim 24 of the '528 patent is the only claim from among the 13 untried claims that ReRoof discusses in the portion of its brief directed at demonstrating that the court's restriction order was prejudicial. We therefore address that claim in detail. Claim 24 is drawn to "[a] slope build-up system for roofs." It requires "a plurality of roofing spacers each having vertical adjustability supporting said roof at spaced intervals, each of said vertically adjustable roofing support spacers adapted to be supported by an existing roof."

The prior art most pertinent to claim 24 of the '528 patent is the PepsiCo 2 roof. ReRoof asserts that the PepsiCo 2 roof is "not legitimate prior art," because the feature of adjustability is not provided by the V-shaped purlins that serve as the roofing spacers. Rather, ReRoof asserts, the angle of the new roof is set by the use of vertical posts of differing heights, with angle or Z purlins attached to the new roof. The V-shaped purlins, ReRoof contends, are added later to provide additional support for the new roof.

ReRoof's argument as to why the PepsiCo 2 roof is not "legitimate" prior art is unconvincing. Claim 24 of the '528 patent is drawn to an apparatus in which the roofing spacers have vertical adjustability. The V-shaped purlins have such adjustability regardless of whether they are added before the vertical posts or afterwards. Claim 24 thus reads on the same prior art that was presented at trial and served as the basis for the jury's verdict of obviousness with respect to the four asserted independent claims. Accordingly, we find no prejudice in the trial court's order that resulted in claim 24 of the '528 patent not being submitted to the jury.

There are 12 other untried claims among the 18 claims that ReRoof sought to present to the jury. ReRoof does not discuss any of those 12 claims in its brief, but we have independently examined them, and we find nothing in those claims that alters our conclusion with respect to the issue of prejudice. Three claims that depend from claim 24 of the '528 patent were among the untried claims. The additional limitations contained in each of those claims, however, were all plainly disclosed by or would have been obvious from the PepsiCo 2 roof, which (1) permitted the web members to be bent to selectively change the angle of the web (claim 25); (2) had upper and lower members in different planes (claim 26); and (3) rendered obvious web members that were rotatable about an axis located to permit the web to extend at a variable acute angle to one of the upper or lower members (claim 27). Claim 1 of the '838 patent would have been obvious from the prior art Roseland, Armco, and PepsiCo 2 roofs, which disclose vertically adjustable stanchions with adjustable channel sections (Roseland) and elongated spanning members (Armco and PepsiCo 2), the latter being well known in the roofing art. The untried claims from the '397 patent are similar to claim 24 of the '528 patent, and the features from those claims that are not found in the tried claims (flashing and a gutter) are features that have long been well known to roofers. The two untried claims from the '148 patent (claims 4 and 5) recite essentially the same method as that found in claim 1 of the '610 patent, which the jury found to be obvious. Dependent claim 5 of the '148 patent adds the use of a "tight line" to guide the construction of the new roof, but the undisputed testimony at trial was that that step was commonly used in the roofing art. Finally, method claim 2 from the '610 patent is essentially a duplicate of claim 5 of the '148 patent; method claim 4 from the '610 patent is drawn to adding roof panels to form the new roof and is thus in the prior art; and method claim 5 of the '148 patent, which adds a limitation regarding an internal gutter assembly, does not add anything that was not well known in the art.

**\*6** ReRoof makes a more general claim of prejudice based on the trial court's restriction order, but that claim is equally unavailing. At oral argument, counsel for ReRoof contended that if ReRoof had been allowed to present more claims it could have "impressed the jury with the complexity" of the patented inven-

tion. Not having the opportunity to "impress" a jury by presenting a large number of claims, however, does not constitute legally cognizable prejudice. If anything, the risk that a jury will be unduly influenced by the mere number of claims presented by the plaintiff is a justification for a court's attempting to limit the number of claims tried. In sum, we are unpersuaded that the trial court's order affected ReRoof's substantial rights, *see* 28 U.S.C. § 2111, and we therefore uphold the judgment.

C.A.Fed.,1999.
ReRoof America, Inc. v. United Stuctures of America, Inc.
215 F.3d 1351, 1999 WL 674517 (C.A.Fed.)

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Exhibit 2 Page 18