# Exhibit 3

Exhibit 3 Page 12

1    ** CONFIDENTIAL TRANSCRIPT - ATTORNEYS' EYES ONLY **

2            UNITED STATES DISTRICT COURT

3           CENTRAL DISTRICT OF CALIFORNIA

4                  WESTERN DIVISION

5    SONY CORPORATION, A Japanese )

6    corporation,                 )

7                                 )

8            Plaintiff,           )

9        vs.                      )

10                                ) SACV-08-01135

11   VIZIO, INC.,                 )      RGK (FMOx)

12                                )  PAGES 1 - 49

13           Defendant.           )

14   _____)

15

16

17          TELEPHONIC MEET AND CONFER

18            LOS ANGELES, CALIFORNIA

19            FRIDAY, JULY 17, 2009

20

21

22   REPORTED BY:
     LESLIE L. WHITE

23   CSR NO. 4148
     JOB NO.:  23822

24

25

1    ** CONFIDENTIAL TRANSCRIPT - ATTORNEYS' EYES ONLY **

2

3

4                    JULY 17, 2009

5                    12:05 p.m.

6

7

8        Telephonic Meet and Confer held at

9    555 South Flower Street, Fiftieth Floor,

10   Los Angeles, California, before Leslie L.

11   White, CSR No. 4148.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    ** CONFIDENTIAL TRANSCRIPT - ATTORNEYS' EYES ONLY **

2        A P P E A R A N C E S:

3

4        QUINN EMANUEL URQUHART OLIVER &

5        HEDGES, LLP

6        ATTORNEYS FOR PLAINTIFF

7            865 South Figueroa Street

8            10th Floor

9            Los Angeles, California 90017

10       BY:  RORY S. MILLER, ESQ.

11

12

13       QUINN EMANUEL URQUHART OLIVER &

14       HEDGES, LLP

15       ATTORNEYS FOR PLAINTIFF

16           51 Madison Avenue

17           22nd Floor

18           New York, New York 10010

19       BY:  THOMAS PEASE, ESQ.

20           (Present telephonically)

21

22

23

24

25

1      ** CONFIDENTIAL TRANSCRIPT - ATTORNEYS' EYES ONLY **

2         A P P P E A R A N C E S:

3            QUINN EMANUEL URQUHART OLIVER &

4            HEDGES, LLP

5            ATTORNEYS FOR PLAINTIFF

6               50 California Street

7               22nd Floor

8               San Francisco, California 94111

9            BY:  TODD KENNEDY, ESQ. -and-

10               PETER KLIVENS, ESQ.

11            (Present telephonically)

12

13            JONES DAY

14            ATTORNEYS FOR DEFENDANT

15               555 South Flower Street

16               Fiftieth Floor

17               Los Angeles, California 90071

18            BY:  STEVEN J. CORR, ESQ.

19

20            JONES DAY

21            ATTORNEYS FOR DEFENDANT

22               901 Lakeside Avenue

23               Cleveland, Ohio 44114

24            BY:  RYAN McCRUM, ESQ.

25            (Present telephonically)

1      \*\* CONFIDENTIAL TRANSCRIPT - ATTORNEYS' EYES ONLY \*\*

2               I N D E X

3

4          TELEPHONIC MEET AND CONFER

5

6

7

8

9

               E X H I B I T S

10

             (NONE OFFERED)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    ** CONFIDENTIAL TRANSCRIPT - ATTORNEYS' EYES ONLY **

2    LOS ANGELES, CALIFORNIA; FRIDAY, JULY 17, 2009

3                    12:05 p.m.

4                    -o0o-

5        MR. McCRUM:  Let's go on the record.

6            It's Ryan McCrum from Jones Day

7    Cleveland on behalf of Vizio.

8        MR. CORR:  And Steve Corr from Jones Day

9    Los Angeles on behalf Vizio.

10       MR. MILLER:  Here in L.A. it's

11   Rory Miller from the Los Angeles office of

12   Quinn Emanuel on behalf of Sony.

13       MR. PEASE:  And here in New York Tom

14   Pease from Quinn Emanuel, also on behalf of

15   Sony.

16       MR. KENNEDY:  Todd Kennedy in

17   San Francisco, Quinn Emanuel, on behalf of

18   Sony.

19       MR. KLIVENS:  And also Peter Klivens,

20   San Francisco Quinn Emanuel on behalf Sony.

21       MR. McCRUM:  Was that everyone?

22       MR. CORR:  That's everyone, Ryan.

23       MR. McCRUM:  This is Ryan McCrum.  Why

24   don't we start at the top here.  I don't

25   anticipate today going very long, but that's

1    ** CONFIDENTIAL TRANSCRIPT - ATTORNEYS' EYES ONLY **

2    usually my hope, and they tend to go longer

3    than I would expect.

4            But why don't we go ahead.

5    The first item in the letters that we

6    exchanged is interrogatory No. 1.  I don't

7    think we need to spend a lot of time on this.

8            I got your letter, Todd, from last

9    night.  Vizio is of the position that the

10   parties are at an impasse on this.  Obviously

11   you folks disagree.

12           I don't know what else to say on

13   this.  Vizio obviously feels like we have been

14   around in circles on this a number of times,

15   and that the parties are at an impasse, and

16   there is not much also to say on this.

17      MR. PEASE:  Ryan, this is Tom.  I don't

18   understand how you can say we're at an impasse

19   when we have done everything you have asked us

20   to do.  You know, we have now supplemented

21   that interrogatory response twice, and agreed

22   to supplement it again on, I believe

23   July 31st.

24           Our first supplement you complained

25   that additional information should be set

1    ** CONFIDENTIAL TRANSCRIPT - ATTORNEYS' EYES ONLY **

2    forth, based on the User Manuals.  We went

3    back and supplemented information to include

4    information that was in the User Manuals.

5         We also, at your request, went back

6    and actually pared down the information

7    because you said it was unreadable, and, you

8    know, used "See Also" type sites to additional

9    User Manuals, rather than quoting them and

10   cutting and pasting them into the document.

11   We did that.

12        We also went back, at your request,

13   and included information that has been set

14   forth in Claim Charts that have been shown to

15   Vizio before the lawsuit was filed.

16        And now you have produced -- Vizio,

17   that is -- has produced Service Manuals, and

18   we have agreed to supplement on July 31st to

19   include the information set forth in the

20   Service Manuals.

21        We have also told you that once we

22   get from Vizio and the third parties the

23   additional information that is clearly

24   responsive to our requests -- and that

25   includes firm ware, chip specifications and

1    ** CONFIDENTIAL TRANSCRIPT - ATTORNEYS' EYES ONLY **

2    the like -- we will again supplement to take

3    into account that additional information.

4            So when you say we're at an impasse,

5    it's hard for us to know what you mean because

6    we have gone back and done everything that you

7    have requested, on the time tables that you

8    agreed on.

9            And so, you know, you're going to be

10   getting additional information in the charts

11   relating to the Service Manuals on July 31st,

12   and, you know, depending on when we get the

13   additional information we have requested, we

14   will go back and supplement to include that

15   information.

16           You know, I am not going to go into

17   the deficiencies of Vizio's production at this

18   point, but we have noticed that after we

19   negotiated a Protective Order to include

20   specific source code protections, you know,

21   we're now months into this case, months since

22   we served our discovery requests, and we

23   haven't seen any source code of any kind from

24   Vizio.

25           Now, we looked at your documents,

1    ** CONFIDENTIAL TRANSCRIPT - ATTORNEYS' EYES ONLY **

2    and we have seen documents that show that

3    Vizio engineers do, in fact, have access to

4    source code and firm ware and the like, and

5    you haven't produced it.

6         We also haven't seen a single chip

7    specification.  You know, is it Vizio's

8    position that it does not have any Media Tech

9    documentation at all, or is it simply Vizio's

10   position that we should go get it directly

11   from Media Tech, and that you're not going to

12   produce it?

13       MR. McCRUM:  This is Ryan McCrum.

14           Well, Tom, you prefaced this by, "I

15   am not going to get into alleged deficiencies

16   in Vizio's production," and then you rambled

17   on about all of these alleged deficiencies.

18   So I think we all know what we're here to talk

19   about today.

20           This is a meet-and-confer on the

21   deficiencies in Sony's discovery responses.

22   So I don't want to get into your allegations.

23   You have asked for a meet-and-confer on those

24   issues, and I'm happy to talk to you about

25   those after we have considered your letter,

1     ** CONFIDENTIAL TRANSCRIPT - ATTORNEYS' EYES ONLY **

2     and after we responded with our own letter, if

3     a meet-and-confer is still necessary during

4     that meet-and-confer.

5              But what I will say, Tom -- and we

6     have told you this numerous times -- we have

7     given you all the documents that we have in

8     our possession that are relevant and

9     responsive.  We do not have source code.  We

10    are double and triple checking that to be sure

11    because this is obviously a sensitive issue

12    with you, but we have asked, we have looked as

13    hard as we can for it, we will continue to,

14    but it shouldn't be a surprise to you, Tom,

15    given Vizio's position and its business, that

16    it doesn't have the source code.

17             We have told you numerous times you

18    need to go to Media Tech to get that.  We have

19    noticed that Sony has subpoenaed everyone

20    under the sun except Media Tech, even though

21    Media Tech supplies over 90 percent of the

22    chips used in Vizio's products.

23             So you're barking up the wrong tree.

24    You need to go to Media Tech.

25             We have asked you numerous times:

1    ** CONFIDENTIAL TRANSCRIPT - ATTORNEYS' EYES ONLY **

2    Do you plan to Subpoena Media Tech?  I ask you

3    again, do you plan to Subpoena Media Tech?

4         MR. PEASE:  The answer is procedurally, I

5    don't know if a Subpoena is going to be the

6    format that Sony uses to get documents from

7    medical.  Media Tech is a Taiwanese company

8    with a California office, and one concern that

9    Sony has is not to be asking Media Tech for

10   documents that Vizio engineers have access to

11   in the ordinary course of business.

12            So I have noticed that your last

13   sentence was very carefully worded to say,

14   "It's not in Vizio's possession."  But the

15   case law doesn't limit your discovery

16   obligations to documents that are

17   quote-unquote "in Vizio's possession."  It's

18   documents in Vizio's possession, custody and

19   control, and it's going to include documents

20   that are made available to Vizio.  It's also

21   going to include -- you know, if Media Tech

22   has made available documents to Vizio's

23   counsel, you know, as part of your

24   representation of this case, you know, those

25   are subject to our document requests too, and

1    ** CONFIDENTIAL TRANSCRIPT - ATTORNEYS' EYES ONLY **

2    we expect you to produce it.

3        MR. McCRUM:  They haven't made them

4    available to us.  We don't have them.  Media

5    Tech has them.

6            And your concern about:  You know,

7    we haven't decided where we're going to get

8    these from, we're going to try to get these

9    through Vizio, that hasn't stopped you from

10   subpoenaing all these other companies.

11           If your approach was that you want

12   to get to these documents through Vizio, why

13   did you go Subpoena everyone else?  They are

14   in the same position.

15           So you have got to go to Media Tech.

16   We are running out of time.  You guys have

17   imposed this aggressive schedule.  We have a

18   trial set for January.  We are several months

19   into discovery, we are more than eight months

20   after you filed your Complaint, and there is

21   no effort whatsoever from Sony to get these

22   documents from the people -- the company that

23   has them.  It's Media Tech.  I told you a

24   million times.  You need to go there.

25           So I suggest you do what you have

1    ** CONFIDENTIAL TRANSCRIPT - ATTORNEYS' EYES ONLY **

2    done with all these other companies and

3    subpoena the U.S. presence Media Tech and get

4    the information that you're trying to get from

5    us.  We don't have it.  As you know they have

6    got an office in California.  They got an

7    office in Austin, Texas.  They have got an

8    office in Boston.

9            Go do what you did with these other

10   companies and subpoena those U.S. entities.

11   But, you know, I just can't -- I don't know

12   why you're not going to the company that

13   supplies over 90 percent of our chips, and yet

14   you spend all this time and energy on these

15   other third parties.

16       MR. PEASE:  First of all, I disagree with

17   your characterization.  I am going to ask you

18   about the same question about AmTran, namely,

19   you know, is it Vizio's position that it is

20   not going to produce AmTran documents that are

21   in Vizio's possession or to which Vizio

22   engineers have access in the ordinary course

23   of business?

24       MR. McCRUM:  Look, Tom, we have talked

25   about this enough already.  These are issues

1    ** CONFIDENTIAL TRANSCRIPT - ATTORNEYS' EYES ONLY **

2    raised in your letters relating to your meet

3    and confer, and this is not the right time to

4    talk about it.

5        MR. PEASE:  The reason I bring it up is

6    you said we're at an impasse with respect to

7    the information -- I read your letter again --

8    with respect to the information set forth in

9    Sony's User Manuals.

10        We want to know:  What is the

11   impasse?  What additional information from our

12   User Manuals do you think we haven't disclosed

13   at this point?

14        MR. McCRUM:  This is Ryan McCrum.

15        The issue has always been, Tom, that

16   these Claim Charts just basically throw

17   everything but the kitchen sink at Vizio

18   without any effort to specifically identify

19   how each limitation is satisfied by the

20   various portions of these User Manuals and

21   other documents.

22        The problem is you are pointing to,

23   you know, a dozen different things for each

24   claim limitation, all of which are different,

25   and there is no indication from your Claim

1    ** CONFIDENTIAL TRANSCRIPT - ATTORNEYS' EYES ONLY **
2    Charts which of those dozen things you're
3    relying on as satisfying claim limitations,
4    and for many of the claim limitations, it's
5    the same dozen things over and over again.
6           So we don't know from one limitation
7    to another what Sony is claiming is satisfying
8    these claim limitations.  That has been our
9    problem from day one.
10          Yes, we appreciate the fact that you
11   have gone back and tried to supplement, and
12   you have said you're going to supplement --
13   the first supplementation, by the way, just so
14   the record is clear, was wholly
15   nonsubstantive.  All you did was revise a
16   couple of Bates numbers.  There was no
17   substantive change at all, so that one doesn't
18   even count.
19          But the point is you have not
20   specifically addressed that concern, which has
21   been the concerns since day one.  That's why
22   Vizio feels we are at an impasse.  We have
23   asked for that numerous times, and it has not
24   been sufficiently addressed by Sony, and there
25   is no reason to believe that there will be,

1    ** CONFIDENTIAL TRANSCRIPT - ATTORNEYS' EYES ONLY **

2    and we deep dragging this out further and

3    further.  Now, you know, we're four months

4    after we served these things, and we still

5    don't feel like we have had an adequate

6    response.

7          So at the end of the day we feel we

8    are at an impasse.  We are considering our

9    options right here.  Quite candidly, I don't

10   know if it's going to be a Motion to Compel.

11   The other thing, which should be no secret to

12   you, is a Rule 11 motion, and you will see --

13   I want to raise this today -- we are serving a

14   30(b)(6) notice on Sony, and the first topic

15   of that is going to be the Rule 11 basis for

16   making these infringement allegations.

17          And while we are willing to work

18   with Sony on dates for depositions, I want it

19   to be clear to Sony that that is one that we

20   want as early as possible.

21          The others, you know, we can work

22   around people's schedules, but that is one

23   that we're going to be pushing to get as early

24   as we can.  So that's where we stand on this

25   one.  You know, I don't have anything further

1    ** CONFIDENTIAL TRANSCRIPT - ATTORNEYS' EYES ONLY **

2    to say on it.

3        MR. PEASE:  Obviously we disagree.

4            Go ahead, I am done.

5        MR. KENNEDY:  Ryan, this is Todd Kennedy.

6    I think part of the issue is that the only

7    information that Sony has had to include in

8    these Claim Charts so far has been the User

9    Manuals, and inherently User Manuals are a

10   broad overview of the product.  So it's a

11   little disingenuous for Vizio to complain that

12   the User Manual information in these Claim

13   Charts is not specific enough.

14            If Vizio wants more specific

15   information, then it should just wait until

16   the end of the month when Sony includes

17   information from the Service Manuals, which by

18   their nature are a little more specific.

19            And, again, Sony has promised to

20   supplement these Claim Charts after it has

21   inspected Vizio's products and after it has

22   received some source code and information

23   about the processors and Vizio televisions.

24            So if the complaint is that the

25   Claim Charts are not specific enough and don't

** CONFIDENTIAL TRANSCRIPT - ATTORNEYS' EYES ONLY **

1    ** CONFIDENTIAL TRANSCRIPT - ATTORNEYS' EYES ONLY **

2    identify the features specifically enough,

3    then Vizio should just wait until Sony has had

4    an opportunity to supplement.

5        MR. McCRUM:  This is Ryan McCrum.  That's

6    fine.  And, again, like I said, there is two

7    issues here.  There is the issue of, you know,

8    our motion -- our potential Motion to Compel

9    more sufficient answers, and the second issue,

10   which we have been trying to get to the bottom

11   of since we first raised this, was whether or

12   not there was a sufficient basis to make these

13   allegations even to begin with.  And we, based

14   on what we have seen, do not feel like, for at

15   least some of the patents, that there was a

16   sufficient basis to assert them against Vizio

17   at the time that this Complaint was filed.

18        So, you know, that's the other issue

19   that has been out there lurking from the very

20   beginning and that Vizio will continue to

21   investigate as we move forward.

22        MR. KENNEDY:  This is Todd again.

23        I also wanted to respond to your

24   comment that the June 8 supplementation, which

25   is Sony's first supplementation of this

1    ** CONFIDENTIAL TRANSCRIPT - ATTORNEYS' EYES ONLY **

2    interrogatory response was nonsubstantive.  It

3    was actually a quite substantive response.

4    Sony looked at every single User Manual, again

5    at Vizio's request.  And based on that review

6    of User Manuals Sony dropped entire Vizio

7    products from its claim of infringement of the

8    468 and 055 patent.  So that was such a

9    substantive response that Vizio doesn't have

10   to worry about Sony bringing claims of

11   infringement against, you know, some of its

12   televisions, based on that -- based on that

13   interrogatory response.

14        MR. McCRUM:  I think the record of the

15   actual supplementation speaks for itself on

16   that point, so we don't need to get into that

17   any further.

18             The other issue we talked about

19   already was with Media Tech.  We asked you if

20   you folks are planning to subpoena Media Tech.

21   I am not sure I got a clear answer on that.

22             Is that in Sony's plans or not?

23        MR. PEASE:  It's my understanding Sony

24   does intend to seek discovery from Media Tech.

25        MR. McCRUM:  You don't know if that's

1    ** CONFIDENTIAL TRANSCRIPT - ATTORNEYS' EYES ONLY **

2    through subpoena or some other informal means?

3        MR. PEASE:  Or a different procedure

4    means.

5        MR. McCRUM:  What other procedural means

6    are available, Tom?

7        MR. PEASE:  Well, there's letters of

8    rogatory, and other procedural avenues

9    available to us.

10            My understanding is Sony is

11    considering those avenues.

12        MR. McCRUM:  Let's move on to the next

13    issue in the various letters, which is the

14    issue about expert discovery and expert

15    reports.

16            And I know, Todd, that you indicate

17    in your letter that you don't think it's

18    appropriate or proper for us to be discussing

19    that today because it wasn't sufficiently

20    raised in my letter, but I'd like to make a

21    proposal anyway.

22            I am not asking you for a response

23    today, but you have offered to consider this

24    issue and talk about it more next week, and

25    that would be fine by us, but just to get the

1      ** CONFIDENTIAL TRANSCRIPT - ATTORNEYS' EYES ONLY **

2    discussion rolling, our position on this --

3    our proposal, anyway, is that we exchange

4    opening expert reports on November 2nd, and

5    that we exchange rebuttal reports on

6    November 30th, and then we would do expert

7    depositions in the month of December, and

8    quite honestly, I don't know that there is --

9    I don't know of any other way to do this,

10   given the schedule because we obviously can't

11   do it any later than that because we have got

12   a trial in January.  But we are willing to

13   consider doing these earlier, if that's -- you

14   know, if Sony would prefer.  Go ahead.

15        MR. PEASE:  Tom Pease here.

16             Yeah, we'll consider that and get

17   back to you.  I think we'll take a look at the

18   court's Order of specifics of what the court

19   said, and consider that, along with the other

20   proposals you had made regarding limiting

21   Claim Charts and the like.

22        MR. McCRUM:  This is Ryan again.  The

23   reason I put it in here was I didn't -- based

24   on past correspondence, it wasn't even clear

25   to me whether or not Sony was going to be

1     ** CONFIDENTIAL TRANSCRIPT - ATTORNEYS' EYES ONLY **

2     willing to engage in formal expert reports and

3     discovery.  So that's what I wanted to talk

4     about today.  I put it in there to gauge

5     your -- take your temperature on your position

6     on that.  And I mean, I wanted -- my plan

7     today was to figure out whether or not that

8     was even something that Sony was willing to

9     do.

10         MR. PEASE:  This is Tom again.

11              We will talk to the client about

12     that and take a look at the Order again, and

13     we'll advance those discussions.

14         MR. McCRUM:  Okay.  Do you guys have a

15     date next week where you are available for

16     this?

17         MR. PEASE:  I don't know off the top of

18     my head.  Why don't we revisit it, if you want

19     to give me a call early next week, we can work

20     something out.  My schedule is in flux right

21     now.

22         MR. McCRUM:  Okay.  The other thing that

23     we had in here in connection with that was our

24     proposal to limit the number of asserted

25     claims.

1    ** CONFIDENTIAL TRANSCRIPT - ATTORNEYS' EYES ONLY **

2         And as we stated in our letter, our

3    proposal would be to limit the number of

4    asserted claims to three per patent for a

5    total of 30, and Vizio is proposing that Sony

6    be required to do that by September 1.

7         Do you have any reaction to that?

8    MR. PEASE:  We'll give it some thought.

9    I think you said in your letter it was

10   unreasonable to have a hundred patent claims.

11   I don't know that there is anything inherently

12   unreasonable about a hundred patent claims.  I

13   do agree with you to the extent we can cut

14   down the number of patent claims it probably

15   makes sense.

16        Three claims per patent does seem

17   somewhat arbitrary.  It might make some sense

18   for some patents, not for others.  But, you

19   know, as we continue to get discovery, as the

20   parties refine their positions, as we go

21   forward, you know, it should be easier for the

22   parties to determine whether a three claim per

23   patent limit makes sense, or whether it should

24   be more or less than that and come to some

25   agreement on that.

1    ** CONFIDENTIAL TRANSCRIPT - ATTORNEYS' EYES ONLY **

2        MR. McCRUM:   Okay.   Well, I don't mean to

3    be too pushy on this issue, but we do need an

4    answer on this because this is an issue that

5    we have had before Judge Klausner in the past

6    where there was relief granted for limiting

7    the number of asserted claims.

8            In fact, this has been -- I wouldn't

9    say -- I don't know how I would characterize

10   it, but this is an issue that has come up in

11   courts in our practice a number of times, and

12   the courts have been willing to limit the

13   number of asserted claims to -- to fewer than

14   what we're proposing here, and at an earlier

15   stage of the litigation than what we're

16   proposing here.

17           So I think because, you know, we're

18   moving ahead so quickly, and we have some very

19   tight deadlines, and we have got a trial date

20   so early, we need to do this quickly.

21           If we're going to do expert reports,

22   I think latest we can do them is November 2nd,

23   and we have got to give our experts enough

24   time to focus on the claims that are really

25   going to be at issue.

1     ** CONFIDENTIAL TRANSCRIPT - ATTORNEYS' EYES ONLY **

2             And so I really want to do this, you

3     know, our proposal again is by September 1 to

4     limit the number of claims to three per

5     patent, and so I would ask that you guys get

6     back to us, you know, by next week with an

7     answer on whether or not that is acceptable

8     because, again, I am not trying to be bullish

9     here, but this is an issue that we would like

10    to get before this judge by the following week

11    if we can't resolve it by next week.

12        MR. PEASE:  We'll give it some thought.

13    We will talk to our client.  We'll give it

14    some thought, and we can discuss it more fully

15    next week.

16        MR. McCRUM:  Okay.  This is Ryan McCrum

17    again.

18             Let's move on to interrogatory

19    No. 19.  As you know, that interrogatory seeks

20    Sony's bases for denying certain paragraphs of

21    Vizio's trade, libel and disparagement claims.

22             Todd, in your letter from last night

23    you offered to explain or elaborate on Sony's

24    reasons for standing on its objections, and I

25    am interested in hearing what you have to say

1    ** CONFIDENTIAL TRANSCRIPT - ATTORNEYS' EYES ONLY **

2    on that.

3        MR. KENNEDY:  I do have a couple of case

4    cites that I can give to you, and I think the

5    most efficient way is probably for me to give

6    you the cites, and then you can review them

7    and, you know, see whether you agree that the

8    interrogatory is improper.

9        MR. McCRUM:  Okay.  Could you do me a

10   favor, e-mail them to me.  I know we have this

11   transcribed, but I don't know when we're going

12   to get the transcript, and I prefer to get the

13   right ones, rather than missing a number here

14   or there.

15       MR. KENNEDY:  Sure, I'll do that as soon

16   as this conference is over.

17       MR. PEASE:  Hey, Ryan, this is Tom.  I

18   think I can give you a one-sentence

19   explanation of our position on it.

20           I don't know the cites off the top

21   of my head.  Todd can send them to us later.

22           In a nutshell our position is that

23   this interrogatory is drafted improperly as a

24   matter of law in that it seeks all the bases

25   with respect to all those different paragraphs

1    ** CONFIDENTIAL TRANSCRIPT - ATTORNEYS' EYES ONLY **

2    relating to the trade, libel, disparagement

3    claims.  We have got case law support for

4    that.  That's what Todd is going to send to

5    you after this call is over.

6              Although we're not obligated to do

7    so, you know, we're not unwilling to disclose

8    information relating to Sony's position with

9    respect to those trade, libel and

10   disparagement claims.  So it's now Friday.  If

11   you guys wanted to revise that interrogatory

12   to cut it down, make it more specific, you

13   know, by Monday or Tuesday, for example, we'd

14   be willing to answer that interrogatory, I

15   think as long as it's reasonable, within let's

16   say 14 days.  So you don't have to answer that

17   yet, take a look at the cites Todd sends to

18   you, let us know if you agree and whether you

19   think it is something you could revise, but

20   our position is that it asks for so much

21   information, and it is so broad, you know,

22   it's the equivalent of many, many, many

23   interrogatories, and as such we have case law

24   support that says we don't need to answer a

25   question like that.

1    ** CONFIDENTIAL TRANSCRIPT - ATTORNEYS' EYES ONLY **

2        MR. McCRUM:  The objection really is to

3    you think that it is actually more than --

4    it's multiple interrogatories?

5        MR. PEASE:  I think that's a part of it.

6    The overall scope, it's essentially asking us

7    to lay out on paper, you know, our entire case

8    with respect to many, many, many different

9    paragraphs set forth in our Answer.  You know,

10   we looked into it, and there is case law that

11   says that's not a proper interrogatory.

12        But like I said, we are perfectly

13   willing to disclose information concerning

14   Sony's position relating to those Vizio

15   claims, and if you can come up with something,

16   you know, another more limited interrogatory

17   on the same topics, we'd be willing to answer

18   that within a limited period of time.

19        You know, we're not going to say:

20   You need to start counting the time period

21   over again and give us 30 days.  We could do

22   it in less than 14 days.

23        MR. McCRUM:  Okay.

24        MR. PEASE:  That's all, just consider it.

25        MR. McCRUM:  We'll definitely consider

1    ** CONFIDENTIAL TRANSCRIPT - ATTORNEYS' EYES ONLY **

2    it.  By representing that we'll consider it, I

3    am not agreeing by any means that I think our

4    interrogatory has issues, especially given the

5    interrogatories that both parties have been

6    serving in this case relating to hundreds of

7    products and hundreds of patent claims and,

8    you know, hundreds of pieces of prior art and

9    things like that.

10           I, quite frankly, I haven't looked

11   at the case law that you're referring to, but

12   I can think off the top of my head at least of

13   four or five interrogatories served on both

14   sides here that are in my view far more broad

15   and far more demanding than this one, where

16   this resistance to answer has not been raised

17   or brought up.

18           So I'll look -- I am glad to look at

19   case cites that you have.  I am glad to

20   consider your proposal.  I appreciate the

21   proposal.  And we can get back to you, but the

22   last comment on this is either now or maybe in

23   your e-mail, Todd, if you could give me an

24   indication as to in what ways you would like

25   to see us narrow this because, you know, right

1    ** CONFIDENTIAL TRANSCRIPT - ATTORNEYS' EYES ONLY **

2    now I am not certain what it is that you're

3    looking for, how you want us to change this,

4    and I'd like some guidance from you folks if

5    we could get that.

6         The last thing I want is to revise

7    it, and then you guys come back to me and say,

8    "Well, you know, this isn't any better."

9    MR. KENNEDY:  I am pretty confident that

10   after you review these cases that you won't

11   need any further guidance.

12   MR. McCRUM:  Okay.

13        Anything more on that one?

14   MR. PEASE:  Not from our end.

15   MR. McCRUM:  Why don't we move to

16   interrogatory No. 20.

17        As you are all well aware Sony

18   served an interrogatory asking us to set forth

19   our invalidity contentions for each of the

20   more than 100 asserted claims of each of the

21   10 asserted patents, and Vizio went through,

22   has analyzed a lot of prior art, selected the

23   references that it believes invalidate the

24   Sony asserted patents, provided detailed Claim

25   Charts on a limitation-by-limitation basis,

1      ** CONFIDENTIAL TRANSCRIPT - ATTORNEYS' EYES ONLY **

2      indicating where within those prior art

3      references Vizio contends that each limitation

4      is found.

5              And so we have now served

6      interrogatory No. 20 seeking Sony's validity

7      contentions with regard to that prior art.

8      And you folks did not provide an answer.

9              Now I understand that you are now

10     agreeing to provide an answer by August 3rd,

11     and I am curious as to what type of answer we

12     can expect because the interrogatory asks you

13     to go through and provide a Claim Chart and

14     indicate for each limitation whether or not --

15     what specifically limitations you allege are

16     not in each of these pieces of prior art, and

17     your reasons why, and is that the type of

18     Claim Chart we can expect to receive on

19     August 3rd?

20          MR. PEASE:  This is Tom.

21              Yeah, we are going to provide a

22     chart, and it is going to be I think

23     comparable to the type of response that Vizio

24     provided, you know, on noninfringement.  You

25     went through and identified the limitations

1    ** CONFIDENTIAL TRANSCRIPT - ATTORNEYS' EYES ONLY **

2    that were, in your view, met by the accused

3    products.  We're preparing a chart of similar

4    scope and content in response to this

5    interrogatory.

6              And I will ask, are you planning to

7    supplement the corresponding Vizio

8    interrogatory before August 3rd to identify

9    additional references or withdraw references?

10        MR. McCRUM:  I don't know the answer to

11   that, Tom, but, I mean, we obviously dispute

12   the reasons why you didn't provide a response

13   when it was due.  I mean, the way that we set

14   these out is any new references that we have

15   added to these charts that we have since

16   uncovered, we simply add another letter to the

17   chart and indicate what that prior art is.

18             And so there was no reason why we

19   shouldn't have received a response with regard

20   to the references that we had originally

21   identified.  So, you know, I don't expect that

22   we are going to be supplementing again by

23   August 3rd.  If you don't want us to, we'll

24   wait, you know --

25        MR. PEASE:  No, no, it's not that.  It's

1     ** CONFIDENTIAL TRANSCRIPT - ATTORNEYS' EYES ONLY **

2     just the last time around our responses to

3     interrogatory No. 20 were due on the Monday

4     after the 4th of July weekend.  Our offices

5     were closed on Friday, July 3rd.  Late in the

6     evening of July 3rd you served a supplemental

7     response to our interrogatory 19, and we

8     didn't have any explanation of what material

9     had been added or taken away at that point.

10    There was no red line.  And, in fact, I don't

11    think there has been a red line provided even

12    since then.

13              And based on your explanation, we're

14    proceeding without the benefit of a red line.

15    And the response we're preparing, and we will

16    serve on August 3 -- I suppose we will serve

17    it whether you supplement or not -- but if you

18    do supplement and do withdraw references, we'd

19    like you to point that out to us, you know,

20    either in the supplement itself or by e-mail

21    or by some means, so that we're not providing

22    analysis of references that are no longer

23    being asserted by Vizio with respect to a

24    particular Claim Chart.

25        MR. McCRUM:  We'll let you know if we

1    ** CONFIDENTIAL TRANSCRIPT - ATTORNEYS' EYES ONLY **

2    withdraw any, but moving forward, our plan --

3    and our plan was, for the convenience of Sony,

4    just to make it as easy as possible, when

5    we're adding references we're literally just

6    putting new letters in.

7           So if we do supplement moving

8    forward, we'll continue with that approach of

9    just adding the new letters, so it's clear,

10   you know.  If the last supplement left off at

11   letter C, any new references will start with

12   letter D.

13          The other comment I want to make is

14   you folks have complained about our

15   noninfringement contentions, and, in fact,

16   asked for a meet-and-confer on that, and now,

17   if I understand you correctly, your plan is to

18   provide a response that is similar to, in the

19   same format as our noninfringement

20   contentions.

21          So, you know, what is Sony's

22   position on our noninfringement contentions?

23   Is it your position that that type of response

24   is adequate, or, you know -- we have asked

25   you:  Give us the identification of the

1    ** CONFIDENTIAL TRANSCRIPT - ATTORNEYS' EYES ONLY **

2    limitations that are missing, and the

3    interrogatory also asks for an explanation as

4    to why Sony contends that they are missing.

5    But it sounds like your plan is to just list

6    the limitations that you contend are missing

7    from the patents; is that correct, and if so,

8    is Sony now of the position that that is an

9    adequate response?

10    MR. PEASE:  This is Tom again.

11    Number one, I think we should

12    discuss Vizio's responses to Sony's

13    interrogatories next week during the

14    appropriate meet-and-confer for it, and you

15    know, we're not going to play games here, you

16    know, tit for tat.

17    What we have done in the time

18    allotted to us is go through and provide Claim

19    Charts and identify what is missing.  If you

20    think additional information needs to be set

21    forth, you know, we'll consider that as we go

22    forward, but, you know, we're not going to tie

23    one side's answers to the -- your side's

24    answers to the responses that we give.

25    We are going to discuss our position

1    ** CONFIDENTIAL TRANSCRIPT - ATTORNEYS' EYES ONLY **

2    with respect to your noninfringement charts

3    next week.  You know, those were served a lot

4    earlier in the case.  You know, we have a

5    separate set of issues with respect to them

6    that we'll go through next week when we're

7    prepared to do so.

8         MR. McCRUM:  This is Ryan.

9              I appreciate and understand that the

10   issues with regard to our respective discovery

11   responses need to be dealt with separately,

12   but I also think that it would be extremely

13   unfair and inconsistent, as -- you know, when

14   we have our meet-and-confer, to the extent it

15   goes forward, you are telling us that our

16   responses are inadequate, when -- if I am

17   hearing you correctly -- you're proposing to

18   do the same thing.

19              So I just want to make sure we're

20   all on the same page here when we talk next

21   week, to the extent that goes forward.

22        MR. KENNEDY:  To an extent you're

23   comparing apples and oranges.  Validity and

24   infringement are two completely different

25   kinds of analysis.  And the fact is that Vizio

1    ** CONFIDENTIAL TRANSCRIPT - ATTORNEYS' EYES ONLY **
2    has a lot of information about how its own
3    products work, and that contrasts with
4    validity where both sides have equal access to
5    the prior art.
6            So the kind of responses that you
7    expect from Sony could be different from the
8    kinds of responses that Sony legitimately
9    expects from Vizio on infringement.
10       MR. McCRUM:  Well, I quite frankly don't
11   understand how it is that much different.
12   It's -- you have got the set of claims, and
13   you are reading something on those claims,
14   whether it's a product or something disclosed
15   in the prior art, it's the same type of
16   analysis.  So I don't agree that it's that --
17   it is apples and oranges, as you suggest.
18           So we'll see what we get on
19   August 3rd, and we can talk about this more
20   next week, if that's something that you folks
21   still want to move forward with.
22       MR. PEASE:  Sounds good.
23           Is that everything you have?
24       MR. McCRUM:  No, we have got two more
25   issues I think will be relatively quick.

1      ** CONFIDENTIAL TRANSCRIPT - ATTORNEYS' EYES ONLY **

2      Third-party subpoenas.  You indicate that --

3              Todd, you indicated in your letter

4      that you will be producing any information you

5      have on those with your next major production.

6      You know, we take issue with that for a couple

7      of reasons.

8              Number one, we don't know when

9      you're going to make your next, quote-unquote,

10     "major production," and number two, I am not

11     certain what you mean by "major production."

12     So you know our position is that Sony should

13     be providing any documents that it receives in

14     response to those subpoenas, as well as any

15     communications that Sony is having with

16     these third parties, on a rolling basis as

17     soon as they are received by Sony.

18             I don't think that it's fair for us

19     to -- for you to have these documents or

20     communications and to, you know, wait to

21     produce them when you're making,

22     quote-unquote, "major productions."

23             So we would ask that you, to the

24     extent you have any of that stuff, you produce

25     it to us immediately.

1      ** CONFIDENTIAL TRANSCRIPT - ATTORNEYS' EYES ONLY **

2          MR. KENNEDY:  I think Peter probably has

3      a better idea of when the next production is

4      going to be.

5          MR. KLIVENS:  Ryan, actually a lot of

6      that might have been -- this is a very minor

7      point -- but I think we produced a document

8      earlier, and then we reused that number.  So

9      we need to reproduce that.  It was a

10     single-page document that was in our

11     interrogatory responses --

12         THE REPORTER:  Wait, I'm having trouble

13     understanding you.

14         MR. KLIVENS:  We have produced a

15     single-page document with some interrogatory

16     responses in June, and we accidentally used

17     that number.  We're going to reproduce that

18     number again.

19             In this letter I think we wanted to

20     avoid confusion by saying "the next

21     production," so we said "major."  And the

22     major one, we are preparing some more

23     documents.  It will be by the end of the

24     month.  So if you want to know, that's what it

25     is.

1    ** CONFIDENTIAL TRANSCRIPT - ATTORNEYS' EYES ONLY **

2        MR. McCRUM:  This is Ryan McCrum again.

3            Can we agree that moving forward

4    with regard to third-party-produced documents

5    that they will be produced within a reasonable

6    time after receiving and processing them, and

7    that we won't have to wait for some unknown

8    time in the future to get them?

9        MR. KLIVENS:  Yeah, I think "reasonable

10   time" makes sense.  That's agreeable.

11       MR. PEASE:  This is Tom.

12           That, I think, is this the approach

13   we have taken, and we assume you guys will do

14   the same.

15       MR. McCRUM:  Yeah, absolutely.

16           And then the other thing is to the

17   extent that you have any communications with

18   these third parties, either by letter or

19   e-mail, we would expect that those would be

20   included with the production.

21           Is that something that Sony is going

22   to be producing as well?

23       MR. PEASE:  Subject to objections, sure.

24       MR. KENNEDY:  This is Todd.

25           Just to be clear, is that what Vizio

** CONFIDENTIAL TRANSCRIPT - ATTORNEYS' EYES ONLY **

1    is agreeing to do?

2         MR. McCRUM:  Yeah, I mean, we haven't

3    subpoenaed anybody yet.

4         MR. PEASE:  This is Tom again.

5              Your question went beyond that.  It

6    was communications that you guys have had with

7    third parties.  So if you have been in contact

8    with AmTran or Media Tech or other companies,

9    you know, if we're going to produce that kind

10   of communication, we expect Vizio to do the

11   same.

12        MR. McCRUM:  Well, you do -- you raise a

13   good -- you raise an important issue that I

14   was going to -- and you'll see I have raised

15   in one of my letters that I am going to be

16   sending out today -- and that is with regard

17   to e-mail communications, and, Peter, in one

18   of our prior meet-and-confers you referenced

19   an agreement between the parties not to

20   produce electronically maintained e-mails, and

21   our understanding is that Jim Wamsley, and I

22   think it was Ed DeFranco had reached that

23   agreement, at least orally, and we have

24   been -- we have been proceeding under that

```
 1      ** CONFIDENTIAL TRANSCRIPT - ATTORNEYS' EYES ONLY **
 2    agreement.  It seems that Sony has been
 3    proceeding under that agreement as well
 4    because we haven't seen any e-mail
 5    correspondence from the more than 20 listed
 6    inventors on the patents at issue, or other
 7    e-mail correspondence for that matter, other
 8    than the ones you produced relating to the
 9    standards that were already in the personal
10    files of your people.
11              So I want to get -- I want to make
12    sure everyone is clear on where we stand on
13    this stuff.
14              Is the agreement that we are going
15    to be producing e-mails or not producing
16    e-mails?  Our understanding is that we are
17    not.  Is that Sony's understanding?
18         MR. PEASE:  This is Tom.
19              I actually need to get back to you
20    on that.  I know there have been different
21    agreements for the different cases, and I
22    don't recall, sitting here, what agreements we
23    made specifically for this case, but we'll get
24    back to you very early next week on that.
25    Probably Monday.
```

1    ** CONFIDENTIAL TRANSCRIPT - ATTORNEYS' EYES ONLY **

2         MR. McCRUM:  Okay.

3         MR. PEASE:  Maybe even today, but I would

4    expect we would get back to you no later than

5    Monday.

6         MR. McCRUM:  You'll see it's also the

7    subject of my letter that I'll be sending out

8    today, and I think the answer to your

9    question, then, about whether or not the

10   parties are going to be producing, you know,

11   e-mails and things of that nature will, you

12   know -- it will be -- it will depend on what

13   the answer to that is.

14         And our position is that we have

15   reached an agreement regarding e-mail

16   correspondence.  And, like I said, I think

17   that -- we thought that agreement was

18   reflected in the fact that we had seen hardly

19   any e-mails from Sony as well.

20         MR. KLIVENS:  One last point.  There are

21   e-mails that have been produced, in terms of

22   negotiations with other parties regarding the

23   patents.  We have gotten a lot of those.

24         MR. McCRUM:  Right, I don't know, Peter,

25   are those e-mails that were -- as you

1    ** CONFIDENTIAL TRANSCRIPT - ATTORNEYS' EYES ONLY **

2    mentioned in the last meet-and-confer, were

3    those e-mails that were printed out and that

4    were in people's files, or did you guys go to

5    the electronic files of those people and

6    produce those?

7        MR. KLIVENS:  We'd have to check.  We can

8    get back to you.

9        MR. MILLER:  Peter, speak up a little

10   bit, please.

11       MR. PEASE:  We'd have to check on that,

12   and we can get back to you in the context of

13   getting back to you on Monday, as Tom said

14   already.

15       MR. McCRUM:  Okay, but as far as, you

16   know, e-mails in electronic files like that

17   from inventors, we haven't seen any of that.

18   And you don't disagree with that, do you,

19   Peter?

20       MR. KLIVENS:  No, I don't disagree with

21   that.  But that's in large part because many

22   of these are quite old.

23       MR. McCRUM:  Let us know what your

24   thoughts are on that next week, and we can

25   revisit the issue about whether or not these

1    ** CONFIDENTIAL TRANSCRIPT - ATTORNEYS' EYES ONLY **

2    things do, in fact, need to be produced, but

3    with that said, I mean, to the extent that you

4    have correspondence in non-e-mail form,

5    letters and things like that, then we would

6    ask that those obviously be produced.

7         MR. PEASE:  Okay.

8              Is that everything?

9         MR. McCRUM:  We have got one more thing,

10   which is the Westinghouse documents.  And,

11   again, Todd's letter from last night indicated

12   that Sony has now produced all the documents

13   requested by Vizio from the Westinghouse

14   litigation, and I didn't see a production

15   letter.  Maybe I missed it.  Did you guys send

16   one out?

17        MR. KLIVENS:  I think it went out on the

18   16th.  Is that yesterday?  You should have it

19   by now.

20        MR. McCRUM:  I think we have it.  I think

21   we just got it today.  I touched base with

22   Steve during the meet-and-confer here.  He

23   said we have got something come in today, but

24   I didn't see a production letter that went

25   along with it.

1      ** CONFIDENTIAL TRANSCRIPT - ATTORNEYS' EYES ONLY **

2              You know, I wasn't aware of that

3      until today, but obviously we haven't had a

4      chance to look at that to see what is in

5      there, but can you give us a sense of what is

6      in there?

7              Does it include all the discovery

8      requests and limited to nonconfidential

9      information, or have you now obtained the

10     consent of Westinghouse to produce

11     confidential discovery responses?

12         MR. KLIVENS:  This is Peter.

13             It contains confidential and

14     nonconfidential.  We did obtain consent

15     quickly once we did it, as we said we would.

16         MR. McCRUM:  Okay.  It includes -- so it

17     has got discovery responses, and to the extent

18     there were any expert reports or anything,

19     those are in there as well?

20         MR. KLIVENS:  There were no expert

21     reports in that litigation.

22         MR. McCRUM:  All right.  We will take a

23     look at those.

24         MR. KENNEDY:  Ryan, this is Todd.  I

25     wanted to clarify, you should have received

** CONFIDENTIAL TRANSCRIPT - ATTORNEYS' EYES ONLY **

1

2    that production cover letter via e-mail on

3    Wednesday the 15th at about 9:20 p.m. Pacific.

4         MR. McCRUM:  Okay.  I must have missed

5    it.  I didn't see it come across the airwaves.

6    Who was that from?  From you or Peter?

7         MR. KLIVENS:  Actually, from

8    Heather Belville.

9         MR. CORR:  Okay.  This is Steve Corr.

10   Just to be clear, the disk I received today,

11   Peter, is the disk that contains those

12   materials?

13        MR. KLIVENS:  That's correct.  There's a

14   few other things on there too, but that's the

15   Westinghouse stuff.

16        MR. CORR:  Okay.

17        MR. McCRUM:  This is Ryan.

18             I think that's everything that I had

19   on our agenda for the day.

20             (The Meet and Confer was

21             concluded at 12:53 p.m.)

22             *    *    *

23

24

25

1       ** CONFIDENTIAL TRANSCRIPT - ATTORNEYS' EYES ONLY **

2                   REPORTER'S CERTIFICATE

3                           OF

4              CERTIFIED SHORTHAND REPORTER

5

6                   *  *  *  *  *  *  *

7

8    I, THE UNDERSIGNED CERTIFIED SHORTHAND

9    REPORTER, IN AND FOR THE STATE OF CALIFORNIA,

10   DO HEREBY CERTIFY:  THAT THE FOREGOING

11   PROCEEDINGS WERE TAKEN BEFORE ME AT THE TIME

12   AND PLACE THEREIN SET FORTH, AT WHICH TIME THE

13   WITNESS WAS PUT UNDER OATH BY ME; THAT THE

14   TESTIMONY OF THE WITNESS AND ALL OBJECTIONS AT

15   THE TIME OF THE PROCEEDINGS WERE RECORDED

16   STENOGRAPHICALLY BY ME AND WERE THEREAFTER

17   TRANSCRIBED UNDER MY DIRECTION; THAT THE

18   FOREGOING IS A TRUE RECORD OF THE TESTIMONY

19   AND OF ALL OBJECTIONS MADE AT THE TIME OF THE

20   PROCEEDINGS.

21   IN WITNESS WHEREOF, I HAVE SUBSCRIBED MY NAME

22

     DATE: 7/29/09

23

24   _____

25   LESLIE L. WHITE, CSR NO. 4148