# EXHIBIT A

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION


SONY CORPORATION, a
Japanese Corporation,

          Plaintiff,

     vs.              No. SA CV08-01135-RGK(FMOx)

VIZIO, INC.,

          Defendant.

_____


MEET AND CONFER

Los Angeles, California

Thursday, July 23, 2009


Reported by:
JILL GLANTZ
CSR No. 11341

JOB No. 117120

1              UNITED STATES DISTRICT COURT
           CENTRAL DISTRICT OF CALIFORNIA
2                   WESTERN DIVISION

3

4    SONY CORPORATION, a
     Japanese Corporation,
5
                    Plaintiff,
6
          vs.                No. SA CV08-01135-RGK(FMOx)
7
     VIZIO, INC.,
8
                    Defendant.
9

10

11

12    _____

13

14

15       MEET AND CONFER, at 865 South Figueroa Street,

16   Tenth Floor, Los Angeles, California, beginning at

17   1:09 p.m. and ending at 2:27 p.m. on Thursday,

18   July 23, 2009, before JILL GLANTZ, Certified Shorthand

19   Reporter No. 11341.

20

21

22

23

24

25

1    APPEARANCES:

2

3    For Plaintiff:

4         QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
          BY:   RORY S. MILLER
5               TOM PEASE (Telephonic appearance)
                TODD KENNEDY (Telephonic appearance)
6               PETER KLIVANS (Telephonic appearance)
                HEATHER BELVILLE (Telephonic appearance)
7         Attorneys at Law
          865 South Figueroa Street, 10th Floor
8         Los Angeles, California 90017
          (213) 443-3000

9

10   For Defendant:

11        JONES DAY
          BY:   STEVEN J. CORR
12              RYAN McCRUM (Telephonic appearance)
          Attorney at Law
13        555 South Flower Street, Fiftieth Floor
          Los Angeles, California 90071
14        (213) 489-3939

15

16

17

18

19

20

21

22

23

24

25

9250221d-30c4-44dd-803d-0fe1391bcc6e

Page 4

1      Los Angeles, California, Thursday, July 23, 2009
2                   1:09 p.m. - 2:27 p.m.
3
4           MR. MILLER:  Rory Miller, Quinn Emanuel Los
5    Angeles on behalf of Sony.
6           MR. PEASE:  Tom Pease, Quinn Emanuel New York
7    on behalf of Sony.
8           MR. KENNEDY:  Todd Kennedy, Quinn Emanuel San
9    Francisco on behalf of Sony.
10          MR. KLIVANS:  Peter Klivans, Quinn Emanuel San
11   Francisco on behalf of Sony.
12          MS. BELVILLE:  Heather Belville, Quinn Emanuel,
13   Silicon Valley office representing Sony.
14          MR. McCRUM:  Ryan McCrum, Jones Day on behalf
15   of Vizio.
16          MR. CORR:  Steve Corr from Jones Day Los
17   Angeles on behalf of Vizio.
18          MR. MILLER:  Okay, gentlemen.  Why don't we go
19   ahead and get started.  Peter, do you want to take the
20   first whack at this or Tom or somebody?
21          MR. PEASE:  I think Todd is going to start.
22          MR. KENNEDY:  This is Todd Kennedy.  Why don't
23   we start with Sony's Interrogatory Number 3, which
24   requests that they seize for Vizio's contentions of
25   non infringement.  Vizio's response is just a list of

1   claim elements.  Sony's position is that Vizio's

2   response needs to include all relevant factual bases

3   regarding the structure and operation of Vizio

4   television.  None of that information is currently in

5   Vizio's response.

6          MR. McCRUM:  This is Ryan McCrum.  In our

7   letter we advised you that the Interrogatory Number 3

8   asks Vizio to provide a claim chart setting forth the

9   bases for Vizio's first affirmative defense that it

10  does not infringe the patent suit.  And in response,

11  Vizio provided claim charts for each of the more than

12  100 asserted patent claims and setting forth for each

13  limitation -- and set forth each limitation that it

14  currently contends is not present in Vizio's products

15  or that Sony has not shown by a preponderance of the

16  evidence to be present in Vizio's products.  In our

17  view, this is exactly what Sony requested, and we did

18  in fact provide a sufficient answer.

19             And as I also noted in my letter, to the

20  extent that Sony is having any difficulty

21  understanding Vizio's contentions, our position is

22  that is a result of Sony's refusal to perform or agree

23  to perform the first step of any non infringement

24  analysis, which is claim construction.  If Sony would

25  agree to exchange constructions, including a means

Page 6

1   plus function terms, then we could identify the
2   structure required by such claims, and we think it
3   would then be a lot more clear what structure we are
4   claiming is not present in Vizio's products.  But
5   that's another dispute that we have ongoing.  As you
6   know, Sony is not agreeing to do that; and therefore,
7   we think these responses are adequate, especially
8   given that you have asserted over 100 claims,
9   thousands of claim limitations against dozens of Vizio
10  products.

11          I also want to note that during our last
12  meet and confer you had indicated that Sony expected
13  to provide claim charts regarding your validity
14  contentions that are the same nature of our
15  infringement contention.  So we don't think it's fair
16  for Sony to insist that Vizio provide a certain level
17  of information in response to interrogatories that
18  Sony itself is unwilling to provide in response to
19  similar interrogatories.

20          So that's our position on that.  I don't
21  think any of that is new to you.  We have set that out
22  in the letter of correspondence and talked about it in
23  the past.
24      MR. KENNEDY:  This is Todd.  Why don't we focus
25  on one particular fact that Vizio has raised elsewhere

1   but not included in its claim charts.  In a May 20,

2   2009 letter, Vizio represented that one of its

3   televisions does not infringe the 182 patent because

4   it analyzes the entire frame to generate the histogram

5   distribution that accumulates luminous data into 32

6   BINS, B-I-N-S.  That is a very specific factual

7   allegation regarding non infringement that is clearly

8   responsive to Sony's interrogatories, and yet that

9   fact does not appear anywhere in Vizio's response.

10          Why not?

11          MR. McCRUM:  This is Ryan McCrum again.  I

12   think you, Sony, has already acknowledged, Todd, Vizio

13   is not required to set forth all information about its

14   products in an interrogatory response.  And I would

15   refer you to your letter of June 18 to me that says

16   that Sony does not agree that it is required to

17   include in its interrogatory response all information

18   about Vizio products that Sony provided to Vizio at an

19   earlier time.  And so it's not clear why Sony now

20   believes it can insist on all such information in

21   response to Sony's interrogatories.

22          MR. KENNEDY:  Ryan, this is Todd again.  Your

23   factual allegation regarding the histogram is

24   according to your own Rule 11 motion a critical fact

25   in Vizio's entire Rule 11 basis for that patent.  It

1   was based on that specific factual allegation.  So

2   it's not something that is an insignificant fact that

3   doesn't need to be included in the claims charts.

4   This is a very significant factual allegation.

5            MR. McCRUM:  This is Ryan McCrum again.  Well,

6   that allegation and that fact is important to the

7   issue of Sony's Rule 11 basis for filing suit.  And

8   the reason why in the context in which it came up was

9   when we had concerns about Sony's Rule 11 basis for

10  bringing this suit.  And the point about that

11  particular function of Vizio's products, we raised

12  that was because we felt that we had told you early on

13  before this case was filed that Sony's -- or that

14  Vizio's products operated in a certain way.  And

15  despite telling you that, it doesn't appear that Sony

16  has gone out and made any effort or attempt to confirm

17  whether or not that was true.  So that issue and those

18  representations about Vizio's products were raised in

19  different contexts and were relevant to your Rule 11

20  basis for bringing this action.

21           MR. KENNEDY:  Is it your position that the

22  facts regarding histogram distribution is not relevant

23  to Vizio's contention of non infringement?

24           MR. McCRUM:  I don't think I said that.

25           MR. KENNEDY:  So is it relevant or not?

1    MR. McCRUM:  Is what relevant?

2    MR. KENNEDY:  Is the fact about Vizio's

3  histogram distribution relevant to the issue of

4  infringement?

5    MR. McCRUM:  Certainly how Vizio's products

6  function and operate is relevant to the issue of

7  infringement, and on that limitation -- the relevant

8  limitation here we have indicated has not met by

9  Vizio's products.  So we have got hundreds of

10 limitations.  You're focusing in on one here.  And if

11 we start going into the specifics and details about

12 every which way Vizio's products operate with regard

13 to each limitation, then are you going to then ask for

14 the same thing with respect to the thousand other

15 limitations?

16         We provided claim charts to you on a

17 limitation by limitation basis, and we were consistent

18 in how we provided those charts.  And we are confident

19 and feel comfortable that those sufficiently answer

20 your interrogatory.

21    MR. PEASE:  Ryan, this is Tom Pease.  Vizio

22 served an interrogatory on Sony asking for Sony's

23 infringement contentions.  We served a thousand page

24 response that we since supplemented twice, and Vizio

25 has still taken a position that those responses are

1    not sufficient.

2                   Now, Sony served the mirror image

3    interrogatory on Vizio, and that asks Vizio to

4    identify those limitations that are not set forth and

5    to explain the basis for your contention that you

6    don't infringe in light of our infringement

7    contentions.  So all you have done is parrot the claim

8    language and say we don't meet the following

9    limitations.

10                  And yet what you have demanded that we do

11   in our affirmative case is a lot more than simply say

12   Vizio, you practice the following limitations.  What

13   you have asked us to do and what we have gone back to

14   the well and done several times and promised to do

15   again as we get additional information is to provide a

16   meaningful explanation of why it is based on the facts

17   that are available to us that we think Vizio meets the

18   limitations of the Sony asserted claims in this suit.

19                  So for you to say that you think you have

20   answered the interrogatory when all you have done is

21   identify limitations that you don't believe Vizio

22   meets, to me that sounds like we're at an impasse

23   because we're obviously looking for more information

24   there.  And what really got us started on this is you

25   sent us a letter at least a month ago, and you had a

9250221d-30c4-44dd-803d-0fe1391bcc6e

1    very detailed factual basis that you contend -- and we

2    disagree -- but you contend means that Vizio does not

3    infringe at least one claim of the 182 patent.  You

4    gave us a detailed analysis of the histogram and the

5    way that's generated and the way it works, and you

6    said that based on that Vizio doesn't infringe the 182

7    patent.  Well, that's the kind of information that our

8    interrogatory was designed to elicit.  We want to know

9    what it is Vizio believes is the reason it doesn't

10   infringe.

11              Now, this ties in with a lot of things.

12   You mentioned the claim construction dispute.  Well,

13   in accordance with the schedule adopted by the court,

14   we don't think it's right or the time is right to

15   disclose claim construction positions right now.  And

16   one reason we think that is that we haven't

17   crystalized the factual disputes between the parties.

18   But for your letter, which just happened to reveal

19   your basis for believing you don't infringe one patent

20   suit, we wouldn't know anything about your basis.  We

21   have given infringement contentions.  We have promised

22   to go back and supplement them, but we haven't heard

23   from you why you think you don't infringe other than

24   the parrot language of the claim.

25              And if we're going to be able to reach a

1   position where the parties actually know what the

2   disputes are and are in a position to at some point

3   write summary judgment motions and prepares cases for

4   trial, we are going to need that kind of information,

5   and that's what we're looking for here.

6            Just to pick up on one other point that

7   you made, you said we took the position that we

8   weren't going to put in all the information that was

9   in the claim charts that were given to Vizio before

10  this lawsuit was initiated.  Our position actually

11  was, look, we're not going to parrot every single word

12  in those claim charts, but we did go back and we did

13  include in our claim charts the relevant aspects of

14  those charts.  Yeah, we didn't cut word for word every

15  single word that was in the presuit claim charts, but

16  we did go back and we did amend our analysis to

17  include the kind of information that was in there, to

18  the extent that information reflected Sony's

19  infringement contentions.

20       MR. McCRUM:  This is Ryan McCrum again.

21  Several points in response to that.  The first is we

22  have this underlying dispute about whether or not you

23  should be required to provide claim constructions.

24  That is the underlying problem here is Sony's refusal

25  to agree to provide claim constructions on targeted

Page 13

1  terms that we believe are already in dispute and need
2  to be construed.  You can look at any federal circuit
3  case addressing the issue of claim construction, and
4  you will see unanimously that the first step of any
5  claim -- of any infringement analysis is claim
6  construction.  You cannot conduct a meaningful
7  infringement analysis prior to -- before claim
8  construction is conducted.
9           Sony is skipping that necessary step and
10 making it impossible for the parties to have -- to
11 address the issue of infringement the way it should
12 be.  Sony's infringement allegations and contentions
13 right now in our view are essentially useless without
14 claim construction.  We still cannot tell where the
15 disputes lie or what Sony's contentions are because we
16 have no idea how you are construing these claims.
17          You repeatedly offered to provide a list
18 of proposed terms to be construed, starting with the
19 means plus function terms, that we think once
20 construed will shed significant light on the parties'
21 infringement and non infringement contentions, and it
22 will substantially narrow the issues for the court,
23 the parties and for dispositive motion briefing.  That
24 is the underlying problem here with regard to
25 infringement, and our position is that until we do

1 that, our responses right now are the best they can

2 be.

3          Now, my second point is, yes, we are

4 willing to supplement our non infringement

5 contentions.  We are willing to do that once we

6 resolve this claim construction issue that we're

7 arguing about; two, when we're working with experts

8 and we're continuing to work with experts regarding

9 infringement and non infringement issues.  And you

10 folks are supposedly seeking information from third

11 parties in discovery that you yourselves claim are

12 going to shed light on the issue of infringement that

13 we will certainly incorporate into our non

14 infringement contentions as well.  Vizio is willing to

15 supplement its non infringement contentions as it

16 continues to obtain additional information.

17          And lastly, the third thing is, you know,

18 you have already indicated that your contentions

19 regarding validity are basically going to be a

20 limitation -- just a recitation of whatever

21 limitations you think are missing from these prior

22 references.  Are you folks planning to go through and

23 identify each limitation that is missing from those

24 references and also give us an explanation as to why

25 you believe those are missing?

1      MR. KENNEDY:  Ryan, this is Todd.  As you know,
2  those charts are going to be produced at the end of
3  the month, and we can certainly talk about the charts
4  after Vizio has had its chance to review them.
5            But I did have one question for you,
6  which is why is Vizio's statement about the histogram
7  distribution not important enough to include in its
8  claim charts?
9      MR. McCRUM:  We addressed that limitation and
10  said that it was not satisfied and that Sony has not
11  satisfied its burden of showing that that limitation
12  is satisfied.  That is our current position on
13  infringement.  And to the extent that we are going to
14  supplement or have additional information that we want
15  to include in our infringement contentions, we'll do
16  that.
17            It's not for Sony to sit there and
18  dictate what should be our infringement and non
19  infringement contentions.  That's for Vizio to decide.
20  And right now we told you what they are, and we
21  don't -- quite frankly, we don't believe that Sony has
22  come even close to showing that most of the
23  limitations in the asserted patents are satisfied by
24  Vizio's products.  I mean, let the record be clear,
25  Vizio doesn't have to come forward with any evidence

1    of non infringement.  That's your burden of proof.
2    And right now we think that it is nowhere close to
3    being satisfied, and we can rest on that alone, and we
4    can decide to do that.
5              Now, if you come forward with some
6    infringement contentions in more detail and provide
7    claim constructions, then, you know, we will address
8    our non infringement contentions accordingly.
9         MR. PEASE:  Ryan, this is Tom.  You said it's
10   not for Sony to dictate what Vizio's non infringement
11   contentions are going to be, and yet Vizio has had no
12   problem trying to dictate what Sony's infringement
13   contentions ought to be.  We have gone back and
14   supplemented our infringement contentions several
15   times now, and we're planning to do it again because
16   you complained it didn't give you enough information.
17             Now, I suppose we can just wait until
18   trial and simply say you meet these limitations,
19   that's all we're going to say or at least wait until
20   there is some disclosure and expert opinions, then
21   that's going to hold for both parties.  You can't say
22   that it's not sufficient for Sony to just parrot the
23   claim language when it sets forth an infringement
24   contention and yet it's perfectly okay for Vizio to do
25   that in its non infringement contentions.  You know,

1   that's just not going to work.  This is discovery, and

2   the whole point of discovery is to figure out what the

3   other side's position is and crystalize disputes and

4   figure out what the true disputes are and which ones

5   deserve a lot of attention as the parties develop

6   their cases and which ones do not.  You know, we want

7   to know which limitations aren't in dispute.

8                Along those lines, you say your non

9   infringement contentions now are -- I think the

10  expression you used "are as best as they can be."  But

11  based on your own letter, they clearly aren't.  All

12  you have told us is that you don't meet a particular

13  limitation.  You haven't told us why you don't meet

14  that limitation, and your own letter shows that you

15  know exactly why you think you don't meet that

16  limitation.

17               You know, you said you guys are

18  developing trial positions and refusing to disclose

19  them to us in response to contention interrogatories.

20  We don't think that's fair because we have been

21  bending over backwards to try to accommodate every

22  request from Vizio for additional information.

23               And just one last point on claim

24  construction.  You say without formal disclosure of

25  claim construction, proposed constructions and

1  supporting evidence you're not in a position to

2  develop your non infringement arguments.  Like I said,

3  your letter belies that.

4           And two, we would point out before the

5  court set a schedule which didn't include formal claim

6  construction disclosures, Sony actually served an

7  interrogatory on Vizio that asked for Vizio's proposed

8  constructions and supporting evidence, and we haven't

9  had any substantive information in response to that

10 interrogatory.

11          So if Vizio were serious in saying that

12 the parties have a duty to disclose, even at this

13 point before the issues have crystalized, their claim

14 construction positions, Vizio itself hasn't lived up

15 to that.  There's not been single claim construction

16 disclosed in response to that interrogatory.  We

17 haven't pressed you on it because after that

18 interrogatory was served, the court adopted its

19 schedule and made it clear that there weren't going to

20 be formal claim construction disclosures up front.

21      MR. McCRUM:  Well, Tom, that is really, really

22 disingenuous of you to claim because Vizio has offered

23 dozens of times now to provide claim constructions.

24 It is not going to do it unilaterally.  Discovery is

25 not a one-way street without any agreement from Sony

Page 19

1   to provide the same thing in return.  That's how this

2   would need to work.  We're not going to be agreeing to

3   start providing you with all of these claim

4   construction contentions with no promise in return

5   that you're going to be doing the same.

6           So the idea that you served an

7   interrogatory and we've been withholding this

8   information or any suggestion that we haven't been

9   willing to provide it is nonsense, because we have

10  been begging for the parties to exchange this

11  information.  It's been Sony that has unilaterally

12  decided that it's not going to provide this

13  information during discovery.

14          And secondly, I should correct something

15  that you said about Sony not insisting on this stuff

16  after the scheduling order went in place.  Well,

17  that's not true.  There's letter correspondence from

18  you folks after the scheduling order was in place

19  asking for Vizio's claim constructions.

20          MR. PEASE:  Ryan, this is Tom again.  My

21  recollection there is there was one letter where

22  somebody went through your interrogatory responses and

23  simply identified those responses where there was no

24  substantive information provided.  So yes, someone did

25  write a letter after the court adopted its schedule

1  that mentioned your failure to answer that

2  interrogatory.  But other than that, my understanding

3  is we had not insisted that you answer that

4  interrogatory since then.  And we have done nothing

5  that was inconsistent with that position since then.

6        MR. McCRUM:  I just want the record to be

7  clear.  You said that after the scheduling order, Sony

8  made no effort to -- and the fact that there is a

9  letter out there which you now acknowledge exists, and

10  it states that we did not answer that and requested

11  that we provide an answer within 30 days.  So I don't

12  think you were clear on what actually transpired in

13  the past on this issue.

14        MR. PEASE:  This is Tom again.  I think the

15  record is equally clear that we didn't raise that at

16  the meet and confer and we didn't move to compel on

17  it.

18        MR. McCRUM:  For obvious reasons because Sony

19  was not willing to provide that information itself.

20  So anyway, what is it that you want from us in

21  response to Interrogatory Number 3?  You have our

22  position.  We feel like the claim construction, we are

23  unable to provide further information on this.  The

24  next step needs to be claim construction, and that

25  will much better inform the parties of the

Page 21

1    infringement and non infringement positions.  And once

2    that happens, then we can supplement the interrogatory

3    responses at that time.

4          MR. PEASE:  So am I correct, Ryan, Vizio has no

5    intention of supplementing its non infringement

6    responses until there's been some sort of formal

7    exchange in claim construction positions?

8          MR. McCRUM:  We are willing to supplement until

9    either there's been an exchange of claim construction

10   positions or the issue of claim construction has been

11   resolved, or we are in possession of additional

12   information that we learned through discovery that we

13   think should be the subject of a supplementation.

14         MR. PEASE:  Let me ask you this.  Is it your

15   position that Sony based on this lack of resolution of

16   the claim construction issue need not further

17   supplement its infringement contentions until that's

18   been resolved?

19         MR. McCRUM:  That's an issue that I haven't

20   given any thought to.  But I mean, the issue on Sony's

21   infringement contentions is that absent claim

22   construction, what you have given us just simply

23   doesn't provide any level of any substance as to what

24   exactly you are claiming in Vizio's product satisfies

25   limitations.  I mean, we have talked about that a

1  number of times.  The problem there is that you are

2  relying on the same exact pieces of information from

3  Vizio's documents and other areas -- well, Vizio's

4  documents for every limitation, so there's no way for

5  us to discern what exactly you're pointing to is

6  satisfying the limitations.

7              Now, if you were to provide claim

8  construction, then maybe we would better understand

9  how it is that you're claiming that the same ten

10 features satisfy all limitations of the same claim.

11      MR. PEASE:  This is Tom again.  I disagree with

12 your characterization of the infringement contentions,

13 but I think it's clear Vizio is not in the near future

14 going to supplement its response to this interrogatory

15 until there's been some sort of resolution of your

16 motion seeking formal claims construction exchanges.

17              Is that correct.

18      MR. McCRUM:  Well, I mean, if you want us to go

19 back and put this information about the 182 patent --

20 is that what you are looking for, that our prior

21 representations that we made, those need to be

22 included in our claim charts?  Is that going to be

23 sufficient?

24      MR. PEASE:  No, it's not.  Those just happen to

25 be the examples that you chose to put in your

1    discovery letter.  What we want is for you to go back

2    and provide that kind of detail with respect to all of

3    the claims that have been asserted.  We have given you

4    the infringement contention.  Now the onus is on Vizio

5    to say why it thinks it doesn't infringe.  Your letter

6    gave one example that was very, very specific in terms

7    of the operation of Vizio's products.  Yes, we would

8    like to see that information in the non infringement

9    chart with respect to the 182 patent, but we would

10   like to see the same kind of information with the same

11   level of detail in Vizio's responses with respect to

12   the other asserted claims.

13        MR. McCRUM:  Well, I will tell you what.  We

14   will go back, and I will see if there's anything else

15   that we can add to our claim charts along those lines.

16   I'm not making any promises, but I will let you know

17   if we will be able to do that.

18        MR. PEASE:  When are you going to let us know

19   that?

20        MR. McCRUM:  I will let you know in standard

21   operating procedure within a week from today.

22        MR. KENNEDY:  Why don't we move on to the next

23   issue that was raised in the Rule 37 letter, and that

24   is it appears to Sony that Vizio is withholding

25   critical documents regarding infringement.  And the

1   example provided in the letter is Vizio's statement

2   about the histogram distribution once again.  Sony has

3   gone through Vizio's production and has been unable to

4   locate any documents that describe that histogram

5   distribution that Vizio has referred to, and Sony has

6   requested Vizio to provide the document control

7   numbers that refer to that statement and has not been

8   able to do so.

9          MR. McCRUM:  This is Ryan McCrum.  Todd, we

10  have told you, I don't know how many times now, we are

11  not withholding documents on this issue.  We have

12  provided you with all documents that we have been able

13  to locate.  We will continue to search for responsive

14  documents.  To the extent we find any, we will produce

15  them as soon as we can.  But I don't know how many

16  times I'm going to have to say this, but we are not

17  withholding documents on that issue.

18         MR. KENNEDY:  Then where is the document about

19  histogram distribution?

20         MR. McCRUM:  We never indicated that there was

21  a document on that.

22         MR. KENNEDY:  Where did Vizio get that

23  information if not from a document?

24         MR. McCRUM:  Well, there's different ways to

25  get information.  I think you guys are smart enough to

Page 25

1    know that.  It doesn't have to come from a document.

2    All I will tell you is that after Sony made

3    allegations of infringement against Vizio, Vizio

4    analyzed its products and obtained information

5    regarding the operation of its products, and we

6    provided that information to you in the context of --

7    the initial settlement discussions.

8              And then we also when the issue of Rule

9    11 came up, we provided that information to you again

10   when we had concerns about Sony's infringement

11   allegations.  And the purpose, which I have already

12   mentioned, of doing that was to express our concern

13   that despite advising Sony about why Vizio's products

14   do not infringe, Sony went ahead and filed this

15   lawsuit anyway without any apparent effort to confirm

16   whether or not what Vizio told them was true or not.

17             So again, as I have stated, we are not

18   withholding documents that shed light on this issue.

19        MR. PEASE:  Ryan, a couple follow-up questions

20   there.  You say you got the information through

21   sources as part of the settlement discussions and then

22   provided it again as part of your alleged concerns

23   about Sony's basis for bringing the suit.  But we

24   haven't seen the underlying documentation.  And we

25   haven't seen any supplement, for example, of Vizio's

Page 26

1    initial disclosures to identify the persons who are

2    providing this information.

3              And three, we have a real concern that

4    despite Vizio's promise to produce documents in its

5    possession, custody and control, we have a concern

6    that Vizio has not asked AmTran, for example, for

7    relevant documents or asked the chip suppliers for

8    relevant documents.

9              So I want to put it to you plainly now,

10   has Vizio asked AmTran Technology to produce documents

11   relating to the products that Vizio sells and that are

12   accused of infringement in this action?

13        MR. McCRUM:  Well, let me ask you a question on

14   that.  I mean, is it your position that Vizio is

15   obligated to produce documents from AmTran, which is a

16   third party, a Taiwanese company not named in this

17   litigation?

18        MR. PEASE:  Absolutely.  AmTran has

19   participated in the settlement discussions.  AmTran,

20   we understand, is indemnifying Vizio.  We suspect that

21   AmTran is paying, for example, your fees.  We don't

22   know that, but we suspect it.  AmTran is actively

23   involved in this litigation.  AmTran went out and

24   bought patents to assert against Sony in response to

25   Sony's assertion of patents against Vizio.  AmTran

Page 27

1  makes the products that are accused of infringement.

2  Vizio's engineers talk to AmTran to get information

3  from AmTran in the ordinary course of business.  So

4  yes, in a nutshell, to the extent Vizio -- or to the

5  extent our requests call for technical information

6  concerning the accused Vizio products and those Vizio

7  products are manufactured by AmTran, yeah, we do think

8  Vizio does have a duty to go to AmTran and get that

9  documentation.

10         MR. McCRUM:  This is Ryan.  I am not going to

11 sit here and argue with you about this.  But do you

12 have case law supporting this in the Central District

13 of California or 9th circuit?

14         MR. PEASE:  I'm sure we have case law.  I don't

15 have it at hand.

16         MR. McCRUM:  Before we go down the road of

17 agreeing to do something with regard to a third party

18 not named in this litigation, a foreign company

19 nonetheless, I want to be certain that this is

20 something -- before we go to the burden and expense of

21 doing this, I want to feel comfortable that this is

22 something that Vizio does in fact have to do.  And if

23 you have got some case law on point, I would certainly

24 be interested in looking at that.

25              The other thing I want to note is the

1   discovery requests are directed to Vizio and seek

2   Vizio's documents.  AmTran is defined in those as a

3   separate entity from Vizio.  So the requests that

4   you've served do not even cover the documents that you

5   are seeking.

6               But with that said, I am willing to

7   discuss this with you to reach some type of reasonable

8   compromise, assuming the case law we're satisfied

9   supports Vizio having to take steps.  And we are

10  willing to discuss with you seeking some categories of

11  documents from AmTran, the ones that we think and that

12  I would assume you think are most relevant.  And that

13  is any technical type documents in AmTran's -- that

14  AmTran has.

15              And for example, again, this is all based

16  on the assumption that we ultimately agree or find

17  that this is something that Vizio arguably -- at least

18  arguably has an obligation to do.  Okay?  I'm not

19  agreeing to doing any of this.  I'm just putting this

20  on the table in the event that we get that far.

21              The types of documents that we would

22  consider seeking from AmTran are technical documents

23  including any user manuals, service manuals or

24  engineering specifications that Vizio does not have.

25  And you know from our charts that we provided in

Page 29

1   response to interrogatories that there are a few gaps
2   with regard to user's manuals and service manuals.
3   There may be gaps with regard to engineering
4   specifications.  It's possible that AmTran has
5   documents that could fill in those types of gaps.
6           And in addition, we could discuss asking
7   AmTran for any additional technical documents they
8   have relating to the areas of technology here, for
9   example, gamma correction, the on-screen displays,
10  incription, closed captioning, et cetera.  But we do
11  not think that we -- well, right now we don't think
12  we're obligated to get any of this stuff.  But if we
13  do, we certainly are not going to AmTran and asking
14  them for the full scope of documents that are
15  requested by Sony's very broad document request.  You
16  know, things like their financial information and
17  their marketing materials and other non-technical
18  documents, if those are the things that you're going
19  to be pushing us on, then I don't think we have much
20  of a hope of resolving this.
21      MR. KLIVANS:  Ryan, this is Peter.  You didn't
22  mention source code.  Would source code fall into the
23  category of documents you were just describing?
24      MR. McCRUM:  Well, I think that source code
25  would be considered -- would fall into that category

Page 30

1   of technical documents, to the extent that AmTran has

2   source code.  I have my serious doubts about that.

3   But I mean, is this something you're willing to do?

4   As the first step, I want to feel comfortable that

5   this is something that you can properly request Vizio

6   to do and assuming that's the case, then that would be

7   the route that we would propose on this.

8          MR. KLIVANS:  Ryan, this is Peter again.  If we

9   were able to provide you such case law later today,

10  can you give us an answer by tomorrow whether you

11  would be going to AmTran?

12         MR. McCRUM:  I could try.  But, you know --

13         MR. KLIVANS:  Because this is something that we

14  have talked about quite a bit over many weeks.  It

15  sounds like you're being a bit flexible, and there

16  might be room for agreement, but we don't want to

17  delay any longer because time is running short.

18         MR. McCRUM:  Well, I understand that.  I can't

19  promise you, Peter, but I will make every effort to

20  get some type of answer for you tomorrow.  That is

21  pretty quick given that it's -- what time it is my

22  time right now, but it's getting late in the day

23  already today, but we will certainly try.

24         MR. KLIVANS:  Tom, did you want to add

25  anything?

1    MR. PEASE:  No.  I think the position is clear.

2   Just in terms of -- you asked about the scope.  We'll

3   have to think about this off line, but I don't think

4   we're seeking every document in AmTran's possession

5   like financial documents and the like.  I think, like

6   you said, we are interested in technical documentation

7   but not limited to user manuals and service manuals

8   but also the documentation including source code, the

9   firmware, drivers, archaeal code, to the extent that's

10  relevant, relating to this issues presented by the

11  Sony patent suit.

12    MR. McCRUM:  Okay.  Let us -- we're not putting

13  any limitation on the technical documents at this

14  point to user manuals or service manuals.  We're

15  willing to discuss the possibility of going and

16  getting the technical documents relating to the

17  technology at issue in this case.

18    MR. KENNEDY:  This is Todd.  Not that we're

19  backtracking too much, but I feel like I didn't get a

20  straight answer about where Vizio's statement

21  regarding the histogram distribution came from.

22    MR. McCRUM:  Well, I am not sure that I need to

23  give you an answer to that question.  The issues that

24  are on the table today relate to Vizio's document

25  production and your claims that we have not produced

1   documents that you think we have.  And what I am

2   telling you is that we have produced everything we

3   have on that issue.  Vizio's pre-filing investigation,

4   pre-complaint work I don't think is a proper subject

5   of this call.

6           MR. KENNEDY:  So right now you're refusing to

7   disclose to Sony where Vizio's statement regarding

8   histogram distribution is supported and documents or

9   where Vizio obtained that information?

10          MR. McCRUM:  I don't think that's a proper

11  subject of our meet and confer today.

12          MR. KENNEDY:  Why don't we move on to the next

13  topic in the letter which is Sony's concern that Vizio

14  is withholding communications that it has had with

15  third parties regarding infringement.  There is one

16  example that is pointed out in the letter, and that is

17  that in Vizio's April 22, 2009 response to Sony's

18  Interrogatory Number 16, Vizio stated that it had

19  instructed its original equipment manufacturers to not

20  incorporate transparency features with respect to

21  on-screen displays.  Vizio has not produced any such

22  correspondence in this litigation as far as Sony can

23  tell.

24               Is that correct.

25          MR. McCRUM:  This is Ryan McCrum.  You know,

Page 33

1  I'm not sure -- I can't say we have or have not.  But

2  our understanding right now, Todd, is that those

3  instructions or that correspondence relating to those

4  instructions was provided orally.  Nevertheless, given

5  your letter, we will go back and we will continue to

6  search records and files and certainly to the extent

7  that we -- there is any correspondence that we find in

8  our searches on this topic, we will produce it.

9            It's going to get us into another issue

10  because we have got this whole issue about e-mail

11  correspondence and the protocol for producing that.

12  And what I can tell you is that our understanding of

13  that agreement, and I think you folks have at least a

14  similar if not the same understanding is that the

15  parties are not going to do any burdensome searches of

16  e-mail databases.  But to the extent that the e-mails

17  are located through searchs of other files, then the

18  parties are not going to be withholding those.

19            So in accordance with that agreement, we

20  have not been conducting extensive searches of e-mail

21  databases, and we have not uncovered any

22  communications on this topic through our other

23  searches.

24       MR. KLIVANS:  Ryan, this is Peter.  That's not

25  entirely inaccurate what you just said, but I think

Page 34

1  you're leaving out something important though, which I

2  mentioned in my letter a few days ago in that if the

3  e-mails are already in the possession of counsel, of

4  yourselves, that doesn't entail a burdensome

5  electronic searches by anyone.  Those need to be

6  produced.  If you have e-mails, say, between you and

7  AmTran, which you described in this very call is a

8  third party, those need to be not logged but actually

9  produced to us even if they're post-complaint since

10  it's Vizio who wants third party communications

11  post-complaint.

12       MR. McCRUM:  This is Ryan again.  We're getting

13  onto another topic here, and I mean, as I think Tom

14  has already pointed out, and you should know, AmTran

15  is a client of Jones Day.  And therefore,

16  communications between Jones Day and AmTran are

17  privileged documents.

18       MR. KLIVANS:  Is AmTran indemnifying Vizio in

19  this matter?

20       MR. McCRUM:  I'm not going to comment on that

21  right now.  I'm not sure I am even in the position to.

22  But further to my point, Vizio is of the position that

23  given its joint representation of Vizio and AmTran and

24  the common interests that applies to both in this

25  litigation, that any post-complaint communications

Page 35

1   between Jones Day and AmTran are not only privileged

2   clearly, but should be treated in the same way that

3   communications between, for example, your Quinn

4   Emanuel and Sony should be treated and need not be

5   logged.

6           MR. KLIVANS:  Is AmTran a client with respect

7   to these patents in this matter?

8           MR. McCRUM:  Yes.  It's my understanding that

9   is true, and I don't want to go out and say anything

10  for sure about our technical representation of these

11  parties on a transcribed record without looking into

12  all the details of that myself.  But I believe that to

13  be the case, Peter.  But I would have to do further

14  investigation to know exactly the full scope of our

15  representation of AmTran.

16          MR. KLIVANS:  Given what you said, maybe we can

17  put aside the post-complaint issue.  In the log that

18  you mentioned in the letter of, I think it was the

19  17th that you were preparing, would that include

20  pre-complaint communications?

21          MR. McCRUM:  Well, this is Ryan again.  You

22  know we -- I think we need to talk about that.  I

23  wanted to ask you if that's what you folks are

24  planning.  I mean, we're open to doing this however

25  the parties agree.  But I want to make sure we're all

Page 36

1   doing the same thing.  I mean, Sony and Quinn Emanuel,
2   you are going to be logging all of Quin Emanuel's
3   pre-complaint communications including e-mails that
4   are already in your possession between Sony and Quinn
5   Emanuel and any other pre-complaint communications?
6   Because that seems to be what you're suggesting need
7   to happen.  And if that's what you are suggesting and
8   we agree, then we would do that.  But I don't know
9   that the parties have reached an agreement.  Is that
10  the agreement?
11          MR. KLIVANS:  I think we can agree that the
12  parties would do the same thing, and since this wasn't
13  a topic today, maybe we should put it off.  But that
14  being said, we have and we have produced an enormous
15  log to you.  Do you have any time frame -- putting
16  aside the specific issue, just the log in general, do
17  you have any time frame maybe you can give us that we
18  might expect a log from you guys?
19          MR. McCRUM:  I don't know, Peter, exactly when.
20  I can tell you that we have done a good amount of work
21  on it.  We are making progress on it.  I have to talk
22  to our people about when it will be complete.  I don't
23  know that it was an issue on your agenda for your meet
24  and confer.  I don't have it in my notes as an issue.
25          MR. KLIVANS:  It wasn't specifically, except

Page 37

1  for the fact that you raised it in your letter of the

2  17th.  It didn't sort of relate to the other topic.

3  But maybe you could check and get back to us in a week

4  on when you might expect that?

5          MR. McCRUM:  Yeah.  I will check into it and

6  get back to you guys.

7          MR. KLIVANS:  And certainly Sony is doing a

8  rolling log asking to produce documents that we

9  supplement, and we wouldn't expect Vizio to do

10 anything differently.  We would note our experience

11 with Judge Olguin is that he thinks parties should do

12 rolling logs that are done as documents are produced.

13 Obviously, he hasn't ruled on anything in this

14 specific matter, but that's not controlling it in this

15 matter.  But that's our experience with him.

16         MR. McCRUM:  Okay.  Why don't you let us know

17 what your position is and what your proposal is on

18 pre-complaint communications between outside counsel

19 and our respective clients, in other words, Quinn

20 Emanuel and Sony and Jones Day and Vizio and AmTran.

21 Because that's going to have an impact on our log and

22 how we're going to proceed.

23         MR. KLIVANS:  We will let you know especially

24 because since you described AmTran as a client that

25 helpful information that we reach agreement on this.

1     MR. McCRUM:  Okay.  I know we got way off on

2  tangents there, Todd, so I don't know where you were.

3     MR. KENNEDY:  I think you answered by saying

4  that all the communications with the original

5  equipment manufacturers were oral.  Is that correct?

6  Every single communication that Vizio has had with its

7  original equipment manufacturers instructing them to

8  not include transparency features was an oral

9  communication?

10     MR. McCRUM:  That is our standing.  Steve, when

11  we inquired about that, that's the answer we got, or

12  do we have more information on that?

13     MR. CORR:  This is Steve Corr.  Yeah, Ryan, I

14  would say -- and Todd, to answer your question

15  directly, we are aware of oral communications, but we

16  are continuing to search to be sure that that is the

17  complete extent of the communication.  So to the

18  extent we're -- we have -- we have received

19  information about this, it has been characterized as

20  oral communications.  But I'm not willing to say that

21  with complete certainty there are no written

22  communications.  I just -- we have been unable to

23  locate any communications of that nature.

24     MR. McCRUM:  This is Ryan.  And I want to

25  further add to that that this request is asking us to

1   do something that could arguably be beyond the scope

2   of what our obligations are under the agreement for

3   e-mails.  I mean, we certainly have not located these

4   communications in our search of non e-mail database

5   files.  And I am not going to commit here on the phone

6   today that we are going to go out and start searching

7   for -- searching e-mail databases for this document.

8   I mean, I think that would totally undermine the

9   agreement that the parties are trying to reach.  If we

10  agree we don't have to do that and then the parties

11  can come in and say, well, we want these specific

12  e-mail communications, go search for it, then that

13  would basically eviscerate that agreement.  So I want

14  to make sure that we're clear on what our obligations

15  are here.

16          MR. KENNEDY:  This is Todd.  I know I am going

17  back to Interrogatory Number 3 yet again, but I feel

18  like we're not making any progress on this

19  interrogatory.  Sitting here right now Sony has no

20  idea whether Vizio has analyzed a document that

21  supports this assertion about the histogram

22  distribution.  Is there a document that supports

23  Vizio's assertion that Vizio has reviewed?

24          MR. McCRUM:  If we had a document, Todd, in our

25  possession, custody or control, we would have produced

1   it.  I don't know what else to say about this.

2            MR. KENNEDY:  Have you produced such a

3   document?

4            MR. McCRUM:  No, we have not produced it

5   because we don't have it, and I'm not sure one even

6   exists.

7            MR. KENNEDY:  I don't understand how Vizio

8   could have made this representation about non

9   infringement, this specific factual representation,

10  unless it had such a document in its possession,

11  custody or control.

12           MR. McCRUM:  Well, I don't even know how to

13  respond to that other than I'm sorry that you don't

14  understand that.  That's the way it is.

15           MR. KENNEDY:  I don't understand why you can't

16  just tell us where you got that information.

17           MR. McCRUM:  Because it's not something that

18  was -- is the proper subject of this meet and confer,

19  nor do I necessarily believe that you've sent us part

20  of a discovery request that is tabled for today and

21  that we are obligated to provide.

22           MR. KENNEDY:  Ryan, I absolutely disagree that

23  that's not a proper subject of the meet and confer

24  today.  The meet and confer topic is about the

25  histogram distribution document in particular.  It's

Page 41

1    obvious that Vizio has either reviewed a document

2    itself or has instructed a third party to review a

3    document, and yet you're refusing to disclose where

4    that information came from, and you're trying to use

5    Local Rule 37 in such a way as to avoid the topic.

6         MR. McCRUM:  This is Ryan.  I am not avoiding

7    the topic, Todd.  The discussion and meet and confer

8    is about alleged deficiencies in Vizio's document

9    production.  You have raised a number of concerns

10   about documents that you think are in our possession,

11   custody and/or control, and that's what we are talking

12   about today.  And I have told you we don't have those

13   documents.  We produced everything that we had in our

14   possession, custody and control on that issue.  We are

15   not going to be talking about Vizio's pre-complaint

16   work and investigations.  It's not the proper subject

17   of this call, and I'm not going to talk about it

18   anymore.

19        MR. KENNEDY:  Let's go on to a different issue

20   then.  Vizio has produced some engineering

21   specification documents, and in the letter, one of

22   those documents is identified as production Number

23   V43780 through 818.  But it appears that Vizio has not

24   produced such documents for each of these accused

25   televisions.  Is that because Vizio does not have

Page 42

1   documents for each of these accused televisions?

2        MR. McCRUM:  You know, I don't know that we

3   don't have them for -- I suspect we don't have them

4   for each of these televisions.  But I believe we are

5   making a production today that includes product

6   specifications.

7             Steve, you might be able to still

8   elaborate on that.  Is that right?

9        MR. CORR:  Yeah.  This is Steve Corr.  I

10  believe -- I don't know if the production is going out

11  today.  It may go out tomorrow.  And it does include

12  additional technical documentation.  But this point in

13  this meet and confer today presumes that all those

14  documents either exist or that Vizio has all those

15  documents.

16            And so to the extent those types of

17  documents are within the possession, custody or

18  control of Vizio, they have either been produced or

19  they're going to be produced.  But the idea that it's

20  somehow deficient to not produce something that they

21  don't have does not make a lot of sense to me.

22       MR. KENNEDY:  I just wanted to confirm that

23  Vizio doesn't have such documents and that Vizio was

24  in fact making every effort to uncover documents in

25  its possession, custody or control.  Not to beat a

1   dead horse, but let's go on the next issue which is

2   similar and that involves the structure and operation

3   of the scalars, s-c-a-l-a-r-s, and microprocessors of

4   Vizio's televisions.  It appears that Vizio has not

5   produced documents regarding each of those scalars or

6   microprocessors.

7        MR. McCRUM:  This is Ryan McCrum.  You know,

8   this is basically the same issue here, Todd.  We're

9   producing everything we have, and the fact of the

10  matter is Vizio just does not have much of anything

11  regarding the function, structure and operation of

12  these scalars and microprocessors.  I know in your

13  letter you find that extremely hard to believe, but

14  it's true.  That information, as we have told you in

15  the past, is much more likely to be in the hands of

16  our chip suppliers, most notably, Media Tek, and this

17  is where we would suggest that you get this

18  information from.

19       MR. KENNEDY:  Let's go on to the last issue in

20  the letter, which is Vizio's failure to produce any

21  source code.  In our last meet and confer you said

22  Vizio does not have any source code.  And as we

23  pointed out in the Local Rule 37 letter, Vizio's

24  document production indicated otherwise.  There is a

25  document showing that firmware was received by Vizio

Page 44

1  from a third party and yet we haven't seen any of that

2  firmware.

3      MR. McCRUM:  This is Ryan McCrum.  We stand by

4  our representation in prior meet and confers that

5  Vizio does not have source code.  Given the demands

6  that you have made recently, we are, as we always do

7  after we get these demands, go back and double, triple

8  check that is the case.  I fully expect that we are

9  going to confirm, as we already have and determined

10  that Vizio does not have source code.

11          Now, with regard to your claim that Vizio

12  produced, quote, a number of documents confirming that

13  it does possess source code, the document that you

14  identified, Todd, and even mentioned source code or

15  relate to source code, it requests -- and it doesn't

16  indicate it was ever received.  It requests firmware,

17  and firmware is something completely different than

18  source code.

19      MR. KENNEDY:  Ryan, this is Todd.  Actually,

20  the definition of source code in the interrogatory

21  request that we are talking about specifically

22  includes firmware.  So when I say "source code" I am

23  referring also to firmware.

24      MS. BELVILLE:  Ryan, I believe I can send you a

25  document that confirms that it was received by

1    Mr. Lowe.

2          MR. CORR:  This is Steve Corr.  Ryan, can I

3    jump in here?

4          MR. McCRUM:  Sure.

5          MR. CORR:  To the extent that -- was that

6    Heather who was just on?

7          MS. BELVILLE:  Correct.

8          MR. CORR:  So to the extent if we do have these

9    materials, and I'm not aware that we do, if you would

10   send me the materials that you have that give you that

11   impression, that would help me in my efforts to do

12   what Ryan just talked about, the triple and quadruple

13   check on this issue.

14         MR. McCRUM:  This is Ryan.  You represent in

15   your letter, Todd, that there are a number of

16   documents confirming this, and you have only

17   identified one, so can you send me a list of the other

18   documents that you're talking about for the reason

19   Steve just suggested?

20         MR. KENNEDY:  Absolutely.

21         MR. McCRUM:  And that will help us to figure

22   out if we have any of this stuff where it would be.

23   Because we don't believe that we do have any of this.

24              Now, on the issue of -- I understand that

25   your definition of source code included firmware, but,

Page 46

1    you know, your letters refer only to source code, and
2    the fact is they are different things.  I mean,
3    firmware is specifically an executable file in binary
4    form and just consists of a bunch of ones and zeros.
5    It really has no value.
6              Now, if you want that stuff and we have
7    it, which is doubtful, you know, we can go ahead and
8    see if we can get that produced.  But it's really not
9    relevant to any issue in this case.  It's just useless
10   information.
11             The e-mail that you're pointing to is
12   from five years ago from an individual who no longer
13   even works at Vizio and it's requesting firmware.  And
14   I disagree strongly with your representation that such
15   an e-mail confirms that Vizio currently has source
16   code.  So we'll go back.  We will see if there's
17   source code or firmware.  Like I said, I don't expect
18   that we are going to find -- particularly on the
19   source code front we're going to find anything.  And
20   we'll go back and look to see whether there's any
21   firmware.  But I want to make sure you actually want
22   that before we go ahead and produce it.
23             MR. KENNEDY:  Sony does want firmware.  And
24   just to be clear, one of the reasons is that my
25   understanding is that often this firmware is included

Page 47

1   on a USB stick that has been uploaded to the

2   television.  And it's unclear what other files might

3   be on such a USB stick.  And in addition, the firmware

4   is relevant because presumably there would be a date

5   associated with that firmware update.  And obviously,

6   the time at which Vizio is updating the functionality

7   of its televisions is relevant to damages and

8   infringement.

9        MR. McCRUM:  Okay.  We'll go back to look and

10  see on both of these, but I wouldn't get your hopes up

11  on what we're going to find.  But we'll certainly go

12  back and double and triple check on that.  But like I

13  said, it will be very helpful it we get the other

14  documents you're referring to in your letter.

15       MR. KENNEDY:  We can certainly send those to

16  you this week.

17       MR. McCRUM:  Okay.  Great.

18       MR. KENNEDY:  Does anybody else have anything

19  from the Sony side?  I know that Vizio would like to

20  talk about limiting the number of asserted claims.

21       MR. MILLER:  I think that we're all done with

22  what we have to say, given the silence on the line.

23       MR. KENNEDY:  Why don't we talk about asserting

24  claims.  Ryan, if you would like to start that out.

25       MR. McCRUM:  Sure.  This is Ryan again.  I

Page 48

1   don't have a whole lot else to say.  We put our

2   proposal on the table that Vizio would like Sony to

3   limit the number of asserted claims to three or less

4   per patent by September 1.  And given the schedule

5   that is in place in this litigation, this is something

6   that we feel needs to be addressed very soon.  There's

7   not a whole lot of time left for discovery.  To the

8   extent that we can reach an agreement on experts, we

9   want to make sure that our experts are focusing on the

10  claims that are actually going to be at issue at

11  trial.  And so we need to resolve this.  And I think I

12  had them decide in my letter of correspondence and our

13  meet and confer last week that we would like to

14  resolve this issue this week and get an answer from

15  Sony as to whether it would be willing to limit its

16  claims to three per patent by September 1.

17         MR. KENNEDY:  This is Todd.  Sony is certainly

18  willing to discuss limiting the number of asserted

19  claims.  But just an initial matter, is Vizio willing

20  to work with Sony in an effort to identify

21  representative accused products?

22         MR. McCRUM:  Well, this is the first time I

23  have heard of that.  I can't say we're not unwilling

24  to think about that, but what's your proposal?

25         MR. KENNEDY:  I mean, sitting here right now I

Page 49

1   don't think we have a specific proposal, especially

2   because we haven't had an opportunity to inspect any

3   of Vizio's products.  The way that this typically

4   works, and correct me if I am wrong, is that the

5   parties would develop an understanding of how the

6   products as a whole work and would then be in a

7   position to determine which of those products could

8   serve as a representative product.  I mean, at this

9   time we haven't been able to inspect Vizio's

10  televisions, so it may be difficult right now to

11  identify representative products.  But it is certainly

12  something that we're interested in.

13          MR. McCRUM:  Well, we're happy to talk about

14  that, Todd, at another time.  And if you have got a

15  reasonable proposal on the table, then we would be

16  willing to consider it.  But I don't think that that

17  needs to be considered in conjunction with limiting

18  the number of claims.  Judge Klausner has done this in

19  the past at earlier stages in litigation and limited

20  it to a fewer number of claim terms and recognizes the

21  benefit of doing this.  So, you know, we really can't

22  afford to go much longer without knowing what claims

23  are ultimately going to be at issue.  So we're willing

24  to talk about representative products.  And if you

25  want to propose a time to do that and make a specific

Page 50

1   proposal, we're happy to consider it.  But for now, we

2   need to focus on the issue that we had raised and that

3   we need to get an answer on.

4       MR. KENNEDY:  I think what I am saying is that

5   in order for Sony to agree to limit its claims, it

6   would need to first get a better idea of how Vizio's

7   televisions -- each of Vizio's specific television

8   models work.  And then at that point Sony would not

9   only be able to limit the number of its asserted

10  claims, but it would also be able to work with Vizio

11  to identify representative products.  I certainly

12  can't tell you right now that Sony is willing to by

13  September 1st pick claims at X, Y and Z.

14      MR. McCRUM:  Well, that's the question that we

15  put on the table and that we wanted to know this week,

16  so, you know, all I can say on that is we need to

17  resolve this.  And if we can't get an answer on it

18  this week, then we're going to have to seek relief

19  from the court.

20      MR. KENNEDY:  What kind of answer do you want

21  this week?  Do you want us to actually identify the

22  claims that are going to be asserted and then also

23  reach an agreement about representative product?

24  What -- how much progress do you expect us to be able

25  to make by the end of the week?

1    MR. McCRUM:  Well, I mean, you have had some

2    time to think about it, and our proposal isn't by the

3    end of this week for you to identify your three

4    claims.  It's to tell us whether you will agree to

5    limit the number of asserted claims to three per

6    patent by September 1.  So you would have more time

7    than the end of the week to figure that out, and --

8        MR. KENNEDY:  I don't understand why three is

9    the magic number here.  What if we wanted to drop one

10   patent from the lawsuit and assert six claims from

11   another patent?  I don't think we can tell you right

12   now that we're willing to limit it to three claims per

13   ten patents.

14       MR. McCRUM:  Okay.  Well, you know, we were

15   hopeful that if you had an alternative proposal, we

16   would hear from it.  If you wanted to limit it to 30

17   claims, three per patent or a total of 20 by a certain

18   date regardless of where they came from, you know, we

19   would consider that.  But you haven't put any other

20   proposal on the table.

21       MR. KENNEDY:  I think what probably makes sense

22   here is for us to both talk to our respective clients

23   and determine how far we're willing to go in terms of

24   limiting not only the asserted claims but also coming

25   up with a list of representative products, and then we

1    can just talk off line next week about it, Wednesday,

2    or something like that, and see what we can put

3    together.  I don't think we're going to be able to

4    give you an answer right here on the phone and

5    certainly not by tomorrow.

6             But Sony is definitely open to the idea

7    of limiting the number of asserted claims, and it

8    sounds like Vizio is open to the idea of limiting or

9    coming up with a list of representative products.

10       MR. McCRUM:  All right.  Well, I don't know

11   what your proposal is on representative products, but

12   we would like to have an answer -- we would like to

13   have this resolved -- we would like to have it

14   resolved this week.  That was our initial proposal.

15   But if you would like to talk about it next week and

16   maybe make a proposal to us on your representative

17   products by Monday, then we can talk about this and

18   see if we can reach an agreement by Tuesday or

19   Wednesday.

20            And if we can't -- you know, I'm not

21   trying to make undue threats here.  I'm just telling

22   you this is a very serious and urgent matter that we

23   want to address now as it needs to be addressed now.

24   And if we can't resolve it, given the way the time it

25   takes to get these issues before the court and address

1  them, we can't afford to wait.  We have got a very,

2  very fast schedule in this litigation and so we've got

3  to act quickly on these types of things.  So if we

4  can't reach something by next Wednesday -- that's the

5  drop-dead deadline on this as far as Vizio is

6  concerned -- we need to raise the issue with Judge

7  Klausner.

8          MR. KENNEDY:  Well, I think that Sony will be

9  in a position to sometime early next week send Vizio

10 some sort of proposal regarding limitations of claims

11 and also an identification of representative products.

12 I don't know how specific we can be at this point

13 given that we haven't had an opportunity to inspect

14 Vizio's televisions, but we can certainly be as

15 specific as we can.

16         MR. McCRUM:  Well, I mean, not to go off on a

17 tangent here, but you have got Vizio's televisions

18 that are on the market currently available and have

19 been available since you have filed this suit.

20 There's no reason why -- and in fact, Sony should have

21 been looking at those products.  And I think the case

22 law in this issue indicates that that is in fact the

23 case and that you don't have to have -- get this far

24 along in the litigation before it's proper to make

25 these types of calls.  If you're suggesting that we

Page 54

1  need to wait until your inspection of our products is

2  complete, then we might as well end the discussions

3  right now.

4          MR. KENNEDY:  That's not what I am representing

5  right now.  I don't know what conclusion we're going

6  to reach after we talk with our client about this.

7  But Sony agreed that it's in both parties' interest to

8  come up with some kind of an agreement, but that

9  agreement would have to include an identification of

10  certain representative products.  And the fact that we

11  have not been able to inspect all of the 160-plus

12  accused products makes it very difficult for us to be

13  able to have an idea about which of those products is

14  going to serve as a good representative product.  So

15  we'll do the best that we can, and we'll get back to

16  you early next week, say Monday or Tuesday.

17          MR. McCRUM:  Okay.  And we'll plan on meeting

18  on Wednesday?

19          MR. KENNEDY:  That sounds good.

20          MR. McCRUM:  Okay.

21          MR. KENNEDY:  I think.  Is that good for

22  everyone?

23          MR. PEASE:  I think that works.  I have to

24  check a couple things, but that should work for me.

25          MR. McCRUM:  Tom, are you going to be at the

Page 55

1    ENE next week?

2          MR. PEASE:  I don't know yet.  It's still up in

3    the air.  How about you?

4          MR. McCRUM:  I'm not going to be there, but

5    that's next Wednesday.

6          MR. MILLER:  Guys, I hate to interrupt the

7    conversation when we're finally being cordial, but if

8    that's the case, I think we might as well go ahead and

9    close the record right now because we have some

10   off-the-record items to discuss too.

11   ///

12   ///

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 56

1      I, the undersigned, a Certified Shorthand

2  Reporter of the State of California, do hereby

3  certify:

4      That the foregoing proceedings were taken

5  before me at the time and place herein set forth; that

6  any witnesses in the foregoing proceedings, prior to

7  testifying, were duly sworn; that a record of the

8  proceedings was made by me using machine shorthand

9  which was thereafter transcribed under my direction;

10  that the foregoing transcript is a true record of the

11  testimony given.

12      Further, that if the foregoing pertains to the

13  original transcript of a deposition in a Federal Case,

14  before completion of the proceedings, review of the

15  transcript {  } was {  } was not requested.

16      I further certify I am neither financially

17  interested in the action nor a relative or employee of

18  any attorney or party to this action.

19          IN WITNESS WHEREOF, I have this date

20  subscribed my name.

21

22  Dated: _____

23

24  _____

            JILL GLANTZ

25          CSR No. 11341

# EXHIBIT B

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | SA CV 08-01135-RGK (FMOx) | Date | April 6, 2009 |
|---|---|---|---|
| Title | SONY CORPORATION v. VIZIO, INC. | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Sharon L. Williams | Lynne Nicholson | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Edward De Franco | Kevin McBride |
| | James Wamsley, III |

**Proceedings:**         **SCHEDULING CONFERENCE**

Case called.  Court and counsel confer.  The Scheduling Conference is held.  The Court sets the following dates:

| | |
|---|---|
| Jury Trial (Est. 10-20 days): | January 26, 2010 at 9:00 a.m. |
| Pretrial Conference: | January 10, 2010 at 9:00 a.m. |
| Motion Cut-Off (last day to file): | November 10, 2009 |
| Discovery Cut-Off: | November 1, 2009 |

**IT IS SO ORDERED.**

|  | : | 12 |
|---|---|---|
| Initials of Preparer | slw | |

# EXHIBIT C

QUINN EMANUEL URQUHART OLIVER
& HEDGES, LLP
Kevin P.B. Johnson (Bar No. 177129)
  kevinjohnson@quinnemanuel.com
555 Twin Dolphin Drive, Suite 560
Redwood Shores, California 94065-2139
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Edward J. DeFranco (Bar No. 165596)
  eddefranco@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Steven M. Anderson (Bar No. 144014)
  steveneanderson@quinnemanuel.com
865 S. Figueroa St. 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Plaintiff Sony Corporation

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| SONY CORPORATION, A Japanese corporation,<br><br>        Plaintiff,<br><br>    vs.<br><br>VIZIO, Inc.,<br><br>        Defendant. | CASE NO. SA CV08-01135-RGK (FMOx)<br><br>**SONY'S FIRST SET OF REQUESTS FOR PRODUCTION TO VIZIO** |

## SONY'S FIRST SET OF REQUESTS FOR PRODUCTION

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff Sony Corporation requests that Defendant Vizio, Inc. produce for inspection and copying within thirty (30) days of service of these requests the Documents and things described herein within Vizio's possession, custody or control, at the offices of Quinn Emanuel Urquhart Oliver & Hedges, LLP, 555 Twin Dolphin Drive, Redwood Shores, California 94025, or at a place and time as may be agreed to by counsel.

## DEFINITIONS AND INSTRUCTIONS

Each request in Sony's First Set of Requests for Production is subject to and incorporates the following definitions and instructions as used herein:

1. "Vizio Product" means any product manufactured, sold, offered for sale, or distributed in, and/or imported into, the United States by Vizio since October 10, 2002 that by itself or in combination with any other product, device, or instrumentality is capable of displaying digital video signals, data or information. The term shall include, but shall not be limited to, the following Vizio products: GV42L, GV42L FHDTV10A, GV42L HDTV, GV42L10A, GV42LF, GV46L FHDTV20A, GV46L HDTV, GV47L FHDTV, GV47L FHDTV20A, GV52L FHDTV10A, HDX 20L, JV50P HDTV10A, L15, L20, L30, L30e, L30WGEe, L30WGU, L32 HDTV, L37, L37HDTV, L42, L42 HDTV, L6, P4, P42, P42 ED, P42 HD, P42 HDTV, P46, P50 HDM, P50 HDTV20A, SV420XVT, SV420XVT 1A, SV470XVT, SV470XVT1A, V022L, VA19L HDTV10T, VA22LF HDTV10T, VA26L HDTV10T, VECO320L, VF550XVT, VF550XVT 1A, VM60P, VM60P HDTV, VO22L FHDTV10A, VO22LF, VO32L, VO32L HDTV10A, VO37L, VO37L HDTV10A, VO42L, VO42L FHDTV10A, VO47L FHDTV10A, VOJ320F, VOJ320F1A, VOJ370, VOJ370F, VOJ370F, VP322, VP322 HDTV10A, VP42,

-1-

VP42 HDTV, VP422, VP422 HDTV10A, VP423 HDTV10A, VP50 10A, VP50
20A, VP50 HDTV20A, VP503 HDTV10A, VP504 FHDTV10A, VP505XVT1A,
VS370, VS420LF, VS420LF1A, VS42L 10A, VS42L FHDTV10A, VS42LF,
VU32L, VU32L HDTV10A, VU37L HDTV10A, VU42L 10A, VU42L
FHDTV10A, VU42LF, VW22L HDTV10T, VW26L, VW26L HDTV10F, VW32L
10A, VW32L 30A, VW32L HDTV10A, VW32L HDTV30A, VW37L 10A,
VW37L 20A, VW37L 30A, VW37L 40A, VW37L HDTV10A, VW37L
HDTV30A, VW37L HDTV40A, VW42L, VW42L 10A, VW42L FHDTV10A,
VW42L HDTV10A, VW42LF, VW46L FHDTV10A, VW46L20A, VW46LF,
VW47L 10A, VW47L FHDTV10A, VW47LF, VX20L, VX20L 20A, VX32L,
VX32L 20A, VX32L HDTV , VX32L HDTV20A, VX37L, VX37L 10A, VX37L
20A, VX37L HDTV, VX37L HDTV10A, VX37L HDTV20A, VX42L, VX42L
10A, VX42L HDTV10A, VX52L 10A, VX52L FHDTV10A, VX52LF, VXW20L,
VXW20L 10A, VMM26, and VMM26 F201 LCD.  In the event that any of Vizio's
products have any versions, each version shall be considered a separate Vizio
Product.

    2.    "Related Vizio Products" means any device manufactured, sold,
offered for sale, or distributed in, and/or imported into, the United States by Vizio
that is capable of being connected to or used with any of the Vizio Products.  The
term shall include, but shall not be limited to, the following Vizio products:  Bravo
D1, Bravo D2, Bravo HD1, VR1, VR2, VR3, VUR2, VUR5, VUR6, and VUR8.

    3.    "'626 patent" means U.S. Patent No. 5,434,626, entitled "Display
Apparatus Displaying Operation Menu."

    4.    "'577 patent" means U.S. Patent No. 5,583,577, entitled "Caption Data
Coding/Decoding Systems And Methods That Includes Key Data Indicating
Intermediate Levels Of Attenuation In The Vicinity Of The Caption."

1    5.    "'542 patent" means U.S. Patent No. 5,684,542, entitled "Video
2  Subtitle Processing System."

3    6.    "'847 patent" means U.S. Patent No. 5,731,847, entitled "Subtitle
4  Encoding/Decoding Method and Apparatus."

5    7.    "'373 patent" means U.S. Patent No. 5,751,373, entitled "Television
6  function selection method, television receiver and remote commander for television
7  receiver."

8    8.    "'614 patent" means U.S. Patent No. 6,111,614, entitled "Method And
9  Apparatus For Displaying An Electronic Menu Having Components With Differing
10  Levels Of Transparency."

11    9.    "'055 patent" means U.S. Patent No. RE38,055, entitled "Video Data
12  Bus Communication System and Method."

13    10.    "'468 patent" means U.S. Patent Re-issue No. 40,468, entitled "Video
14  Data Bus Communication System and Method."

15    11.    "'182 patent" means U.S. Patent No. 6,778,182, entitled "Display
16  Device."

17    12.    "'472 patent" means U.S. Patent No. 6,661,472, entitled "Channel
18  selection in digital television."

19    13.    "Patents-in-suit" means the '626 patent, the '577 patent, the '542
20  patent, the '847 patent, the '373 patent, the '614 patent, the '055 patent, the '468
21  patent, the '182 patent, the '472 patent, and any other patent that Sony may later
22  assert in this action that Vizio infringes.

23    14.    "Affirmative Defense" shall refer to each defense asserted by Vizio
24  relating to Sony's claims against Vizio, including, without limitation, any defenses
25  enumerated in Vizio's Answer, filed January 26, 2009, or any amendments or
26  supplements thereto.

27
28

15. "Communication" or "Communications" shall mean, without limitation, any transmittal, conveyance or exchange of a word, statement, fact, thing, idea, Document, instruction, information, demand, question or other information by any medium, whether by written, oral or other means, including but not limited to electronic communications and electronic mail.

16. "Document" or "Documents" shall have the broadest meaning ascribed to it by Federal Rule of Civil Procedure 34 and Federal Rule of Evidence 1001. The term shall include within its meaning, by way of example and not limitation, any and all accounts, analyses, books, CDs, calendars, commercial paper, communications, correspondence, DVDs, e-mail, films, financial statements, floppy disks, hard disks, inter-office memoranda, invoices, ledgers, letters, licenses, logs, memoranda, microfilms, minutes, notes, notes of conversations, notes of meetings, notes of telephone calls, office communications, photographs, printouts, recordings of conversations (whether written or electronic), reports, schedules, storage tape, task lists, telegrams, telephone bills, videotapes or other video recordings, and any differing versions of the foregoing whether denominated formal, informal or otherwise, as well as copies of the foregoing which differ from the original in any way, including handwritten notations or other written or printed matter. The foregoing specifically includes information stored electronically, whether in a computer database or otherwise, regardless of whether such documents are presently in documentary form or not. A draft or non-identical copy of a Document is a separate Document within the meaning of this term.

17. "Identify" when used in reference to:

(1)    An individual, means to state his or her full name, present or last known residential and business addresses, present or last known position and business affiliation, and if applicable, history of employment of that individual;

(2)     A firm, partnership, corporation, proprietorship, joint venture, association, or other organization or entity, means to state its full name, present or last known address and place of incorporation or formation and to identify each agent that acted for it with respect to the matters relating to the request or answer;

(3)     A document, means to state the date, title, if any, subject matter, each author, each addressee or recipient if practicable, and otherwise a general description of the persons to whom the writing was distributed, the production number, and the type of document, *i.e.*, publication, letter, memorandum, book, telegram, chart etc., or some other means of identifying the document, and its present location and custodian;

(4)     A communication, means to state its date and place, the person(s) who participated in it or who were present during any part of it or who have knowledge about it;

(5)     A date, means to state the date and set forth the basis for your contention that the date is responsive to the request; and

(6)     A product, service, or intellectual property, means to state all names and numbers related to the product, service, or intellectual property, and the owner, manufacturer, distributor, licensor, or dealer of the product, service, or intellectual property during the relevant time period and currently. For a product, provide all designations for the product, from the most specific to the most general, including any model numbers or designations, version numbers or designations, and internal numbers or designations.

18.     The terms "Vizio," "you," "defendant," or "your" shall refer to Vizio, Inc., and includes any entities constituting parents, predecessors, subsidiaries, affiliates, divisions, associated organizations, joint ventures, as well as present and

51451/2839093.3

former officers, directors, trustees, employees, staff members, agents, or other
representatives, including counsel and patent agents, in any country.

19.    The term "plaintiff" or "Sony" means Sony Corporation.

20.    The term "AmTRAN" shall refer to AmTRAN Technology Co., Ltd.,
and includes any entities constituting parents, predecessors, subsidiaries, affiliates,
divisions, associated organizations, joint ventures, as well as present and former
officers, directors, trustees, employees, staff members, agents, or other
representatives, including counsel and patent agents, in any country.  The term shall
include, but shall not be limited to, AmTRAN Logistics, Inc., AseV Display Labs,
and AmTRAN Technology Inc.

21.    The term "person" or "persons" refers to any individual, corporation,
proprietorship, association, joint venture, company, partnership or other business or
legal entity, including governmental bodies and agencies.  The masculine includes
the feminine and vice versa; the singular includes the plural and vice versa.

22.    The terms "any," "all" and "each" shall each mean and include the
other.

23.    The terms "and" and "or" shall be construed either disjunctively or
conjunctively as necessary to bring within the scope of the discovery request all
responses that might otherwise be construed to be outside of its scope.

24.    The use of the singular form of any word includes the plural and vice
versa.

25.    "Thing" refers to any physical specimen or tangible item in your
possession, custody or control, including research and development samples,
prototypes, productions samples and the like.

26.    "Referring to," "relating to," "concerning" or "regarding" means
containing, describing, discussing, embodying, commenting upon, identifying,

51451/2839093.3

incorporating, summarizing, constituting, comprising or are otherwise pertinent to the matter or any aspect thereof.

27.    The term "this action" means the above-captioned action, <u>Sony Corp. v. Vizio, Inc.</u>, case number SA CV08-01135-RGK (FMOx).

28. The term "License" means any agreement, contract, or arrangement relating to one or more patents.

29. The term "superimposed" means displayed over at least one other image such that both the superimposed image (*e.g.*, a caption, a subtitle, a menu, etc.) and the underlying image(s) are seen, at least in part, at once.

30. "Level of transparency" means the extent to which a superimposed image blocks out or leaves visible an underlying image or background.

31. The term "Video Processor" means an integrated circuit that can perform analysis, manipulation, storage, or display of graphical images, graphical signals, or graphical data.

32. The term "Graphics Processor" means an integrated circuit that can generate and/or display graphical images such as lines and filled areas, or that can cause or facilitate the generation and/or display of graphical images.

33. The term "Dynamic Contrast" means automatically adjusting the contrast based on the picture brightness or luminance and/or dynamically enhancing the black and white levels.

34. The term "Source Code" means any software, programming code, or microprocessor instructions. The terms includes but is not limited to all Source Code, middleware, millicode, firmware, bytecode, compiled executable files, and makefiles.

35. The term "sales representative" or "sales representatives" includes any employee, independent contractor, agent, or distributor who attempts to sell or offers to sell your products or services.

51451/2839093.3

1     36. The term "contractor" means party who has contracted with you to
2 perform work or deliver goods or services that related to the Vizio Products.

3     37. The term "Competitive Products" means any product, device, or
4 instrumentality that by itself or in combination with any other product, device, or
5 instrumentality is capable of displaying digital video signals manufactured by
6 entities other than you.

7     38. The term "user manuals" mean any Documents that explain how to use or
8 operate the Vizio Products.

9     39. The term "training materials" mean any Documents that facilitate the use
10 or operation of the Vizio Products.

11     40. The term "packaging materials" mean any Documents that are provided
12 to the a purchaser of any of the Vizio Products.

13     41. The term "marketing materials" mean any Documents used to market,
14 disseminate knowledge of, or promote any of the Vizio Products. "Marketing
15 material" Documents may include public relations works, press releases, product
16 announcements, brochures, flyers, billboards or outdoor copy, video, audio,
17 magazine or print media copy, emails, banners, displays or similar materials.

18     42. The use of a verb in any tense shall be construed as the use of the verb in
19 all other tenses.

20     43. Sony requests that Documents be produced in same file or other
21 organizational environment in which they are maintained in the ordinary course of
22 business. For example, a Document that is part of a file, docket or other grouping
23 should be physically produced together with all other Documents from said file,
24 docket or grouping, in the same order or manner of arrangement as the original.
25 Additionally, to the extent produced in hardcopy, each Document should be
26 produced stapled, clipped or otherwise bound or connected in the same manner as
27 the original. File folders with tabs or labels or directories of files identifying

28

1  Documents must be produced intact with such Documents. Documents attached to
2  each other shall not be separated.

3  　　44. All Documents that respond, in whole or in part, to any portion of any
4  request shall be produced in their entirety, including all attachments and enclosures.

5  　　45. Each Document is to be produced along with all non-identical drafts
6  thereof in its entirety, without abbreviation or redaction.

7  　　46. Color copies of Documents are to be produced where color is necessary
8  to interpret or understand the contents.

9  　　47. The source(s) or derivation of each Document produced shall be
10  specifically identified.

11  　　48. If no Documents exist that are responsive to a particular request, that fact
12  should be stated in each of Vizio's responses to such requests.

13  　　49. Separately with respect to each piece of information called for by these
14  requests which is withheld under a claim of privilege or otherwise, provide an
15  explanation of the claim being asserted and a description of the information
16  withheld in accordance with Fed. R. Civ. P. 26(b)(5).

17  　　50. In the event that any Document called for by these requests or subsequent
18  requests is to be withheld on the basis of a claim of privilege or immunity from
19  discovery, that Document is to be identified by stating (i) the author(s), addressee(s)
20  and any indicated or blind copyee(s); (ii) the Document's date, number of pages and
21  attachments or appendices; (iii) the subject matter(s) of the Document; (iv) the
22  nature of the privilege or immunity asserted; and (v) all additional facts on which
23  you would base your claim of privilege or immunity.

24  　　51. In the event that any Document called for by these requests or subsequent
25  requests has been destroyed or discarded, that Document is to be identified by
26  stating: (i) the author(s), addressee(s) and any indicated or blind copyee(s); (ii) the
27  Document's date, number of pages and attachments or appendices; (iii) the

28

1 Document's subject matter; (iv) the date of destruction or discard, manner of
2 destruction or discard, and reason for destruction or discard; (v) the persons who
3 were authorized to carry out such destruction or discard; and (vi) whether any copies
4 of the Document presently exist and, if so, the name of the custodian of each copy.

5      52. Electronic records and computerized information must be produced in
6 their native electronic format, together with a description of the system from which
7 they were derived sufficient to permit rendering the records and information
8 intelligible.

9      53. Selection of Documents from the files and other sources and the
10 numbering of such Documents shall be performed in such a manner as to ensure that
11 the source of each Document may be determined, if necessary.

12      54. If your response to a particular request for production is a statement that
13 you lack the ability to comply with that request, you must specify whether the
14 inability to comply is because the particular item or category of information never
15 existed, has been destroyed, has been lost, misplaced, or stolen, or has never been,
16 or is no longer, in your possession, custody, or control, in which case the name and
17 address of any person or entity known or believed by you to have possession,
18 custody, or control of that information or category of information must be identified.

19      55. Unless otherwise indicated in a particular request, the request is not date
20 or time limited.

21      56. The obligation to provide the information sought by these requests is
22 continuing within the requirement of Fed. R. Civ. P. 26(e).

23

24 **REQUESTS FOR PRODUCTION**

25

26 **REQUEST FOR PRODUCTION NO. 1:**

27     A fully operational exemplar of each of the Vizio Products.

28

**REQUEST FOR PRODUCTION NO. 2:**

All Documents that concern any of the patents-in-suit, including Documents concerning the file histories thereto.

**REQUEST FOR PRODUCTION NO. 3:**

All Documents concerning any discussion with third parties regarding Sony patents.

**REQUEST FOR PRODUCTION NO. 4:**

Documents sufficient to determine the model number of each Vizio Product.

**REQUEST FOR PRODUCTION NO. 5:**

Documents sufficient to determine the model number of each Related Vizio Product.

**REQUEST FOR PRODUCTION NO. 6:**

Documents sufficient to determine each Graphics Processor and/or Video Processor incorporated in each Vizio Product.

**REQUEST FOR PRODUCTION NO. 7:**

Documents sufficient to correlate the model number of each Vizio Product with any and all other internal numbers or designations associated with that product.

**REQUEST FOR PRODUCTION NO. 8:**

Documents sufficient to correlate any technical documentation concerning each Vizio Product with financial documentation (*e.g.*, documents showing unit sales, revenues, *etc.*) associated with that product.

**REQUEST FOR PRODUCTION NO. 9:**

Documents sufficient to show when, where, and by whom, each of the Vizio Products was manufactured.

**REQUEST FOR PRODUCTION NO. 10:**

For each sale of a Vizio Product, Documents sufficient to show when, where, and by whom, the Vizio Product was sold.

51451/2839093.3

**REQUEST FOR PRODUCTION NO. 11:**

Documents sufficient to show the place of manufacture and the place of sale for each unit of each Vizio Product and the dollar amount of sales associated with such unit.

**REQUEST FOR PRODUCTION NO. 12:**

All Documents concerning any Vizio licensing policies.

**REQUEST FOR PRODUCTION NO. 13:**

All patent license agreements Vizio has entered into in which Vizio is the licensee.

**REQUEST FOR PRODUCTION NO. 14:**

All Documents concerning any patent license granted to, or obtained by, Vizio that covers in whole or in part any of the Vizio Products.

**REQUEST FOR PRODUCTION NO. 15:**

All Documents concerning any document management systems or processes for handling documents relating to any of the Vizio Products.

**REQUEST FOR PRODUCTION NO. 16:**

All Documents concerning any databases for storing data relating to any of the Vizio Products.

**REQUEST FOR PRODUCTION NO. 17:**

All Documents relating to the menu display and/or picture-in-picture functionality of the Vizio Products or the Related Vizio Products.

**REQUEST FOR PRODUCTION NO. 18:**

All Documents that relate to the closed caption functionality of the Vizio Products or the Related Vizio Products.

**REQUEST FOR PRODUCTION NO. 19:**

All Documents that relate to the subtitle display functionality of the Vizio Products or the Related Vizio Products.

**REQUEST FOR PRODUCTION NO. 20:**

All Documents that relate to the menu display functionality of the Vizio Products or the Related Vizio Products.

**REQUEST FOR PRODUCTION NO. 21:**

All Documents that relate to the video processing and transmission functionality of the Vizio Products.

**REQUEST FOR PRODUCTION NO. 22:**

All Documents that relate to the gamma correction and/or dynamic contrast functionality of the Vizio Products.

**REQUEST FOR PRODUCTION NO. 23:**

All Documents that relate to the channel selection functionality of the Vizio Products or the Related Vizio Products.

**REQUEST FOR PRODUCTION NO. 24:**

All Documents that describe the operation of the Vizio Products or the Related Vizio Products, including, but not limited to, user manuals, service manuals, training materials, packaging materials and marketing materials.

**REQUEST FOR PRODUCTION NO. 25:**

Documents, including, any charts, schematics, drawing or figures, sufficient to show how, where, when, and by whom each of the Vizio Products was manufactured and/or assembled.

**REQUEST FOR PRODUCTION NO. 26:**

All Documents that relate to the design and development of each of the Vizio Products and each component thereof, including, without limitation, all notebooks, diagrams, progress reports, studies, internal memoranda, contracts for services, and Communications.

51451/2839093.3

**REQUEST FOR PRODUCTION NO. 27:**

All Documents that relate to whether Vizio infringes the patents-in-suit, including, without limitation, all Documents that relate to any investigation or analysis thereof.

**REQUEST FOR PRODUCTION NO. 28:**

All Documents that relate to Vizio's contention that the patents-in-suit are invalid, including, without limitation, all Documents that relate to any investigation or analysis thereof.

**REQUEST FOR PRODUCTION NO. 29:**

All Documents that relate to any prior art search concerning the patents-in-suit, including search requests, reports, analyses, and references located.

**REQUEST FOR PRODUCTION NO. 30:**

All English translations of any foreign patent or publication on which you intend to rely as prior art to any of the patents-in-suit.

**REQUEST FOR PRODUCTION NO. 31:**

All copies of any patents, publications, or other references that Vizio contends are themselves prior art or evidence prior art to one or more of the patents-in-suit.

**REQUEST FOR PRODUCTION NO. 32:**

All Documents that relate to devices, products, systems, apparatuses, or other instrumentalities that Vizio contends are prior art to one or more of the patents-in-suit.

**REQUEST FOR PRODUCTION NO. 33:**

All Documents that demonstrate or evidence any alleged prior conception and/or reduction to practice of the subject matter claimed in the patents-in-suit.

**REQUEST FOR PRODUCTION NO. 34:**

All Documents that Vizio relies on or intends to rely on for any of its affirmative defenses.

**REQUEST FOR PRODUCTION NO. 35:**

Documents sufficient to determine the following on a monthly or quarterly basis from October 10, 2002 for the Vizio Products, including components thereof:

        a.    Total gross and net revenues (by product, customer, period and location);

        b.    Total quantity of units sold (by product, customer, period and location);

        c.    Cost of goods sold, including but not limited to, direct purchases, direct labor, indirect and/or overhead costs, and any allocation of those direct, indirect and/or overhead costs to the Vizio Products;

        d.    Actual total cost or variances from standard costs;

        e.    Gross and net profits; and

        f.    All costs other than standard costs, including but not limited to, selling, advertising, general and administrative expenses, and any allocation of those expenses to the Vizio Products.

**REQUEST FOR PRODUCTION NO. 36:**

All Documents relating to the marketing and sale of the Vizio Products.

**REQUEST FOR PRODUCTION NO. 37:**

Documents sufficient to identify all entities involved in the sale and distribution of the Vizio Products.

**REQUEST FOR PRODUCTION NO. 38:**

Documents sufficient to identify the role or contribution of all entities involved in the sale and distribution of the Vizio Products.

**REQUEST FOR PRODUCTION NO. 39:**

Documents sufficient to identify all entities involved in the sale and distribution of the Related Vizio Products.

51451/2839093.3

**REQUEST FOR PRODUCTION NO. 40:**

Documents sufficient to identify the role or contribution of all entities involved in the sale and distribution of the Related Vizio Products.

**REQUEST FOR PRODUCTION NO. 41:**

All Documents that relate to when and how Vizio first became aware of each of the patents-in-suit.

**REQUEST FOR PRODUCTION NO. 42:**

All Documents reflecting Communications concerning the patents-in-suit or other Sony patents.

**REQUEST FOR PRODUCTION NO. 43:**

All Documents that relate to or evidence any Licenses, or the negotiation thereof, relating to the Vizio Products.

**REQUEST FOR PRODUCTION NO. 44:**

All Documents that relate to or evidence any Licenses, or the negotiation thereof, relating to the technology claimed or disclosed by the patents-in-suit.

**REQUEST FOR PRODUCTION NO. 45:**

All patent licenses in which Vizio has received or conveyed rights.

**REQUEST FOR PRODUCTION NO. 46:**

All Documents reflecting or created in the course of any patent licensing negotiations in which Vizio has been involved.

**REQUEST FOR PRODUCTION NO. 47:**

All Documents that are material to the calculation of the reasonable royalty rate that Vizio contends Vizio and Sony would have agreed upon in a hypothetical negotiation.

**REQUEST FOR PRODUCTION NO. 48:**

All Documents that relate to the size or potential size of the market for each of the Vizio Products.

**REQUEST FOR PRODUCTION NO. 49:**

All Documents that relate to any agreement under which Vizio pays royalties on sales of the Vizio Products.

**REQUEST FOR PRODUCTION NO. 50:**

All licenses and agreements between AmTRAN and Vizio.

**REQUEST FOR PRODUCTION NO. 51:**

All Documents that reflect any licenses or agreements between AmTRAN and Vizio.

**REQUEST FOR PRODUCTION NO. 52:**

All Documents reflecting AmTRAN's ownership in Vizio.

**REQUEST FOR PRODUCTION NO. 53:**

All Documents that relate to any agreement under which any third party receives, or is entitled to receive, any proceeds from the sale of any of the Vizio Products.

**REQUEST FOR PRODUCTION NO. 54:**

All Documents concerning sales forecasts, budgets, expenses, costs, and profitability of the Vizio Products.

**REQUEST FOR PRODUCTION NO. 55:**

All Documents that relate to (1) any written or oral opinions received or solicited by Vizio that relate to the validity, enforceability, infringement, or scope of any claims of the patents-in-suit and (2) the preparation of any such opinions, including, but not limited to, drafts, notes, and any Documents relied on in the preparation of any such opinions.

51451/2839093.3

1 | **REQUEST FOR PRODUCTION NO. 56:**

2      All opinions of counsel relating to any of the patents-in-suit.

3 | **REQUEST FOR PRODUCTION NO. 57:**

4      All Documents concerning any of Vizio's policies, practices, or guidelines

5 regarding the patent rights of others, including the analysis of patents to ensure you

6 do not infringe such patents.

7 | **REQUEST FOR PRODUCTION NO. 58:**

8      All Documents concerning any test, study, experimentation, or investigation

9 conducted to determine whether any product manufactured or sold by Vizio

10 infringes any of the patents-in-suit or uses any Sony technology.

11 | **REQUEST FOR PRODUCTION NO. 59:**

12      All Documents relating to any test, study, experimentation, or investigation

13 conducted by or on behalf of Vizio in an effort to design around any of the patents-

14 in-suit.

15 | **REQUEST FOR PRODUCTION NO. 60:**

16      All Documents in Vizio's possession that belong to Sony or contain

17 confidential Sony information.

18 | **REQUEST FOR PRODUCTION NO. 61:**

19      Documents sufficient to show Vizio's organizational structure from October

20 10, 2002 to the present, including but not limited to organizational charts and

21 personnel charts.

22 | **REQUEST FOR PRODUCTION NO. 62:**

23      Documents sufficient to show the officers, employees and other Vizio

24 personnel who are or have been involved in the design, testing, manufacture,

25 marketing, sale, or importation of the Vizio Products.

26

27

28

**REQUEST FOR PRODUCTION NO. 63:**

All Documents that relate to Vizio's document destruction and/or document retention policies.

**REQUEST FOR PRODUCTION NO. 64:**

Documents sufficient to show the structure of Vizio's e-mail system and any manner of automatic deletion of e-mail.

**REQUEST FOR PRODUCTION NO. 65**

All Documents identified, consulted, or referred to by Vizio in its responses to any interrogatory served by Sony in this action, including Sony's First Set of Interrogatories served herewith.

**REQUEST FOR PRODUCTION NO. 66:**

All Documents that Vizio contends relate to the scope or meaning of any claims of the patents-in-suit.

**REQUEST FOR PRODUCTION NO. 67:**

All Documents that relate to this action, including, but not limited to, press releases, submissions to government agencies, and Communications with third parties.

**REQUEST FOR PRODUCTION NO. 68:**

All Source Code that relates to any of the Vizio Products or the Related Vizio Products.

**REQUEST FOR PRODUCTION NO. 69:**

All Source Code used to operate or enable the function of every integrated circuit incorporated into the Vizio Products that performs any part of the functions of a Video Processor and/or a Graphics Processor, whether stored on the processor itself or in external memory.

1 **REQUEST FOR PRODUCTION NO. 70:**

2     All Documents that relate to any Source Code used to operate or enable any

3 functionality of any of the Vizio Products, including but not limited to algorithms,

4 flowcharts, diagrams, notes, and manuals.

5 **REQUEST FOR PRODUCTION NO. 71:**

6     All Documents that relate to any Source Code used to operate or enable any

7 functionality of any of the Related Vizio Products, including but not limited to

8 algorithms, flowcharts, diagrams, notes, and manuals.

9 **REQUEST FOR PRODUCTION NO. 72:**

10     All Source Code that relates to the technology claimed or disclosed in the

11 '626 patent, including, without limitation, all Source Code relating to the menu

12 display and/or picture-in-picture functionality of the Vizio Products.

13 **REQUEST FOR PRODUCTION NO. 73:**

14     All Source Code that relates to the technology claimed or disclosed in the

15 '577 patent, including, without limitation, all Source Code relating to the close

16 caption functionality of the Vizio Products .

17 **REQUEST FOR PRODUCTION NO. 74:**

18     All Source Code that relates to the technology claimed or disclosed in the

19 '542 patent, including, without limitation, all Source Code relating to the subtitle

20 display functionality of the Vizio Products.

21 **REQUEST FOR PRODUCTION NO. 75:**

22     All Source Code that relates to the technology claimed or disclosed in the

23 '847 patent, including, without limitation, all Source Code relating to the subtitle

24 display functionality of the Vizio Products.

25 **REQUEST FOR PRODUCTION NO. 76:**

26     All Source Code that relates to the technology claimed or disclosed in the

27 '373 patent, including, without limitation, all Source Code relating to the display of

28

menu items and the display and/or selection of hierarchical menus, subordinate menus, and/or submenus.

**REQUEST FOR PRODUCTION NO. 77:**

All Source Code that relates to the technology claimed or disclosed in the '614 patent, including, without limitation, all Source Code relating to the menu display functionality of the Vizio Products.

**REQUEST FOR PRODUCTION NO. 78:**

All Source Code that relates to the technology claimed or disclosed in the '055 patent, including, without limitation, all Source Code relating to the video processing and transmission functionality of the Vizio Products.

**REQUEST FOR PRODUCTION NO. 79:**

All Source Code that relates to the technology claimed or disclosed in the '468 patent, including, without limitation, all Source Code relating to the video data communication functionality of the Vizio Products.

**REQUEST FOR PRODUCTION NO. 80:**

All Source Code that relates to the technology claimed or disclosed in the '182 patent, including, without limitation, all Source Code relating to the dynamic contrast functionality of the Vizio Products.

**REQUEST FOR PRODUCTION NO. 81:**

All Source Code that relates to the technology claimed or disclosed in the '472 patent, including, without limitation, all Source Code relating to channel selection, including any channel selection related to major and minor channel numbers.

**REQUEST FOR PRODUCTION NO. 82:**

All Documents that relate to any joint defense agreement in this action or in any related litigation.

**REQUEST FOR PRODUCTION NO. 83:**

All Documents that relate to any Communications with any third parties regarding the Vizio Products, the patents-in-suit, or this action, including but not limited to Communications with AmTRAN or Westinghouse Digital Electronics, LLC.

**REQUEST FOR PRODUCTION NO. 84:**

All Documents that relate to collaborations, partnerships, agreements, joint ventures, licenses, or other arrangements considered or entered into by Vizio for the purpose of designing, developing, manufacturing, selling or distributing any of the Vizio Products.

**REQUEST FOR PRODUCTION NO. 85:**

All Documents that relate to intellectual property agreements or other arrangements that relate to intellectual property considered or entered into by Vizio for the purpose of designing, developing, manufacturing, selling or distributing any of the Vizio Products.

**REQUEST FOR PRODUCTION NO. 86:**

All Documents that relate to the marketing, advertising, or promotion of any of the Vizio Products, including but not limited to advertising materials, catalogs, brochures, data sheets, promotional materials, speeches, interviews, press releases, publications, trade releases, new product releases, trade notices, and web pages.

**REQUEST FOR PRODUCTION NO. 87:**

All Documents that relate to the marketing, advertising, or promotion of any of the Related Vizio Products, including but not limited to advertising materials, catalogs, brochures, data sheets, promotional materials, speeches, interviews, press releases, publications, trade releases, new product releases, trade notices, and web pages.

1 **REQUEST FOR PRODUCTION NO. 88:**

2     Documents sufficient to show all of Vizio's sales, leases, or other placements,

3 in units and dollars, for each of the Vizio Products, including the date of sale, date

4 of shipment, and name of customer with respect to each sale.

5 **REQUEST FOR PRODUCTION NO. 89:**

6     All Documents that relate to any analysis of Vizio's actual or projected gross

7 profits, net profits, gross profit margins, and net profit margins, relating to any of the

8 Vizio Products.

9 **REQUEST FOR PRODUCTION NO. 90:**

10     All Documents that relate to any product reviews, comparisons, or usability

11 tests or evaluations of any of the Vizio Products.

12 **REQUEST FOR PRODUCTION NO. 91:**

13     All Documents that relate to any plans, proposals, or decisions to improve,

14 downgrade, or otherwise change any features or functionality of any of the Vizio

15 Products.

16 **REQUEST FOR PRODUCTION NO. 92:**

17     All Documents that relate to any studies, surveys, investigations, reports,

18 considerations of, analyses of, or any plans or proposed plans for, beginning,

19 expanding, decreasing, continuing, or discontinuing research, development, testing,

20 production, or sales as to any of the Vizio Products.

21 **REQUEST FOR PRODUCTION NO. 93:**

22     All Documents that you have provided to or received from any person who

23 may testify at trial or at any hearing in this action.

24 **REQUEST FOR PRODUCTION NO. 94:**

25     All Documents created or provided to any expert retained to testify in this

26 case, and all transcripts of prior testimony (whether at deposition, trial, declaration,

27 or affidavit) by the retained expert.

28

**REQUEST FOR PRODUCTION NO. 95:**

All Communications between Vizio and any expert retained to testify in this action.

**REQUEST FOR PRODUCTION NO. 96:**

All Communications between Vizio and any witness that is expected to testify in this action.

**REQUEST FOR PRODUCTION NO. 97:**

All Documents identified in Vizio's Rule 26 disclosures.

**REQUEST FOR PRODUCTION NO. 98:**

All Documents that Vizio relies on or intends to rely on for any of its Affirmative Defenses.

**REQUEST FOR PRODUCTION NO. 99:**

All Documents that Vizio may use or will use at any trial or at any hearing in this matter.

**REQUEST FOR PRODUCTION NO. 100:**

All Documents identified, mentioned, referenced, reviewed, or relied upon in the preparation of Vizio's answers to Sony's Interrogatories in this action.

**REQUEST FOR PRODUCTION NO. 101:**

All Licenses, whether Vizio is the licensor or licensee, relating to any of the Vizio Products, including but not limited to licenses relating to the technologies claimed or disclosed by the patents-in-suit.

**REQUEST FOR PRODUCTION NO. 102:**

All Documents and Communications relating to any license relating to any of the Vizio Products.

**REQUEST FOR PRODUCTION NO. 103:**

All settlement agreements relating to any of the Vizio Products, including but

not limited to, settlement agreements relating to the technologies claimed or disclosed by the patents-in-suit.

**REQUEST FOR PRODUCTION NO. 104:**

All Documents and Communications relating to any settlement agreement relating to any of the Vizio Products.

**REQUEST FOR PRODUCTION NO. 105:**

All Documents and Communications relating to any patent infringement claim or action, whether or not such claim or action has been filed before a court of law, that concerns any of the Vizio Products.

**REQUEST FOR PRODUCTION NO. 106:**

A fully operational exemplar of any device, machine, apparatus, or other thing that Vizio contends is prior art to any claim of any of the Patents-in-suit.

**REQUEST FOR PRODUCTION NO. 107:**

All Documents relating to the distribution within, import to, or export from the United States of the Vizio Products.

**REQUEST FOR PRODUCTION NO. 108:**

All Documents relating to any analysis of Vizio's actual or projected gross profits, net profits, gross profit margins, and net profit margins in the United States relating to each Vizio Product.

**REQUEST FOR PRODUCTION NO. 109:**

All Documents relating to business plans and projections, sales forecasts, or other business planning relating to the Vizio Products.

**REQUEST FOR PRODUCTION NO. 110:**

Documents sufficient to show the efforts taken by Vizio to sell other products or services together, or in connection, with the Vizio Products or to effect the sale thereof by third parties, including, but not limited to, distributors and retailers.

**REQUEST FOR PRODUCTION NO. 111:**

Documents sufficient to show the terms of any extended service plan and/or warranty sold together or in connection with the Vizio Products.

**REQUEST FOR PRODUCTION NO. 112:**

Documents sufficient to show for each Vizio Product, any other products or services sold together, or in connection, with that product and the revenue generated thereby.

**REQUEST FOR PRODUCTION NO. 113:**

Documents sufficient to show for each Vizio Product any extended service plan and/or warranty sold together or in connection with that product and the revenue generated thereby.

**REQUEST FOR PRODUCTION NO. 114:**

All Documents that relate to the technology claimed or disclosed in the '468 patent, including, without limitation, all Documents relating to the video processing and transmission functionality of the Vizio Products.

**REQUEST FOR PRODUCTION NO. 115:**

All Documents that relate to the technology claimed or disclosed in the '182 patent, including, without limitation, all Documents relating to the Vizio Products' use, correction, or adjustment of gamma luminance or color difference.

**REQUEST FOR PRODUCTION NO. 116:**

All Documents that relate to the technology claimed or disclosed in the '626 patent, including, without limitation, all Documents relating to the menu display and/or picture-in-picture functionality of the Vizio Products.

**REQUEST FOR PRODUCTION NO. 117:**

All Documents that relate to the technology claimed or disclosed in the '577 patent, including, without limitation, all Documents relating to the close caption functionality of the Vizio Products.

**REQUEST FOR PRODUCTION NO. 118:**

All Documents that relate to the technology claimed or disclosed in the '542 patent, including, without limitation, all Documents relating to the subtitle display functionality of the Vizio Products.

**REQUEST FOR PRODUCTION NO. 119:**

All Documents that relate to the technology claimed or disclosed in the '847 patent, including, without limitation, all Documents relating to the subtitle display functionality of the Vizio Products.

**REQUEST FOR PRODUCTION NO. 120:**

All Documents that relate to the technology claimed or disclosed in the '373 patent, including, without limitation, all Documents relating to the display of menu items and the display and/or selection of hierarchical menus, subordinate menus, and/or submenus.

**REQUEST FOR PRODUCTION NO. 121:**

All Documents that relate to the technology claimed or disclosed in the '614 patent, including, without limitation, all Documents relating to the menu display functionality of the Vizio Products.

**REQUEST FOR PRODUCTION NO. 122:**

All Documents that relate to the technology claimed or disclosed in the '055 patent, including, without limitation, all Documents relating to the video processing and transmission functionality of the Vizio Products.

**REQUEST FOR PRODUCTION NO. 123:**

All Documents that relate to the technology claimed or disclosed in the '472 patent, including, without limitation, all Documents relating to channel selection, including any selection related to major and minor channel numbers.

**REQUEST FOR PRODUCTION NO. 124:**

Documents sufficient to show the ownership structure of Vizio, including the names and addresses of any owners of or investors in Vizio.

**REQUEST FOR PRODUCTION NO. 125:**

Documents sufficient to identify all Vizio employees who have ever received confidential Sony information.

**REQUEST FOR PRODUCTION NO. 126:**

All Documents containing confidential Sony information.

**REQUEST FOR PRODUCTION NO. 127:**

All Documents reflecting any testing of the Vizio Products by or on behalf of Vizio.

**REQUEST FOR PRODUCTION NO. 128:**

All Documents reflecting any test protocols for testing of the Vizio Products by or on behalf of Vizio.

**REQUEST FOR PRODUCTION NO. 129:**

All Documents relating to Vizio's participation in any industry groups or associations, including standard-setting organizations.

**REQUEST FOR PRODUCTION NO. 130:**

All Documents relating to Sony's participation in any industry groups or associations, including standard-setting organizations.

**REQUEST FOR PRODUCTION NO. 131:**

All Documents relating to any obligations owed by Vizio and/or Sony to any industry groups or associations, including standard-setting organizations, and/or their members.

**REQUEST FOR PRODUCTION NO. 132:**

All Documents that support Vizio's contention that Sony is barred from recovering damages under 35 U.S.C. § 287.

**REQUEST FOR PRODUCTION NO. 133:**

All Documents that support Vizio's contention that one or more of the claims of the patents-in-suit are invalid for failing to meet conditions for patentability set forth in 35 U.S.C. §§ 101, 102, 103, and/or 112.

**REQUEST FOR PRODUCTION NO. 134:**

All Documents that support any contention by Vizio that one or more of the patents-in-suit is unenforceable for any reason including, without limitation, laches, equitable estoppel, express or implied license, exhaustion, intervening rights, express or implied waiver, inequitable conduct, patent misuse, unclean hands, and/or prosecution laches.

**REQUEST FOR PRODUCTION NO. 135:**

All Documents produced or made available to Vizio by any non-party or third-party pursuant to any subpoena in this action.

DATED: March 23, 2009          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


By _____ /FOR
Kevin P.B. Johnson
ATTORNEYS FOR PLAINTIFF
Sony Corporation

1                         **PROOF OF SERVICE**

2         I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is Now Legal Service,

3  1301 W. 2nd Street, Suite 206, Los Angeles, CA 90026.

4         On March 23, 2009, I served true copies of the following document(s) described as

5      **1) SONY'S FIRST SET OF INTERROGATORIES TO VIZIO**

6      **2) SONY'S FIRST SET OF REQUESTS FOR PRODUCTION TO VIZIO**

7      on the parties in this action as follows:

8      **Steven John Corr**
        Jones Day

9      555 South Flower Street 50th Floor
        Los Angeles , CA 90071

10     213-243-2327
        Fax: 213-243-2539

11

12

13  **[X] BY PERSONAL SERVICE:** I delivered such envelope(s) by hand to the office of the person(s) being served.

14      I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

15

16      Executed on March 23, 2009, at Los Angeles, _C&#92;_____.

17

18                        Dave Quintana

19

20

21

22

23

24

25

26

27

28