Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP
555 Twin Dolphin Drive, Suite 560
Redwood Shores, California 94065-2139
Telephone:  (650) 801-5000
Facsimile:   (650) 801-5100

Steven M. Anderson (Bar No. 144014)
stevenanderson@quinnemanuel.com
QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP
865 S. Figueroa St. 10th Floor
Los Angeles, California 90017
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

Gerson A. Zweifach (Admitted *pro hac vice*)
gzweifach@wc.com
Thomas G. Hentoff (Admitted *pro hac vice*)
thentoff@wc.com
WILLIAMS & CONNOLLY LLP
725 12th Street NW
Washington, D.C. 20005
Telephone:  (202) 434-5000
Facsimile:   (202) 434-5029

Attorneys for Plaintiff/Defendant Sony
Corporation and Consolidated Defendant
Sony Corporation of America

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONY CORPORATION,<br><br>                    Plaintiff,<br><br>          v.<br><br>VIZIO INC.,<br><br>                    Defendant. | CASE NO. CV08-01135 RGK (FMOx)<br><br>**NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS AS TO VIZIO'S LANHAM ACT AND PRODUCT DISPARAGEMENT CLAIMS (COUNTS 25 & 26)**<br><br>[Declaration of Thomas G. Hentoff Filed Concurrently]<br><br>Hearing Date:      October 5, 2009<br>Hearing Time:      9:00 a.m.<br>Judge:      Hon. R. Gary Klausner |

1  TO THE CLERK OF COURT, ALL PARTIES, AND THEIR ATTORNEYS

2  OF RECORD:

3  PLEASE TAKE NOTICE THAT, on October 5, 2009 at 9:00 a.m., or as soon

4  thereafter as may be heard before the Honorable R. Gary Klausner, United States

5  District Judge, in Courtroom 850 of the above-captioned court, located at 255 East

6  Temple Street, Los Angeles, California 90012, Consolidated Defendants Sony

7  Corporation and Sony Corporation of America will and hereby do move the Court

8  pursuant to Federal Rule of Civil Procedure 12(c) for judgment on the pleadings

9  against Vizio, Inc.'s Lanham Act and product disparagement claims (counts 25 and

10  26).

11  This motion is made following the conference of counsel pursuant to Local

12  Rule 7-3.   This motion is based on this Notice of Motion and Motion, the

13  accompanying Memorandum of Points and Authorities, the concurrently-filed

14  Declaration of Thomas G. Hentoff and the exhibits attached thereto, the pleadings

15  and papers on file in this action, such matters as the Court may take judicial notice,

16  and argument and evidence to be presented at the hearing on this motion.

17

18  DATED:   September 14, 2009   WILLIAMS & CONNOLLY LLP

19

20  By_____/s/_____

21  Thomas G. Hentoff
    Attorneys for Consolidated Defendants

22  Sony Corporation and Sony Corporation of
    America

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ...................................................................................................... 1

BACKGROUND ....................................................................................................... 2

ARGUMENT ............................................................................................................ 5

I.   VIZIO'S LANHAM ACT CLAIM FAILS BECAUSE THE EARNINGS-CALL COMMENT WAS NOT MADE "IN COMMERCIAL ADVERTISING OR PROMOTION" ................................. 7

    A.   The Earnings-Call Comment Was Not Made To Influence Consumers To Buy Sony Products. ...................................... 8

    B.   The Earnings-Call Comment Is Not Commercial Speech. ................. 11

II.   VIZIO'S PRODUCT DISPARAGEMENT CLAIM FAILS BECAUSE VIZIO DOES NOT ALLEGE THAT THE EARNINGS-CALL COMMENT CAUSED IT TO LOSE ANY BUSINESS .............................. 15

    A.   New Jersey Law Applies. ............................................................... 15

    B.   Vizio's Failure To Allege Lost Business Requires Dismissal. ........... 16

CONCLUSION ...................................................................................................... 19

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## <u>Cases</u>

*Abernathy & Closther v. Buffalo Broad. Co.*,
574 N.Y.S.2d 568 (App. Div. 1991) ................................................................. 18

*Agency Dev., Inc. v. MedAmerica Ins. Co.*,
142 F. App'x 545 (2d Cir. 2005) ...................................................................... 12

*Am. Acad. of Pain Mgmt. v. Joseph*,
353 F.3d 1099 (9th Cir. 2004) ......................................................................... 13

*Angio-Med. Corp. v. Eli Lilly & Co.*,
720 F. Supp. 269 (S.D.N.Y. 1989) ............................................................... 7, 19

*Ashcroft v. Iqbal*,
129 S. Ct. 1937, 73 L. Ed. 2d 868 (2009) ......................................................... 6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ................................ 6

*Bocobo v. Radiology Consultants*,
2005 WL 3158053 (D.N.J. Nov. 21, 2005) ...................................................... 17

*Bolger v. Youngs Drug Prods. Corp.*,
463 U.S. 60, 103 S. Ct. 2875, 77 L. Ed. 469 (1983) ................................. 11, 13

*Branch v. Tunnell*,
14 F.3d 449 (9th Cir. 1994) ............................................................................... 2

*Brooks Power Systems, Inc. v. Ziff Communications, Inc.*,
1994 WL 444725 (E.D. Pa. Aug. 17, 1994) ............................................... 18, 19

*Browne v. McCain*,
611 F. Supp. 2d 1073 (C.D. Cal. 2009) ............................................................. 3

*Browning v. Clinton*,
292 F.3d 235 (D.C. Cir. 2002) ........................................................................... 7

*Cancer Genetics, Inc. v. Hartmayer*,
2008 WL 323738 (D.N.J. Feb. 5, 2008) ..................................................... 10, 11

*Cardtoons, L.C. v. Major League Baseball Players Ass'n*,
95 F.3d 959 (10th Cir. 1996) ........................................................................... 11

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
173 F.3d 725 (9th Cir. 1999) .................................................................. 8, 9, 11

*Dairy Stores, Inc. v. Sentinel Publ'g*,
516 A.2d 220 (N.J. 1986) ........................................................................... 15, 16

-ii-

Case No. SA CV08-01135-RGK (FMOx)

SONY'S MOTION FOR JUDGMENT ON THE PLEADINGS

*Dworkin v. Hustler Magazine Inc.*,
   867 F.2d 1188 (9th Cir. 1989) ................................................................. 6

*Eli Lilly & Co. v. Roussel Corp.*,
   23 F. Supp. 2d 460 (D.N.J. 1998) .......................................................... 10

*Erlich v. Etner*,
   224 Cal. App. 2d 68 (1964) .................................................................... 18

*EventMedia Int'l, Inc. v. Time Inc. Magazine Co.*,
   1992 WL 321629 (S.D.N.Y. Oct. 26, 1992) .............................................. 9

*Gordon & Breach Sci. Publ'rs S.A. v. Am. Inst. of Physics*,
   859 F. Supp. 1521 (S.D.N.Y. 1994) ................................................. 6, 8, 12

*Groden v. Random House, Inc.*,
   61 F.3d 1045 (2d Cir. 1995) ..................................................................... 7

*Henry V. Vaccaro Constr. Co. v. A.J. DePace, Inc.*,
   349 A.2d 570 (N.J. Super. Ct. Law Div. 1975) ...................................... 15

*Hillcrest Christian Sch. v. City of L.A.*,
   2006 WL 5207228 (C.D. Cal. Dec. 20, 2006) ...................................... 3, 6

*Hilton v. Hallmark Cards*,
   __ F.3d __, 2009 WL 2710225 (9th Cir. Aug. 31, 2009) ................... 11, 12

*Installation Servs., Inc. v. Electronic Research, Inc.*,
   2005 WL 645244 (N.D. Ill. March 21, 2005) ............................................ 6

*Isuzu Motors Ltd. v. Consumers Union*,
   12 F. Supp. 2d 1035 (C.D. Cal. 1998) .............................................. 6, 7, 17

*Johnson v. Rowley*,
   569 F.3d 40 (2d Cir. 2009) ....................................................................... 6

*Juliano v. ITT Corp.*,
   1991 WL 10023 (D.N.J. Jan. 22, 1991) .............................................. 17, 18

*Kasky v. Nike, Inc.*,
   27 Cal. 4th 939 (2002) ....................................................................... 13, 14

*Katzkin Leather, Inc. v. Nissan N. Am., Inc.*,
   2005 WL 3593999 (C.D. Cal. Dec. 22, 2005) ........................ 9, 10, 13, 14

*Mann v. Quality Old Time Serv., Inc.*,
   120 Cal. App. 4th 90 (2004) ............................................................. 17, 18

*Maverick Boat Co. v. Am. Marine Holdings Inc.*,
   70 U.S.P.Q. 2d 1493 (S.D. Fla. 2004) ..................................................... 14

*Mayflower Transit, LLC v. Prince*,
   314 F. Supp. 2d 362 (D.N.J. 2004) .......................................................... 17

*Monotype Corp. v. Simon & Schuster, Inc.*,
2000 WL 1852907 (N.D. Ill. Sept. 8, 2000) ....................................................... 13

*Nat'l Servs. Group Inc. v. Painting & Decorating Constructors of Am., Inc.*,
2006 WL 2035465 (C.D. Cal. July 18, 2006).............................................. 10, 14

*New.net, Inc. v. Lavasoft*,
356 F. Supp. 2d 1090 (C.D. Cal. 2004).......................................... 6, 12, 13

*Newton v. Thomason*,
22 F.3d 1455 (9th Cir. 1994) ........................................................................ 8

*P.V. v. Camp Jaycee*,
962 A.2d 453 (N.J. 2008) ....................................................................... 15, 16

*Podiatrist Ass'n v. La Cruz Azul de P.R., Inc.*,
332 F.3d 6 (1st Cir. 2003)................................................................... 6, 7, 8

*Powell v. Beverly Hills Police Dep't*,
2008 WL 4821001 (C.D. Cal. Oct. 30, 2008) ............................................ 5, 6

*Rice v. Fox Broad. Co.*,
330 F.3d 1170 (9th Cir. 2003) ...................................................... 8, 11, 13

*Riley v. Nat'l Fed. of the Blind*,
487 U.S. 781, 108 S. Ct. 2667, 101 L. Ed. 669 (1988) ....................................... 11

*S.A. Empresa De Viacao Aerea Rio Grandense v. Boeing Co.*,
641 F.2d 746 (9th Cir. 1981) ...................................................................... 15

*Schering Corp. v. First Databank Inc.*,
2007 WL 1068206 (N.D. Cal. Apr. 10, 2007).............................................. 16

*TYR Sport Inc. v. Warnaco Swimwear Inc.*,
__ F. Supp. 2d __, 2009 WL 1769444 (C.D. Cal. May 27, 2009) ..................... 16

*Tercica, Inc. v. Insmed, Inc.*,
2006 WL 1626930 (N.D. Cal. June 9, 2006)................................................ 6, 10

*Zauderer v. Office of Disciplinary Counsel*,
471 U.S. 626, 105 S. Ct. 2265, 85 L. Ed. 2d 652 (1985) .................................... 11

## **Statutes and Rules**

15 U.S.C. § 1125 ............................................................................... 1, 2, 7

28 U.S.C. § 1404 .................................................................................... 15

Fed. R. Civ. P. 9 ........................................................................... 6, 15, 17

Fed. R. Civ. P. 12 ......................................................................... passim

Fed. R. Civ. P. 56 ...................................................................................... 1

1

## <u>Other Authority</u>

2   5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 27:111
       (4th ed. 2009) .............................................................................................. 17

3

S. Bochner, *et al.*, *The Earnings Release*, 1705 PLI/Corp 175, at 177
4     (2008) ........................................................................................................... 3

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **INTRODUCTION**

Sony moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).   This motion concerns the one part of this case that is unrelated to Sony Corporation's patent-infringement claims against Vizio and Vizio's mirror-image declaratory judgment claims.   Vizio's New Jersey lawsuit, which this Court consolidated with this case after transfer, contains two counts against Sony Corporation and Sony Corporation of America ("SCA") (collectively, "Sony") alleging product disparagement under the Lanham Act, 15 U.S.C. § 1125, and under state law.[1]   Neither count states a claim upon which relief may be granted.[2]

Both counts challenge a single oral comment that SCA's Chief Financial Officer ("CFO") made in May 2008 during the question-and-answer portion of an "earnings call" for investors and stock analysts held in connection with Sony's report of its year-end consolidated financial results.   He answered a question about how Sony plans to make money in the competitive market for smaller-screen, lower-cost television sets by saying: "We've seen a lot in the press that's come over to us in Tokyo about the push on the low cost television side[.]   I think it's important to point out there is a very big difference between the high-end 1080p sets and the low-end kind of Vizio and Chinese manufacturer semi non-HD sets.   So, when we talk

---

[1]   *Vizio, Inc. v. Sony Corp.*, No. 08-5029 (FSH) (D.N.J. Oct. 10, 2008) (Docket No. 1, at 17-20 (Counts 25 & 26)).   For ease of reference, the complaint is attached hereto as Ex. 1 to the Declaration of Thomas G. Hentoff ("Hentoff Decl.").

[2]   This motion is not made pursuant to Federal Rule of Civil Procedure 56 and it should not be treated as such.   This Rule 12(c) motion, which is the functional equivalent of a Rule 12(b)(6) motion filed later in time, is intended to challenge the legal sufficiency of Vizio's pleading of the two product disparagement counts.   *See infra,* p. 5.   Sony relies entirely on Vizio's pleading and the transcript cited therein in support of it motion.   *See infra,* p. 2 n.3.   Sony fully intends to reserve all rights to file a Rule 56 motion, in accordance with the Court's Standing Order re Newly Assigned Cases (Docket No. 35) on other appropriate issues after discovery has closed.

1  about these lower cost versions there is a big bandwidth in the middle that we think

2  we can still make money on . . . where there is a market hole that retail tells us that

3  there is a demand for Sony products."   Vizio asserts that this comment disparaged

4  its products as "inferior 'semi non-HD sets.'"   Compl. ¶ 121.

5       The two counts targeting this comment do not, and cannot, state a claim on

6  which relief can be granted, and therefore should be dismissed with prejudice

7  pursuant to Federal Rule of Civil Procedure 12(c):

8       1.   The Lanham Act's reach is limited to statements made "in commercial

9  advertising or promotion."   15 U.S.C. § 1125(a)(1)(B) (2006).   Vizio's Lanham

10  Act claim should be dismissed because the SCA executive's answer to a stock

11  analyst's question during an earnings call question-and-answer session does not

12  constitute a statement made "in commercial advertising or promotion" as required to

13  state a claim.

14       2.   Vizio has failed to allege pecuniary harm in the form of lost customers

15  or business as a result of the statement it challenges, and thus has not satisfied the

16  required special damages element of a state-law product disparagement claim.   In a

17  complaint filed approximately five months after the earnings call in question, Vizio

18  could not, and therefore did not, allege that the earnings-call comment cost it any

19  business or even a single customer.

20                **BACKGROUND**

21       Vizio bases its claims on the transcript of a May 14, 2008 Sony Corporation

22  earnings call held to discuss Sony's consolidated annual financial results for the year

23  ended March 31, 2008.   *See* Compl. ¶ 122.[3]

24

25      [3]   The transcript of the call that the complaint refers to and cites, *see id.* (citing

26  "http://seekingalpha.com/article/77322-sony-corp-f4q07-qtr-end-03-31-08-earnings-
call-transcript"), is attached to the Hentoff Declaration at Ex. 2.   *See Branch v.*

27  *Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994) ("[D]ocuments whose contents are alleged in
a complaint and whose authenticity no party questions, but which are not physically

28  (footnote continued)

Earnings calls are commonly used by publicly traded companies to report financial results and to help meet obligations under federal law to make disclosures to investors about business performance.   *See* S. Bochner, *et al.*, *The Earnings Release*, 1705 PLI/Corp 175, at *177 (2008).

As demonstrated by the transcript cited in the complaint, this is precisely how Sony used the earnings call in question.   SCA Senior Vice President for Investor Relations Samuel Levenson provided a detailed report about Sony's overall financial performance for the previous year and projections for the year to come. This report included discussion of revenue, sales, income before taxes, the results of Sony's three-year restructuring plan, and forecasts for Sony's many business segments, including its entertainment, electronics, video game, and financial services businesses, among other topics.   Hentoff Decl., Ex. 2, at 1-5.   Sony Corporation CFO Nobuyuki Oneda and SCA CFO Robert Wiesenthal then participated in a question-and-answer session with stock analysts from financial services firms including Merrill Lynch, Lazard, and Pacific Crest Securities, who posed a range of questions about the financial performance and prospects of several of Sony's businesses, including about the use of working capital, labor unrest in the film industry, and the pricing of handheld video game units, among others.   *Id.* at 5-13.

As to Sony's television set business in particular, the call reported on both positive and negative information that would be useful to investors.   *See*, *e.g.*, Ex.

_____

attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss.   Such consideration does not convert the motion to dismiss into a motion for summary judgment.") (quotation omitted); *Hillcrest Christian Sch. v. City of L.A.*, 2006 WL 5207228, at *2 (C.D. Cal. Dec. 20, 2006) (same for Rule 12(c) motion); *Browne v. McCain*, 611 F. Supp. 2d 1073, 1075-76 & n.1 (C.D. Cal. 2009) (court "may properly consider" on a Rule 12(b)(6) motion a declaration attaching a document referenced in the complaint).

Case No. SA CV08-01135-RGK (FMOx)
SONY'S MOTION FOR JUDGMENT ON THE PLEADINGS

2, at 2 ("LCD rear-projection televisions . . . suffered from a shrinking market . . . . [W]e are planning to exit this category."); *id.* ("LCD TVs, PCs and digital cameras reached higher unit sales in all regions"); *id.* at 3 ("a large operating loss was recorded due to our being forced to cut prices in the first half of the year, as a result of [a] less than competitive product line up").   The only Sony speakers on the call were from the company's finance and investor relations departments.   *Id.* at 1. No marketing executives spoke, and no marketing message was conveyed.   At the conclusion of the call, a Sony investor relations executive reminded participants "that Investor Relations team[s] in Tokyo, London, and New York are available to answer your questions."   *Id.* at 13.

During the question-and-answer session, two stock analysts asked about Sony's plans for competing successfully in the lower-cost, smaller-size TV set market, which the analysts referred to as the "low end" market.   Ex. 2, at 9, 12. One of the two, as part of a multi-part question about a number of different Sony businesses, asked for Sony's "pricing assumptions for the year" in "the TV business" and "if you could give us a little comfort on whether you can [make] money on going after a low end or sort of low small screen size type products?" *Id.* at 9.   After getting answers to his other questions, the analyst followed up: "on TVs again, just curious as you move and push harder at the smaller screen size whether you can discuss how you plan to make money in such a competitive market?"   *Id.* at 10.

The Sony CFO answered that while "we also still continue the largest screen size," Sony "at the same time . . . will sell the entry model products," which he described as "the relatively small size" sets.   Ex. 2, at 10.   The SCA CFO then added: "We've seen a lot in the press that's come over to us in Tokyo about the push on the low cost television side" and "I think it's important to point out there is a

1  very big difference between the high-end 1080p[4] sets and the low-end kind of

2  Vizio and Chinese manufacturer semi non-HD sets."   *Id.*   "So, when we talk

3  about these lower cost versions there is a big bandwidth in the middle that we think

4  we can still make money on."   *Id.*

5      Additional questions and answers followed regarding Sony's plans for selling

6  TV sets in the "low end" market.   The Sony CFO addressed the ratio of "the low-

7  end and the high-end" sets Sony planned to sell and reported that Sony planned to

8  increase the number of units of its "relatively low end model, entry model."   Ex. 2,

9  at 12.   In all, the two stock analysts and the Sony CFO referred to Sony's own sets

10  serving the "low end" market seven times compared to one such reference to Vizio

11  sets.   *Id.* at 9, 10, 12.

12      Vizio filed this lawsuit on October 10, 2008, approximately five months after

13  the earnings call, *see* Compl. at 21, alleging that the comment had maliciously and

14  falsely disparaged Vizio products as "inferior 'semi non-HD sets.'"   *Id.* ¶¶ 121,

15  125.   The complaint does not allege any loss of business stemming from the

16  comment in that five-month period.   *See id.* ¶ 124.   Instead, the only damages

17  claimed are for what Vizio says it spent on unspecified "corrective television

18  advertising spots," in an amount allegedly exceeding $500,000, which were

19  "designed to counteract" Sony's purported false assertions "and/or" the "attendant

20  loss of goodwill they caused Vizio."   *Id.*   No other information about Vizio's

21  claimed damages is provided.

22                    **ARGUMENT**

23      A Rule 12(c) motion for judgment on the pleadings is "'functionally

24  identical'" to a Rule 12(b)(6) motion to dismiss, "with the principal difference being

25  the time of filing."   *Powell v. Beverly Hills Police Dep't*, 2008 WL 4821001, at *4

26  n.5 (C.D. Cal. Oct. 30, 2008) (adopting magistrate judge report) (quoting *Dworkin v.*

27

28

---

4   1080p refers to the screen resolution of sets commonly referred to as "full HD."

1    *Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)).   "Both types of

2    motions permit challenges directed at the legal sufficiency of the parties'

3    allegations.   The same standard thus applies to both motions."   *Id.*

4        "When deciding a motion for judgment on the pleadings . . . , a court must

5    treat the allegations contained in the challenged pleading as true," resolving "all

6    doubts in the light most favorable to the nonmoving party."   *Hillcrest Christian*

7    *Sch. v. City of L.A.*, 2006 WL 5207228, at \*2 (C.D. Cal. Dec. 20, 2006).

8    "[C]onclusory allegations or legal characterizations," however, "need not [be]

9    accept[ed] as true," *id.*, and "[t]o survive a Rule 12(c) motion," a "'complaint must

10    contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

11    plausible on its face.'"   *Johnson v. Rowley*, 569 F.3d 40, 43-44 (2d Cir. 2009)

12    (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 73 L.Ed. 2d 868, 884 (2009)

13    (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167

14    L.Ed. 2d 929, 949 (2007))).   In addition, when special damages are a required

15    element of a cause of action, such damages must be pleaded "specifically."   Fed. R.

16    Civ. P. 9(g); *Isuzu Motors Ltd. v. Consumers Union*, 12 F. Supp. 2d 1035, 1047

17    (C.D. Cal. 1998).

18        Courts routinely grant, and affirm, dismissals under Rule 12(b)(6) or 12(c) on

19    the grounds that a Lanham Act plaintiff has failed to identify   a statement made "in

20    commercial advertising or promotion" or that a product disparagement plaintiff has

21    failed sufficiently to allege special damages caused by the statements it has

22    challenged.   *See, e.g.*, *New.net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1118 (C.D.

23    Cal. 2004) (Lanham Act); *Tercica, Inc. v. Insmed, Inc.*, 2006 WL 1626930, at \*17-

24    18 (N.D. Cal. June 9, 2006) (same); *Installation Servs., Inc. v. Electronic Research,*

25    *Inc.*, 2005 WL 645244, at \*2 (N.D. Ill. March 21, 2005) (same); *Gordon & Breach*

26    *Sci. Publ'rs S.A. v. Am. Inst. of Physics*, 859 F. Supp. 1521, 1545 (S.D.N.Y. 1994)

27    (same); *Podiatrist Ass'n v. La Cruz Azul de P.R., Inc.*, 332 F.3d 6, 19-20 (1st Cir.

28    2003) (same); *Isuzu Motors*, 12 F. Supp. 2d at 1047 (product disparagement);

1  *Angio-Med. Corp. v. Eli Lilly & Co.*, 720 F. Supp. 269, 274 (S.D.N.Y. 1989)

2  (same); *Browning v. Clinton*, 292 F.3d 235, 245 (D.C. Cir. 2002) (same).

3          Because the deficiencies in Vizio's two claims are apparent from the face of

4  the complaint, they should be dismissed pursuant to Rule 12(c).   Because the

5  deficiencies are inherent in the nature of the claims, the dismissal should be with

6  prejudice.

7  **I.     VIZIO'S LANHAM ACT CLAIM FAILS BECAUSE THE EARNINGS-**

8         **CALL COMMENT WAS NOT MADE "IN COMMERCIAL**

9         **ADVERTISING OR PROMOTION"**

10          Vizio's complaint alleges that an SCA executive's oral comment that "there is

11  a very big difference between the high-end 1080p sets and the low-end kind of Vizio

12  and Chinese manufacturer semi non-HD sets," Hentoff Decl., Ex. 2, at 10,

13  constitutes unfair competition in the form of "false and disparaging statements,"

14  Compl. ¶ 121, in violation of the federal Lanham Act, 15 U.S.C. § 1125(a).   The

15  comment, however, was made during a question-and-answer session with stock

16  analysts as part of an earnings call for investors reporting Sony's financial results.

17  The call was not meant to, and did not include, any marketing effort to sell Sony

18  products.   It cannot give rise to a Lanham Act product disparagement claim.

19          This is so because, instead of broadly federalizing state product

20  disparagement law, Congress "narrowly drafted" the Lanham Act provision here at

21  issue to restrict its coverage only to "commercial speech."   *Groden v. Random*

22  *House, Inc.*, 61 F.3d 1045, 1052 (2d Cir. 1995) (quotation omitted).   Accordingly,

23  a key "threshold" requirement, *Podiatrist Ass'n*, 332 F.3d at 19-20, of a Lanham Act

24  product disparagement claim is a complaint's allegation that a challenged statement

25  was made ***"in commercial advertising or promotion,"*** 15 U.S.C. § 1125(a)(1)(B)

26  (emphasis added).   The comment Vizio challenges plainly was not made "in

27  commercial advertising or promotion."   Vizio's complaint thus cannot meet this

28  threshold requirement and must be dismissed.

The Ninth Circuit has adopted a four-element test for whether a claim satisfies the Lanham Act's "commercial advertising or promotion" requirement.[5] The challenged statements must constitute: "'(1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services.   While the representations need not be made in a "classic advertising campaign," but may consist instead of more informal types of "promotion," the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.'"   *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999) (quoting *Gordon & Breach*, 859 F. Supp. at 1535-36); *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1181 (9th Cir. 2003).

A failure to satisfy any one of these four elements defeats a claim.   *See Gordon & Breach*, 859 F. Supp. at 1536-43; *Podiatrist Ass'n,* 332 F.3d at 19-20. As demonstrated by the transcript that Vizio incorporated into the complaint, Compl. ¶ 122, Vizio cannot satisfy at least two: the first element ("commercial speech") and the third element (statement made "for the purpose of influencing consumers to buy defendant's goods or services"), and for either reason the complaint should be dismissed.[6]

## A.   The Earnings-Call Comment Was Not Made To Influence Consumers To Buy Sony Products.

Vizio's Lanham Act claim should be dismissed for the simple and straightforward reason that the challenged comment, made in the course of a stock

[5]   Transferee courts in the Ninth Circuit apply Ninth Circuit law to federal claims, regardless of where the lawsuit was originally filed.   *See Newton v. Thomason*, 22 F.3d 1455, 1460 (9th Cir. 1994).

[6]   Solely for the purpose of this Rule 12(c) motion, Sony does not challenge the second or fourth elements.

1   analyst question-and-answer session during an earnings call reporting Sony's

2   financial results, was not made "for the purpose of influencing consumers to buy

3   defendant's goods or services."   *Coastal Abstract Serv.*, 173 F.3d at 735 (quotation

4   omitted); *Katzkin Leather, Inc. v. Nissan N. Am., Inc.*, 2005 WL 3593999, at *3

5   (C.D. Cal. Dec. 22, 2005).

6        Notably, Vizio's complaint fails to allege, even in conclusory terms, that the

7   earnings-call comment could satisfy the third element of the *Coastal Abstract* test.

8   The complaint alleges only that the comment was made to negatively influence

9   public perception of Vizio sets.   *See* Compl. ¶ 128.   For this reason alone, the

10   Lanham Act claim should be dismissed, because "only commercial speech that a

11   competitor employs for the express purpose of influencing consumers to buy the

12   competitor's goods or services is actionable under section 43(a)."   *EventMedia

13   Int'l, Inc. v. Time Inc. Magazine Co.*, 1992 WL 321629, at *3 (S.D.N.Y. Oct. 26,

14   1992).

15        Nor could Vizio successfully make such an allegation, given that the purpose

16   of the earnings call was to provide financial information to industry analysts and

17   investors, not to make a promotional pitch to consumers of TV sets.   This

18   information was provided by executives from Sony investor relations and finance

19   departments.   As shown above, rather than extol the virtues of Sony sets, the

20   executives focused on information useful to investors, including negative

21   information such as the report that "a large operating loss" in Sony's LCD TV

22   business "was recorded due to our being forced to cut prices in the first half of the

23   year, as a result of [a] less than competitive product line up."   Hentoff Decl., Ex. 2,

24   at 3.   Such a statement is of course neither directed to consumers nor made to

25   influence a consumer purchase.   *See Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp.

26   2d 460, 480 (D.N.J. 1998) (granting Rule 12(b)(6) motion; holding that defendants'

27   statements about their products in a notice of recall "do not constitute commercial

28   advertising or promotion because they are not designed to influence customers to

purchase defendant's goods"); *Katzkin Leather*, 2005 WL 3593999, at *7 (defendant car manufacturer's bulletins alerting dealers to safety concerns about non-manufacturer leather seats were not made for the purpose of influencing dealers to purchase seats from manufacturer).

Similarly, any argument by Vizio that a single reference in the earnings-call transcript to Vizio sets was somehow meant to promote Sony sets to consumers is foreclosed by the fact that the Sony executives on the call did not mention, let alone promote, any Sony TV set by model or even by the general brand name, Bravia, under which Sony LCD sets are sold. *See Nat'l Servs. Group Inc. v. Painting & Decorating Constructors of Am., Inc.*, 2006 WL 2035465, at *6 (C.D. Cal. July 18, 2006) (article that "does not mention, describe, or promote specific services provided" by defendant is not "susceptible to . . . [Lanham Act] product disparagement claim").

In other cases involving communications aimed at investors, courts have ordered dismissal of Lanham Act claims because such communications were not made to influence consumer purchasing decisions. For example, in *Tercica, Inc. v. Insmed Inc.*, 2006 WL 1626930 (N.D. Cal. June 9, 2006), the complaint alleged that the defendant had made false statements about the plaintiff's products during the defendant's conference calls with investors and potential investors. The court dismissed the complaint pursuant to Rule 12(b)(6) for failure "to allege sufficient facts showing that these communications were made 'for the purpose of influencing consumers to buy defendant's goods or services.'" *Id.* at *18.

Likewise, in *Cancer Genetics, Inc. v. Hartmayer*, 2008 WL 323738 (D.N.J. Feb. 5, 2008), the court granted a Rule 12(b)(6) dismissal of a Lanham Act claim because a defendant's statements that plaintiff's medical products "did not work" were made to an investor, not to customers. *Id.* at *8 (quotation omitted). Accordingly, the court held, "Plaintiff has failed to adequately plead that Defendant's statements were made with the 'purpose of influencing customers to

1  buy [Defendant's] goods or services' as required under the Lanham Act."  *Id.* at

2  *10.  The same is true here and for this reason alone the complaint should be

3  dismissed.

4  **B.  The Earnings-Call Comment Is Not Commercial Speech.**

5  Under the first element of the *Coastal Abstract* test, if a statement does not

6  meet the definition of "commercial speech," it cannot form the basis of a Lanham

7  Act product disparagement claim.  173 F.3d at 735.  The earnings-call statement

8  that Vizio challenges does not remotely meet the definition.  This additional,

9  independently sufficient ground requires dismissal of Vizio's Lanham Act claim.

10  The "commercial speech doctrine rests heavily on the common-sense

11  distinction between speech proposing a commercial transaction and other varieties

12  of speech."  *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 637, 105 S.

13  Ct. 2265, 2274, 85 L.Ed. 2d 652, 664 (1985) (quotation and ellipses omitted).

14  Thus, "'[c]ommercial speech is best understood as speech that merely advertises a

15  product or service for business purposes.'"  *Hilton v. Hallmark Cards*, __ F.3d __,

16  2009 WL 2710225, at *6 n.7 (9th Cir. Aug. 31, 2009) (quoting *Cardtoons, L.C. v.*

17  *Major League Baseball Players Ass'n*, 95 F.3d 959, 970 (10th Cir. 1996)).

18  At a minimum, where a communication's predominant message does more

19  than propose or promote a commercial transaction, the speech is non-commercial.

20  *See Bolger v. Youngs Drug Prods. Corp.,* 463 U.S. 60, 64-68, 103 S. Ct. 2875,

21  2878-81, 77 L. Ed. 469, 475-78 (1983); *Riley v. Nat'l Fed. of the Blind*, 487 U.S.

22  781, 795-96, 108 S. Ct. 2667, 2677, 101 L. Ed. 669, 688-89 (1988); *Rice*, 330 F.3d

23  at 1181 (affirming rejection of Lanham Act claim; challenged statement was made

24  as part of an entertainment program and thus did more than propose a commercial

25  transaction).  Courts thus grant Rule 12(b)(6) and 12(c) dismissals in Lanham Act

26  cases even where a communication contains **both** an offer to engage in a

27  commercial transaction, **and** a non-commercial message, as long as the non-

28  commercial message is the primary one.  *See*, *e.g.*, *Gordon & Breach Sci. Publ'rs*

1   *S.A. v. Am. Inst. of Physics*, 905 F. Supp. 169, 178 n.6 (S.D.N.Y. 1995) (Lanham

2   Act dismissal was based on articles that "were a composite of the informational and

3   the commercial, with the former predominating"); *New.net*, 356 F. Supp. 2d at 1117

4   (granting Rule 12(c) dismissal; defendant's Web site, which criticized spyware

5   distributors while also offering anti-spyware software for sale, "constitutes speech

6   on an issue of public importance . . . [I]t cannot be said that the sole purpose of the

7   speech is to propose a commercial transaction").

8        Here, Sony's earnings call of course did not "merely advertise[] a product or

9   service for business purposes."   *Hilton*, 2009 WL 2710225, at *6 n.7 (quotation

10  omitted).   Rather, in the course of thirteen transcript pages, it did not advertise any

11  Sony product or service *at all*.   The call served the completely different function of

12  informing investors and industry analysts about Sony's financial performance.   As

13  a general matter, a corporation's provision of such information to investors and

14  analysts is not commercial speech.   *See Agency Dev., Inc. v. MedAmerica Ins. Co.*,

15  142 F. App'x 545, 546 (2d Cir. 2005) ("[T]he annual reports at issue were not

16  commercial speech").   In particular, here, the entirety of the call was devoted to

17  providing financial information rather than the commercial promotion of any

18  product or service.

19        This is especially true of the challenged comment.   The SCA executive made

20  the comment in response to a stock analyst's question: "as you move and push

21  harder at the smaller screen size whether you can discuss how you plan to make

22  money in such a competitive market?"   Hentoff Decl., Ex. 2, at 10.   The

23  challenged remark was a response to that question, as the executive's very next

24  sentence following the remark makes clear: "So, when we talk about these lower

25  cost versions there is a big bandwidth in the middle that we think we still can make

26  money on . . . where there is a market hole that retail tells us that there is a demand

27  for Sony products."   *Id.*

28

1    The executive's comment plainly addressed business strategy – it identified a

2    "market hole" between two existing markets.    It did not propose a commercial

3    transaction or provide consumers information about purchasing Sony TV sets, let

4    alone identify a Sony brand or model that consumers should buy.    Because the

5    comment would have qualified as non-commercial speech even if the earnings call

6    had included some secondary commercial message, *see Rice*, 330 F.3d at 1181;

7    *New.net*, 356 F. Supp. 2d at 1117; *Monotype Corp. v. Simon & Schuster, Inc.*, 2000

8    WL 1852907, *7 (N.D. Ill. Sept. 8, 2000), the comment *ipso facto* qualifies as non-

9    commercial speech where the call included no commercial message at all.

10    This result is confirmed by the three-part commercial-speech test often

11    employed in this Circuit, pursuant to which speech could "be characterized as

12    commercial if (1) the speech is in [an] advertising format, (2) the speech refers to a

13    specific product, and (3) the speaker has an economic or commercial motive for

14    making the statements."    *Katzkin Leather*, 2005 WL 3593999, at *3 (citing *Am.*

15    *Acad. of Pain Mgmt. v. Joseph,* 353 F.3d 1099, 1106 (9th Cir. 2004), and *Bolger,*

16    463 U.S. at 66-67, 103 S. Ct. at 2880-81, 77 L.Ed. 2d at 477-78).

17    All three of these factors demonstrate that the earnings-call comment is non-

18    commercial speech.    Under the first factor, "[s]peech that is in [an] advertising

19    format is 'speech about a product or service by a person who is offering that product

20    or service at a price, directed to persons who may want, and be willing to pay for,

21    that product or service.'"    *Id.* at *4 (quoting *Kasky v. Nike, Inc.*, 27 Cal. 4th 939,

22    960-61 (2002)).    The stock-analyst discussion of Sony's financial performance is

23    of course not an advertising format.    This factor thus supports the non-commercial

24    character of the speech.

25    The second factor "requires Defendant's [challenged statement] to contain

26    references to a specific product or service of Defendant's 'for the purpose of

27    promoting sales of, or other commercial transactions in, [Defendant's] products or

28    services.'" *Id.* at *5 (quoting *Kasky*, 27 Cal. 4th at 961).    As shown above, the

challenged comment neither mentioned nor promoted any specific Sony TV sets. *See Maverick Boat Co. v. Am. Marine Holdings Inc.*, 70 U.S.P.Q.2d 1493, 1503-04 (S.D. Fla. 2004) (Boat manufacturer's letter to dealers, accusing rival manufacturer of infringement, "did refer to one product.   However, it did not discuss any details of purchasing such a product, such as price or qualities. . . .   [T]he dealer letter was not proposing a commercial transaction and therefore is not commercial speech."). The transcript makes clear that the purpose of the earnings call was its stated purpose: to brief industry analysts and investors on Sony's financial results. Accordingly, the second factor also supports the non-commercial character of the speech.

Under the third factor, the comment was made to give investors accurate information about Sony's financial performance, not "to encourage the purchase of Defendant's" television sets by consumers.   *Katzkin Leather*, 2005 WL 3593999, at *6 (challenged safety bulletins did not promote defendant's own competing product).   *See Nat'l Servs. Group*, 2006 WL 2035465, at *6   (third factor weighed against commercial speech conclusion where "article attempt[ing] to inform [defendant's] members of an issue affecting their economic interest" was "economically motivated only in an indirect sense").   This third and final factor confirms the non-commercial, and thus non-actionable, character of the challenged comment.

*            *            *

For inability to satisfy either the third or first elements of the "in commercial advertising or promotion" requirement, Vizio's Lanham Act claim should be dismissed.

## II.   VIZIO'S PRODUCT DISPARAGEMENT CLAIM FAILS BECAUSE VIZIO DOES NOT ALLEGE THAT THE EARNINGS-CALL COMMENT CAUSED IT TO LOSE ANY BUSINESS

Vizio's state-law product disparagement claim should be dismissed because, under state law and Federal Rule of Civil Procedure 9(g), Vizio's failure sufficiently to allege that it suffered any legally cognizable special damages from the earnings-call comment defeats its claim as a matter of law.[7]

### A.   New Jersey Law Applies.

When a case has been transferred pursuant to 28 U.S.C. § 1404(a), the transferee court applies the substantive state law of the transferor court, including the state's choice-of-law rules, as if the court were sitting in the original forum. *See S.A. Empresa De Viacao Aerea Rio Grandense v. Boeing Co.*, 641 F.2d 746, 749 (9th Cir. 1981).   Here, this means that the Court applies the substantive law of New Jersey, where Vizio brought its state-law product disparagement claim. Under New Jersey's choice-of-law rules, when there is no "actual conflict" between forum law and the law of another state that might apply with regard to a particular issue, then forum law supplies the rule of decision on that issue.   *See P.V. v. Camp Jaycee*, 962 A.2d 453, 460 (N.J. 2008).

On the issues presented by this motion, there is no actual conflict between New Jersey law and the law of California, where Vizio is headquartered.   *See* Compl. ¶ 2.   *Compare Dairy Stores, Inc. v. Sentinel Publ'g*, 516 A.2d 220, 231, 238 (N.J. 1986)   (New Jersey product disparagement elements, including special

---

[7]   The complaint uses the terms "product disparagement" and "trade libel" interchangeably, *see* Compl. at 17, to describe the common law tort that courts also call "injurious falsehood."   All three labels refer to the same tort.   *See Henry V. Vaccaro Constr. Co. v. A.J. DePace, Inc.*, 349 A.2d 570, 572 (N.J. Super. Ct. Law Div. 1975). For clarity, this brief uses the term "product disparagement" except when quoting legal authorities that use another label.

1  damages requirement), *with TYR Sport Inc. v. Warnaco Swimwear Inc.*, __ F. Supp.

2  2d __, 2009 WL 1769444, at *14 (C.D. Cal. May 27, 2009) (California product

3  disparagement elements, including special damages requirement); *Schering Corp. v.*

4  *First Databank Inc.*, 2007 WL 1068206, *5 (N.D. Cal. Apr. 10, 2007) (noting

5  similarity between elements of claim under New Jersey and California law).   New

6  Jersey substantive law therefore applies.   *See P.V.*, 962 A.2d at 460.[8]

7        **B.      Vizio's Failure To Allege Lost Business Requires Dismissal.**

8        Product disparagement is a business tort, stemming from the law of

9  interference with contractual relations, and without actual "special damages" in the

10 form of lost business, there is no cause of action.   *Dairy Stores*, 516 A.2d at 224.

11 Thus, under New Jersey law, a product disparagement plaintiff must, at a minimum,

12 allege specific and measurable loss of business that it can tie to the effects of the

13 challenged statement.   *See id.*[9]

14       It is hardly surprising that Vizio's complaint, filed approximately five months

15 after the earnings call, fails to allege any lost business as a result of the comment.

16 A single oral comment made during a question-and-answer session on an earnings

17 call for investors could not have had an impact on the sales of a major national

18 consumer electronics brand like Vizio.   Because specific allegations of lost

19 business are a necessary prerequisite to stating a product disparagement claim,

20 Vizio's failure to allege such damages reflects the reality that it has none and its

21 claim must be dismissed.

22

23 ───────────────
   [8]   In addition, Vizio has already agreed that New Jersey law applies to this issue.
24 *See Vizio, Inc. v. Sony Corp.*, No. 08-5029 (FSH) (D.N.J. Jan. 14, 2009) (Docket No.
   18, at 4) (making argument, regarding leave to file 12(b)(6) motion on product
25 disparagement claim, "[u]nder New Jersey law").
26   [9]   The required elements of a product disparagement claim in New Jersey include:
   (1) publication; (2) with malice; (3) of a false statement of fact; (4) concerning a
27 plaintiff's product or business; (5) that causes special damages.   *See id.* at 231, 238.

28

The special damages element requires specific and detailed allegations of not just any loss, but loss of business that can be directly tied to the challenged statement.   Thus, a plaintiff must "'allege either the loss of particular customers by name, or a general diminution in its business, and extrinsic facts showing that such special damages were the natural and direct result of the false publication.'" *Mayflower Transit, LLC v. Prince*, 314 F. Supp. 2d 362, 378 (D.N.J. 2004) (quoting *Juliano v. ITT Corp.*, 1991 WL 10023, at *6 (D.N.J. Jan. 22, 1991)).   This is a demanding requirement that weeds out meritless product disparagement claims. *See* 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 27:111 (4th ed. 2009) ("Pleading and proof of special damages is a necessary element of a valid claim for product disparagement. Without special damages, there is no tort.   In some cases, the requirement of proof of special damages will be an insurmountable obstacle for plaintiffs.") (footnote omitted).[10]   This requirement is underscored by Federal Rule of Civil Procedure 9(g), which provides that "[i]f an item of special damage is claimed, it must be specifically stated."   Fed. R. Civ. P. 9(g); *Isuzu Motors*, 12 F. Supp. 2d at 1047 (dismissing product disparagement claim under Rule 9(g) for failure to allege special damages with specificity).

Vizio has not come close to sufficiently pleading special damages.   The only allegation in the complaint even hinting at lost business is a bare assertion of "loss of goodwill."   Compl. ¶ 124.   This is precisely the type of conclusory allegation that courts reject as insufficient.   *See Juliano*, 1991 WL 10023, at *5-6 (alleging "harm to . . . goodwill" fails to satisfy a plaintiff's "burden in a product disparagement action"); *Bocobo v. Radiology Consultants*, 2005 WL 3158053, at *8

---

[10]   *Accord Mann v. Quality Old Time Serv., Inc.*, 120 Cal. App. 4th 90, 109-10 (2004) (affirming order striking "trade libel" allegations; holding that plaintiff "may not rely on a general decline in business arising from the falsehood, and must instead identify particular customers and transactions of which it was deprived as a result of the libel").

1  (D.N.J. Nov. 21, 2005); *Abernathy & Closther v. Buffalo Broad. Co.*, 574 N.Y.S.2d

2  568, 571 (App. Div. 1991).

3        Instead of alleging lost business, Vizio attempts to satisfy the special damages

4  requirement by claiming "increased costs of creating and producing corrective

5  television advertising spots designed to counteract the false assertions," allegedly in

6  excess of $500,000.   Compl. ¶ 124.   This allegation fails as well.

7        Courts in New Jersey and elsewhere hold that a product disparagement

8  plaintiff that fails to allege lost business cannot spend its way into a cause of action

9  solely through alleging its own claimed corrective expenditures.   Thus, in *Juliano*,

10  1991 WL 10023, the court, applying New Jersey law, held that allegations that

11  plaintiff had "incurred advertising and legal expenditures" to "counteract" letters

12  written by defendants "do not satisfy [plaintiff's] burden in a product disparagement

13  action."   *Id.* at *5-6.   This is because "[i]n order to carry its burden, [plaintiff]

14  must plead and prove that, as a result of the letters, others have failed to deal or

15  contract with it."   *Id.* at *6.[11]

16        Similarly, in *Brooks Power Systems, Inc. v. Ziff Communications, Inc.*, 1994

17  WL 444725 (E.D. Pa. Aug. 17, 1994), the product disparagement plaintiff failed to

18  establish lost business, causing its claim to rest solely on "the cost of rehabilitating

19  the company from the damage done by the alleged disparagement," including "a

20  planned $420,000 promotional campaign."   *Id.* at *7.   The court rejected this

21  attempt, holding that although a plaintiff's reasonably necessary rehabilitation

22  expenses may be recovered as damages once a product disparagement claim has

23  been independently established, "Plaintiff cannot establish its *prima facie* case

24  _____

25  [11]  *Accord Erlich v. Etner*, 224 Cal. App. 2d 68, 73 (1964) ("[T]he plaintiff must

26  prove in all cases that the publication has played a material and substantial part in inducing others not to deal with him, and that as a result he has suffered special

27  damages") (quoting *Prosser on Torts* 764-66 (2d ed. 1955)); *Mann*, 120 Cal. App. 4th at 109-10).

28

through expenditures on rehabilitation.    To hold otherwise would permit a plaintiff to establish direct pecuniary loss simply by spending money on 'rehabilitation' even if no direct damage had been done by the allegedly disparaging statement."    *Id. See also Angio-Med. Corp. v. Eli Lilly & Co.*, 720 F. Supp. 269, 274 (S.D.N.Y. 1989) (granting Rule 12(b)(6) dismissal; holding that "legal fees and executive time, standing alone[,] do not comprise special damages, and, therefore, . . . the trade libel claim is insufficiently pleaded").

Vizio has failed to establish its cause of action through a claim of lost business; its product disparagement claim must therefore be dismissed.

## CONCLUSION

For the reasons stated, Vizio's Lanham Act and product disparagement counts (25 and 26) should be dismissed with prejudice.

DATED:    September 14, 2009        WILLIAMS & CONNOLLY LLP

By_____/s/_____
  Thomas G. Hentoff
  Attorneys for Consolidated Defendants
  Sony Corporation and Sony Corporation of
  America